1   JEFFREY S. BUCHHOLTZ
    Acting Assistant Attorney General
2   ELIZABETH J. SHAPRIO
    MARCIA K. SOWLES
3   D.C. Bar No. 369455
    Department of Justice
4   Civil Division
    Federal Programs Branch
5   P.O. Box 883
    Washington, D.C. 20044
6   Telephone: (202) 514-4960
    Facsimile: (202) 514-8470
7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  ISLAMIC SHURA COUNCIL OF          )
    SOUTHERN CALIFORNIA;              )
    COUNCIL ON AMERICAN               )
12  ISLAMIC RELATIONS -               )    No. SACV07-1088 CJC
    CALIFORNIA; ISLAMIC CENTER        )    (ANx)
13  OF SAN GABRIEL VALLEY;            )
    ISLAMIC CENTER OF                 )    DATE: September 8, 2008
14  HAWTHORNE; WEST COAST             )    TIME: 1:30 P.M.
    ISLAMIC CENTER; HUMAN             )    JUDGE: Hon. Cormac J. Carney
15  ASSISTANCE AND                    )
    DEVELOPMENT                       )
16  INTERNATIONAL, INC.;              )
    MUZAMMIL SIDDIQI; SHAKEEL         )
17  SYED; HUSSAM AYLOUSH;             )
    MOHAMMED ABDUL ALEEM;             )
18  and RAFE HUSAIN,                  )
                                      )
19          Plaintiffs,               )
                                      )
20       v.                           )
                                      )
21  FEDERAL BUREAU OF                 )
    INVESTIGATION; and UNITED         )
22  STATES DEPARTMENT OF JUSTICE,     )
                                      )
23  _____Defendants._____ )

24        MEMORANDUM IN SUPPORT OF DEFENDANTS'
25            MOTION FOR SUMMARY JUDGMENT

26

27

28

# **TABLES OF CONTENTS**

**PAGE(S)**

INTRODUCTION ............................................................................................. 1

STATUTORY BACKGROUND ........................................................................ 2

FACTUAL BACKGROUND ............................................................................ 3

ARGUMENT ................................................................................................... 6

I.     CAIR-CALIFORNIA AND HUSSAM AYLOUSH FAILED TO
EXHAUST THEIR ADMINISTRATIVE REMEDIES ..................... 6

II.    THE SEARCH FOR RESPONSIVE DOCUMENTS
WAS REASONABLE ........................................................................ 9

III.   DEFENDANTS PROPERLY WITHHELD INFORMATION ........ 13

      A.      The FBI Properly Withheld Information Pursuant to
Exemption 1 ........................................................................... 14

      B.      The FBI Properly Withheld Information Pursuant to
Exemption 2 ........................................................................... 23

      C.      The FBI Properly Withheld Information Pursuant to
Exemption 6 ........................................................................... 26

      D.      The FBI Properly Withheld Information Pursuant to
Exemption 7 ........................................................................... 31

IV.   THE COURT LACKS JURISDICTION OF PLAINTIFFS'
CLAIMS REGARDING FAILURE TO COMPLY WITH
TIME LIMITS OR GRANT EXPEDITED PROCESSING ............. 37

CONCLUSION ............................................................................................. 38

# TABLE OF AUTHORITIES

## CASES

PAGES(S)

Aftergood v. Central Intelligence Agency,
  355 F. Supp. 2d 557 (D.D.C. 2005) ............................................................. 22

Am. Friends Serv. Comm. v. U.S. Dept. of Defense,
  831 F.2d 441 (3d Cir. 1987) ....................................................................... 22

Baldrige v. Shapiro,
  455 U.S. 345, 102 S.Ct. 1103, 71 L.Ed. 2d 199 (1982) ............................... 13

Bassiouni v. Central Intelligence Agency,
  392 F.3d 244 (7th Cir. 2004), cert. denied,
  425 U.S. 2945 (2005) ................................................................................. 18

Bast v. Dep't of Justice,
  665 F.2d 1251 (D.C. Cir. 1981) .................................................................. 32

Berman v. Central Intelligence Agency,
  501 F.3d 1136 (9th Cir. 2007) .................................................................... 15

Binion v. U.S. Dep't of Justice,
  695 F.2d 1189 (9th Cir. 1983) .................................................................... 31

Blanton v. U.S. Dep't of Justice
  63 F. Supp. 2d 35 (D.D.C. 1999) ................................................................ 36

Brunetti v. Federal Bureau of Investigation,
  357 F. Supp. 2d 97 (D.D.C. 2004), aff'd,
  124 F.3d 1309 (D.C. Cir. 1997) .................................................................. 12

CIA v. Sims,
  471 U.S. 159 (1985) ............................................................................. 15, 22

Cappabianca v. Comm'r U.S. Customs Serv.,
  847 F. Supp. 1558 (M.D. Fla. 1994) ........................................................... 24

Carney v. Department of Justice,
  19 F.3d 807 (2d Cir. 1994) .......................................................................... 9

Carter v. U.S. Dep't of Commerce,
  830 F.2d 388 ............................................................................................. 28

Castaneda v. United States,
  757 F.2d 1010 (9th Cir. 1985) .................................................................... 32

Center for Nat'l Sec. Studies v. DOJ,
  331 F.3d 918 (D.C. Cir. 2003) ............................................................... 2, 15

Church of Scientology v. U.S. Dep't of Army,
   611 F.2d 738 (9th Cir. 1980) .................................................................... 31

Citizens Commission on Human Rights v. Federal Drug Administration,
   45 F.3d 1325 (9th Cir. 1995) ........................................................... 9, 10, 14

Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Services,
   844 F. Supp. 770 (D.D.C. 1993) ..................................................................... 8

Coastal Delivery Corp. v. U.S. Customs Service,
   272 F. Supp. 2d 958 (C.D. Cal. 2003) ........................................................ 36

Coleman v. Federal Bureau of Investigation,
   13 F. Supp. 2d 75 (D.D.C. 1999) ................................................................ 36

Cong. News Syndicate v. Dep't of Justice,
   438 F. Supp. 538 (D.D.C. 1997) ................................................................ 29

Crooker v. Bureau of Alcohol, Tobacco & Firearms,
   670 F.2d 1051 (D.C. Cir. 1981) ................................................................... 23

Crooker v. State Department,
   628 F.2d 9 (D.C. Cir. 1980) ........................................................................ 38

Dep't of Defense v. Fed. Labor Relations Auth. ,
   510 U.S. 487 (1994) .................................................................................... 28

Dettman v. United States Dep't of Justice,
   802 F.2d 1472 (D.C. Cir. 1986) ..................................................................... 8

Dow Jones & Co. v. DOJ,
   917 F.2d 571 (D.C. Cir. 1990) .................................................................... 34

Doyle v. FBI,
   722 F.2d 554 (9th Cir. 1983) ...................................................................... 14

Dunkelberger v. DOJ,
   906 F.2d 779 (1990) .................................................................................... 29

Dunway v. Webster,
   519 F. Supp. 1059 (N.D. Cal. 1981) ........................................................... 32

Edmonds v. FBI,
   272 F. Supp. 2d 35 (D.D.C. 2003) ........................................................ 22, 30

Elliott v. FBI,
   2007 WL 1302595 (D.D.C. 2007) .............................................................. 26

Harvey v. U.S. Dep't of Justice,
    No. 92-176-BLG (D. Mont. Jan. 9, 1996),
    aff'd, 116 F.3d 484 (9th Cir. 1997) .............................................................. 2

Fisher v. Department of Justice,
    772 F. Supp. 7 (D.D.C. 1991), aff'd, 968 F.2d 92
    (D.C. Cir. 1992) .............................................................. 35

Fitzgibbon v. CIA,
    911 F.2d 755 (D.C. Cir. 1990) .............................................................. 29

Frugone v. CIA,
    169 F.3d 772 (D.C. Cir. 1999) .............................................................. 16

Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.,
    656 F.2d 856 (D.C. Cir. 1981) .............................................................. 30

Germosen v. Cox,
    1999 WL 1021559 (S.D.N.Y. 1999) .............................................................. 26

Hale v. DOJ,
    973 F.2d 894 (10th Cir. 1992), vacated on other grounds,
    509 U.S. 918 (1993) .............................................................. 13

Halperin v. Central Intelligence Agency,
    629 F.2d 144 (D.C. Cir. 1980) .............................................................. 15

Hamilton Securities Group, Inc. v. Dept. of Housing and Urban Dev.,
    106 F. Supp. 2d 23 (D.D.C. 2000), aff'd, 2001 WL 238162
    (D.C. Cir. 2001) .............................................................. 8

Hayden v. CIA,
    608 F.2d 1381 (D.C. Cir. 1979) .............................................................. 14

Hunt v. Central Intelligence Agency,
    981 F.2d 1116 (9th Cir. 1992) .............................................................. 14

Hunt v. FBI,
    972 F.2d 286 (9th Cir. 1992) .............................................................. 30, 33

Iturralde v. Comptroller of the Currency,
    315 F.3d 311 (D.C. Cir. 2003) .............................................................. 10, 11, 12

Jan-Xin Zang v. FBI,
    756 F. Supp. 705 (W.D. N.Y. 1999) .............................................................. 22

John Doe Agency v. John Doe Corp.,
    493 U.S. 146, 110 S.Ct. 471, 107 L.Ed. 2d 462 (1989) .............................. 2, 13, 15

Jones v. FBI,
    41 F.3d 238 (6th Cir. 1994) .............................................................. 25, 33, 34

Judicial Watch, Inc. v. U.S. Naval Observatory,
    160 F. Supp. 2d 111 (D.D.C. 2001) .............................................................. 38

Judicial Watch v. Rossotti,
   285 F. Supp. 2d 17 (D.D.C. 2003) ........................................................ 7

Kucernak v. FBI,
   129 F.3d 126  1997 WL 69377 (9th Cir. 1997) ........................................ 12

Lesar v. Dep't of Justice,
   636 F.2d 472 (D.C. Cir. 1980) ........................................................ 25, 30

Los Angeles Times Communications v. Dep't of Army,
   442 F. Supp. 2d 880 (C.D. Cal. 2006) .................................................... 23

Masters v. FBI,
   926 F. Supp. 193 (D.D.C. 1996) .......................................................... 12

Maynard v. Central Intelligence Agency,
   986 F.2d 547 (1st Cir. 1993) ................................................................. 9

Military Audit Project v. Casey,
   656 F.2d 724 (D.C. Cir. 1981) ........................................................ 15, 16

Nat'l Security Archives v. FBI,
   759 F. Supp. 872 (D.D.C. 1991) .......................................................... 22

Nation Magazine v. U.S. Customs Serv.,
   71 F. 3d 885 (D.C. Cir. 1995) ........................................................ 30, 33

National Ass'n of Retired Fed. Employees v. Horner,
   879 F.2d 873 (D.C. Cir. 1989) ............................................................ 29

New York Times Co. v. NASA,
   920 F.2d 1002 (D.C. Cir. 1990) .......................................................... 27

Oglesby v. U.S. Department of Army,
   920 F.2d 57 (D.C. Cir. 1990) ............................................................. 6, 7

Olsen v. U.S. Dep't of Transportation,
   2002 WL 31738794 (N.D. Cal. 2002) .................................................... 8

Perry v. Block,
   684 F.2d 121 (D.C. Cir. 1982) .............................................................. 9

Quinon v. FBI,
   86 F. 3d 1222 (D.C. Cir. 1996) ............................................................ 30

Ray v. FBI,
   441 F. Supp. 2d 27 (D.D.C. 2006) ....................................................... 26

Reed v. NLRB,
   927 F.2d 1249 (D.C. Cir. 1991), cert. denied,
   502 U.S. 1047 (1992) .................................................................... 28, 29

Schiffer v. FBI,
  78 F. 3d 1405 (9th Cir. 1996) ...................................................... 33

Schiller v. National Labor Relations Bd,
  964 F.2d 1205 (D.C. Cir. 1992) .................................................. 23

Shores v. FBI,
  185 F. Supp. 2d 77 (D.D.C. 2002) ...................................... 25, 26

Smith v. Bureau of Alcohol, Tobacco and Firearms,
  977 F. Supp. 496 (D.D.C. 1997) ................................................ 35

Smith v. FBI,
  448 F.Supp. 2d 216 (D.D.C. 2006) .............................................. 7

In re Steele,
  799 F.2d 461 (9th Cir. 1986) ...................................................... 6

Summers v. U.S.Dept. of Justice,
  517 F. Supp. 2d 231 (D.D.C. 2007) ........................................... 22

Taylor v. Dep't of the Army,
  684 F.2d 99 (D.C. Cir. 1982) ..................................................... 16

Texas Independent Producers Legal Action Ass'n v. IRS,
  605 F. Supp. 538 (D.D.C. 1984) .................................................. 9

Tijerina v. Walters,
  821 F.2d 789 (D.C. Cir. 1987) ................................................... 38

Truesdale v. U.S. Department of Justice,
  2005 WL 329404004 (D.D.C. 2005) ......................................... 26

United States Dep't of State v. Washington Post Co.,
  456 U.S. 595 (1982) .................................................................. 27

United States Dep't of the Air Force v. Rose,
  425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed. 2d 11 (1976) ................... 28

United States Department of Justice v. Landano,
  508 U.S. 165, 113 S.Ct. 2014, 124, L.Ed. 2d 84 (1993) ........ 14, 34

United States Department of Justice v. Reporters Committee,
  489 U.S. 749 (1989) ............................................................ 29, 30

United States v. Marchetti,
  466 F.2d 1309 (4th Cir.), cert. denied, 409 U.S. 1063 (1972) ...... 22

Voinche v. FBI,
  999 F.2d 962 (5th Cir. 1993) .................................................... 38

Washington Post Co. v. U.S. Dept. of Health and Human Services,
  690 F.2d 252 (D.C. Cir. 1982) ................................................... 27

-vi-

Wiesenfelder v. Riley,
    959 F. Supp. 532 (D.D.C. 1997) ........................................... 23, 24

Wilbur v. CIA,
    315 F.3d 675 (D.C. Cir. 2004) ..................................................... 10

Williams v. FBI,
    69 F.3d 1155 (D.C. Cir. 1995) ..................................................... 34

Wood v. FBI,
    432 F.3d 87 (2d Cir. 2005)  ......................................................... 28

Zemansky v. Environmental Protection Agency,
    767 F.2d 569 (9th Cir. 1985) ......................................................... 9

## STATUTES

5 U.S.C. § 552(a)(6)(A)(i) ............................................... passim

5 U.S.C. § 552(a)(6)(C) ...................................................... 7

5 U.S.C. § 552(a)(4)(B) ...................................................... 3

5 U.S. C. § 552(b) ............................................................ 2

5 U.S.C. § 552(b)(1) ........................................................ 15

5 U.S.C. § 552(b)(2) ........................................................ 23

5 U.S.C. § 552(b)(6) ........................................................ 26

5 U.S.C. § 552(b)(7) ........................................................ 32

5 U.S.C. § 552(b)(7)(C) ..................................................... 32

5 U.S.C. § 552(b)(7)(D) ..................................................... 34

5 U.S.C. § 552(b)(7)(E) ..................................................... 35

5 U.S.C. § 552(f) ............................................................. 3

## REGULATIONS

28 C.F.R. § 16.9 .............................................................. 3

1

2                              INTRODUCTION

3          This is an action filed under the Freedom of Information Act ("FOIA"), 5

4     U.S.C. § 552,[1] by six organizations and five individuals against the United States

5     Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI").[2]  In

6

7     their FOIA request, they sought records containing information pertaining to

8     themselves from the FBI headquarters ("FBIHQ") and its Los Angeles Field Office.

9     The FBI has responded to plaintiffs' FOIA requests by conducting a thorough search

10

11    of those offices, and has released 124 pages of responsive documents to plaintiffs.

12    In making its FOIA production, the FBI withheld portions of the documents pursuant

13

14    to well-recognized exemptions for protecting classified information, law enforcement

15    materials, internal agency matters, and personal privacy.  The FBI's invocation of

16

17    these exemptions was necessary and proper, as the detailed declaration submitted

18    with this motion makes clear.  The defendants are, therefore, entitled to summary

19    _____

20        [1] Although this action was brought solely under the provisions of the FOIA,
21    since six individual plaintiffs sought access to records about themselves, this
      action is also properly includes the Privacy Act, 5 U.S.C. § 552a.  Both statutes are
22    addressed in the Declaration of David M. Hardy and brief.

23
          [2] The organizations are Islamic Shura Council of Southern California,
24    Council on American Islamic Relations - California, Islamic Center of San Gabriel
25    Valley, Islamic Center of Hawthorne, West Coast Islamic Center, Human
      Assistance and Development International, Inc.  The individual plaintiffs are
26    Mazammil Siddiqi, Shakeel Syeed, Hussam Ayloush, Mohammed Abdul Aleem,
27    and Rafe Husain.

28                                    - 1 -

judgment on plaintiffs' claims.

## STATUTORY  BACKGROUND

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." Center for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 925 (D.C. Cir. 2003), cert. denied, 540 U.S. 1104 (2004) (citing John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)). Under the FOIA, "each agency, upon any request for records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3).  The FOIA, however, exempts from its disclosure nine categories of information.  5 U.S. C. § 552(b).[3]

The FOIA provides that within twenty days (excepting weekends and legal holidays) after receipt of the request the agency will determine whether it will produce or withhold the requested documents.  5 U.S.C. § 552(a)(6)(A)(i).  If the agency makes an adverse decision, the requester may file an administrative appeal. 5 U.S.C. § 552(a)(6)(A)(ii).  Under DOJ regulations, an individual may appeal an

---

[3] A request for a right of access made pursuant to the provisions of the Privacy Act is processed under both that statute and the FOIA. Harvey v. U.S. Dep't of Justice, No. 92-176-BLG, slip op. at 8 (D. Mont. Jan. 9, 1996), aff'd, 116 F.3d 484 (9th Cir. 1997). The Privacy Act, like FOIA, contains certain exemptions.

adverse decision by the FBI to the Department of Justice's Office of Information and Privacy ("OIP") within 60 days after receipt of the initial decision. 28 C.F.R. § 16.9. The agency must then issue a decision within twenty days (excluding weekends and legal holidays) after receiving the appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

If the agency denies the appeal, the requestor may then file suit against the agency in federal district court. 5 U.S.C. § 552(a)(4)(B).[4] The FOIA provides courts with limited jurisdiction to enforce the Act. Specifically, the FOIA grants a court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

By a letter dated May 15, 2006, to the FBIHQ and Los Angeles Field office, plaintiffs submitted a joint request under FOIA for records relating to themselves. See Exhibit A to Declaration of David Hardy ("Hardy Decl."). On May 25, 2006, the FBI acknowledged receipt of the FOIA requests by the six plaintiff organizations. See Exhibit B to Hardy Decl. On March 1, 2007, the FBI acknowledged receipt of

---

[4] An "agency" is defined by the FOIA as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President) or any independent regulatory agency." 5 U.S.C. § 552(f). The FBI is not an agency within this definition because it is a component of an executive department – the Department of Justice. The FBI is, therefore, not a proper defendant.

- 3 -

the FOIA requests by the five individual plaintiffs. See Exhibit C to Hardy Decl.

On April 27, 2007, the FBI advised plaintiffs' counsel of the results of its searches for the following nine plaintiffs: Islamic Shura Council of Southern California, Islamic Center of San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center, HADI, Dr. Siddiqi, Shakeel Syed, Mohammed Abdul Aleem, and Rafe Husain. See Exhibit D to Hardy Decl. The FBI explained that "to promptly respond, the [FBI] concentrated on identifying main files in the Central Records System at the FBIHQ and the Los Angeles Field Office" and that there were no records responsive to plaintiffs' request under the FOIA. Id. Shortly thereafter the FBI advised plaintiffs's counsel that it was still processing the request for documents relating to the other two plaintiffs – CAIR-Southern California and Ayloush Hussam. See Exhibits E and F to Hardy Decl.

On June 7, 2007, plaintiffs' counsel sent a joint administrative appeal to OIP on behalf of all of the plaintiffs. See Exhibit G to Hardy Decl. The appeal raised two issues. First, with respect to the "no responsive documents" letters received by nine plaintiffs, plaintiffs alleged that the data base search was inadequate. Second, with regard to CAIR-Southern California and Hussam Ayloush, plaintiffs complained that FBI had not yet responded to their requests. Id.

On June 13, 2007, the same day that OIP received the joint administrative

- 4 -

appeal, the FBI sent a letter to plaintiffs' counsel enclosing a 3 page document responsive to the request filed by Hussam Ayloush. See Exhibit H to Hardy Decl. The letter explained that portions of the document were redacted to protect information from disclosure pursuant to (b)(2), (b)(6) and (b)(7)(C). On following day, June 14, 2007, the FBI sent a letter to plaintiffs' counsel enclosing a one page memorandum responsive to the request filed by CAIR-Southern California. See Exhibit I to Hardy Decl. The letter explained that portions of the document were redacted to protect information from disclosure pursuant to (b)(6) and (b)(7)(C). In each of these letters, the FBI explained that plaintiffs had sixty days to appeal the decision to the OIP. Neither Mr. Ayloush or CAIR-Southern California filed an appeal regarding these responses. Hardy Decl. ¶ 44.

In the meantime, OIP reviewed the prior joint appeal by the other plaintiffs regarding the adequacy of the search for documents relating to them. It affirmed the FBI's no records response to these nine plaintifs. See Exhibit K to Hardy Decl.[5]

On September 18, 2007, plaintiffs filed this action alleging that the FBI had

---

[5] The validity of the exemptions asserted for the redactions made on the documents relating to CAIR - Southern California and Mr. Ayloush was not raised in the joint appeal because the FBI had not yet responded to their FOIA requests when the joint appeal was filed. Although this issue was not properly before it, the OIP reviewed those redactions and found that the FBI had properly withheld that information. See Exhibits L and M.

improperly withheld documents or portions of documents and had failed to conduct an adequate search. In order to satisfy plaintiffs' concern regarding the adequacy of the search, the FBI conducted a further search. Hardy Decl. ¶ 45. This search included a search for any "cross-references" to plaintiffs in its Central Records System ("CRS") as well as a search of the Electronic Surveillance ("ELSUR") indices. Id. As a result of that search, the FBI produced 120 pages of responsive documents. Id. ¶ 19. In total, the FBI has produced 124 pages with portions redacted pursuant to exemptions 1, 2, 6, 7(C), 7(D) and 7(E).

## ARGUMENT

### I.   CAIR-CALIFORNIA AND HUSSAM AYLOUSH FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES.

In FOIA cases, a plaintiff must fully and timely exhaust his administrative remedies prior to seeking judicial review. See Oglesby v. U.S. Department of Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990). Exhaustion of administrative remedies includes exhaustion of the administrative appeal process set forth in 5 U.S.C. § 552(a)(6)(A)(ii). If a plaintiff fails to exhaust administrative remedies, the court lacks subject matter jurisdiction to adjudicate the claim. In re Steele, 799 F.2d 461, 465-66 (9th Cir. 1986).

In this case, two of the plaintiffs – CAIR-California and Hussam Ayloush –

failed to exhaust their administrative remedies. Unlike the other plaintiffs to whom the FBI had sent initial letters stating that there were no responsive documents, the FBI produced documents with redactions to CAIR-California and Mr. Ayloush on June 13 and 14, 2007. Hardy Decl. ¶ 13-14. In its response letters, the FBI explained that they could appeal the decision to the OIP within 60 days. Exhibits H and I to Hardy Decl. Neither of these two plaintiffs, however, filed an appeal challenging the FBI's responses to their requests. Hardy Decl. ¶ 44. Accordingly, any challenge regarding FBI's responses to these two plaintiffs should be dismissed for failure to exhaust their administrative remedies.

CAIR-California and Mr. Ayloush cannot avoid the need to exhaust their administrative remedies on the grounds that the FBI's responses to their FOIA requests were not within the 20 day time period specified in the FOIA. While FOIA permits requesters to treat an agency's failure to comply with its specific time limits as "constructive" exhaustion of administrative remedies, 5 U.S.C. § 552(a)(6)(C), this special right to immediate judicial review that arises from the lack of a timely response lapses if an agency responds to a request at any time before the requester's FOIA suit is filed. Oglesby v. U.S. Dept. of Army, 920 F.2d at 63; Smith v. FBI, 448 F.Supp. 2d 216, 220 (D.D.C. 2006); Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003). In that situation, the requester must administratively appeal the

denial and wait at least twenty working days for the agency to adjudicate that appeal, as required by 5 U.S.C. § 552(a)(6)(A)(ii), before commencing litigation. Here, Mr. Ayloush and CAIR-California failed to file such an administrative appeal after they received their responses.

These plaintiffs also cannot rely on the joint administrative appeal filed by all plaintiffs on June 5, 2007. While that appeal challenged the adequacy of the searches for documents related to the other nine plaintiffs, the only issue raised regarding the requests by these two plaintiffs was that the FBI had failed to respond timely to their request. In FOIA actions, courts have found that plaintiffs cannot raise an issue in court which they did not raise in their administrative appeal. For example, in Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Services, 844 F. Supp. 770, 779-80 (D.D.C. 1993), plaintiff, as here, challenged the adequacy of the search before the district court. The court dismissed that challenge that because it failed to raise that issue during its administrative appeal, which was limited to the assertion of a FOIA exemption. Accord Dettman v. United States Dep't of Justice, 802 F.2d 1472, 1476 (D.C. Cir. 1986); Hamilton Securites Group, Inc. v. Dept. of Housing and Urban Dev., 106 F. Supp. 2d 23, 27 (D.D.C. 2000), aff'd, 2001 WL 238162 (D.C. Cir. 2001), Olsen v. U.S. Dep't of Transportation, 2002 WL 31738794,* 2 (N.D. Cal. 2002).

Because Mr. Ayloush and CAIR-California failed to exhaust their

- 8 -

1  administrative remedies, their should be dismissed.

2
3  II.    THE SEARCH FOR RESPONSIVE DOCUMENTS WAS REASONABLE.

4      To obtain summary judgment on the issue of the adequacy of the search, an

5
6  agency must conduct "a search reasonably calculated to uncover all relevant

7  documents." Citizens Commission on Human Rights v. Federal Drug Administration,

8  45 F.3d 1325, 1328 (9th Cir. 1995) (quoting Zemansky v. Environmental Protection

9
10  Agency, 767 F.2d 569, 571 (9th Cir. 1985). "[A]ffidavits describing agency search

11  procedures are sufficient for purpose of summary judgment . . . if they are relatively

12
13  detailed in their description of the files searched and the search procedures, and if

14  they are nonconclusory and not impugned by evidence of bad faith." Citizens

15  Comm'n, 45 F.3d at 1328 (quoting Zemansky, 767 F.2d at 573).[6] While declarations

16
17  should be "sufficiently detailed," "[t]he standard, however, is not 'meticulous

18  documentation [of] the details of an epic search.'" Texas Independent Producers

19
20  Legal Action Ass'n v. IRS, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting Perry v.

21  Block, 684 F.2d 121, 127 (D.C. Cir. 1982)). "Rather, the agency need only provide

22  affidavits explaining in 'reasonable detail' the scope and method of the search, in

23
24  absence of countervailing evidence." Texas Independent Producers, 605 F. Supp. at

25

26      [6] Accord Carney v. Department of Justice, 19 F.3d 807, 812 (2d Cir. 1994);
27  Maynard v. Central Intelligence Agency, 986 F.2d 547, 556 n. 8 (1st Cir. 1993).

28                                    - 9 -

547 (quoting Perry, 684 F.2d at 127).

In determining the sufficiency of a search, "'the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" Citizen Comm'n, 45 F.3d at 1328 (quoting Zemansky, 767 F.2d at 571) (court's emphasis). In general, the sufficiency of a search is determined by the "appropriateness of the methods" used to carry out, "not by the fruits of the search." Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). Accordingly, the failure of an agency "to turn up a particular document, or mere speculation that yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested record." Wilbur v. CIA, 315 F.3d 675, 678 (D.C. Cir. 2004). In the absence of "countervailing evidence" or "substantial doubt," agency affidavits or declarations describing a reasonable and adequate search are sufficient to demonstrate an agency's compliance with FOIA. See Iturralde, 315 F.3d at 314 (citations omitted).

The declaration submitted by David M. Hardy, Section Chief of the Records/Information Dissemination Section, Records Management Division of the FBI, demonstrates that the FBI conducted a search reasonably calculated to undercover documents responsive to plaintiffs' request. See Hardy Decl. ¶¶ 14-46.

- 10 -

In its initial search, the FBI searched its CRS, which consists of administrative, applicant, criminal, personnel and other files. Id. ¶¶ 20, 31-41. The CRS is organized into a numerical sequence of files, which are broken down according to subject matter. Id. ¶ 20. The subject matter of a file may correspond to an individual, organization, company, publication, activity or foreign intelligence matter. Id. The mechanism that the FBI used to search the CRS is the Automated Case Support system ("ACS"). Id. ¶ 22. In this initial search, the FBI searched its indices of "main" files (i.e., files which are mainly about an individual or group) for files concerning plaintifs. Id. [7] The searches of CRS and ELSUR indices were conducted using the names of each of the plaintiffs as well as variations thereof. Id. ¶¶ 31-41.

As part of this initial search, the FBI also circulated an electronic communication to those FBIHQ divisions and offices most likely to possess potential responsive records requesting that all personnel to conduct a thorough search of any documents in the their possession. Id. ¶¶ 42-43. In response to this communication, the individuals in these offices conducted searches of their files for potentially responsive documents. Id.

---

[7] Data on persons and organizations is stored in the CRS in two ways: (1) a "main" entry, which correspond with the subject of a file, and (2) a "reference" entry, sometimes called "cross-reference," which indicates that the person or organization is merely referenced in the file.

In response to plaintiffs' concern regarding the adequacy of the search, the FBI conducted a second search its CRS for any "cross-references" to plaintiffs (i.e., files which merely mention an individual or organization) at FBIHQ or its Los Angeles Field Office. Id. ¶ 45. The FBI also conducted a search of its ELSUR indices. Id. The ELSUR indices are used to maintain information on a subject whose electronic and/or voice communications have been intercepted as a result of a consensual electronic surveillance or a court-ordered (and/or sought) electronic surveillance conducted by the FBI. Id. ¶¶ 26-30.

Courts have consistently found that FBI searches of its CRS fully meet the standards of adequacy and reasonableness established under the FOIA. See, e.g., Kucernak v. FBI, 129 F.3d 126 (table), 1997 WL 69377 (9th Cir. 1997); Brunetti v. Federal Bureau of Investigation, 357 F. Supp. 2d 97, 103 (D.D.C. 2004), aff'd, 124 F.3d 1309 (D.C. Cir. 1997) (table); Masters v. FBI, 926 F. Supp. 193, 196-97 (D.D.C. 1996). In this case, as explained above, the FBI not only conducted an automated search of the CRS, but it also searched the ELSUR indices and circulated an electronic communication to those divisions and offices most likely to possess potentially responsive documents. Hardy Decl. ¶¶ 31-42, 45.

Accordingly, plaintiffs' challenge to the adequate of the search have no merit. The search conducted by the FBI was more than reasonable.

III.    DEFENDANTS PROPERLY WITHHELD INFORMATION.

The Freedom of Information Act, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed. 2d 462 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)). Thus, while the FOIA requires agency disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest." <u>Baldrige v. Shapiro</u>, 455 U.S. 345, 352, 102 S.Ct. 1103, 71 L.Ed. 2d 199 (1982). Consequently, the FOIA "provides that agency records may be withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C. § 552(b)." <u>Id.</u> "These exemptions reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential." <u>Hale v. DOJ</u>, 973 F.2d 894, 898 (10th Cir. 1992), <u>vacated on other grounds</u>, 509 U.S. 918 (1993). As the Supreme Court has stressed, the statutory exemptions must be construed "to have a meaningful reach and application." <u>John Doe</u>, 493 U.S. at 152.

A court may award summary judgment to an agency with regard to the exemptions on the basis of information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail,

- 13 -

demonstrate that the information withheld logically falls within the claimed

exemptions, and show that the justifications are not controverted by contrary evidence

in the record or by evidence of [agency] bad faith." Hunt v. Central Intelligence

Agency, 981 F.2d 1116, 1119 (9th Cir. 1992). "If the affidavits contain reasonably

detailed description of the documents and allege facts sufficient to establish an

exemption, the district court need look no further." Citizens Comm., 45 F.3d at 1329.

Given these standards of review, as the discussion below and the

accompanying declaration demonstrates, all of the information withheld by DOJ here

plainly falls within exemptions to FOIA's disclosure requirements. DOJ is thus

entitled to summary judgment.[8]

A.    The FBI Properly Withheld Information Pursuant to Exemption 1.

Exemption 1 protects records that are: "(A) specifically authorized under

criteria established by an Executive Order to be kept secret in the interest of national

---

[8] Defendants believe that summary judgment can be granted for defendants
based on the declaration of David M. Hardy, which is filed on the public record.
However, if the Court finds that additional information is needed, defendants are
willing to provide a more detailed explanation in an *ex parte* and *in camera*
declaration. Courts have recognized that agencies may rely on such in camera and
ex parte declarations where, as here, a more detailed explanation of the basis for
the exemptions on the public records would jeopardize the information that the
government seeks to protect or other privileged information. United States
Department of Justice v. Landano, 508 U.S. 165, 179, 113 S.Ct. 2014, 124
L.Ed. 2d 84 (1993); Doyle v. FBI, 722 F.2d 554, 556 (9th Cir. 1983); Hayden v.
CIA, 608 F2d 1381, 1385 (D.C. Cir. 1979).

- 14 -

defense or foreign policy, and (B) are in fact properly classified pursuant to Executive Order."   See 5 U.S.C. § 552 (b)(1).   Exemption 1 thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of the exemption by executive order." Military Audit Project v. Casey, 656 F.2d 724, 737 (D.C. Cir. 1981).

Because national security is "a uniquely executive purview." Center for Nat'l Security Studies v. U.S. Dept. of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003), cert. denied, 540 U.S. 1104 (2004), courts have specifically recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security. CIA v. Sims, 471 U.S. 159, 179-80 (1985); Berman v. Central Intelligence Agency, 501 F.3d 1136, 1140 (9th Cir. 2007).   Indeed, courts have routinely and repeatedly emphasized that "weigh[ing] the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the [nation's] intelligence-gathering process" is a task best left to the Executive Branch and not attempted by the judiciary. Sims, 471 U.S. at 180; see also Center for Nat'l Security Studies, 331 F.3d at 928 ("the judiciary is in an extremely poor position to second-guess the executive's judgment in [the] area of national security"); Halperin v. Central Intelligence Agency, 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges . . . lack the expertise necessary to second-guess [] agency opinions

- 15 -

in the typical national security FOIA case").   Accordingly, substantial weight is accorded to an agency's determination that potential harm merits classification of particular information.  See, e.g., Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999); Taylor v. Dep't of the Army, 684 F.2d 99, 109 (D.C. Cir. 1982); Military Audit Project, 656 F.2d at 745.

The Executive Order applicable to the documents at issue in this case is Executive Order ("E.O."), 12958, "Classified National Security Information," as amended by E.O. 13292.  See 68 Fed. Reg. 15315 (March 25, 2003).  Under E.O. 12958, as amended,  information may be classified if:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

- 16 -

E.O. 12958, § 1.1 (a); Hardy Decl., ¶ 52. One of the categories of information that may be properly classified under E.O. 12958 is intelligence activities, sources and methods. E.O. 12958, § 1.4(c). The agency must also follow the proper procedures in classifying the information. [9]

In this case, the FBI properly invoked exemption 1 to withhold four categories of classified information: (1) a file numbers assigned to specific intelligence activity, (2) detailed intelligence activities gathered on specific individuals or organizations of national security interest, (3) standard terminology/phraseology used in most recent FBI investigations, and (4) the character of the case which identifies the specific type of intelligence activity directed at a specific target. Hardy Decl. ¶ 58. In determining that this information is classified, the FBI has adhered to the mandated procedures. The information was reviewed by Mr. Hardy, who has been designated the Attorney General as an original Top Secret classification and declassification authority. E.O. 12958, §§ 1.2(a)(1); 1.4; 3.2; Hardy Decl. ¶¶ 2, 54. The information classified is

---

[9] These procedures require that (a) each document is marked as required and stamped with the proper classification designation, E.O. 12958, § 1.7(a)(1)-(5); (b) each document is marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 12958, § 1.6(d), and which portions are unclassified, E.O. 12958, § 1.7(a)(5)(c); (c) the prohibitions and limitations on classification specified in E.O. 12958, § 1.8 are adhered to; and (d) the declassification policies set forth in E.O. 12958, § 3.2 were followed.

within the control of the United States, and the information falls within the categories of information listed in E.O. 12958, § 1.5. Id. ¶ 2, 54. Prior to classification, all procedural requirements of E.O. 12958 were also satisfied, including proper identification and marking of documents. Id., ¶ 51. All information that Mr. Hardy determined to be classified is marked at the "Secret" level, since the unauthorized disclosure of this information could reasonably be expected to cause serious damage to the national security interests of the United States. Id., ¶ 54. [10]

Further, Mr. Hardy not only described that damage caused by disclosure of intelligence activities in general (id. ¶ 55-60), but he also described the specific harm caused by the disclosure of each of the four categories of information withheld in his discussion of the specific deletions made on each document. For example, Mr. Hardy explained that the FBI file numbers assigned to specific intelligence activities, including channelization and dissemination instructions. Id. ¶ 106 (discussion of ACLU-1). Their release would lead to exposure of the particular intelligence activities and methods at issue. Id. Individual file numbers are assigned by FBIHQ

---

[10] As courts have repeatedly noted, when evaluating the propriety of an agency's FOIA response, it must be remembered that the Government has no capacity to distinguish between FOIA requesters. See Bassiouni v. Central Intelligence Agency, 392 F.3d 244, 246 (7th Cir. 2004), cert. denied, 425 U.S. 2945 (2005). Any information given to the plaintiffs here is also available to the next requester, whether he is a researcher or a member of terrorist group. Id.

and field offices and contain a geographical prefix of the originating office and case number, which includes the numerical characterization of the type of investigation followed by a chronological number assigned to a specific investigation/activity. Mr. Hardy explained that:

> The disclosure of an intelligence file number in the aggregate will enable a hostile analyst to attribute any information released from the documents containing such a file number to that particular file. A hostile analyst can identify the specific intelligence activity by supplying further missing pieces.

Id. From this information," a partial mosaic of the activity begins to appear as more information is identified with the file leading to the exposure of actual current activities or methods." Id. Disclosure will allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations. Id. Accordingly, the release of the file numbers can lead to the exposure of the actual intelligence activity or method utilized in FBI investigations, and can reasonably be expected to cause serious damage to national security. Id.

The FBI also properly withheld information containing detailed intelligence activities gathered on specific individuals or organizations of national security

interest. Id. ¶ 106 (discussion of ACLU-4). The withheld information concerning activities is very specific in nature and known to very few individuals. Id. As Mr. Hardy explains, "[d]isclosure of the specific information which describes these intelligence activities are still used by the FBI today to gather intelligence information, and could reasonably be expected to cause serious damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current activities used; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal or determine the criteria used--and priorities assigned to--current intelligence or counterintelligence investigations." Id. Based on this information,

> [h]ostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities. This would severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

Id. This would severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws. Id.

Disclosure of the standard terminology/phraseology used by the FBI in such cases poses a similar risk because "it will reveal the scope and depth of the FBI's investigation of this particular intelligence matter." Id. ¶ 106 (discussing ACLU-28).

- 20 -

As Mr. Hardy explained,

> disclosure will reveal the limitations of the FBI's efforts in a particular
> investigation or the amount of resources or efforts that the FBI is willing
> to expend on this particular matter.  This allows a target to determine
> what information has been learned concerning him and what additional
> steps may be expected.  If the information described by this phraseology
> is shallow, yet the subject was heavily involved in matters under
> investigation, it alerts the subject to the fact that his activities may
> continue without fear or detection.  Conversely, if the information is
> substantial, it will prompt the subject to alter his course of conduct.
> Although these results may not occur in the narrow context of this case,
> the results described are likely to occur if information of this nature is
> routinely released.

Id.

The FBI also properly withheld information which identifies the character of the case for a specific type of intelligence activity directed at a specific target of national security interest.  Id. ¶ 106 (discussing ACLU-32). Disclosure of the characterization could reasonably be expected to cause serious damage to the national security, as it would (a) disclose a particular intelligence or counterintelligence

- 21 -

investigation; (b) disclose the nature, scope or thrust of the investigation and (c) reveal the manner of acquisition of the intelligence or counterintelligence information. Id.

Based on these concerns, courts have found that the types of information at issue here are protected by exemption 1.[11] As the Supreme Court cautioned, "bits and pieces" of data "'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." Sims, 471 U.S. at 178 (quoting Halperin v. CIA, 629 F.2d at 150). As the Fourth Circuit explained in United States v. Marchetti, 466 F.2d 1309, 1318 (4th Cir.), cert. denied, 409 U.S. 1063 (1972), "[t]he significance of one item of information may frequently depend upon knowledge of many other items of information. What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." Accord Am. Friends Serv. Comm. v. U.S. Dept. of Defense, 831 F.2d 441, 445-46 (3d Cir. 1987); Edmonds v. FBI, 272 F. Supp. 2d 35, 47 (D.D.C. 2003); Aftergood v. Central Intelligence Agency, 355 F. Supp. 2d 557, 563 (D.D.C. 2005).

---

[11] See Summers v. U.S.Dept. of Justice, 517 F. Supp. 2d 231, 237 (D.D.C. 2007) (file number); Nat'l Security Archives v. FBI, 759 F. Supp. 872, 877 (D.D.C. 1991) (code names and designator phrases); Jan-Xin Zang v. FBI, 756 F. Supp. 705, 710 (W.D. N.Y. 1999) (code names).

Thus, based on its detailed declaration and the absence of any evidence of bad faith, the defendants have properly withheld information pursuant to exemption1.

B.    The FBI Properly Withheld Information Pursuant to Exemption 2.

Information that is "related solely to the internal personnel rules and practices of an agency" is exempt from disclosure pursuant to exemption 2. 5 U.S.C. § 552(b)(2). Exemption 2 applies to materials "'used for predominantly internal purposes.'" Schiller v. National Labor Relations Bd, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc)). This exemption has been held to protect two types of information:  (1) information the release of which would risk circumvention of agency regulations or statutes, see Los Angeles Times Communications v. Dep't of Army, 442 F. Supp. 2d 880, 900 (C.D. Cal. 2006), and (2) "internal matters of a relatively trivial nature." Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997). The former application of the exemption is known as "high 2," while the latter is known as "low 2." Id.

In this case, the FBI has invoked both "high 2" and "low 2." The FBI invoked "high 2," in conjunction with exemption 7(E) , to protect the identity and location of the FBI and/or joint units which were involved in the underlying investigation. Hardy Decl. ¶ 64. The offices and units are usually found in the administrative heading of

- 23 -

internal FBI documents. This information is used predominately for internal purposes. <u>Id.</u> Disclosure of the location of the units conducting the investigation would reveal the physical areas of interest of the investigation and when taken together with the other locations could establish a pattern or "mosaic" that identification of a single location would not. <u>Id.</u> If the locations are clustered in a particular area, it would allow targets to avoid or circumvent those locations especially if one or more location appeared with frequency or in a pattern. <u>Id.</u> This would disrupt the method of the investigative process and deprive the FBI of valuable information. <u>Id.</u> The identification of the unit presents similar risks. <u>Id.</u> Once identified, the unit's area of expertise becomes known and the target would then be aware of exactly what the law enforcement agency's interest is. <u>Id.</u> For example, knowing that a unit whose focus is on financial crimes is involved quite different information than knowing that the unit involved has a focus on crimes of violence. <u>Id.</u> This knowledge could allow the targets to avoid or circumvent activities in the area of the unit's focus. <u>Id.</u> Based on these concerns courts have upheld the withholding of information regarding the type and location of particular investigations under "high 2." <u>See, e.g., Cappabianca v. Comm'r U.S. Customs Serv.,</u> 847 F. Supp. 1558, 1563 (M.D. Fla. 1994) (exemption 2 protected file numbers "containing information such as the type and location of the case" because "if the

- 24 -

code were cracked [it] could reasonably lead to circumvention of the law").

The FBI also asserted "high 2" to withhold one source symbol number. Hardy Decl. ¶ 63. Source symbol numbers are used to administratively conceal an individual's identity by inserting this number in written documents in lieu of his/her true name. Id. Source symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality. Id. Once this number is assigned to an individual, it will always be synonymous with him. Id. Disclosure of this material would reveal information as to the strength, breadth and scope of the informant program. Id. The released of the source symbol number in the documents ai issue does not shed light upon the FBI's performance of its statutory duties; therefore, there exists no public interest in the release of that number. Courts have found that such source symbols are protected under exemption 2. See, e.g., Jones v. FBI, 41 F.3d 238, 244-45 (6th Cir. 1994); Lesar v. Dep't of Justice, 636 F.2d 472, 485 (D.C. Cir. 1980); Shores v. FBI, 185 F. Supp. 2d 77, 82-83 (D.D.C. 2002).

The FBI has asserted "low 2", in conjunction with exemptions 6 and 7(C), to protect the internal telephone and fascimile numbers of FBI Special Agents. Hardy Decl. ¶¶ 62. These numbers are used predominately for internal purposes. Id. There is no public interest in obtaining such internal information, as it reveals nothing about

- 25 -

how the agency is conducting its statutory duty. Id. On the other hand, disclosure of the telephone and telefax numbers of FBI agents could subject them to harassing telephone calls and faxes and thereby impede the ability of the agents to perform their duties. Id. Indeed, in the current technological environment, it is now possible for persons so inclined to utilize an automated dialing system to repeatedly dial the same number resulting in an inundation of telephone calls, thus rendering the telephone useless to the FBI. Id. Based on these concerns, courts have repeatedly found that telephone numbers of FBI agents are properly withheld under exemption 2. Ray v. FBI, 441 F. Supp. 2d 27, 33 (D.D.C. 2006); Elliott v. FBI, 2007 WL 1302595, *3-4 (D.D.C. 2007); Truesdale v. U.S. Department of Justice, 2005 WL 329404004, *5 (D.D.C. 2005); Germosen v. Cox, 1999 WL 1021559, *12 (S.D.N.Y. 1999).

      C.   The FBI Properly Withheld Information Pursuant to Exemption 6.

The FBI withheld the names and/or identifying information of (1) third parties who either provided information to the FBI or were merely mentioned in the files and (2) employees of the FBI and other law enforcement agencies pursuant to exemption 6. Hardy Decl. ¶¶ 65-78. [12] That exemption protects "personnel or medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion

---

[12] If the information was contained in a record compiled of a law enforcement investigation, it is also protected by exemption 7(C). See infra at __.

- 26 -

of personal privacy," 5 U.S.C. § 552(b)(6). Review of an agency's withholding under this exemption proceeds in two steps: first, the court must decide whether the information is contained in "personnel and medical files and similar files," and second, the court must determine whether the disclosure would constitute a "clearly unwarranted invasion of personal privacy." Washington Post Co. v. U.S. Dept. of Health and Human Services, 690 F.2d 252, 260 (D.C. Cir. 1982).

With respect to the first step, the threshold for application of exemption 6 is "minimal." Id. The Supreme Court has held that, regardless of the title of the file, exemption 6 "[was] intended to cover detailed government records on an individual which can be identified as applying to that individual." United States Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982). This broad construction of "similar files" effectuates Congress' primary purpose in enacting exemption 6 – "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Id. at 599. An agency may, therefore, protect personal information under exemption 6, so long as the information is in a government file and "applies to a particular individual." Id. at 602; see also New York Times Co. v. NASA, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc). This "minimal" threshold "ensures that FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal

- 27 -

information is stored." Washington Post Co., 690 F. 2d at 259.

The information withheld here meets this threshold requirement because it contained in official government files and consists of the names and other identifying information of particular individuals. See Wood v. FBI, 432 F.3d 78, 87 (2d Cir. 2005) (applying exemption 6 to investigative files).

With respect to the second step – determining whether disclosure would constitute "a 'clearly unwarranted invasion of privacy,'" the court must balance the individual's right to privacy against the public's interest in disclosure. See United States Dep't of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed. 2d 11 (1976). In short, the agency must determine whether disclosure of the information threatens a protectable privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991), cert. denied, 502 U.S. 1047 (1992). The "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government." Dep't of Defense v. Fed. Labor Relations Auth., 510 U.S. 487, 495-96 (1994) (internal citation, quotation marks and emphasis omitted). Plaintiffs bear the burden of demonstrating that the release of the withheld documents would serve this

- 28 -

1   interest. See Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 390-92 nn. 8 & 13

2

3   (D.C. Cir. 1987).

4       Here, the FBI weighed individual privacy interests against the public interest,

5   and properly withheld the names and identifying data of third parties and employees

6

7   of the FBI and other law enforcement agencies pursuant to exemption 6. Hardy Decl.

8   ¶¶ 65-78.

9

10      First, with respect to third parties, the Supreme Court has held that "as a

11  categorical matter" information about a third party in connection with a criminal

12

13  investigation "can reasonably be expected to invade that citizens's privacy" and

14  damage his reputation. See United States Department of Justice v. Reporters

15  Committee, 489 U.S. 749, 780 (1989).[13]  Individuals have a "strong interest . . . 'in not

16

17  being associated unwarrantedly with alleged criminal activity.'" Fitzgibbon v. CIA,

18  911 F. 2d 755, 767 (D.C. Cir. 1990) (quoting Dunkelberger v. DOJ, 906 F.2d 779,

19

20  781 (1990)).  Indeed, "an individual whose name surfaces in connection with an

21  investigation may, without more, become the subject of rumor and innuendo." Cong.

22

23      [13] Although Reporters Committee was decided under exemption 7(C), which

24  concerns privacy interests in law enforcement records, the definition of the public

25  interest to be considered is the same as for . See Reed, 927 F.2d at 1251 (noting

    that Reporters Committee is controlling in the exemption 6 context as well, citing

26  National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir.

27  1989).)

28                                      - 29 -

News Syndicate v. Dep't of Justice, 438 F. Supp. 538, 541 (D.D.C. 1997).  Those

whose names may surface in an investigation, even if they are not targets, have a

strong privacy interest: "[p]ersons involved in [FBI] investigations – even if they are

not the subject of the investigation – have a substantial interest in seeing that their

participation remains secret." Quinon v. FBI, 86 F. 3d 1222, 1230 (D.C. Cir. 1996)

(internal citations omitted). See also, e.g., Nation Magazine v. U.S. Customs Serv.,

71 F. 3d 885, 896 (D.C. Cir. 1995).  Moreover, the public interest purpose of the

FOIA is "not fostered by disclosure of information about private citizens that is

accumulated in various governmental files but that reveals little or nothing about an

agency's own conduct." Reporters Committee, 489 U.S. at 773. See also Hardy Decl.

¶¶ 74-76 (discussing individuals' privacy interests).

Second, FBI agents and other law enforcement employees also have a

significant privacy interest because nature of their work tends to subject them to

potentially harassing and hostile inquiries. See Hardy Decl. ¶¶ 67-72.  It is well-

established that government employees have "legitimate interest in keeping private

matters that could conceivably subject them to annoyance or harassment". Hunt v.

FBI, 972 F.2d 286, 288 (9th Cir. 1992). Accord Lesar v. Dep't of Justice, 636 F.2d

at 487); Edmonds v. FBI, 272 F. Supp. 2d 35, 52 (D.D.C. 2003). The proposition that

government officials, by virtue of their positions, forfeit their personal privacy for

- 30 -

FOIA purposes, has been explicitly rejected. See Fund for Constitutional Gov't v. Nat'l Archives and Records Serv., 656 F.2d 856, 864 (D.C. Cir. 1981). The public identification of these employees could subject them to harassment or unofficial questioning in the conduct of their official duties or private lives, and could lead to attempts to compromise their work. Hardy Decl. ¶¶ 67, 69, 71. Disclosure of the names and identifying data of these employees reveals nothing about the FBI's own conduct or the performance of its statutory duties; therefore, the privacy interests of these employees outweigh the public interest in any disclosure of the information. Hardy Decl. ¶ 68,70, 72.

Accordingly, the FBI has properly applied exemption 6 to withholding the documents that contains the names and other identifying information of third parties and employees of the FBI and other law enforcement agencies.

D.    The FBI Properly Withheld Information Pursuant to Exemption 7.

Exemption 7 of FOIA protects from disclosure "records or information compiled for law enforcement purposes" when they meet specified criteria. 5 U.S.C. § 552(b)(7). To meet this threshold requirement, this Circuit has held that "an agency with a clear enforcement mandate such as the FBI need establish only a 'rational nexus' between its law enforcement duties and the document for which exemption 7 is claimed." Binion v. U.S. Dep't of Justice, 695 F.2d 1189, 1194 (9th Cir. 1983)

(quoting Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 748 (9th Cir. 1980). Accord Dunway v. Webster, 519 F. Supp. 1059, 1076 (N.D. Cal. 1981). This nexus is met here because the documents at issue were compiled by the FBI in the course of criminal and national security investigations. Hardy Decl. ¶ 79.

Moreover, as explained below, the information is protected from disclosure by specified criteria for Exemptions 7(C), (D), and (E).

1. Exemption 7(C) The FBI withheld the names of (1) third parties who either provided information to the FBI or were merely mentioned in the files and (2) employees of the FBI and other law enforcement agencies contained in the investigative files under exemption 7(C). Hardy Decl. ¶¶ 82-94. Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the disclosure of law enforcement records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Once, as here, a law enforcement purpose has been established, the court must engage in "a balancing of the individual's privacy interest against the public interest in disclosure." Castaneda v. United States, 757 F.2d 1010, 1012 (9th Cir. 1985). As under exemption 6, courts recognize the considerable stigma inherent in being associated with law enforcement proceedings and accordingly "do[] not require a

- 32 -

balance tilted emphatically in favor of disclosure" when reviewing a claimed exemption 7(C).  Bast v. Dep't of Justice, 665 F.2d 1251, 1254 (D.C. Cir. 1981). Courts have also construed the public interest component narrowly, noting that the public interest "must be assessed in light of FOIA's central purpose," which, as under Exemption 6, "is not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct."  Nation Magazine, 71 F.3d at 894 (quotation marks and citation omitted).

Here, the FBI properly invoked exemption 7(C), typically in conjunction with exemption 6 (discussed supra), to protect the names and other identifying information of private persons and employees of the FBI and other law enforcement agencies in investigative files. Hardy Decl. ¶¶ 82-95. For the reasons discussed supra at 29-31, both private individuals and FBI employees have a significant privacy interest in not having their names revealed.  Id. ¶¶ 84, 86, 88, 90, 92, 94. Moreover, there is no public interest at issue here which outweighs these privacy interests.  Id. ¶¶ 85, 87, 89, 91, 95. In weighing this balance, courts have agreed and upheld the withholding of the names and other identifying information of both private individuals and law enforcement personnel under exemption 7(C).  See, e.g., Jones v. FBI, 41 F.3d at 246-47; Schiffer v. FBI, 78 F. 3d 1405, 1410 (9th Cir. 1996); Hunt v. FBI, 972 F.2d at

288; Dunway v. Webster, 519 F. Supp. at 1076.

Accordingly, the FBI properly withheld the names and other identifying information of third parties and employees of the FBI and other law enforcement agencies pursuant to exemption 7(C).

2. Exemption 7(D) Informants are entitled to the protection of 5 U.S.C. § 552(b)(7)(D), which permits the withholding or redacting of law enforcement records, the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." Unlike (7)(C), Exemption 7(D) requires no balancing of public and private interests. See Dow Jones & Co. v. DOJ, 917 F.2d 571, 575-76 (D.C. Cir. 1990). The exemption applies if the agency establishes that a source has provided information under either an express or implied promise of confidentiality. See U.S Dep't of Justice v. Landano, 508 U.S. at 172; Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995).

In this case, both the identity of the confidential sources and the information provided by the sources are protected by Exemption 7(D). Hardy Decl. ¶¶ 95-103. The sources provided information to the FBI under an express assurance of confidentiality in the course of a criminal/national security investigations. Id. ¶¶ 64,

- 34 -

102.  Hence, exemption 7(D) protects not only the identity of the sources but also the information furnished by the confidential sources. See Jones v. FBI, 41 F.3d at 248.  The confidential source files numbers of permanent symbols sources of the FBI is also protected by exemption 7(D).  Hardy Decl. ¶¶ 99-101.  Similar to source symbol numbers, supra at 25, the confidential source file numbers are assigned in sequential order to confidential informants who report information to the FBI on a regular basis.  Id.  Disclosure of confidential source file numbers along with the information provided by them could reveal their identities.  Id.  The FBI, therefore, properly withheld both the identity of the sources, the confidential source file numbers and the information provided by the sources.

3.  Exemption 7(E)  Records compiled for law enforcement purposes may be withheld under exemption 7(E) if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  The protection afforded by exemption 7(E) is categorical for information related to law enforcement techniques procedures. See Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997); Fisher v. Department of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92

- 35 -

(D.C. Cir. 1992). Even if a law enforcement technique itself has been disclosed, but the public is not generally aware of the manner and circumstances in which the technique is employed, or the specific methods used by the particular agency, exemption 7(E) still applies. See, e.g., Blanton v. FBI, 63 F. Supp. 2d 35, 49-50 (D.D.C. 1999); Coleman v. Federal Bureau of Investigation, 13 F. Supp. 2d 75, 83-84 (D.D.C. 1999).

That is exactly the situation here. The FBI has withheld information under exemption 7(E) as well as under exemption 2, discussed supra at 24, consisting of the identity and location of the FBI and/or joint units which were involved in the underlying investigations. Hardy Decl. ¶ 105. While the various types of FBI's units and their locations are generally known, information as to which units or locations were used to conduct the particular investigations mentioned in the released documents is not known. As explained in the Hardy Decl. ¶ 105, and supra at 23-24, disclosure of the identity and location of the unit or units conducting the investigations (when combined with other available information) would reveal the type and focus of the investigation. This knowledge could allow the targets of the investigation to circumvent further detection by adjusting their behaviors and

1   activities. Id.[14]

2   E. The FBI Has Reasonably Segregated Exempt Portions of the Documents.
3

4       The FOIA requires agencies to release "any reasonably segregable portion of

5   a record . . . after deletion of the portions which are exempt under this subsection."
6

7   5 U.S.C. § 552(b). Consistent with this obligation, the FBI has provided plaintiff

8   with as much non-exempt information as possible without compromising the interests

9   in nondisclosure protected by the FOIA. Hardy Decl. ¶¶ 107. Thus, the FBI's
10

11  segregation of the information at issue is reasonable.

12  IV. THE COURT LACKS JURISDICTION OF PLAINTIFFS' CLAIMS
13

14       REGARDING FAILURE TO COMPLY WITH TIME LIMITS OR GRANT

15       EXPEDITED PROCESSING.

16      In addition to challenging the adequacy of the search and the withholding of
17

18  certain information, plaintiffs also maintain that the FBI (1) failed to comply with the

19  time limits and (2) failed to grant its request for expedited processing. This Court
20

21  lacks jurisdiction over these claims because they are now moot: the FBI has provided

22       [14] This concern is not diminished by the limited number of documents at
23  issue here. As this Court stressed in Coastal Delivery Corp. v. U.S. Customs
24  Service, 272 F. Supp. 2d 958, 965 (C.D. Cal. 2003), the request for information in
    one case "cannot be considered in isolation." Instead, the court "must account for
25  the possibility" of similar requests for the same type of information. Id. When
26  such pieces of information are pieced together, it could reveal a pattern which
27  would allow a person to adjust his behavior and thereby avoid detection.

28                                      - 37 -

a response. When, as here, a requester alleges that an agency has failed to issue a timely response, and the agency later responds and produces the non-exempt records, the courts have dismissed claims regarding the timeliness of the response as moot. For example, in Voinche v. FBI, 999 F.2d 962 (5th Cir. 1993), the plaintiff alleged that the agency had failed to make a timely response to its FOIA request. After the suit was filed, the agency responded and produced non-exempt documents. The court held that the plaintiff's claim was rendered moot by the FBI's subsequent response. Accord Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987); Crooker v. State Department, 628 F.2d 9, 10 (D.C. Cir. 1980).

Moreover, the FOIA provides that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). This Court should therefore dismiss plaintiffs' expedited processing claim under Fed. R. Civ. P. 12(b)(1). See Judicial Watch, Inc. v. U.S. Naval Observatory, 160 F. Supp. 2d 111, 112 (D.D.C. 2001).

## CONCLUSION

For the foregoing reasons, the Court should grant defendants' Motion for Summary Judgment.

- 38 -

Respectfully Submitted,

JEFFREY S. BUCHHOLTZ
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Assistant Branch Director

 s/Marcia K.Sowles             
MARCIA K. SOWLES
DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division
Federal Programs Branch
P.O Box 883
Washington, D.C.  20044
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

Attorneys for Defendants

- 39 -