1  1JEFFREY S. BUCHHOLTZ
   Acting Assistant Attorney General
2  ELIZABETH J. SHAPRIO
   MARCIA K. SOWLES
3  D.C. Bar No. 369455
   Department of Justice
4  Civil Division
   Federal Programs Branch
5  P.O. Box 883
   Washington, D.C.  20530
6  Telephone: (202) 514-4960
   Facsimile: (202) 514-8470
7

8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  ISLAMIC SHURA COUNCIL OF                )
    SOUTHERN CALIFORNIA;                     )
    COUNCIL ON AMERICAN                      )
12  ISLAMIC RELATIONS  -                     )   No. SACV07-1088 CJC
    CALIFORNIA; ISLAMIC CENTER               )   (ANx)
13  OF SAN GABRIEL VALLEY;                    )
    ISLAMIC CENTER OF                        )   DEFENDANTS' STATEMENT
14  HAWTHORNE; WEST COAST                    )   OF UNCONTROVERTED
    ISLAMIC CENTER; HUMAN                    )   FACTS AND CONCLUSIONS
15  ASSISTANCE AND                          )   OF LAW
    DEVELOPMENT                              )
16  INTERNATIONAL, INC.;                     )   DATE: September 8, 2008
    MUZAMMIL SIDDIQI; SHAKEEL                )   TIME: 1:30 P.M.
17  SYED; HUSSAM AYLOUSH;                    )   JUDGE: Hon. Cormac J. Carney
    MOHAMMED ABDUL ALEEM;                    )
18  and RAFE HUSAIN,                         )
                                            )
19          Plaintiffs,                      )
                                            )
20      v.                                  )
                                            )
21  FEDERAL BUREAU OF                        )
    INVESTIGATION; and UNITED               )
22  STATES DEPARTMENT OF JUSTICE,            )
                                            )
23  _____Defendants._____        )

24      Pursuant to Local Rule 56-1, defendants hereby submit the following

25  statement of uncontroverted facts and conclusions of law:

26              **UNCONTROVERTED FACTS**

27      1.    By a letter dated May 15, 2006, to the FBIHQ and Los Angeles Field

28  office, plaintiffs submitted a joint request under FOIA for records relating to

1  themselves.  See Exhibit A to Declaration of David Hardy ("Hardy Decl.").

2      2.    On May 25, 2006, the FBI acknowledged receipt of the FOIA

3  requests by the following six organizations.  See Exhibit B to Hardy Decl.

4      3.    On March 1, 2007, the FBI acknowledged receipt of the FOIA

5  requests by the five individual plaintiffs.  See Exhibit C to Hardy Decl.

6      4.    On April 27, 2007, the FBI advised plaintiffs' counsel of the results

7  of its searches for the following nine plaintiffs:  Islamic Shura Council of

8  Southern California, Islamic Center of San Gabriel Valley, Islamic Center of

9  Hawthorne, West Coast Islamic Center, HADI, Dr. Siddiqi, Shakeel Syed,

10  Mohammed Abdul Aleem, and Rafe Husain.  See Exhibit D to Hardy Decl.

11      5.    The FBI explained that "to promptly respond, the [FBI] concentrated

12  on identifying main files in the Central Records System at the FBIHQ and the Los

13  Angeles Field Office" and that there were no records responsive to plaintiffs'

14  request under the FOIA.  Id.

15      6.    Shortly thereafter the FBI advised plaintiffs's counsel that it was still

16  processing the request for documents relating to the other two plaintiffs – CAIR-

17  Southern California and Ayloush Hussam.  See Exhibits E and F to Hardy Decl.

18      7.    On June 7, 2007, plaintiffs' counsel sent a joint administrative appeal

19  to OIP raising two issues: (1) plaintiffs alleged that FBI's search with respect to

20  the nine plainitffs, who received "no responsive documents" letters received by

21  nine plaintiffs, was inadequate, and (2) plaintiffs alleged that FBI had failed to

22  respond to requests by CAIR-Southern California and Hussam Ayloush.  See

23  Exhibit G to Hardy Decl.

24      8.    On June 13, 2007, the same day that OIP received the joint

25  administrative appeal, the FBI sent a letter to plaintiffs' counsel enclosing a 3 page

26  document responsive to the request filed by Hussam Ayloush.  See  Exhibit H to

27

28                                          2

1  Hardy Decl.  The letter explained that portions of the document were redacted to
2  protect information from disclosure pursuant to (b)(2), (b)(6) and (b)(7)(C).

3        9.    On following day, June 14, 2007, the FBI sent a letter to plaintiffs'
4  counsel enclosing a one page memorandum responsive to the request filed by
5  CAIR-Southern California.  See Exhibit I to Hardy Decl.  The letter explained that
6  portions of the document were redacted to protect information from disclosure
7  pursuant to (b)(6) and (B)(7)(C).

8        10.   In each of these letters, the FBI explained that plaintiffs had sixty
9  days to appeal the decision to the OIP.  Exhibits H and I to Hardy Decl.

10       11.   Neither Mr. Ayloush or CAIR-Southern California filed an appeal
11  regarding the responses received to their requests.  Hardy Decl. ¶ 44.

12       12.   In the meantime, OIP reviewed the prior joint appeal by the other nine
13  plaintiffs regarding the adequacy of the search for documents relating to them and
14  affirmed the FBI's no records response to them. See Exhibit K .[1]

15       13.   In order to satisfy plaintiffs' concern regarding the adequacy of the
16  search, the FBI conducted a further search of both its Central Record System
17  ("CRS") and Electronic Surveillance ("ELSUR") indices for any records
18  referencing plaintiffs at FBIHQ or its Los Angeles Field Office.  Hardy Decl. ¶¶
19  31-41, 45.

20       14.   The CRS consists of administrative, applicant, criminal, personnel
21  and other files.  CRS is organized into a numerical sequence of files, which are

22

23

_____

24  [1] The validity of the exemptions asserted for the redactions made on the
    documents relating to CAIR-Southern California and Mr. Ayloush was not raised
25  in the joint appeal because the FBI had not yet responded to their FOIA requests
    when the joint appeal was filed.  Although this issue was not properly before it,
26  the OIP reviewed those redactions and found that the FBI had properly withheld
    that information.  See Exhibits L and M.
27

28                                         3

1 | broken down according to subject matter. Id. ¶ 20.

2 |     15.    The subject matter of a file may correspond to an individual,
3 | organization, company, publication, activity or foreign intelligence matter. Id.

4 |     16.    The mechanism that the FBI used to search the CRS is the Automated
5 | Case Support system ("ACS"). Id.

6 |     17.    This search included a search not only for "main" files concerning
7 | plaintiffs (i.e., files which are mainly about an individual or group), but also for
8 | "cross-references" to plaintiffs (i.e., files which merely mention an individual or
9 | organization). Id. ¶¶ 31-41, 45.

10 |     18.    The ELSUR indices are used to maintain information on a subject
11 | whose electronic and/or voice communications have been intercepted as a result of
12 | a consensual electronic surveillance or a court-ordered (and/or sought) electronic
13 | surveillance conducted by the FBI. Id. ¶¶ 26-30.

14 |     19.    In addition to these two automated searches, the FBI circulated an
15 | electronic communication to those FBIHQ divisions and offices most likely to
16 | possess potential responsive records requesting that all personnel to conduct a
17 | thorough search of any documents in the their possession. Id.  ¶¶ 42-43.

18 |     20.    In response to this communication, the individuals in these offices
19 | have conducted searches of their files for potentially responsive documents.
20 | Id. ¶ 43

21 |     21.    The FBI has identified 124  pages of responsive documents. Id. ¶¶
22 | 13-14, 19,

23 |     22.    The FBI withheld portions of documents pursuant to 5 U.S.C §
24 | 552(b)(1), (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Id. ¶ 19.

25 |     23.    The FBI submitted a declaration of David Hardy M. Hardy, Section
26 | Chief of the Record/Information Dissemination Section, Records Management

27 |

28 |                                          4

1  Division, at the FBI, which describes the documents the withheld and the rationale
2  for the exemptions claimed.  Id. ¶¶ 49-106.

3      24.    On each of the redacted documents, the FBI also noted the exemption
4  claimed next to the corresponding redaction.  See Exhibit O to Hardy Decl.

5      25.    Mr. Hardy has been designated by the Attorney General of the United
6  States as an original classification and declassification authority pursuant to
7  Executive Order 12958.  Hardy Decl. ¶ 2.

8      26.    The FBI invoked exemption 1 to withhold four categories of classified
9  Information: (1) file numbers assigned to a specific intelligence activity, (2)
10  information containing detailed intelligence activities gathered on specific
11  individuals or organizations, (3) standard terminology/phraselogy used in most
12  recent FBI investigations, and (4) the character of the case which identifies the
13  specific type of intelligence activities.  Id. ¶ 58.

14      27.    The FBI invoked exemption 2 to withhold (1) information identifying
15  the location and unit conducting the investigations mentioned in the documents,
16  (2) source symbols for confidential sources, and (3) the internal telephone numbers
17  and facsmiles of FBI agents and employees.  Id. ¶¶ 62-64.

18      28.    The FBI invoked exemption 6 to withhold the names and other
19  identifying information of individuals and employees of the FBI or other law
20  enforcement agencies mentioned in the documents.  Id. ¶¶ 65-78.

21      29.    The FBI invoked exemption 7(C) to withhold the names and other
22  identifying information of individuals and employees of the FBI or other law
23  enforcement agencies mentioned in documents compiled for law enforcement
24  purposes.  Id. ¶¶ 82-94.

25      30.    The FBI invoked exemption 7(D) to withhold the identity of
26  confidential sources and the information provided by confidential sources in the

27

28                                        5

1  course of criminal/national security investigations. ¶¶ 96-104.

2      31. The FBI invoked 7(E) to withhold information identifying the location

3  and unit conducting the investigations mentioned in the documents complied for

4  investigative purposes. Id. ¶ 105.

5      32.   Any of the foregoing statements deemed to be a conclusion of law are

6  hereby incorporated as conclusions of law.

7  **CONCLUSIONS OF LAW**

8      1.   **Failure to Exhaust Administrative Remedies**  In FOIA cases, a

9  plaintiff must fully and timely exhaust his administrative remedies under 5 U.S.C. §

10  552(a)(6)(A) prior to seeking judicial review.  See Oglesby v. U.S. Department of

11  Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990).

12      2.   Exhaustion of administrative remedies includes exhaustion of the

13  administrative appeal process set forth in 5 U.S.C. § 552(a)(6)(A)(ii).

14      3.   If a plaintiff fails to exhaust administrative remedies, the court lacks

15  subject matter jurisdiction to adjudicate the claim.  In re Steele, 799 F.2d 461, 465-

16  66 (9th Cir. 1986).

17      4.   In this case, two of the plaintiffs – CAIR-California and Hussam

18  Ayloush – failed to exhaust their administrative remedies.

19      5.   **Adequacy of the Search**  To obtain summary judgment on the issue

20  of the adequacy of the search, an agency must conduct "a search reasonably

21  calculated to uncover all relevant documents." Citizens Commission on Human

22  Rights v. Federal Drug Administration, 45 F.3d 1325, 1328 (9th Cir. 1995)

23  (quoting Zemansky v. Environmental Protection Agency, 767 F.2d 569, 571 (9th

24  Cir. 1985).

25      6.   "[A]ffidavits describing agency search procedures are sufficient for

26  purpose of summary judgment . . . if they are relatively detailed in their description

27

28  6

1   of the files searched and the search procedures, and if they are nonconclusory and
2   not impugned by evidence of bad faith." <u>Citizens Comm'n</u>, 45 F.3d at 1328
3   (quoting <u>Zemansky</u>, 767 F.2d at 573).

4       7.    The declaration submitted by David M. Hardy, Section Chief of the
5   Records/Information Dissemination Section, Records Management Division of the
6   FBI, demonstrates that the FBI conducted a search reasonably calculated to
7   undercover documents responsive to plaintiffs' request. <u>See</u> Hardy Decl. ¶¶ 31-45.

8       8.    **<u>Exemptions</u>**  The Freedom of Information Act, 5 U.S.C. § 552,
9   represents a balance struck by Congress "'between the right of the public to know
10  and the need of the Government to keep information in confidence.'" <u>John Doe</u>
11  <u>Agency v. John Doe Corp.</u>, 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed. 2d 462
12  (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)).

13      9.    Thus, while the FOIA requires agency disclosure under certain
14  circumstances, the statute recognizes "that public disclosure is not always in the
15  public interest." <u>Baldrige v. Shapiro</u>, 455 U.S. 345, 352, 102 S.Ct. 1103, 71 L.Ed.
16  2d 199 (1982).

17      10.   Consequently, the FOIA "provides that agency records may be
18  withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C.
19  § 552(b)." <u>Id.</u>

20      11.   A court may award summary judgment to an agency with regard to the
21  exemptions on the basis of information provided in affidavits or declarations that
22  describe "the justifications for nondisclosure with reasonably specific detail,
23  demonstrate that the information withheld logically falls within the claimed
24  exemptions, and show that the justifications are not controverted by contrary
25  evidence in the record or by evidence of [agency] bad faith." <u>Hunt v. Central</u>
26  <u>Intelligence Agency</u>, 981 F.2d 1116, 1119 (9th Cir. 1992).

27

28                                   7

12.   "If the affidavits contain reasonably detailed description of the documents and allege facts sufficient to establish an exemption, the district court need look no further." Citizens Comm., 45 F.3d at 1329.

13.   **Exemption 1** Exemption 1 protects records that are: "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to Executive Order." See 5 U.S.C. § 552 (b)(1).

14.   Because national security is "a uniquely executive purview." Center for Nat'l Security Studies v. U.S. Dept. of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003), cert. denied, 540 U.S. 1104 (2004), courts have specifically recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security. CIA v. Sims, 471 U.S. 159, 179-80 (1985); Berman v. Central Intelligence Agency, 501 F.3d 1136, 1140 (9th Cir. 2007).

15. Accordingly, substantial weight is accorded to an agency's determination that potential harm merits classification of particular information. See, e.g., Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999); Taylor v. Dep't of the Army, 684 F.2d 99, 109 (D.C. Cir. 1982).

16.   The Executive Order applicable to the documents at issue in this case is Executive Order ("E.O."), 12958, "Classified National Security Information," as amended by E.O. 13292. See 68 Fed. Reg. 15315 (March 25, 2003).

17.   Under E.O. 12958, as amended,  information may be classified if:

(1) an original classification authority is classifying the information;

(2) the information is owned by, produced by or for, or is under the control of the United States Government;

(3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

8

1      (4) the original classification authority determines that the

2      unauthorized disclosure of the information reasonably could be

3      expected to result in damage to the national security, which includes

4      defense against transnational terrorism, and the original classification

5      authority is able to identify or describe the damage.

6   E.O. 12958, § 1.1 (a).

7         18.   The agency must also follow the proper procedures in classifying the

8   information.  See  E.O. 12958, § § 1.6(d), 1.7(a)(1)-(5), 1.8 and 3.2.

9         19.   In this case, the FBI properly invoked exemption 1 to withhold four

10  categories of classified Information: (1) file numbers that are assigned to a specific

11  intelligence activity, (2) detailed intelligence activities gathered on specific

12  individuals or organizations, (3) standard terminology/phraseology used by the FBI

13  in recent cases, and (4) the character of the case which identifies the specific type

14  of intelligence activity directed at a specific target.

15        20.   Based on the declaration of David Hardy, this information is properly

16  classified as SECRET under E.O. 12958 because disclosure of this information

17  could reasonably be expected to cause serious damage to the national security

18  interests of the United States.  Hard Decl. ¶¶ 50-60.

19        21.   Courts have found that the types of information at issue here are

20  protected by exemption 1.  See Summers v. U.S.Dept. of Justice, 517 F. Supp. 2d

21  231, 237 (D.D.C. 2007) (file numbers); Nat'l Security Archives v. FBI, 759 F.

22  Supp. 872, 877 (D.D.C. 1991) (code names and designator phrases); Jan-Xin Zang

23  v. FBI, 756 F. Supp. 705, 710 (W.D. N.Y. 1999) (code names that correspond to

24  intelligence sources).

25        22.   As the Supreme Court cautioned, "bits and pieces" of data "'may aid in

26  piecing together bits of other information even when the individual piece is not of

27

28                                            9

1   obvious importance in itself." Sims, 471 U.S. at 178 (quoting Halperin v. CIA, 629

2   F.2d at 150).  Accord United States v. Marchetti, 466 F.2d 1309, 1318 (4th Cir.),

3   cert. denied, 409 U.S. 1063 (1972); Edmonds v. FBI, 272 F. Supp. 2d 35, 47

4   (D.D.C. 2003); Aftergood v. Central Intelligence Agency, 355 F. Supp. 2d 557, 563

5   (D.D.C. 2005).

6        23.   **Exemption 2** Information that is "related solely to the internal

7   personnel rules and practices of an agency" is exempt from disclosure pursuant to

8   exemption 2.  5 U.S.C. § 552(b)(2).

9        24.   Exemption 2 applies to materials "'used for predominantly internal

10  purposes.'" Schiller v. National Labor Relations Bd, 964 F.2d 1205, 1207 (D.C.

11  Cir. 1992) (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d

12  1051, 1073 (D.C. Cir. 1981) (en banc)).

13       25.   This exemption has been held to protect two types of information:  (1)

14  information the release of which would risk circumvention of agency regulations or

15  statutes, see Crooker, 670 F.2d at 1074, and (2) "internal matters of a relatively

16  trivial nature." Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997).  The

17  former application of the exemption is known as "high 2," while the latter is known

18  as "low 2." Id.

19       26.   In this case, the FBI properly invoked "high 2," in conjunction with

20  exemption 7(E) , to protect the identity and location of the FBI and/or joint units

21  which were involved in the underlying investigation.  Hardy Decl. ¶ 64.

22       27. This information is used predominately for internal purposes and could

23  when pieced together with other available information reveal the focus of the

24  investigation and thereby allow targets to avoid or circumvent activities in the area

25  of the unit's focus.  See, e.g., Cappabianca v. Comm'r U.S. Customs Serv., 847 F.

26  Supp. 1558, 1563 (M.D. Fla. 1994) (exemption 2 protected file numbers

27

28                                          10

1  "containing information such as the type and location of the case" because "if the
2  code were cracked [it] could reasonably lead to circumvention of the law") .

3      28.    The FBI also properly asserted "high 2" to withhold source symbol
4  numbers, which are used internally by the FBI.to conceal a source's identity.  Hardy
5  Decl. ¶ 62.    See Davin v. U.S. Dept. of Justice, 60 F.3d 1043, 1065 (3d Cir. 1995);
6  Jones v. FBI, 41 F.3d 238, 244-45 (6th Cir. 1994); Lesar v. Dep't of Justice, 636
7  F.2d 472, 485 (D.C. Cir. 1980).

8      29.    Disclosure of such information could reveal information as to the
9  strength, breadth and scope of the informant program.  Id.

10      30.    The released of the source symbol numbers in the documents at issue
11  does not shed light upon the FBI's  performance of its statutory duties; therefore,
12  there exists no public interest in the release of that number.

13      31.    The FBI has asserted "low 2", in conjunction with exemptions 6 and
14  7(C), to protect the internal telephone and facsmile numbers  of FBI Special Agents
15  and other employees. Hardy Decl. ¶ 63.    See Ray v. FBI, 441 F. Supp. 2d 27, 33
16  (D.D.C. 2006); Elliott v. FBI, 2007 WL 1302595, *3-4 (D.D.C. 2007); Truesdale v.
17  U.S. Department  of Justice, 2005 WL 329404004, *5 (D.D.C. 2005);  Germosen v.
18  Cox, 1999 WL 1021559, *12 (S.D.N.Y. 1999).

19      32.    These numbers are used predominately for internal purposes.  Hardy
20  Decl. ¶ 62.

21      33.    There is no public interest in obtaining such internal information, as it
22  reveals nothing about how the agency is conducting its statutory duty.  Id.

23      34.    On the other hand, disclosure of the telephone and telefax numbers of
24  FBI agents could subject them to harassing telephone calls and telefaxes and
25  thereby impede the ability of the agents to perform their duties.  Id.

26      35.    **Exemption 6** This exemption protects "personnel or medical files and
27
28      11

1  similar files the disclosure of which would constitute a clearly unwarranted
2  invasion of personal privacy," 5 U.S.C. § 552(b)(6).

3      36.    Review of an agency's withholding under this exemption proceeds in
4  two steps: first, the court must decide whether the information is contained in
5  "personnel and medical files and similar files," and second, the court must
6  determine whether the disclosure would constitute a "clearly unwarranted invasion
7  of personal privacy." Washington Post Co. v. U.S. Dept. of Health and Human
8  Services, 690 F.2d 252, 260 (D.C. Cir. 1982).

9      37.    With respect to the first step, the threshold for application of
10  exemption 6 is "minimal." Id. The Supreme Court has held that, regardless of the
11  title of the file, exemption 6 "[was] intended to cover detailed government records
12  on an individual which can be identified as applying to that individual." United
13  States Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).

14      38.    The FBI properly withheld the names and/or identifying information
15  of (1) third parties who provided information or are mentioned in the files and (2)
16  employees of the FBI and other law enforcement agencies  pursuant to exemption
17  6. Hardy Decl. ¶¶ 65-78.

18      39.    The information withheld here meets the threshold requirement
19  because it contained in official government files and consists of the names and
20  other identifying information of particular individuals. See Wood v. FBI, 432 F.3d
21  at 87 (applying exemption 6 to investigative files).

22      40.    With respect to the second step – determining whether disclosure
23  would constitute "a 'clearly unwarranted invasion of privacy,'" the court must
24  balance the individual's right to privacy against the public's interest in disclosure.
25  See United States Dep't of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592,
26  48 L.Ed. 2d 11 (1976).  In short, the agency must determine whether disclosure of
27
28                                    12

1  the information threatens a privacy interest; if so, the agency must weigh that

2  privacy interest against the public interest in disclosure, if any.  See Reed v. NLRB,

3  927 F.2d 1249, 1251 (D.C. Cir. 1991), cert. denied, 502 U.S. 1047 (1992).

4      41.  The "only relevant public interest in disclosure to be weighed in this

5  balance is the extent to which disclosure would serve the core purpose of FOIA,

6  which is contribut[ing] significantly to public understanding of the operations or

7  activities of the government."  Dep't of Defense v. Fed. Labor Relations Auth.,

8  510 U.S. 487, 495-96 (1994) (internal citation, quotation marks and emphasis

9  omitted).

10     42.  With respect to third parties, the Supreme Court has held that "as a

11 categorical matter" information about a third party in connection with a criminal

12 investigation "can reasonably be expected to invade that citizens's privacy" and

13 damage his reputation.  See United States Department of Justice v. Reporters

14 Committee, 489 U.S. 749, 780 (1989).[2]

15     43.  FBI agents and other law enforcement employees also have a

16 significant privacy interest because nature of their work tends to subject them to

17 potentially harassing and hostile inquiries.  See  Hunt v. FBI, 972 F.2d 286, 288

18 (9th Cir. 1992); Lesar v. Dep't of Justice, 636 F.2d 472 , 487 (D.C. Cir. 1980);

19 Edmonds v. FBI, 272 F. Supp. 2d 35, 52 (D.D.C. 2003).

20     44.  Disclosure of the names and identifying data of private individuals and

21 law enforcement employees reveals nothing about the FBI's own conduct or the

22

23  _____

        [2] Although Reporters Committee was decided under exemption 7(C), which
24  concerns privacy interests in law enforcement records, the definition of the public
25  interest to be considered is the same as for .  See Reed, 927 F.2d at 1251 (noting
    that Reporters Committee is controlling in the exemption 6 context as well, citing
26  National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir.
27  1989).)

28                                         13

1  performance of its statutory duties; therefore, the privacy interests of these
2  employees outweigh the public interest in any disclosure of the information.

3      45.  **Exemption 7** Exemption 7 of FOIA protects from disclosure "records or
4  information compiled for law enforcement purposes" when they meet specified
5  criteria.  5 U.S.C. § 552(b)(7).

6      46.     To meet this threshold requirement, this Circuit has held that "an
7  agency with a clear enforcement mandate such as the FBI need establish only a
8  'rational nexus' between its law enforcement duties and the document for which
9  exemption 7 is claimed." Binion v. U.S. Dep't of Justice, 695 F.2d 1189, 1194 (9th
10 Cir. 1983) (quoting Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738,
11 748 (9th Cir. 1980).  Accord Dunway v. Webster, 519 F. Supp. 1059, 1076 (N.D.
12 Cal. 1981).

13     47.     This nexus is met here because the documents at issue were compiled
14 by the in the course of criminal and national security investigations.

15     48.     **Exemptions 7(C)**  Exemption 7(C) protects from disclosure "records
16 or information compiled for law enforcement purposes" to the extent that the
17 disclosure of law enforcement records or information "could reasonably be
18 expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C.
19 § 552(b)(7)(C).

20     49.     Once, as here, a law enforcement purpose has been established, the
21 court must engage in "a balancing of the individual's privacy interest against the
22 public interest in disclosure. Castaneda v. United States, 757 F.2d 1010, 1012 (9th
23 Cir. 1985).  As under exemption 6, courts recognize the considerable stigma
24 inherent in being associated with law enforcement proceedings and accordingly
25 "do[] not require a balance tilted emphatically in favor of disclosure" when
26 reviewing a claimed exemption 7(C). Bast v. Dep't of Justice, 665 F.2d 1251,

28                              14

1254 (D.C. Cir. 1981). Courts have also construed the public interest component
narrowly, noting that the public interest "must be assessed in light of FOIA's
central purpose," which, as under Exemption 6, "is not fostered by disclosure of
information about private citizens that is accumulated in various government files
but that reveals little or nothing about an agency's own conduct." <u>Nation</u>
<u>Magazine</u>, 71 F.3d at 894 (quotation marks and citation omitted).

50.     The FBI properly invoked exemption 7(C), typically in conjunction
with exemption 6 (discussed <u>supra</u>), to protect the names and other identifying
information of private persons and employees of the FBI and other law
enforcement agencies in investigative files.

51.     Both private individuals and FBI employees have a significant privacy
interest in not having their names revealed. Moreover, there is no public interest at
issue here which outweighs these privacy interests. <u>See</u> <u>Schiffer v. FBI</u>, 78 F. 3d
1405, 1410 (9th Cir. 1996); <u>Hunt v. FBI</u>, 972 F.2d at 288; <u>Dunway v. Webster</u>, 519
F. Supp. at 1076.

52.     **Exemption 7(D)**   Exemption 7(D) permits the withholding or
redacting of law enforcement records, the release of which "could reasonably be
expected to disclose the identity of a confidential source . . . and, in the case of a
record or information compiled by a criminal law enforcement authority in the
course of a criminal investigation . . . information furnished by a confidential
source." 5 U.S.C. § 552(b)(7)(D).

53.     Unlike (7)(C), Exemption 7(D) requires no balancing of public and
private interests. <u>See</u> <u>Dow Jones & Co. v. DOJ</u>, 917 F.2d 571, 575-76 (D.C. Cir.
1990). The exemption applies if the agency establishes that a source has provided
information under either an express or implied promise of confidentiality. <u>See</u> <u>DOJ</u>
<u>v. Landano</u>, 508 U.S. 165, 172 (1993); <u>Williams v. FBI</u>, 69 F.3d 1155, 1159 (D.C.

1 Cir. 1995).

2    54.    The FBI properly invoked exemption 7(D) to protect both the identity
3 of the confidential sources and the information provided by the sources are
4 protected by Exemption 7(D) because the sources provided information to the FBI
5 under an express assurance of confidentiality in the course of a criminal/national
6 security investigations.

7    55.    The confidential source files numbers of permanent symbols sources
8 of the FBI is also protected by exemption 7(D) because disclosure of confidential
9 source file numbers along with the information provided by them could reveal their
10 identities.  Id.

11    56.    **Exemption 7(E)**  Records compiled for law enforcement purposes
12 may be withheld under exemption 7(E) if release of the information "would
13 disclose techniques and procedures for law enforcement investigations or
14 prosecutions, or would disclose guidelines for law enforcement investigations or
15 prosecutions if such disclosure could reasonably be expected to risk circumvention
16 of the law."  5 U.S.C. § 552(b)(7)(E).

17    57.    The protection afforded by exemption 7(E) is categorical for
18 information related to law enforcement techniques procedures.  See Smith v.
19 Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997);
20 Fisher v. Department of Justice, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968
21 F.2d 92 (D.C. Cir. 1992).  Even if a law enforcement technique itself has been
22 disclosed, but the public is not generally aware of the manner and circumstances in
23 which the technique is employed, or the specific methods used by the particular
24 agency, exemption 7(E) still applies.  See, e.g., Blanton, 63 F. Supp. 2d at 49-50;
25 Coleman v. Federal Bureau of Investigation, 13 F. Supp. 2d 75, 83-84 (D.D.C.
26 1999).

28    16

58.     The FBI has properly withheld information under exemption 7(E) as
well as under exemption 2, discussed supra, consisting of the identity and location
of the FBI and/or joint units which were involved in the underlying investigations.
As explained in the Hardy Decl. ¶ 105,  disclosure of the identity and location of
the unit or units conducting the investigations (when combined with other available
information) would reveal the type and focus of the investigation agency.  This
knowledge could allow the targets of the investigation to circumvent further
detection by adjusting their behaviors and activities.  Id.

59.     **Segregation of Exempt Portions of the Responsive Documents**
The FOIA requires agencies to release "any reasonably segregable portion of a
record . . . after deletion of the portions which are exempt under this subsection."
5 U.S.C. § 552(b).  Consistent with this obligation, the FBI has provided plaintiff
with as much non-exempt information as possible without compromising the
interests in nondisclosure protected by the FOIA. Thus, the FBI's segregation of
the information at issue is reasonable.

60.     **Claims Regarding Timeliness and Request for Expedited
Processing**   This Court lacks jurisdiction over plaintiffs' claims that the FBI (1)
failed to comply with the time limits and (2) failed to grant its request for expedited
processing.

61.     When, as here, a requester alleges that an agency has failed to issue a
timely response, and the agency later responds and produces the non-exempt
records, the courts have dismissed claims regarding the timeliness of the response
as moot.  Voinche v. FBI, 999 F.2d 962 (5th Cir. 1993); Tijerina v. Walters, 821
F.2d 789, 799 (D.C. Cir. 1987);  Crooker v. State Department, 628 F.2d 9, 10 (D.C.
Cir. 1980).

62.     Moreover, the FOIA provides that "[a] district court of the United

17

1  States shall not have jurisdiction to review an agency denial of expedited

2  processing of a request for records after the agency has provided a complete

3  response to the request." 5 U.S.C. § 552(a)(6)(E)(iv).  This Court therefore lacks

4  jurisdiction of plaintiffs' expedited processing claim under Fed. R. Civ. P.

5  12(b)(1).  See Judicial Watch, Inc. v. U.S. Naval Observatory, 160 F. Supp. 2d 111,

6  112 (D.D.C. 2001).

7                                       Respectfully Submitted,

8                                       JEFFREY S. BUCHHOLTZ
                                        Acting Assistant Attorney General
9
                                        ELIZABETH J. SHAPIRO
10                                      Assistant Branch Director

11                                       s/Marcia K. Sowles
                                        MARCIA K. SOWLES
12                                      DC Bar No. 369455
                                        Senior Counsel
13                                      United States Department of Justice
                                        Civil Division
14                                      Federal Programs Branch
                                        P. O. Box 883
15                                      Washington, D.C.  20044
                                        Tel.: (202) 514- 4960
16                                      Fax: (202) 616- 8470
                                        E-mail:  marcia.sowles@usdoj.gov
17
                                        Attorneys for Defendants
18

19

20

21

22

23

24

25

26

27

28                               18