JENNIE PASQUARELLA*
MARK ROSENBAUM, SBN 59940
ACLU Foundation of Southern California
1313 West Eighth St.
Los Angeles, CA  90017
Telephone:  (213) 977-9236
Facsimile:  (213) 977-5297
jpasquarella@aclu-sc.org

TASNEEM DOHADWALA, SBN 218067
300 South Grand Ave., Suite 3400
Los Angeles, CA  90071-3144
Telephone:  (213) 687-5627
Facsimile:  (213) 621-5627
tasneem.dohadwala@probonolaw.com


Attorneys for Plaintiffs

*_Pro Hac Vice_ Application Pending

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA et al., | Case No: SA CV07-01088-CJC (ANx) |
| Plaintiffs, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CROSS-MOTION |
| v. | FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' |
| FEDERAL BUREAU OF INVESTIGATION; and UNITED STATES DEPARTMENT OF JUSTICE | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | DATE:  April 20, 2009 TIME:  1:30 P.M. JUDGE:  Hon. Cormac J. Carney |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ....................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT .............................................................................................................. 9

I.    FOIA Does Not Permit "Outside The Scope" Redactions of Responsive
      Material. .............................................................................................................. 9

      A.    The Information the FBI Withholds as "Outside the Scope"
           is Undeniably Germane to Plaintiffs' FOIA Request. .................. 9

      B.    The FBI's Extensive "Outside the Scope" Redactions are
           Impermissible under FOIA's Plain Language and Purpose
           of Broad Disclosure .................................................................... 10

      C.    Plaintiffs are Entitled to Disclosure of the Information
           Withheld as "Outside the Scope" at Summary Judgment, or,
           Alternatively, to *in Camera* Review. ......................................... 17

II.   Plaintiffs Hussam Ayloush And CAIR-California Properly Exhausted
      Administrative Remedies. ................................................................................. 19

      A.    The FBI Should be Required to Search its Cross-Reference
           and ELSUR Indices on Behalf of CAIR-California and Mr.
           Ayloush. ...................................................................................... 21

      B.    Even if this Court Finds that CAIR-California and Mr.
           Ayloush Failed to Exhaust their Administrative Remedies,
           it Should Exercise Jurisdiction on Prudential Grounds. ............. 23

CONCLUSION ......................................................................................................... 25

# **TABLE OF AUTHORITIES**

<u>Page(s)</u>

## **CASES**

*Allen v. CIA,*
    636 F.2d 1287 (D.C. Cir. 1980) ........................................................... 18

*Campbell v. U.S. Department of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ............................................................... 22

*Campbell v. U.S. Department of Justice,*
    193 F. Supp. 2d 29 (D.D.C. 2001) ....................................................... 22

*Church of Scientology of Calif. v. Department of Army,*
    611 F.2d 738 (9th Cir. 1980) ..................................................... 11, 18 n.9

*Citizens Commission on Human Rights v. Food and Drug Administration,*
    45 F.3d 1325 (9th Cir. 1995) ............................................................... 21

*Coastal States Gas Corp. v. Department of Energy,*
    617 F.2d 854 (D.C. Cir. 1980) ............................................................. 17

*Davis v. Astrue,*
    250 F.R.D. 476 (N.D. Cal 2008) .......................................................... 24

*Department of Air Force v. Rose,*
    425 U.S. 352 (1976) ...................................................................... 10, 11

*Fiduccia v. U.S. Department of Justice,*
    185 F.3d 1035 (9th Cir. 1999) ............................................................. 17

*Founding Church of Scientology of Washington D.C v. Smith,*
    721 F.2d 828 (D.C. Cir. 1983) ............................................................. 18

*Halpern v. F.B.I.,*
    181 F.3d 279 (2d Cir 1999) ........................................................... 22, 23

*Hayden v. National Sec. Agency,*
    608 F.2d 1381 (D.C. Cir. 1979) ........................................................... 17

*Hidalgo v. F.B.I.,*
    344 F.3d 1256 (D.C. Cir. 2003) ....................................................... 23, 24

*Hopkins v. U.S. Department of Housing and Urban Development,*
    929 F.2d 81 (2d Cir. 1991) .................................................................. 13

*In re Steele,*
    799 F.2d 461 (9th Cir. 1986) ............................................................... 24

*Kean v. National Aeronautics and Space Admin.,*
    480 F.Supp.2d 150 (D.D.C. 2007) ....................................................... 21

*King v. U.S. Department of Justice,*
    830 F.2d 210 (D.C. Cir. 1987) ......................................................... 11, 16

*Maine v. U.S. Department of Interior*
    298 F.3d 60 (1st Cir. 2002) ............................................................ 17

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*
    108 F.3d 1082 (9th Cir. 1997) ....................................................... 11

*Fiduccia v. U.S. Department of Justice,*
    185 F.3d 1035 (9th Cir. 1999) ...................................................... 18 n.9

*N.A.A.C.P. Legal Defense & Education Funds Inc. v. U.S. Department of
    Housing & Urban Development,*
    No. 07 Civ. 3378 (GEL), 2007 WL 42333008 at *5-7
    (S.D.N.Y. Nov. 30, 2007) ............................................................ 21

*Nation Magazine v. United States Customs,*
    71 F.3d 885 (D.C. Cir. 1995) ....................................................... 13

*N.L.R.B. v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ................................................................. 10

*Oglesby v. U.S. Department of Army,*
    920 F.2d 57 (D.C. Cir. 1990) ...................................................... 22, 23

*Pacific Fisheries Inc. v. U.S.,*
    539 F.3d 1143 (9th Cir. 2008) ..................................................... 12

*Trans Pacific Policing Agreement v. U.S. Customs Serv.,*
    177 F.3d 1022 (D.C. Cir. 1999) ................................................... 12

*Parke Davis & Co. v. Califano,*
    623 F.2d 1 (6th Cir. 1980) ......................................................... 17

*Pratt v. Webster,*
    508 F. Supp. 751 (D.D.C. 1981) ................................................... 12

*Rosenfeld v. Department of Justice,*
    57 F.3d 803 (9th Cir. 1995) ........................................................ 11

*Schiller v. N.L.R.B.,*
    964 F.2d 1205 (D.C. Cir. 1992) ................................................... 12

*Spirko v. U.S. Postal Serv.,*
    147 F.3d 992 (D.C. Cir. 1998) .................................................... 18 n.9

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.,*
    177 F.3d 1022 (D.C. Cir. 1999) ................................................... 12

*U.S. Department of State v. Ray,*
    502 U.S. 164 (1991) ................................................................. 10

*Valencia-Lucena v. U.S. Coast Guard,*
  180 F.3d 321 (D.C. Cir. 1999) ................................................ 21

*Vaughn v. Rosen,*
  484 F.2d 820 (D.C. Cir. 1973) .......................... 11, 16, 17

*Wiener v. FBI,*
  943 F.2d 972 (9th Cir. 1991) .................................. 11, 15, 18 n.9

*Wilbur v. C.I.A.,*
  355 F.3d 675 (D.C. Cir. 2004) ................................. 23, 24

*Zemansky v. E.P.A.,*
  767 F.2d 569 (9th Cir. 1985) ................................................ 21

## STATUTES

5 U.S.C. § 552(a) ................................................................................ 8
5 U.S.C. § 552(a)(e)(7) ...................................................................... 8
5 U.S.C. § 552(a)(4)(B) ............................................................... 11, 18
5 U.S.C. § 552(b) ....................................................................... 10, 12
68 Fed.Reg. 15315, 15315-6 ...................................................... 16 n.8

## INTRODUCTION

This FOIA lawsuit concerns the FBI's surveillance of Muslim leaders and organizations in the Los Angeles area.  Plaintiffs seek disclosure of information that is critical to understanding a matter of immediate public importance:  whether the FBI has targeted constitutionally-protected activity for heightened surveillance in violation of its own guidelines, and perhaps also federal law.

Since September 11, 2001, the public has been intensely concerned about the legality of FBI surveillance of Muslim and Arab individuals and organizations.  This strong public interest is reflected in widespread media reports.  Dozens of articles cited in Plaintiffs' original FOIA request document FBI racial and religious profiling and the questionable legality of FBI intelligence-gathering activities.  Ex. A-1 at 6 (Plaintiffs' FOIA Request).  *See also* Ex. D (sampling of articles cited in FOIA Request).[1]  In May 2008, public outcry in the wake of a report confirming FBI surveillance of mosques in Los Angeles and San Diego led to a call for congressional hearings to determine the extent and legality of FBI surveillance of area mosques. Ex. F-1 (Congressional Inquiry Letter, dated May 28, 2008).[2]

Two recent developments have heightened the public's interest in the documents at issue in this case.  First, in the past month, new reports have confirmed that various government agencies, including the FBI, have engaged in religious profiling.[3]  Second, on December 1, 2008, new FBI guidelines will take effect that

---

[1] All exhibits are attached to the declaration of Tasneem Dohadwala filed herewith.

[2] *See also* Ex. F-2 (H.G. Reza, *New Fears in Muslim Community Follow Reports of U.S. Monitoring*, L.A. Times, May 29, 2008).

[3] The San Diego Union-Tribune reported that a former Marine intelligence specialist stole secret FBI, CIA and U.S. Immigration and Customs Enforcement files that may reveal these agencies' widespread racial and religious profiling of organizations and individuals in the Los Angeles area. Ex. E-2 (Rick Rogers, *Former Marine Outlines Secret Dossiers: Muslims, Arabs Not Targeted, FBI Says*, San Diego Union-Tribune, Nov. 17, 2008).  The New York Times reported that 10,000 pages of Department of Homeland Security records revealed through FOIA
*(cont'd)*

1  give the FBI broad authority to open a terrorism investigation on the basis of race

2  and ethnicity and without any meaningful suspicion of wrongdoing.[4]  As a result, the

3  documents sought through this FOIA litigation are extremely relevant to a significant

4  public fear that suspicion-less surveillance of constitutionally-protected activity will

5  only increase under the new guidelines.

6      In response to Plaintiff's request for these documents of intense interest to the

7  public, the FBI attempts to withhold significant amounts of information as "outside

8  the scope" of Plaintiffs' FOIA request without claiming any statutory exemption.

9  This is plainly inconsistent with the text and purpose of FOIA.  Where no exemption

10 applies, the government must disclose the requested documents.  That is particularly

11 so here, where even the few portions of FBI documents so far released to Plaintiffs

12 indicate that the FBI is conducting and maintaining files on Plaintiffs' First

13 Amendment activities.

14     In keeping with FOIA's broad purpose to serve as an external check on

15 government secrecy, this Court should grant summary judgment in favor of the

16 Plaintiffs and order the FBI to disclose the information redacted as "outside the

17 scope" in accordance with FOIA.  Alternatively, at the very least, the Court should

18 review these withholdings *in camera* to determine their validity.  This will ensure

19 that the FBI cannot succeed in entirely circumventing the requirements of FOIA by

20 making sweeping "outside the scope" redactions of potentially responsive material

21

22 *(cont'd from previous page)*
   litigation demonstrated that Operation Frontline, a terrorism investigation, used

23 racial and ethnic profiling of immigrants from Muslim countries to identify suspects.
   Ex. E-2 (Eric Lichtblau, *Inquiry Targeted 2,000 Foreign Muslims in 2004*, N.Y.

24 Times, Oct. 31, 2008); *see also* Ex. E-2 (Andy Bromage, *The Usual Suspects:*
   *How Innocent Muslims Got Caught in George Bush's Dragnet, and How Yale*

25 *students Exposed It as a Sham*, The Fairfield Weekly, Nov. 20, 2008).

26     [4] *See* Ex. G-1 (ACLU, *Press Release: ACLU Condemns New FBI Guidelines*,
   Oct. 3, 2008, *available at*

27 http://www.aclu.org/safefree/general/37031prs20081003.html).

28

1  without properly claiming any exemption.  The public deserves to know whether the

2  government is targeting certain individuals and organizations for the exercise of their

3  constitutional rights.

4       In addition, the Court should reject the government's argument that Plaintiffs

5  Council on American Islamic Relations ("CAIR-California") and Hussam Ayloush

6  failed to exhaust administrative remedies.  CAIR-California and Mr. Ayloush

7  submitted, along with the other nine plaintiffs, a joint appeal challenging the

8  adequacy of the search to the Office of Information & Privacy ("OIP").  The

9  government responded to CAIR-California and Mr. Ayloush's appeals, confirmed its

10  actions, and informed them they were free to seek judicial review.  After this lawsuit

11  was filed, the government conducted searches of its cross-reference and electronic

12  surveillance ("ELSUR") indices on behalf of nine of the eleven requestors (the initial

13  search was limited to main indices), and Plaintiffs do not dispute the adequacy of

14  that search.  This Court should order the FBI to conduct the same additional searches

15  on behalf of CAIR-California and Mr. Ayloush.

16       For these reasons, Plaintiffs are entitled to summary judgment and the

17  requested relief.

18                    **STATEMENT OF FACTS**[5]

19  **Plaintiffs' FOIA request.**  Plaintiffs submitted a joint FOIA request on

20  May 15, 2006 to the FBI requesting records relating to themselves.  Plaintiffs in this

21  case are six organizations (Islamic Shura Council of Southern California; CAIR

22  California; Islamic Center of San Gabriel Valley; Islamic Center of Hawthorne; West

23  Coast Islamic Center; and Human Assistance and Development International, Inc.)

24

25  _____

26  [5] We mention here only correspondence significant to the disputes raised in
this motion.  We do not repeat references to all correspondence listed in the
27  Declarations of David M. Hardy filed on March 21, 2008 and November 4, 2008.

28

1 | and five individuals (Dr. Muzammil Siddiqi; Shakeel Syed; Hussam Ayloush;

2 | Mohammed Abdul Aleem; and Rafe Husain).

3 | **The FBI's responses to the FOIA requests.** Almost a year after the FOIA

4 | request was submitted, on April 27, 2007, the FBI wrote letters stating that with

5 | respect to nine of the eleven Plaintiffs, a search of "main files in the Central Records

6 | System at FBI Headquarters and the Los Angeles Field Office" located no

7 | responsive records.[6] On May 10, 2007, the FBI wrote a letter stating that the FOIA

8 | request for records relating to CAIR-California had been placed in a "perfected

9 | backlog" awaiting assignment to an analyst (Ex. A-4),[7] and on May 30, 2007 the FBI

10 | wrote a letter stating that the request for records relating to Mr. Ayloush was being

11 | reviewed by an analyst (Ex. A-5).

12 | **The Plaintiffs' joint administrative appeal and the FBI's responses.** On

13 | June 7, 2007, the Plaintiffs submitted a written joint appeal challenging the adequacy

14 | of the database search on behalf of all requestors, and in addition challenging the

15 | timeliness of the responses to CAIR-California and Mr. Ayloush. Ex. A-6. On July

16 | 16, 2007, the OIP wrote letters to each of the Plaintiffs, including CAIR-California

17 | and Mr. Ayloush, advising them that their administrative appeal was received on

18 | June 13, 2007 and that they would be notified of the decision on appeal. Each of the

19 | Plaintiffs, including CAIR-California and Mr. Ayloush, subsequently received a

20 | letter from the OIP informing them of the OIP's final action on their administrative

21 |

22 | _____

23 | [6] This response was made to Plaintiffs Shura Council, Islamic Center of San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center, HADI,

24 | Muzammil Siddiqi, Shakeel Syed, Mohammed Abdul Aleem, and Rafe Husain.

25 | [7] Defendants attach as Exhibit E to the Hardy Declaration filed March 21, 2008 a letter that appears to be dated May 9, 2007 notifying the ACLU that the FOIA request for Plaintiff CAIR California had been placed in a perfected backlog. The

26 | ACLU's copy of this letter is dated May 10, 2007. We are unable to explain this

27 | discrepancy, but we do not believe it is relevant to the issues raised in this motion.

28 |

1   appeals, and that if they were dissatisfied with that action they could seek judicial

2   review.  Ex. A-10; Ex. A-11; Ex. A-12.

3          **The FBI's interim release of four pages to CAIR-California and Mr.**

4   **Ayloush.**  On June 13, 2007, about one week after the Plaintiffs submitted their joint

5   appeal, the FBI released three pages to Mr. Ayloush (Ex. A-7), and on June 14, 2007

6   it released one page to CAIR-California (Ex. A-8).  Significantly, the FBI confirmed

7   receipt of Plaintiffs' joint administrative appeal in letters dated July 16, 2007 to each

8   of the Plaintiffs separately, including to CAIR-California and Mr. Ayloush, about

9   one month *after* it released these four pages.  The FBI never told CAIR-California or

10  Mr. Ayloush that their appeal would not be accepted.

11         **Events since this lawsuit was filed.**  Plaintiffs filed this action on

12  September 18, 2007.  After the lawsuit was filed, the FBI conducted additional

13  searches for nine of the eleven Plaintiffs (not for CAIR-California or Mr. Ayloush),

14  including a search for cross-references and a search of its ELSUR indices, and in

15  March 2008 released 124 pages of responsive documents.  These documents were

16  released in heavily-redacted form, including a large amount of information redacted

17  as "outside the scope" of the FOIA requests. Ex. C-1. The FBI also located and

18  released, in August 2008, thirty-two additional documents from its Electronic Case

19  File pertaining to the Los Angeles Multi-Cultural Advisory Committee.  *See* Second

20  Declaration of David M. Hardy ¶ 15-17, filed November 4, 2008.

21         The FBI submitted two declarations of David M. Hardy, FBI Section Chief of

22  the Record/ Information Dissemination Section which describe the information he

23  redacted and the rationale for the exemptions claimed.  Nowhere in either of these

24  declarations does Mr. Hardy describe the information redacted as "outside the

25  scope," nor the rationale for claiming it is "outside the scope."

26         Plaintiffs, by and through counsel, have made several good faith efforts to

27  narrow the scope of this litigation and resolve remaining issues.  Plaintiffs do not

28

1  dispute the propriety of the government's redactions pursuant to the claimed FOIA

2  exemptions, nor do they dispute the adequacy of the search with respect to nine of

3  the eleven Plaintiffs.  Only two significant issues remain:  (1) the propriety of the

4  government's "outside the scope" redactions; and (2) the exhaustion of

5  administrative remedies by CAIR-California and Mr. Ayloush and the adequacy of

6  the searches conducted on their behalf.

7        **The Contents of the Disclosure to Date.**  Despite the FBI's severe redactions,

8  the revealed portions of the documents provided by the FBI to date make clear that

9  the FBI has targeted Plaintiffs for surveillance based on their First Amendment-

10  protected activity, just as Plaintiffs suspected when they initiated this FOIA request.

11  *See Ex.* A (Plaintiffs' FOIA Request).  Some of the documents appear to be FBI

12  investigation memoranda (labeled "secret," "classified," or "unclassified") that

13  record information about Plaintiffs' lawful activities, such as speaking engagements,

14  fundraisers, public events and meetings, as well as Plaintiffs' membership,

15  associations and political beliefs.  *See* Ex. C-1 (Pages with "scoping" redactions).

16  The FBI aggressively redacted these investigation memoranda for being "outside the

17  scope" of Plaintiffs' FOIA request; the redactions are found on forty-eight of the 124

18  pages.

19        The remaining documents, which do not contain "outside the scope"

20  redactions, include public flyers and meeting announcements, the agendas and

21  attendance lists of meetings between Plaintiffs and the FBI (Multi-Cultural Advisory

22  Committee Meetings), and reports from FBI interviews with individual Plaintiffs.

23  *See* Ex. C-2 (Pages without "scoping" redactions).  These too appear to document

24  surveillance of First Amendment activity.  In addition to its "outside the scope"

25  redactions, the FBI withheld entirely an additional forty-seven pages for being

26  "outside the scope," even though they were contained within forty documents the

27

28

1  FBI deemed responsive to Plaintiffs' request.  *See* Ex. B-2 (ACLU (Shura Litigation)
2  Page Count).

3      The disclosure is noteworthy considering the extensiveness of the "outside the
4  scope" redactions.  The redactions serve to withhold all or most of the information
5  on the pages where the redactions appear.  On some pages, the "outside the scope"
6  redactions are so extensive that they conceal all the content on an entire page,
7  revealing nothing.  Ex. C-1 (ACLU 3; 14; 17; 19; 24; 27; 29; 35; 38; 74; 103).  On
8  many other pages, the "outside the scope" redactions conceal everything except the
9  sentence or partial sentence in which a Plaintiff's name appears. See, e.g., Ex. C-1
10  (ACLU 2 (revealing only "[a]ccording to [ ] who attended [  ] speakers at the event
11  included [ ] of the Islamic Shura Council of Southern California, and");  4 (revealing
12  only "during the late 1980's [ ] Shura Council included"); 5 (revealing only "[o]n the
13  Shura Council of Southern California website (www.shuracouncil.org)"); 6
14  (revealing only "and FNU [ ] from a Garden Grove mosque) are all members of The
15  Shura Council of California, an organization that acts as the umbrella over sixty-two
16  (62) mosques"); 25 (revealing only "[e]arlier in the week Muzammil Siddiqui and
17  other leaders in the Muslim community issued a fatwa and spoke against violence");
18  73 (revealing only "Mohammed Abdul Aleem, obtained a visa and went to study at
19  Southern Illinois University"); 75 (revealing only "Mohammed Abdul Aleem,
20  purchased a condominium")).
21      By conducting surveillance of and maintaining records on Plaintiffs' First
22  Amendment activities, the FBI likely violates both the FBI's own internal guidelines
23  and federal law.  Under the Attorney General's Guidelines on General Crimes,
24  Racketeering Enterprise and Terrorism Enterprise Investigations, the guidelines
25  governing FBI criminal investigations at the time the investigation memoranda in
26  question were written, the FBI can "check leads," conduct a preliminary

27

28

---

1 investigation if there is information or an allegation that indicates possible criminal

2 activity, or conduct a full investigation if there is "reasonable indication" of criminal

3 activity. See Ex. H at 1-4 (FBI Guidelines). In each of these three stages of

4 investigation, the FBI is required to focus their investigations on the allegations of

5 criminal activity, not on the lawful exercise of individual rights. See Guidelines at ii

6 ("[The duty of the FBI] must be performed with care to protect individual rights and

7 to insure that investigations are confined to matters of legitimate law enforcement

8 interest.") Indeed, "all . . . . investigations . . . shall be based on a reasonable factual

9 predicate and shall have a valid law enforcement purpose . . . . It is important that

10 such investigations not be based solely on activities protected by the First

11 Amendment or on the lawful exercise of any other rights secured by the Constitution

12 or laws of the United States." Ex. H at 7 (FBI Guidelines).

13     Furthermore, by maintaining records related to Plaintiffs' lawful exercise of

14 First Amendment activities that do not relate to criminal activity, the FBI violates

15 federal law and its own guidelines.

16     The law enforcement activities authorized by [these guidelines] do not
   include maintaining files on individuals solely for the purpose of
17 monitoring activities protected by the First Amendment or the lawful
   exercise of any other rights secured by the Constitution or laws of the
18 United States. Rather, all such law enforcement activities must have a
   valid law enforcement purpose. . . . Ex. H at 23 (FBI Guidelines).

19     In addition, under the Privacy Act, 5 U.S.C. § 552a, the FBI cannot maintain

20 records "describing how any individual exercises rights guaranteed by the First

21 Amendment unless . . . pertinent to and within the scope of an authorized law

22 enforcement activity," § 552a(e)(7).

23     That these heavily-redacted documents already reveal such disturbing activity

24 only underscores the importance of full disclosure consistent with the requirements

25 of FOIA.

26

27

28

# ARGUMENT

## I.  FOIA Does Not Permit "Outside The Scope" Redactions of Responsive Material.

Plaintiffs seek to shine the light of public scrutiny on the legality of this surveillance, scrutiny the FBI attempts to avoid by claiming large swaths of information are "outside the scope" of Plaintiffs request.  The redacted information is clearly within the scope of Plaintiffs' request, and the redactions are patently impermissible under the plain requirements and purpose of FOIA.  At summary judgment, Plaintiffs seek disclosure of the "outside the scope" redactions, or, alternatively, *in camera* review of the validity of the redactions.

### A.  The Information the FBI Withholds as "Outside the Scope" is Undeniably Germane to Plaintiffs' FOIA Request.

As an initial matter, this Court must reject the FBI's redaction of large swaths of information as "outside the scope" because the documents themselves reveal that the information is not "outside the scope" of Plaintiffs' request.  Despite the extensive redactions in these documents, the unredacted text in these documents describes Plaintiffs' First Amendment activity, including its flyers, events, speaking engagements, fundraisers, membership, beliefs, and associations.

For example, the unredacted portions of the memoranda describe the content of Plaintiffs' political and religious speech.  Ex. J (Chart of First Amendment Activity Contained in ACLU 1-124); Ex. C-1 (ACLU 10-11; 22 ("Siddiqi spoke extensively on zakat, the Muslim requirement to provide donations to those in need"), 25 ("Muzzamil Siddiqui and other leaders in the Muslim community issued a fatwa and spoke against violence"); 41).  One document even describes Plaintiffs' participation in the movement for immigration reform:  ACLU 10-11 ("[t]he following Southern California Islamic organizations have been involved with the so-called immigration reform movement, and actively supported the recent protest in

1  Los Angeles on 05/01/2006: [listing organizations].").  Ex. C-1.  The memoranda

2  also describe numerous public events and speaking engagements, such as fundraisers

3  for earthquake relief in India and emergency relief to Iraq.  Ex. J (Chart of First

4  Amendment Activity); Ex. C-1 (ACLU 1; 2; 13; 15-16; 18; 20; 21; 22; 23; 28; 30;

5  36-37; 40; 42).  The memoranda also describe Plaintiffs' membership bases and

6  associations.  Ex. J (Chart of First Amendment Activity); Ex. C-1 (ACLU 4; 6-7; 8;

7  9; 26; 45-46; 105).  Thus, the revealed contents of these documents make clear that

8  the redacted portions are almost certainly not "outside the scope" of the request;

9  indeed, they most likely lie at the heart of the FOIA request.

10   **B.    The FBI's Extensive "Outside the Scope" Redactions are**
11   **Impermissible under FOIA's Plain Language and Purpose of Broad**
     **Disclosure.**

12      Not only is the redacted material likely to be within the scope of Plaintiffs'

13  request, the extensive "outside the scope" redactions are clearly impermissible under

14  the plain language and purpose of FOIA.  Congress enacted the Freedom of

15  Information Act ("FOIA") to open federal agency actions to the light of public

16  scrutiny.  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S. Ct. 1592, 1599, L. Ed.

17  2d 11 (1976).  FOIA creates a "strong presumption in favor of disclosure" of

18  government documents.  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S. Ct. 541,

19  547, 116 L. Ed. 2d 526 (1991).  The central purpose of FOIA is to "ensure an

20  informed citizenry, vital to the functioning of a democratic society, needed to check

21  against corruption and to hold the governors accountable to the governed."  *N.L.R.B.*

22  *v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S. Ct. 2311, 2327, 57 L. Ed. 22

23  159 (1978).

24      FOIA requires government agencies to release their records to the public upon

25  request, unless the information contained within the records falls within one of nine

26  statutory exemptions.  5 U.S.C. § 552(b); *Church of Scientology of Cal. v. U.S. Dep't*

27

28

1  *of Army*, 611 F.2d 738, 741-42 (9th Cir. 1980) (FOIA "mandates a policy of broad

2  disclosure of government documents").  Because the objective of FOIA is disclosure,

3  not secrecy, the FOIA exemptions are the exclusive grounds for withholding

4  information and must be narrowly construed.  *Rose*, 425 U.S. at 361; *Maricopa*

5  *Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997).

6  When an agency withholds responsive records, it bears the burden of

7  justifying its withholdings under the applicable FOIA exemptions, which the district

8  court must review *de novo*.  5 U.S.C. § 552(a)(4)(B); *Rosenfeld v. Dep't of Justice*,

9  57 F.3d 803, 808 (9th Cir. 1995).  To justify its withholdings, the agency may not

10  rely upon "conclusory and generalized allegations of exemptions" and must provide

11  sufficient detail to allow the court to independently assess its claims.  *Vaughn v.*

12  *Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973).  To establish that the withheld

13  documents are exempt, the agency must submit a declaration and index setting forth

14  the bases for its exemption claims.  *Id* at 826-28.  In light of the tendency of federal

15  agencies to "claim the broadest possible grounds for exemption for the greatest

16  amount of information," agencies are required to produce "a relatively detailed

17  analysis" of the withheld material without resort to "conclusory and generalized

18  allegations of exemptions."  *Id.* at 826-27; *see Wiener v. F.B.I.*, 943 F.2d 972, 979

19  (9th Cir. 1991); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987)

20  (finding that the government must "specifically identify[] the reasons why a

21  particular exemption is relevant and correlat[e] those claims with the particular part

22  of a withheld document to which they apply.").

23  Here, the FBI impermissibly redacted these documents without claiming any

24  FOIA exemption.  Section 552(a)(3) of FOIA contemplates disclosure of documents,

25  or "records," pursuant to a request.  Where an agency identifies a requested

26  document, it cannot satisfy the statute merely by providing only the information

27  contained in the document that it deems relevant.  Rather, FOIA permits the

28

1   withholding of portions of documents only pursuant to specific, enumerated

2   exemptions. *Pratt v. Webster*, 508 F. Supp. 751, 762 (D.D.C. 1981) (dictum), *rev'd*

3   *on other grounds* 673 F.2d 408 (D.C. Cir. 1982) (discussing "outside the scope"

4   withholdings but declining to order the FBI to reexamine or disclose because the

5   plaintiff had not objected to the withholdings). Department of Justice internal

6   guidance on determining the scope of a FOIA request also forbids "scoping" within

7   pages deemed responsive. Agencies are instructed that "information should not be

8   determined to be beyond the scope of a request on less than a page-by-page basis."

9   Ex. I-1 (DOJ, *FOIA Update*, *OIP Guidance: Determining the Scope of a FOIA*

10  *Request* (1995). Thus, FOIA does not permit the FBI's redactions of information

11  within responsive pages on the ground that it is "outside the scope" of the request.

12          In addition, FOIA does not permit "scoping" of information that would

13  otherwise be "reasonably segregable" from the information withheld pursuant to a

14  FOIA exemption. FOIA requires that "[a]ny reasonably segregable portion of a

15  record shall be provided to any person requesting such record after deletion of the

16  portions which are exempt." 5 U.S.C. § 552(b). The segregability requirement is so

17  important to FOIA's broad disclosure mandate that trial courts have an affirmative

18  duty to consider the issue of segregability *sua sponte*. *Trans-Pac. Policing*

19  *Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). In fact,

20  "[i]t is error for a district court to simply approve the withholding of an entire

21  document without entering a finding on segregability, or the lack thereof." *Schiller v.*

22  *N.L.R.B*, 964 F.2d 1205, 1210 (D.C. Cir 1992) (citations and internal quotation

23  marks omitted).

24          Here, the redacted information is clearly segregable because it contains

25  factual and contextual information necessary for understanding why Plaintiffs'

26  names appear on a page. *See Pac. Fisheries Inc. v. U.S.*, 539 F.3d 1143, 1150 (9th

27  Cir. 2008) (finding that the district court erred in granting the defendant agency's

28

1 | motion for summary judgment on the segregation of factual portions of documents
2 | and ordered, on remand, that the "district court [make] specific findings as to
3 | whether factual information has been properly segregated and disclosed"); *see also*
4 | *Hopkins v. U.S. Dep't of Housing & Urban Dev't.*, 929 F.2d 81, 85-86 (2d Cir. 1991)
5 | (finding remand warranted where district court failed to consider whether documents
6 | were segregable).

7 |      The FBI's failure to 'reasonably segregate' and disclose responsive material
8 | that does not fall within an exemption is patently obvious on those pages where the
9 | FBI redacts as "outside the scope" everything but the line or phrase in which a
10 | Plaintiff's name appears. *See, e.g.,* ACLU 5 (redacting everything but "[o]n the
11 | Shura Council of Southern California website (www.shuracouncil.org)"); 73
12 | (redacting everything but "Mohammed Abdul Aleem, obtained a visa and went to
13 | study at Southern Illinois University"); 75 (redacting everything but "Mohammed
14 | Abdul Aleem, purchased a condominium").  FOIA requires disclosure of the
15 | "scoped" information because it is "reasonably segregable" factual and contextual
16 | information necessary to understand the appearance of Plaintiffs' names on the page.

17 |      Furthermore, even if "scoping" within a responsive page is permissible, FOIA
18 | does not permit the broad swath "outside the scope" redactions made here.  Under
19 | FOIA, when responding to a request, an agency is required to liberally interpret the
20 | request when deciding what records are responsive and it must be careful to "not
21 | unduly [limit] the records found responsive." Ex. I-1 (DOJ, *FOIA Update:  OIP*
22 | *Guidance: Determining the Scope of a FOIA Request*); *Nation Magazine v. U.S.*
23 | *Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (an agency "has a duty to construe
24 | a FOIA request liberally").  In addition, according to the Dep't of Justice's own
25 | internal guidance on "scoping," an agency must not treat "lightly" a decision to
26 | "scope" information within a responsive document page.  *See* Ex. I-2 (DOJ, *FOIA*
27 | *Post, "FOIA Counselor Q & A* (2006)).  Finally, information can be "scoped" within
28 |

1  a document page only if the information clearly relates to a different subject "that

2  [has] nothing to do with the subject of the FOIA request." *Id.*

3      Here, FBI's invasive "scoping" within pages ACLU 1-124 reveals that the FBI

4  did not liberally construe Plaintiffs' request, but rather construed it as conservatively

5  as possible.  As described *supra*, the "scoped" material is clearly within the scope of

6  Plaintiffs' request because it relates to FBI surveillance of Plaintiffs' lawful activities.

7  *See* Ex. A-1 at 3 (Plaintiffs' FOIA Request) (requesting "[a]ny records **relating or**

8  **referring** to the [Plaintiffs], including but not limited to records that document any

9  collection of information about, monitoring, surveillance, observation, questioning,

10  interrogation, investigation and/or infiltration of any of the [Plaintiffs] or their

11  activities.") (emphasis added).   The extent of the scoping throughout indicates that

12  the FBI did not use a "light" or cautious approach to "scoping," but an aggressive

13  one, necessarily catching responsive, unexempt material in its overbroad redactions.

14      In addition, in nearly every instance of "scoping," the FBI does not appear to

15  have "scoped" material that relates to a subject separate from the subject of the

16  released material.  This is particularly evident upon examining duplicative pages that

17  are redacted differently, revealing that the "outside the scope" redactions contain

18  information relevant to Plaintiffs and not separate subjects.  Pages ACLU 1, 13, 40,

19  and 42 are about one subject – a flyer announcing a fundraiser – yet these pages

20  contain "outside the scope" redactions throughout.  Ex. C-1.  Similarly, pages ACLU

21  22 and 41 are about a fundraising dinner where Plaintiff Siddiqi spoke, yet ACLU 22

22  contains a paragraph describing the fundraising dinner, whereas ACLU 41 redacts

23  that paragraph as "outside the scope" and only reveals two sentences stating that

24  Siddiqi was a speaker and spoke about donations.  Ex. C-1 (ACLU 22; 41).  Clearly,

25  in these instances, the subject of the redacted information is the same as the subject

26  of the revealed information.

27

28

1    In correspondence, the FBI claims that the redacted material is "outside the

2  scope" because Plaintiffs are not the subject of the files from which the documents at

3  issue emerged.  However, whether or not Plaintiffs are the subject of the files is

4  immaterial to whether information is within the scope of Plaintiffs' request.  Because

5  the information relates to the same subject as the revealed information and is clearly

6  relevant to the Plaintiffs' request, the FBI has no reasonable basis for claiming it to

7  be "outside the scope" and must be required to disclose this information.

8    Finally, "scoping" should not be permitted to be used as a tool for an agency

9  to circumvent the exemption requirements and undermine the fundamental purpose

10  of FOIA.  In correspondence, the FBI defends its "outside the scope" redactions by

11  claiming that some of the information is protected by FOIA exemptions anyway, but

12  that it processed the material as "outside the scope" to relieve an administrative

13  burden on the agency.  Ex. B-1 (Letter from M. Sowles to T. Dohadwala, June 27,

14  2008) (discussing the "time-consuming" and "labor-intensive" burden that

15  processing all the exemptions would impose).  According to this letter, even the FBI

16  appears to think the "scoped" material is actually within the scope of the request but

17  possibly subject to exemptions.  If that is the case, then this Court must not let the

18  FBI shirk FOIA's requirements that exempt material be claimed and specifically

19  justified, *see Wiener*, 943 F.2d at 979, and claim material to be outside the scope

20  when it admits that it is not.  Because the FBI acted in flagrant violation of FOIA's

21  requirements, this Court should order disclosure of the "outside the scope"

22  redactions.[8]

23 _____

24    [8] To further demonstrate that the "scoped" information is otherwise exempted
   under FOIA, the FBI points to the fact that most of the "scoped" information is also

25  labeled "secret" and are documents concerning national security.  Ex. B-1 (Letter
   from M. Sowles to T. Dohadwala, June 27, 2008).  If this is true, then FOIA requires

26  that Defendant claim the national security exemption (b)(1)) and justify its
   withholdings under that exemption.  Plaintiffs are not required to blindly trust that

27  this "scoped" information is otherwise exempted without the government specifically
   claiming and justifying the redactions as exemptions.  In addition, the FBI's

28                                                                        *(cont'd)*

1    To allow such extensive "outside the scope" redactions to stand would also fly

2  in the face of FOIA's assurances of public disclosure and the rationale behind the

3  requirement that the government create a *Vaughn* index.  By "scoping" large

4  amounts of information, Defendant avoids having to claim and justify exemptions

5  and, where not exempted, to release responsive material.  There is no mechanism to

6  check the propriety of the redactions.  The D.C. Circuit explicitly disapproved of just

7  such a system in the landmark FOIA case *Vaughn*, 484 F.2d at 824.  Thus, the D.C.

8  Circuit has held that by requiring government agencies to supply a *Vaughn* index

9  detailing each document or portion of a document withheld, and the applicability of

10  the exemptions to each document or segment, the index serves to "afford the FOIA

11  requester a meaningful opportunity to contest, and the district court an adequate

12  foundation to review, the soundness of the withholding."  *King*, 830 F.2d at 218.  By

13  redacting large swaths of information in concededly responsive documents as

14  "outside the scope" without providing any further justification for their redaction, the

---

*(cont'd from previous page)*

15  assertions do not appear to be made in good faith.  In at least one instance, the FBI
16  appears to have improperly classified information as "secret" for national security
   reasons.  Executive Order (E.O.) 12958 on Classified National Security Information,
17  as amended by E.O. 13292, requires the designation "secret" be made to information
   "the unauthorized disclosure of which reasonably could be expected to cause serious
18  damage to the national security that the original classification authority is able to
   identify or describe."  68 Fed. Reg. 15315, 15315-6 (Mar. 25, 2003).  See also
19  Declaration of David M. Hardy at 21 (Mar. 21, 2008).  The following paragraph on
20  page ACLU 1 is classified as "secret" on page ACLU 40:

21       Source advised that besides the names of SIDDIQI and JASSEMM as
22       guest speakers and the reference to the cooperation of the ISCSC, the
         flyer was identical to a flyer that had been handed out at the same
         mosque on April 4, 2003.  The April 04, 2003 and April 11, 2003
23       flyers are enclosed in a FD-340 1A envelope and photocopies of the
         flyers are attached to this FD-302.  Ex. C-1 at ACLU 1.

24
25       This paragraph, a description comparing two flyers announcing a fundraiser, is
   almost certainly not information "which reasonably could be expected to cause
26  serious damage to the national security" of the United States.  For this reason, this
   Court should not necessarily trust that when Defendant FBI claims that the "scoped"
27  material is also subject to an exemption, that they make such assertions in good faith.

28

---

1  "outside the scope" without providing any further justification for their redaction, the

2  government has re-created the very problem identified in *Vaughn*: "[t]his lack of

3  knowledge by the party seeking disclosure seriously distorts the traditional adversary

4  nature of our legal system[ ]." *Vaughn* 484, F.2d at 824.  By improperly "scoping"

5  responsive material, Defendants attempt to tip the scale of the adversarial process in

6  favor or government secrecy.

7      **C.    Plaintiffs are Entitled to Disclosure of the Information Withheld as**
            **"Outside the Scope" at Summary Judgment, or, Alternatively, to *in***

8              ***Camera* Review.**

9      In a FOIA case, summary judgment in favor of the agency is proper only if the

10  agency establishes that it has fully discharged its obligations under FOIA.  *Hayden v.*

11  *Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  Requestors, then, are

12  entitled to summary judgment if the government fails to adequately justify its

13  withholdings to sustain its burden of proof under FOIA.  *See, e.g., Coastal States*

14  *Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980); *Parke Davis &*

15  *Co. v. Califano*, 623 F.2d 1, 6-7 (6th Cir. 1980).

16      For the foregoing reasons, this Court should order the FBI to lift the "outside

17  the scope" redactions and disclose the information in accordance with FOIA.  *See*

18  *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 72 (1st Cir. 2002) (stating that where an

19  agency does not meet its burden to justify its withholdings, the courts "may require

20  supplementation of the Vaughn index, conduct an *in camera* review of the

21  documents in question, authorize limited discovery, or *order immediate disclosure of*

22  *the documents*.") (emphasis added).

23      If this Court finds that Defendant does not need to lift its "outside the scope"

24  redactions, this Court should, at the very least, review the documents *in camera* to

25  determine the validity of the "outside the scope" redactions.[9]  FOIA authorizes the

26  —————————————————

27      [9] In reviewing the propriety of an agency's withholdings, a court "may
examine the contents of such agency records in camera to determine whether such

        *(cont'd)*

28

—————————————————

1  district court to "examine the contents" of withheld records "in camera to determine

2  whether such records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B).

3  *In camera* review is appropriate where the public interest in disclosure is particularly

4  strong. *See Allen v. C.I.A.,* 636 F.2d 1287, 1299 (D.C. Cir. 1980) ("When citizens

5  request information to ascertain whether a particular agency is properly serving its

6  public function, the agency often deems it in its best interest to stifle or inhibit the

7  probes.... [S]ince it is in these instances that the representations of the agency are

8  most likely to be protective and perhaps less than accurate, the need for in camera

9  inspection is greater.") (overruled on other grounds in *Founding Church of*

10  *Scientology of Washington, D.C. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983)).

11        Here, the government has had ample opportunity to satisfy its burden of proof

12  that its withholdings are proper.  The government's failure to justify the extensive

13  "outside the scope" redactions raises concern that the government has "scoped"

14  information in order to circumvent the requirements of FOIA.  Because the FBI fails

15  to meet its burden to justify the "outside the scope" withholdings, it is not entitled to

16  summary judgment.  Upon granting summary judgment for Plaintiffs, this Court

17  should order the FBI to disclose the "scoped" information in accordance with the

18

19

20  *(cont'd from previous page)*
    records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B).  The trial
    court has broad discretion to authorize review of the contested withholdings *in*
21  *camera.  See Fiduccia v. U.S. Dept. of Justice,* 185 F. 3d 1035, 1043-44 (9th Cir.
    1999) (stating that *in camera* review "may be required in any particular case,
22  depending on the circumstances"); *Spirko v. U.S. Postal Serv.,* 147 F.3d 992, 996
    (D.C. Cir. 1998).  This Circuit has held that *in camera* review is not a "substitute for
23  the government's burden of proof," *Church of Scientology of Cal.* 611 F.2d 742, and
    is appropriate only after the government has been given an opportunity to "[submit]
24  as detailed public affidavits and testimony as possible'" to establish that the
    documents are clearly exempt from disclosure. *Wiener,* 943 F.2d at 979 (9th Cir.
25  1991), *quoting Doyle v. F.B.I.,* 722 F.2d 554, 556 (9th Cir. 1983); *see Church of*
    *Scientology of Cal.,* 611 F.2d at 743 n.1, *quoting* 1974 FOIA Amendments, S. Rep.
26  No. 93-1200, (1974) (Conf. Rep.), *reprinted in* 1974 U.S. Code Cong. & Admin.
    News, 6267, 6285, 6287, 6288

27

28

1  plain language and purpose of FOIA, or, at the very least, conduct *in camera* review

2  of the propriety of the "outside the scope" withholdings.

3

4  **II.    Plaintiffs Hussam Ayloush And CAIR-California Properly Exhausted**

5  **Administrative Remedies.**

6          The FBI supplemented its search for documents relating to nine of eleven

7  Plaintiffs after this lawsuit was filed by conducting searches of its cross-reference

8  and ELSUR indices (the initial searches were limited to the "main" indices), but

9  failed to do so for CAIR-California and Mr. Ayloush because it claims they did not

10  properly exhaust administrative remedies.  CAIR-California and Mr. Ayloush did in

11  fact exhaust their administrative remedies.  The Court should exercise jurisdiction

12  over the adequacy of the search conducted on their behalf and order the FBI to

13  search its cross-reference and ELSUR indices for documents related to them just as

14  the FBI did for the other nine plaintiffs.  The FBI's sole argument is that because it

15  released four pages to CAIR-California and Mr. Ayloush after submitting their

16  appeal (over a year after the FOIA request was made), CAIR-California and Mr.

17  Ayloush were required to make yet another appeal repeating their previous challenge.

18  This position would allow an agency to engage in endless stonewalling through a

19  series of inadequate responses, and should be rejected by the Court.

20          Plaintiffs CAIR-California and Mr. Ayloush fully complied with the FOIA's

21  requirement to exhaust administrative remedies prior to filing suit.  They submitted,

22  along with the other nine Plaintiffs, a joint appeal to the OIP on June 7, 2007.  Ex. A-

23  6.  The OIP acknowledged receipt of each Plaintiff's appeal in a separate letter dated

24  July 16, 2007, including one to CAIR-California and one to Mr. Ayloush.  Ex. A-9.

25  The OIP affirmed the FBI's action on CAIR-California's request in a September 5,

26  2007 letter (Ex. A-10), and affirmed the FBI's action on Mr. Ayloush's request in a

27  September 27, 2007 letter (Ex. A-10).  These letters constitute final agency action

28

1 reviewable by this Court, and they explicitly state that the requester may seek

2 judicial review. Ex. A-10.

3      The June 7, 2007 joint appeal reads, in pertinent part:

> First, with regard to the FBI's responses that it has searched the Central Records Service and found no responsive records with respect to *eleven requestors, I believe that this database search was not adequate under the FOIA, and that all other databases and offices that may have responsive records should have been searched as well.* Second, with regard to the FBI's responses regarding requestors CAIR and Hussam Ayloush, these responses are untimely under the FOIA, and responsive records should be disclosed promptly, with only those exempt records redacted and exemptions claimed in accordance with the FOIA.

Ex. A-6 (emphasis added).

     Plaintiffs' intent in this letter was to challenge the adequacy of the search on behalf of *all* of the requesters, and the language of the letter should be so construed. The FBI's later responses and production of three pages to Mr. Ayloush on June 13, 2007 (Ex. A-7) and one page to CAIR-California on June 14, 2007 (Ex. A-8) did not cure the inadequacy of the search. Although the FBI corrected this with respect to nine Plaintiffs by performing additional searches and releasing additional documents after this lawsuit was filed, it has not corrected the deficiency with respect to Plaintiffs CAIR-California and Mr. Ayloush.[10]

     The FBI might argue that its processing of the June 7, 2007 appeal was limited to the redactions on the four pages released to CAIR-California and Mr. Ayloush and did not encompass the adequacy of the search. However, the FBI knew Plaintiffs were dissatisfied with the search it conducted because this issue was explicitly raised in the June 7, 2007 appeal. The FBI chose not to address this issue for any of the

---

[10] Plaintiffs are not relying on a constructive exhaustion theory regarding untimely response, which has been interpreted to become moot once the government produces documents and cures the deficiency. Plaintiffs rely on an actual exhaustion theory.

1  Plaintiffs, even the nine that it concedes timely appealed. This cherry-picking of

2  issues puts plaintiffs in a state of administrative limbo, thwarting their ability to seek

3  judicial review and prolonging a process that was meant to facilitate disclosure and

4  government accountability. The Court should not condone this administrative delay

5  tactic. The June 7, 2007 appeal constitutes a proper exhaustion of administrative

6  remedies with respect to the adequacy of the search. *See N.A.A.C.P. Legal Def. &*

7  *Educ. Funds Inc.  v. U.S. Dep't of Housing & Urban Dev.*, No. 07 Civ. 3378 (GEL),

8  2007 WL 4233008 at *5-7 (S.D.N.Y. Nov. 30, 2007) (the practical implications of

9  accepting defendant's exhaustion argument counted strongly against doing so, where

10  it would mean that every time the agency eventually made some disclosure, however

11  inadequate, the requester would be required to return to the agency to pursue

12  administrative appeals).

13  **A.    The FBI Should be Required to Search its Cross-Reference and
       ELSUR Indices on Behalf of CAIR-California and Mr. Ayloush.**

14

15      This Court should order the FBI to search CRS cross-reference files and

16  ELSUR indices for CAIR-California and Mr. Ayloush, just as the FBI did for the

17  nine other plaintiffs after this lawsuit was filed. The FBI's actions in initially

18  searching only main CRS files were inadequate, as Plaintiffs stated in the June 7

19  letter on behalf of *all eleven plaintiffs*. Ex. A-6.

20      The adequacy of the agency's search is judged by a standard of reasonableness,

21  construing the facts in the light most favorable to the requestor. *Citizens Comm'n on*

22  *Human Rights v. Food & Drug Admin.,* 45 F.3d 1325, 1328 (9th Cir. 1995) (citing

23  *Zemansky v. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985) ("The agency must:

24  demonstrate that it has conducted a search reasonably calculated to uncover all

25  relevant documents.")). In order to fulfill the FOIA's goal of providing public access

26  to government documents, "agencies must make more than perfunctory searches and

27  must follow through on obvious leads to discover requested documents." *Kean v.*

28

1 | *Nat'l Aeronautics & Space Admin.*, 480 F. Supp. 2d 150, 155-56 (D. D.C. 2007)

2 | (citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

3 |     The agency cannot limit its search to only one record system if there are others

4 | that are likely to turn up the information requested. *Oglesby v. U.S. Dep't of Army*,

5 | 920 F. 2d 57, 68 (D.C. Cir. 1990) (holding that at the very least, the government was

6 | required to explain in its affidavit that no other record system was likely to produce

7 | responsive documents; it was not clear from the government's affidavit that the

8 | Central Records System was "the *only* possible place" that responsive records were

9 | likely to be located); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28

10 | (D.C. Cir. 1998) (finding that the weight of authority required the FBI to search

11 | ELSUR in addition to CRS in response to a general FOIA request for which ELSUR

12 | may be relevant, collecting cases); *Campbell v. U.S. Dep't of Justice*, 193 F. Supp.

13 | 2d 29, 35 (D. D.C. 2001) ("in the summary-judgment stage, the agency has the

14 | burden to show . . . that it searched all locations likely to contain responsive

15 | materials."). The FBI has not demonstrated in its affidavits that the search it

16 | conducted for CAIR-California and Mr. Ayloush of the "main" files of the CRS was

17 | the only possible place that responsive records were likely to be located and that no

18 | other record system was likely to produce responsive documents.

19 |     The FBI should be required to conduct a cross-reference search and a search of

20 | its ELSUR indices for CAIR-California and Mr. Ayloush. This makes sense because

21 | the FBI conducted such a search for the nine other plaintiffs and found a substantial

22 | number of additional responsive documents. According to *Halpern v. F.B.I.*, 181

23 | F.3d 279, 285 (2d Cir. 1999), the FBI normally processes files appearing in its

24 | "reference" index only when the search of the CRS does not locate any files on the

25 | requested subject through the "main" index. Otherwise, the requester is advised of

26 | cross-references and asked whether he would like those cross-references processed.

27 | *Id.*

28 |

1    In this case, the FBI never advised Plaintiffs of the existence of cross-

2  references, and it was not until after this lawsuit was filed that the FBI turned over

3  cross-references for nine of the eleven Plaintiffs, despite Plaintiffs' appeal to the OIP

4  challenging the adequacy of the search.  To date, the FBI has not advised CAIR-

5  California or Mr. Ayloush whether any such documents exist.  In *Halpern*, the FBI

6  asked for clarification regarding the scope of the request, indicating the existence of

7  cross-referenced files and offering to process them upon specific request.  *Id.* at 289.

8  The plaintiff in that case failed to respond to the FBI's request for clarification,

9  therefore the court held that cross-referenced files were outside the scope of the

10 request.  Significantly, the court noted that if the FBI had declined to process the

11 cross-referenced files without explicitly requesting clarification (exactly what the

12 FBI has done in the present case), it would be "strongly inclined to hold in favor of

13 the requester." *Id.*  Thus, the Court should order the FBI to conduct cross-reference

14 and ELSUR searches for CAIR-California and Mr. Ayloush.

15    **B.    Even if this Court Finds that CAIR-California and Mr. Ayloush
          Failed to Exhaust their Administrative Remedies, it Should
16          Exercise Jurisdiction on Prudential Grounds.**

17    Exhaustion of administrative remedies is *not* a jurisdictional prerequisite to a

18 FOIA suit.  *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003) ("[T]he

19 exhaustion requirement is not jurisdictional because the FOIA does not

20 unequivocally make it so.").  More specifically, "absent a statutory provision to the

21 contrary, failure to exhaust is by no means an automatic bar to judicial review; courts

22 usually look at the purposes of exhaustion and the particular administrative scheme

23 in deciding whether they will hear a case or return it to the agency for further

24 processing." *Oglesby*, 920 F.2d at 62.  *See also Wilbur v. C.I.A.*, 355 F.3d 675, 676-

25 77 (D.C. Cir. 2004) (refusing to grant summary judgment on the basis of failure to

26 exhaust when an "action presents no risk of undermining the purposes and policies

27 underlying the exhaustion requirement").

28

1    The present case presents no risk of undermining the purposes and policies

2  underlying the exhaustion requirement, namely, to prevent premature interference

3  with agency processes, to give the parties and the courts the benefit of the agency's

4  experience and expertise and to compile an adequate record for review. *Wilbur*, 355

5  F.3d at 677 (citing *Hidalgo*, 344 F.3d at 1259 and cases cited therein). CAIR-

6  California and Mr. Ayloush did not bypass the administrative review process; they

7  pursued it in good faith to what they reasonably believed to be its end. They did not

8  ignore the exhaustion requirement. *Cf. In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986)

9  (holding jurisdiction absent where plaintiff made "no attempt" to comply fully with

10  agency procedures); *Davis v. Astrue*, 250 F.R.D. 476, 483 (N.D. Cal. 2008) (in

11  contrast to a case where "no attempt" to exhaust was made, plaintiff's exhaustion of

12  administrative remedies *after* suit was filed did not deprive court of jurisdiction).

13    This is not a case where "no attempt" was made to exhaust administrative

14  remedies. Rather, all Plaintiffs, including CAIR-California and Mr. Ayloush, clearly

15  attempted to exhaust their administrative remedies in good faith. They did not learn

16  that the government believed otherwise until the government filed its Motion for

17  Summary Judgment on March 21, 2008. Prior to that date, the government gave

18  CAIR-California and Mr. Ayloush no reason to think they were expected to submit

19  another appeal. Just the opposite, in fact, as the government responded to CAIR-

20  California's and Mr. Ayloush's appeals, confirmed its actions on those appeals, and

21  gave them notice that they were free to seek judicial review. Ex. A-11; Ex. A-12.

22    Requiring exhaustion would not further the goal of creating a record for the

23  court to review because the court already has a sufficient record before it, and the

24  FBI has already had ample opportunity to act upon the substance of the inadequate

25  search appeal. Accordingly, because exhaustion is a prudential consideration rather

26  than a jurisdictional prerequisite, this Court is not precluded under these

27

28

1  circumstances from deciding the merits of CAIR-California's and Ayloush's FOIA

2  claims even if it finds that they failed to exhaust administrative remedies.

3  **CONCLUSION**

4  For the foregoing reasons, Defendants' motion for summary judgment should

5  be denied and Plaintiffs' motion for summary judgment should be granted.

6

7  Dated:  November 26, 2008                    Mark D. Rosenbaum
                                               Jennie Pasquarella*
8                                              ACLU Foundation of Southern California

9

10                                             TASNEEM DOHADWALA, SBN 218067
                                               300 South Grand Avenue, 34th Floor
11                                             Los Angeles, CA 90071-3144
                                               Tel: (213) 687-5000
12                                             Fax: (213) 621-5687

13                                             Attorneys for Plaintiffs

14                                             *_Pro hac vice_ application pending.

15

16

17

18

19

20

21

22

23

24

25

26

27

28