MICHAEL F. HERTZ
Acting Assistant Attorney General
JOHN TYLER
MARCIA K. SOWLES
D.C. Bar No. 369455
Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20530
Telephone: (202) 514-4960
Facsimile: (202) 514-8470

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION; and UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendants. | No. SACV07-1088 CJC (ANx) <br><br> OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> Date:  April 20, 2009 <br> Time:  1:30 p.m. <br> Judge: Hon. Cormac J. Carney |

## INTRODUCTION

This is not an action, as plaintiffs suggest, concerning alleged illegal surveillance by the Federal Bureau of Investigation ("FBI") of Muslim leaders and organizations in the Los Angeles area.[1] Instead, this is an action filed under the

---

[1] Memorandum of Points and Authorities in Support of Plaintiffs' Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 1.

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by six organizations and five individuals seeking information pertaining to themselves from the FBI Headquarters ("FBIHQ") and its Los Angeles Field Office.[2] In response to the request, the FBI identified seventy-two (72) documents which contained references to one or more of the plaintiffs. In making its FOIA production, the FBI withheld the non-responsive portions of twenty-seven (27) documents on the grounds that they were outside of the scope of the request (i.e., the redacted portions did not contain information responsive to plaintiffs' request). In addition, with respect to the information found to be responsive, the FBI withheld portions of the documents pursuant to exemptions for protecting classified information, law enforcement materials, internal agency matters, and personal privacy.

In their opposition, plaintiffs do not challenge any of the redactions made on the grounds that the information was exempt from disclosure. Nor do they dispute the adequacy of the search conducted on behalf of nine of the eleven plaintiffs. Instead, plaintiffs argue that (1) the FBI improperly withheld portions of the certain documents on the grounds that they were non-responsive, and (2) the FBI should be ordered to conduct further searches on behalf of two plaintiffs – Hassam Ayloush and CAIR - California.

Plaintiffs' claim that the FBI improperly withheld portions of certain documents has no factual or legal basis. While the FOIA requires an agency to produce or identify records responsive to plaintiffs' request, it does not require an

---

[2] The organizations are Islamic Shura Council of Southern California, Council on American Islamic Relations ("CAIR") - California, Islamic Center of San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center, Human Assistance and Development International, Inc. The individual plaintiffs are Mazammil Siddiqi, Shakeel Syeed, Hussam Ayloush, Mohammed Abdul Aleem, and Rafe Husain.

2

agency to release portions of a document which are not responsive to plaintiffs' request. Here the documents at issue were not compiled in investigations of any of the plaintiffs. Instead, they are documents that relate to investigations of others. The FBI provided plaintiffs with all responsive portions containing references to any of the plaintiffs.

The challenge by Mr. Ayloush and CAIR - California to the adequacy of the search for documents should be dismissed for lack of jurisdiction. As explained in defendants' initial brief, unlike the other plaintiffs, Mr. Ayloush and CAIR failed to exhaust their administrative remedies. Memorandum in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") (Dkt. No. 13-1), at 6-8. Plaintiffs offer no valid arguments to the contrary in their opposition.

Accordingly, this Court should grant defendants' motion for summary judgment and deny plaintiffs' cross motion for summary judgment.

## ARGUMENT

**I. THE FBI PROPERLY WITHHELD THE NON-RESPONSIVE PORTIONS OF CERTAIN DOCUMENTS AS "OUTSIDE THE SCOPE" OF THE REQUEST.**

In this case, the FBI has withheld portions of 27 documents because they did not contain information responsive to plaintiffs' request and were thus outside the scope of their request.[3] In their opposition, plaintiffs claim that the FBI improperly

---

[3] The documents (and pages) containing such redactions are documents 1 (page ACLU 1), 2 (ACLU 2a-2), 3 (ACLU 3-4), 4 (ACLU 5), 5 (ACLU 6-7), 6 (ACLU 8-9), 7 (ACLU 10-11), 8 (ACLU 13), 9 (ACLU 14-16), 10 (ACLU 17-18), 11 (ACLU 19-20), 12 (ACLU 21), 13 (ACLU 22), 13a (ACLU 23), 14 (ACLU 24-25), 15 (ACLU 26), 16 (ACLU 27-28), 20 (ACLU 35-38), 21 (ACLU 38-41), 22 (ACLU 42), 23 (ACLU 43), 24 (ACLU 45-46), 30 (ACLU 73-75), 33 (ACLU 101-102), 33 (ACLU 103-104), 35 (ACLU 105). In addition, for some documents, the FBI withheld an entire page because it did not contain any

3

withheld these portions and seek an order requiring the FBI to immediately disclose the redacted information. Pl. Mem. at 9-18. Alternatively, they request the Court to conduct an *in camera* review of the validity of the redactions. Plaintiffs' claim is predicated on erroneous assumptions regarding both the facts and the law. First, the record supports the FBI's determination that the information withheld is not responsive to plaintiffs' request, and plaintiffs have presented no basis for this Court to second-guess that determination. Second, contrary to plaintiffs' suggestion, the FOIA does not require an agency to disclose portions of a document which are not responsive to plaintiffs' request. It permits an agency, as the FBI did here, to make "outside of the scope" redactions of the non-responsive portions of documents. Third, to the extent that the Court has questions regarding such redactions, the proper procedure is not to order them immediately disclosed. Instead, the proper remedy is to allow the FBI to submit the documents for *in camera, ex parte* review. Finally, even if the Court were to find that the redacted portions are responsive, the FBI should be allowed an opportunity to review those portions to determine whether any of the information is exempt from disclosure under one or more of the statutory exemptions.

    **A.    The Portions of the Documents Redacted as "Outside the Scope" Are Not Responisve to Plaintiffs' FOIA Request.**

Plaintiffs' bald claim that the redacted portions contain information responsive to plaintiffs' request is not supported by the record in this case. Plaintiffs did not seek records relating to any investigations or surveillance of any Muslim or Arab individuals and organizations. Instead, they only sought "records relating or

---

responsive material. See Exhibit A (Dkt. No. 31-36) to Second Declaration of David Hardy (letter to plaintiffs attaching chart indicating total number of pages in each document and number of pages produced in whole in or part).

referring to the [plaintiffs], including but not limited to records that document any collection of information about monitoring, surveillance, observation, questioning, interrogation, investigation and/or infiltration of any of the [plaintiffs] or their activities." Exhibit A (Dkt. No. 13-6) to Declaration of David M. Hardy ("First Hardy Decl.") (Dkt. Nos. 13-2 to 13-5). In conducting the search for responsive documents, the FBI conducted a search of its Central Records System ("CRS"). First Hardy Decl., ¶¶ 31-41, 45. The mechanism that the FBI used to search the CRS was the general indices in Automated Case Support System ("ACS"). Id. ¶ 20. The entries in the General Indices fall into two categories: (a) a "main" entry which corresponds to the subject of the file; and (b) a "reference" entry, sometimes called "cross-reference," which denotes "a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in a 'main' file on a different subject." Id. ¶ 22.

    In this case, all of the documents at issue were located through a search of CRS which identified these "cross-references." Hardy Decl., ¶ 45. Plaintiffs' names were simply mentioned or referenced in a file about another person or organization. Id. For example, document 5 (ACLU 6-7) is a witness statement made by another person in connection with an investigation. The only reference to one of the plaintiffs is that certain individuals – who are not plaintiffs – "are all members of the Shura Council of California, an organization that acts as an umbrella over sixty-two (62) mosques."[4] Similarly, document 4 (ACLU 14-15) is a witness statement

---

[4] Copies of the pages at issue are found at Exhibit C-1 (Dkt. No. 38-5) to the Declaration of Tasneem Dohadwala (Dohadwala) (Dkt. No. 38-3). See also Exhibit O to Hardy Decl. (Dkt. No. 18). Defendants had filed the documents released to plaintiffs under seal to protect their privacy. Plaintiffs have now filed many of the documents, with certain additional redactions, on the public record as Exhibits C-1 and C-2. See Dohawala Decl., ¶¶ 17-18.

which mentions that that one of the plaintiffs – Muzammil Siddiqi and "another leader in the Muslim community issued a fatwa and spoke against violence." Hence, while plaintiffs assert that the redacted portions pertain to them, the record indicates that the documents relate to investigations of others.

Nevertheless, plaintiffs try to support that claim that the redacted portions were responsive by speculating on the contents of certain documents. Specifically, they note the fact that certain pages (ACLU 1, 13, 40 and 42) in four documents contain similar information regarding a fundraiser presented by Life for Relief and Development in cooperation with Islamic Shura Council of California (one of the plaintiffs) and note that one of the speakers is Dr. Musammil Siddiqi (another plaintiff). Pl. Mem. at 14. Because some of the language in certain paragraphs on these four pages is similar, the plaintiffs speculate that information contained in the "outside of scope" redactions on two pages (ACLU 40 and 41) is identical to other paragraphs which have been released in ACLU 1 and 22. Id. at 14, 16 n.8. Plaintiffs' speculations, however, are not borne out by a review of the documents.[5] The redacted paragraphs do not contain responsive information. Indeed, this is evident even without conducting an *in camera* review of the documents because, as plaintiffs note, the paragraph redacted as "outside the scope" on ACLU 40 is classified as "SECRET." Rather than suggesting, as plaintiffs do, that this indicates that defendants erroneously classified information, this classification marking indicates that the information is not the same as the information released in ACLU 1

---

[5] While defendants do not believe that a review of the documents is necessary, they are willing to submit any of the documents at issue for *ex parte, in camera* review.

and 22.[6]

Plaintiffs also try to support their claim that the redacted portions contain responsive material by suggesting that the FBI has conducted illegal surveillance of various Muslim and Arab groups. Pl. Mem. at 2 (citing to various newspaper articles). Based on these allegations, they suggest that the references made in the responsive records to fund-raising events and speeches by the plaintiffs indicate that the FBI conducted such surveillance and investigations of them. This argument, however, is belied by the fact that the documents are issue were found in files which merely "cross-referenced" the plaintiffs. While plaintiffs may have a curiosity as to why they may be mentioned in investigations of others, the FOIA does not require an agency to explain why such records were created.

In short, there is no evidence in the record to support plaintiffs' bald assertion that the pages and portions of pages withheld by the FBI as "outside the scope" relate or refer to any of the plaintiffs, and the plaintiffs have offered no evidence to the contrary.

### B. The Withholding of Non-responsive Portions of Documents Is Permissible Under the FOIA.

While FOIA requires an agency to produce or identify material responsive to plaintiffs' request, the FOIA does not require an agency to produce an entire document simply because the name of the person or organization which is the subject of the request is mentioned in the document. <u>Posner v. Justice Department</u>,

---

[6] Moreover, plaintiffs' suggestion that the defendants intentionally withheld responsive information as outside the scope of the request ignores the fact that the FBI released responsive portions of the documents. If the FBI, as plaintiffs suggest, intentionally withhold information to cover-up allegedly illegal surveillance activities, it could have simply failed to identify the documents at all.

1  2 Govt. Disclosure Serv. ¶ 82,229 (D.D.C. 1982) (attached as Exhibit A); Dunaway
2  v. Webster, 519 F. Supp. 1059, 1083 (N.D. Cal. 1981).  For example, in Posner,
3  plaintiff filed a FOIA request seeking documents relating to him.  As here, the FBI
4  found cross-references to plaintiff in an investigative file relating to another
5  individual or organization.  As here, the FBI considered "[o]nly those portion [sic]
6  which pertained directly to plaintiff were considered to be within the scope of the
7  request."  Id. at 82,650.  The court upheld the redactions and granted summary
8  judgment for the defendant.

9        Similarly in Dunaway v. Webster, 519 F. Supp. at 1083, the FBI redacted
10 portions of documents which were found in files that contained cross-references to
11 the musical groups which were the subject of the FOIA request.  The court held that
12 under the FOIA "the agency is under no obligation to release an entire document
13 simply because the name of a person or organization that is the subject of the
14 request is mentioned in the document."  Id.  Instead, the court found that an agency
15 may withhold material found in the documents "if that material is clearly and
16 without any doubt unrelated to the subject of the request."  Id.  Thus, while the court,
17 after conducting an *in camera* review of the documents, found that some portions of
18 the redacted portions were responsive, the court upheld the other redactions made
19 by the FBI as outside the scope of the request.

20       In their opposition, plaintiffs cite to an earlier opinion by Judge Parker, who
21 was the judge in Posner.  Pl. Mem. at 12 (citing Pratt v. Webster, 508 F. Supp. 751
22 (D.D.C. 1981), rev'd on other grounds, 673 F.2d 408 (D.C. Cir. 1982)).  In that case,
23 Judge Parker raised questions regarding the "outside of the scope" redactions made
24 by the FBI on certain documents, but he declined to ask the FBI to "reexamine and
25 reindex the documents" because plaintiff had not objected to those redactions.  Id. at
26 762.  Plaintiffs' reliance on this case is misplaced for at least three reasons.  First, as
27
28                                                    8

plaintiffs acknowledge, the statement made by Judge Parker is dictum. Second, the facts in that case are not analogous to the facts here. In that case, unlike here, some of the information which had been redacted as not responsive was contained in a main file regarding an investigation of the plaintiff for the theft of government property. 508 F. Supp. at 755, 762. Third, Judge Parker's legal conclusion that "[p]ortions of documents can be withheld only pursuant to specific, enumerated exemptions" was based on a misunderstanding of 5 U.S.C. § 552(b). 508 F. Supp. at 762. That provision addresses an agency's authority to withhold responsive information if the information is protected by one or more of the enumerated exemptions. It does not address plaintiffs' claim that an agency is required to provide information that is not responsive.

Plaintiffs' reliance on the requirement that "[a]ny reasonably segregable portion of a record shall be provided to any persons requesting such record after deletion of the portions which are exempt," 5 U.S.C. § 552(b), is misplaced for the same reason. That provision only requires the agency to insure that when an agency redacts portions of a responsive record as exempt, the agency releases any "reasonably segregable portion" that is not exempt. It does not mandate that the agency release any non-responsive portions of documents. None of the cases cited by plaintiffs suggest otherwise.

Plaintiffs' discussion of the government's requirement to create a Vaughn index is likewise misguided. See Pl. Mem. at 16. As the cases cited by plaintiffs illustrate, this requirement relates to information withheld on the grounds that it is exempt. Plaintiffs have cited no cases in which this requirement has been extended to cases in which an agency has withheld information as non-responsive.

Plaintiffs also try to find support for their claim by citing to two DOJ internal guidance memoranda discussing the circumstances in which an agency may redact

1  portions of a record as outside of the record.   Pl. Mem. at 13-14, citing Exhibits I-1
2  (FOIA Update, Vol. XVI, No. 3 (1995) – OIP Guidance: Determining the Scope of
3  a FOIA Request) and I-2 (DOJ, *FOIA Post, "FOIA Counselor Q & A* (2006)) (Dkt.
4  No. 38-6) to Dohadwala Decl.

5        The DOJ memoranda cited by plaintiffs do not support their claim.  As a
6  preliminary matter, the FOIA Update does not address an agency's <u>legal</u> obligations
7  under FOIA in regard to scoping determinations.  Rather, the FOIA Update provides
8  practical advice or guidance, explaining that the "scoping" determination depends in
9  part on the nature of the non-responsive material contained in the document.  Thus,
10 for an example, agencies were advised that, before making "scoping"
11 determinations, they "should at least preliminarily review the contents of the
12 document pages in question with an eye toward FOIA exemption applicability."
13 FOIA Update, at 4.  "In some cases, the potentially 'scoped' documents might
14 contain little or no exempt information, such that they can be easily included in the
15 FOIA request as not."  <u>Id.</u>  On the other hand, where the potentially "scoped"
16 information contains exempt information, the processing of the non-responsive
17 material increases the burden on the agency.  The Q & A provides similar advice.  It
18 notes that the "'processing' of a record's content under the FOIA can be very labor-
19 intensive and time-consuming process" when the documents contain information
20 protected by an exemption.  In such circumstances, "scoping" the page for only
21 information responsive to the request can reduce the burden on the agency and
22 allow the agency to respond to the request more expeditiously.

23       In addition to the fact that the FOIA Update does not define an agency's legal
24 obligations with respect to scoping, the FBI's determinations in this case with
25 respect to scoping are in any event entirely consistent with the current guidance
26 provided by OIP.  Contrary to plaintiffs' suggestion, this is not a case in which the

1  FBI has narrowly interpreted plaintiffs' request by placing limitations on the type of
2  information about the plaintiffs which is responsive. The FBI has interpreted
3  plaintiffs' request to include any reference to plaintiffs in any document in any file,
4  even if plaintiffs were not the subject of the file. In fact, the plaintiffs were not the
5  subject of any of the files in which the documents at issue were contained in files.
6  Instead, the documents are contained in investigative files relating to other
7  individuals or organizations. They simply contain reference to one or more of the
8  plaintiffs. Moreover, this is not a case where the material which has been
9  determined to be out of scope contains little or no exempt information.[7] As the
10 declaration of Mr. Hardy explains, the documents from which the FBI has withheld
11 pages or portions of pages based on "scoping" determinations are contained in
12 investigative files involving national security concerns. A review of the redactions
13 made as outside the scope of the request shows that in almost all cases the redacted
14 information is classified as "SECRET."

   Therefore, contrary to plaintiffs' claim, the redactions made by the FBI for
16 information outside the scope of plaintiffs' request is consistent with FOIA and DOJ
17 guidance.

18   **C.   If the Court Has Questions Regarding the Appropriateness of the**
19         **Redactions, the Court Should Conduct an *Ex Parte, In Camera***
20         **Review of the Documents.**

21   In their brief, plaintiffs request the Court to order the FBI to disclose the

---

[7] In their opposition, plaintiffs assert that if the portions redacted as outside the scope of the request was protected by exemptions, the FBI should have asserted those exemptions. Pl. Mem. at 15 n.8. This argument misses the rationale for outscoping non-responsive portions of documents. As the OIP memoranda explain, if the material is outside the scope, requiring the agency to review the non-responsive portions for exemptions would be an undue burden on the agency and unnecessarily delay the processing of the request. See supra at 10.

11

portions of the documents which have been withheld as outside the scope of the request. Pl. Mem. at 17-18. Such a remedy is clearly not appropriate and would be premature for at least two reasons. First, if the Court believes that it needs additional information to satisfy itself that the redactions are appropriate, it should allow the FBI to submit the documents at issue (with a supplemental declaration if necessary) for an *ex parte, in camera* review.

Second, even if the Court, after reviewing such *in camera* submissions, were to find that some of the redacted material was responsive, the FBI should have an opportunity to review the portions at issue to determine whether they contain information protected by one or more of the statutory exemptions, 5 U.S.C. § 552(b). Such review is critical here because a review of the "outside of the scope" redactions reveals that in many cases the redacted information is classified. Moreover, all of the documents at issue are from law enforcement files. Thus, they may contain information which is protected by one or more of the various law enforcement exemptions. For example, in some cases, the redactions are contained in witness statements provided by a confidential source. See Hardy Decl., p. 59-60 (Document 6, ACLU 8-9). Release of certain portions may therefore reveal the identity of the source. Similarly, a review of the unredacted portions reveals that all of the documents contain information which would reveal the identity of third parties whose name are protected by exemptions 6 and 7(C).

Plaintiffs cite no cases to support their request for the Court to order the immediate release of information which the agency had initially determined to be non-responsive without allowing the agency an opportunity to review material to determine whether some of information is protected by one or more of the exemptions. State of Maine v. U.S. Department of Interior, 298 F.3d 60, 72 (1st Cir. 2002), is not on point. That is not a case in which an agency, as here, had withheld

certain portions as outside the scope of the request. Instead, in that case, the agency withheld portions which it had determined to be responsive under exemption 5 and had failed to submit an adequate Vaughn index to support the exemption.

Accordingly, even if the Court were to find that some of the redactions at issue contained responsive information, the Court should not order those portions disclosed without providing the FBI an opportunity to review those portions to determine whether they contain information protected by one or more the exemptions.

## II. THE CLAIMS OF CAIR-CALIFORNIA AND HUSSAM AYLOUSH SHOULD BE DISMISSED BECAUSE THEY FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES.

Plaintiffs' claim that the Court should order the FBI to conduct searches of its cross-references and ELSUR indices for documents related to Mr. Ayloush and CAIR-California should be dismissed for failure to exhaust their administrative remedies. As explained in defendants' initial brief, unlike the other plaintiffs to whom the FBI had sent initial letters stating that there were no responsive documents, the FBI produced documents with redactions to CAIR-California and Mr. Ayloush on June 13 and 14, 2007. Def. Mem. at 6-8. Although the FBI's letter enclosing the documents explained that they could appeal the decision to the Department of Justice's Office of Information and Privacy ("OIP") within 60 days, they failed to file an appeal challenging the adequacy of the search. Because these two plaintiffs failed to exhaust their administrative remedies under 5 U.S.C. § 552(a)(6)(A)(ii) prior to filing a suit in court, the court lacks subject matter jurisdiction to adjudicate their claims. In re Steele, 799 F.2d 461, 465-66 (9th Cir. 1986).

In their brief, plaintiffs try to avoid this jurisdictional flaw by citing to the

appeal letter sent by plaintiffs to OIP on June 5, 2007. Pl. Mem. at 20.[8] While that appeal challenged the adequacy of the searches for documents with regard to the plaintiffs who had received responses from the FBI that it has searched the CSR and found no responsive documents, the only issue raised regarding the requests by these two plaintiffs was that the FBI had failed to respond timely to their request. Despite the clear language in the appeal letter distinguishing between the two sets of requesters — those that had received responses from the FBI stating that it had "no responsive documents," and Mr. Ayloush and CAIR who had not yet received a response from the FBI, plaintiffs assert that "[their] intent in the letter was to challenge the adequacy of the search of *all* of the requesters, and the language should be so construed." Pl. Mem. at 20. Plaintiffs' claim that their intent was to challenge the adequacy of the search for all requesters, however, makes no sense because at the time that it was written, the FBI had not yet responded to the requests by Mr. Ayloush and CAIR-California. Thus, it would have been premature for them to challenge the adequacy of those searches.

Realizing the weakness of this claim, plaintiffs argue, in the alternative, that even if the Court finds that Mr. Ayloush and CAIR-California failed to exhaust their administrative remedies, it should not dismiss their challenge because "exhaustion of administrative remedies is *not* a jurisdictional prerequisite to a FOIA suit." Pl. Mem. at 23(citing Hidalgo v. F.B.I., 344 F.3d 1256, 1258-59 (D.C. Cir. 2003)). Based on this assertion, they argue that the Court should exercise jurisdiction on prudential grounds.

Plaintiffs' reliance on Hidalgo is misplaced. While the United States Court of Appeals for the District of Columbia has held that exhaustion of administrative

---

[8] A copy of plaintiffs' appeal letter is attached as Exhibit G to Hardy Declaration (Dkt. No. 13-8).

remedies is not a jurisdictional requirement, the Ninth Circuit Court of Appeals has held that it is a jurisdictional requirement. See Hymen v. Merit Systems Protection Board, 799 F.2d 1421, 1423 (9th Cir. 1986), overruled on other grounds by Capital Tracing, Inc. v. United States, 63 F.3d 859 (9th Cir. 1995); In re Steele, 799 F.2d at 465-66.[9] Courts in this Circuit have, thus, dismissed FOIA claims on jurisdictional grounds, where as here, plaintiffs failed to exhaust their administrative remedies. See, e.g., Said v. Gonzales, No. C06-986MJP, 2007 WL 2789344, *4-5 (W.D. Wash. Sept. 24, 2007); Davis v. Astrue, 513 F. Supp.2d 1137, 1148 (N.D. Cal. 2007)[10]; Hardy v. Daniels, 2006 WL 176531, *1 (D. Or. Jan. 23, 2006); Johnson v. Comm'r of Internal Revenue, 239 F. Supp.2d 1125, 1136 (W.D. Wash. 2002); Gasparutti v. United States, 22 F. Supp.2d 1114, 1116 (C.D. Cal. 1998).

Moreover, plaintiffs cannot in any event demonstrate prudential grounds

---

[9] Courts in other Circuits have agreed with the Ninth Circuit that failure to exhaust is a jurisdictional requirement. Trenerry v. IRS, No. 95-5150, 1996 WL 88459, at *1 (10th Cir. Mar. 1, 1996) (confirming that the district court lacked subject matter jurisdiction "where plaintiff has failed to exhaust her administrative remedies"); Robert VIII v. Dep't of Justice, No. 05-CV-2543, 2005 WL 3371480, at *7 (E.D.N.Y. Dec. 12, 2005) ("[A] court lacks subject matter jurisdiction over a requester's claim where the requester has failed to exhaust the administrative remedies provided under the FOIA statute."); Thomas v. IRS, No. 03-CV-2080, 2004 WL 3185320, *1 (M.D. Pa. Nov. 16, 2004) (concluding that the court lacked jurisdiction because plaintiff failed to exhaust his administrative remedies); Redding v. Christian, 161 F. Supp. 2d 671, 674 (W.D.N.C. 2001) (same); Jones v. Shalala, 887 F. Supp. 2d 210, 214 (S.D. Iowa 1995) (same).

[10] In their opposition, plaintiffs cite to a subsequent opinion in Davis v. Astrue, 250 F.R.D. 476 (N.D. Cal. 2008). That decision is, however, not on point. In that case, unlike here, plaintiff exhausted his administrative remedies after he filed the lawsuit, and he sought to amend his complaint. At that point, there was no dispute that he had exhausted his administrative remedies. Instead, the only issue was whether he could amend his complaint to include that claim.

excusing their failure to exhaust administrative remedies. In their opposition, plaintiffs seek to justify their failure to exhaust by arguing that their June 5, 2006 letter to OIP indicates that they had "clearly attempted to exhaust their administrative remedies." But, this is not a case in which there was simply a technical error in filing an administrative appeal. As explained supra at 16, in this case, the appeal was premature because at that time they (unlike the other plaintiffs) had not received any response to their request. It would be inconsistent with the purpose of exhaustion if the court were to allow a plaintiff to file a premature appeal complaining that it had not received a response and then allow the plaintiff to ignore the administrative process once it received a response. If Mr. Ayloush and CAIR had complaints about the adequacy of the search after the FBI provided its response, they should have filed another administrative appeal or, at very least, amended their pending appeal. The agency should not be required to read the mind of the requester as to what, if any problems, he may have with the agency's intervening response.[11] Moreover, dismissing their claim regarding the adequacy of the search would not impose any undue hardship on Mr. Ayloush or CAIR-California. They are free to file another FOIA request asking the FBI to search for any cross-references to them on CRS index or ELSUR index.

The challenges raised by Mr. Ayloush and CAIR-California to the adequacy of the search should, therefore, be dismissed for failure to exhaust their administrative remedies.

---

[11] In their opposition, plaintiffs claim that they were not aware of any exhaustion issue until defendants filed their motion for summary judgment on March 21, 2008. The defendants, however, raised exhaustion as an affirmative defense in their answer. See Answer (Dkt. No. 8)

## CONCLUSION

For the above stated reasons, this Court should grant defendants' motion for summary judgment and deny plaintiffs' cross motion for summary judgment.

                Respectfully Submitted,

                MICHAEL F. HERTZ
                Acting Assistant Attorney General

                JOHN TYLER
                Assistant Branch Director

                <u>s/Marcia K.Sowles</u>
                MARCIA K. SOWLES
                DC Bar No. 369455
                Senior Counsel
                United States Department of Justice
                Civil Division
                Federal Programs Branch
                P.O Box 883
                Washington, D.C. 20044
                Tel.: (202) 514- 4960
                Fax: (202) 616- 8470
                E-mail: marcia.sowles@usdoj.gov

                Attorneys for Defendants