MICHAEL F. HERTZ
Acting Assistant Attorney General
JOHN TYLER
MARCIA K. SOWLES
D.C. Bar No. 369455
Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20530
Telephone: (202) 514-4960
Facsimile: (202) 514-8470

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION; and UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendants. | No. SACV07-1088 CJC (ANx) <br><br> OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> Date:      April 20, 2009 <br> Time:      1:30 p.m. <br> Judge:     Hon. Cormac J. Carney |

1

2 <u>TABLE OF CONTENTS</u>

3 <u>PAGE(S)</u>

4

5 INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6 ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7 I.   THE FBI PROPERLY WITHHELD THE NON-
     RESPONSIVE PORTIONS OF CERTAIN
8    DOCUMENTS AS "OUTSIDE THE SCOPE"
     OF THE REQUEST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9
     A.   The Portions of the Documents Redacted as
10        "Outside the Scope" Are Not Responisve to
          Plaintiffs' FOIA Request . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11
     B.   The Withholding of Non-responsive Portions of
12        Documents Is Permissible Under the FOIA . . . . . . . . . . . . . 7

13   C.   If the Court Has Questions Regarding the
          Appropriateness of the Redactions, the
14        Court Should Conduct an *Ex Parte*, *In
          Camera* Review of the Documents . . . . . . . . . . . . . . . . . . . . 11

15
16 II.  THE CLAIMS OF CAIR-CALIFORNIA AND
     HUSSAM AYLOUSH SHOULD BE DISMISSED
     BECAUSE THEY FAILED TO EXHAUST THEIR
17   ADMINISTRATIVE REMEDIES . . . . . . . . . . . . . . . . . . . . . . . . 13

18
19 CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

20

21

22

23

24

25

26

27

28

1

2

## **TABLE OF AUTHORITIES**

3

**CASES**                                              **PAGE(S)**

4

Capital Tracing, Inc. v. United States, 63 F.3d 859 (9th Cir. 1995) ............................................ 15

5

Davis v. Astrue,
    250 F.R.D. 476 (N.D. Cal. 2008) ............................................................................................. 15

6

Davis v. Astrue,
7
    513 F. Supp.2d 1137 (N.D. Cal. 2007) ................................................................................. 15

8

Dunaway v. Webster,
    519 F. Supp. 1059 (N.D. Cal. 1981) ....................................................................................... 8

9

Gasparutti v. United States,
10
    22 F. Supp.2d 1114 (C.D. Cal. 1998) .................................................................................. 15

11

Hardy v. Daniels,
    2006 WL 176531 (D. Or. Jan. 23, 2006) ............................................................................. 15

12

Hidalgo v. FBI, 344 F.3d 1256 (D.C. Cir. 2003) .......................................................................... 14

13

Hymen v. Merit Systems Protection Board,
14
    799 F.2d 1421 (9th Cir. 1986) ............................................................................................... 15

15

Johnson v. Comm'r of Internal Revenue,
 239 F. Supp.2d 1125 (W.D. Wash. 2002) ................................................................................. 15

16

Jones v. Shalala,
17
 887 F. Supp. 2d 210 (S.D. Iowa 1995) ..................................................................................... 15

18

Posner v. Justice Department,  2 Govt. Disclosure Serv. ¶ 82,229
    (D.D.C. 1982) ................................................................................................................................ 7

19

Pratt v. Webster, 508 F. Supp. 751 (D.D.C. 1981) ........................................................................ 8

20

Redding v. Christian,
21
    161 F. Supp. 2d 671 (W.D.N.C. 2001) ................................................................................. 15

22

Robert VIII v. Dep't of Justice,
    No. 05-CV-2543, 2005 WL 3371480 (E.D.N.Y. Dec. 12, 2005) ................................... 15

23

Said v. Gonzales,
24
    No. C06-986MJP, 2007 WL 2789344 (W.D. Wash. Sept. 24, 2007) ............................ 15

25

State of Maine v. U.S. Department of Interior,
    298 F.3d 60 (1st Cir. 2002) ................................................................................................... 12

26

In re Steele,
27
    799 F.2d 461 (9th Cir. 1986) ............................................................................................. 3, 15

28

Thomas v. IRS,

No. 03-CV-2080, 2004 WL 3185320 (M.D. Pa. Nov. 16, 2004) ..................................... 15

Trenerry v. IRS,
No. 95-5150, 1996 WL 88459 (10th Cir. Mar. 1, 1996) .................................................... 15

**STATUTES**

5 U.S.C. § 552 ............................................................................................................ 2, 13

5 U.S.C. § 552(a)(6)(A)(ii) ............................................................................................. 13

5 U.S.C. § 552(b) ....................................................................................................... 9, 12

MICHAEL F. HERTZ
Acting Assistant Attorney General
JOHN TYLER
MARCIA K. SOWLES
D.C. Bar No. 369455
Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20530
Telephone: (202) 514-4960
Facsimile: (202) 514-8470

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION; and UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendants. | No. SACV07-1088 CJC (ANx) <br><br> OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> Date:   April 20, 2009 <br> Time:   1:30 p.m. <br> Judge:  Hon. Cormac J. Carney |

## INTRODUCTION

This is not an action, as plaintiffs suggest, concerning alleged illegal surveillance by the Federal Bureau of Investigation ("FBI") of Muslim leaders and organizations in the Los Angeles area.[1]  Instead, this is an action filed under the

---

[1] Memorandum of Points and Authorities in Support of Plaintiffs' Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 1.

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by six organizations and five
individuals seeking information pertaining to themselves from the FBI Headquarters
("FBIHQ") and its Los Angeles Field Office.[2]  In response to the request, the FBI
identified seventy-two (72) documents which contained references to one or more of
the plaintiffs.  In making its FOIA production, the FBI withheld the non-responsive
portions of twenty-seven (27) documents on the grounds that they were outside of
the scope of the request (i.e., the redacted portions did not contain information
responsive to plaintiffs' request).  In addition, with respect to the information found
to be responsive, the FBI withheld portions of the documents pursuant to
exemptions for protecting classified information, law enforcement materials,
internal agency matters, and personal privacy.

    In their opposition, plaintiffs do not challenge any of the redactions made on
the grounds that the information was exempt from disclosure.  Nor do they dispute
the adequacy of the search conducted on behalf of nine of the eleven plaintiffs.
Instead, plaintiffs argue that  (1) the FBI improperly withheld portions of the certain
documents on the grounds that they were non-responsive, and (2) the FBI should be
ordered to conduct further searches on behalf of two plaintiffs – Hassam Ayloush
and CAIR -  California .

    Plaintiffs' claim that the FBI improperly withheld portions of certain
documents has no factual or legal basis. While the FOIA requires an agency to
produce or identify records responsive to plaintiffs' request, it does not require an

---

    [2]  The organizations are Islamic Shura Council of Southern California,
Council on American Islamic Relations ("CAIR") - California, Islamic Center of
San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center,
Human Assistance and Development International, Inc.   The individual plaintiffs
are Mazammil Siddiqi, Shakeel Syeed, Hussam Ayloush, Mohammed Abdul
Aleem, and Rafe Husain.

1  agency to release portions of a document which are not responsive to plaintiffs'
2  request.  Here the documents at issue were not compiled in investigations of any of
3  the plaintiffs.  Instead, they are documents that relate to investigations of others.
4  The FBI provided plaintiffs with all responsive portions containing references to
5  any of the plaintiffs.

6       The challenge by Mr. Ayloush and CAIR - California to the adequacy of the
7  search for documents should be dismissed for lack of jurisdiction.  As explained in
8  defendants' initial brief, unlike the other plaintiffs, Mr. Ayloush and CAIR failed to
9  exhaust their administrative remedies.  Memorandum in Support of Defendants'
10  Motion for Summary Judgment ("Def. Mem.") (Dkt. No. 13-1), at 6-8.  Plaintiffs
11  offer no valid arguments to the contrary in their opposition.

12       Accordingly, this Court should grant defendants' motion for summary
13  judgment and deny plaintiffs' cross motion for summary judgment.

14                              **ARGUMENT**

15  **I.    THE    FBI    PROPERLY    WITHHELD    THE    NON-RESPONSIVE**
16  **PORTIONS OF CERTAIN DOCUMENTS AS "OUTSIDE THE SCOPE"**
17  **OF THE REQUEST.**

18       In this case, the FBI has withheld portions of 27 documents because they did
19  not contain information responsive to plaintiffs' request and were thus outside the
20  scope of their request.[3]  In their opposition, plaintiffs claim that the FBI improperly

21  _____

22       [3] The documents (and pages) containing such redactions are documents 1
23  (page ACLU 1), 2 (ACLU 2a-2), 3 (ACLU 3-4), 4 (ACLU 5), 5 (ACLU 6-7), 6
   (ACLU 8-9), 7 (ACLU 10-11), 8 (ACLU 13), 9 (ACLU 14-16), 10 (ACLU 17-18),
24  11 (ACLU 19-20), 12 (ACLU 21), 13 (ACLU 22), 13a (ACLU 23), 14 (ACLU 24-
25  25), 15 (ACLU 26), 16 (ACLU 27-28), 20 (ACLU 35-38), 21 (ACLU 38-41), 22
   (ACLU 42), 23 (ACLU 43), 24 (ACLU 45-46), 30 (ACLU 73-75), 33 (ACLU
26  101-102), 33 (ACLU 103-104), 35 (ACLU 105).   In addition, for some
27  documents, the FBI withheld an entire page because it did not contain any

28                                    3

1  withheld these portions and seek an order requiring the FBI to immediately disclose

2  the redacted information.  Pl. Mem. at 9-18.  Alternatively, they request the Court to

3  conduct an *in camera* review of the validity of the redactions.  Plaintiffs' claim is

4  predicated on erroneous assumptions regarding both the facts and the law.  First, the

5  record supports the FBI's determination that the information withheld is not

6  responsive to plaintiffs' request, and plaintiffs have presented no basis for this Court

7  to second-guess that determination.  Second, contrary to plaintiffs' suggestion, the

8  FOIA does not require an agency to disclose portions of a document which are not

9  responsive to plaintiffs' request.  It permits an agency, as the FBI did here, to make

10  "outside of the scope" redactions of the non-responsive portions of documents.

11  Third, to the extent that the Court has questions regarding such redactions, the

12  proper procedure is not to order them immediately disclosed.  Instead, the proper

13  remedy is to allow the FBI to submit the documents for *in camera, ex parte* review.

14  Finally, even if the Court were to find that the redacted portions are responsive, the

15  FBI should be allowed an opportunity to review those portions to determine whether

16  any of the information is exempt from disclosure under one or more of the statutory

17  exemptions.

18      **A.**    **The Portions of the Documents Redacted as "Outside the Scope"**

19             **Are Not Responisve to Plaintiffs' FOIA Request.**

20        Plaintiffs' bald claim that the redacted portions contain information

21  responsive to plaintiffs' request is not supported by the record in this case.  Plaintiffs

22  did not seek records relating to any investigations or surveillance of any Muslim or

23  Arab individuals and organizations.  Instead, they only sought "records relating or

24

25

26  responsive material.  <u>See</u> Exhibit A (Dkt. No. 31-36) to Second Declaration of
   David Hardy (letter to plaintiffs attaching chart indicating total number of pages in

27  each document and number of pages produced in whole in or part).

28                         4

referring to the [plaintiffs], including but not limited to records that document any collection of information about monitoring, surveillance, observation, questioning, interrogation, investigation and/or infiltration of any of the [plaintiffs] or their activities."  Exhibit A (Dkt. No. 13-6) to Declaration of David M. Hardy ("First Hardy Decl.") (Dkt. Nos. 13-2 to 13-5).  In conducting the search for responsive documents, the FBI conducted a search of its Central Records System ("CRS").  First Hardy Decl., ¶¶ 31-41, 45.  The mechanism that the FBI used to search the CRS was the general indices in Automated Case Support System ("ACS").  Id. ¶ 20.  The entries in the General Indices fall into two categories: (a) a "main" entry which corresponds to the subject of the file; and (b) a "reference" entry, sometimes called "cross-reference," which denotes "a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in a 'main' file on a different subject."  Id. ¶ 22.

In this case, all of the documents at issue were located through a search of CRS which identified these "cross-references."  Hardy Decl., ¶ 45.  Plaintiffs' names were simply mentioned or referenced in a file about another person or organization.  Id.  For example, document 5 (ACLU 6-7) is a witness statement made by another person in connection with an investigation.  The only reference to one of the plaintiffs is that certain individuals – who are not plaintiffs – "are all members of the Shura Council of California, an organization that acts as an umbrella over sixty-two (62) mosques."[4]  Similarly, document 4 (ACLU 14-15) is a witness statement

_____

[4] Copies of the pages at issue are found at Exhibit C-1 (Dkt. No. 38-5) to the Declaration of Tasneem Dohadwala (Dohadwala) (Dkt. No. 38-3).  See also Exhibit O to Hardy Decl. (Dkt. No. 18).  Defendants had filed the documents released to plaintiffs under seal to protect their privacy.  Plaintiffs have now filed many of the documents, with certain additional redactions, on the public record as Exhibits C-1 and C-2.  See Dohawala Decl., ¶¶ 17-18.

1    which mentions that that one of the plaintiffs – Muzammil Siddiqi and "another
2    leader in the Muslim community issued a fatwa and spoke against violence."
3    Hence, while plaintiffs assert that the redacted portions pertain to them, the record
4    indicates that the documents relate to investigations of others.

5            Nevertheless, plaintiffs try to support that claim that the redacted portions
6    were responsive by speculating on the contents of certain documents.  Specifically,
7    they note the fact that certain pages (ACLU 1, 13, 40 and 42) in four documents
8    contain similar information regarding a fundraiser presented by Life for Relief and
9    Development in cooperation with Islamic Shura Council of California (one of the
10   plaintiffs) and note that one of the speakers is Dr. Musammil Siddiqi (another
11   plaintiff). Pl. Mem. at 14.  Because some of the language in certain paragraphs on
12   these four pages is similar, the plaintiffs speculate that information contained in the
13   "outside of scope" redactions on two pages (ACLU 40 and 41) is identical to other
14   paragraphs which have been released in ACLU 1 and 22. Id. at 14, 16 n.8.
15   Plaintiffs' speculations, however, are not borne out by a review of the documents.[5]
16   The redacted paragraphs do not contain responsive information.  Indeed, this is
17   evident even without conducting an *in camera* review of the documents because, as
18   plaintiffs note, the  paragraph redacted as "outside the scope" on ACLU 40 is
19   classified as "SECRET."  Rather than suggesting, as plaintiffs do, that this indicates
20   that defendants erroneously classified information, this classification marking
21   indicates that the information is not the same as the information released in ACLU 1

22

23

24

25

26          [5] While defendants do not believe that a review of the documents is
     necessary, they are willing to submit any of the documents at issue for *ex parte, in*
27   *camera* review.

28                                        6

1  and 22.[6]

2      Plaintiffs also try to support their claim that the redacted portions contain

3  responsive material by suggesting that the FBI has conducted illegal surveillance of

4  various Muslim and Arab groups.  Pl. Mem. at 2 (citing to various newspaper

5  articles).   Based on these allegations, they suggest that the references made in the

6  responsive  records to fund-raising events and speeches by the plaintiffs indicate

7  that the FBI conducted such surveillance and investigations of them.  This

8  argument, however, is belied by the fact that the documents are issue were found in

9  files which merely "cross-referenced" the plaintiffs.  While plaintiffs may have a

10  curiosity as to why they may be mentioned in investigations of others, the FOIA

11  does not require an agency to explain why such records were created.

12      In short, there is no evidence in the record to support plaintiffs' bald assertion

13  that the pages and portions of pages withheld by the FBI as "outside the scope"

14  relate or refer to any of the plaintiffs, and the plaintiffs have offered no evidence to

15  the contrary.

16  **B.**    **The Withholding of Non-responsive Portions of Documents Is**

17      **Permissible Under the FOIA.**

18      While FOIA requires an agency to produce or identify material responsive to

19  plaintiffs' request, the FOIA does not require an agency to produce an entire

20  document simply because the name of the person or organization which is the

21  subject of the request is mentioned in the document.  Posner v. Justice Department,

22

23      [6] Moreover, plaintiffs' suggestion that the defendants intentionally withheld

24  responsive information as outside the scope of the request ignores the fact that the

25  FBI released responsive portions of the documents.  If the FBI, as plaintiffs

26  suggest, intentionally withhold information to cover-up allegedly illegal

surveillance activities, it could have simply failed to identify the documents at all.

27

28         7

1   2 Govt. Disclosure Serv. ¶ 82,229 (D.D.C. 1982) (attached as Exhibit A); <u>Dunaway</u>

2   <u>v. Webster</u>, 519 F. Supp. 1059, 1083 (N.D. Cal. 1981).  For example, in <u>Posner</u>,

3   plaintiff filed a FOIA request seeking documents relating to him.  As here, the FBI

4   found cross-references to plaintiff in an investigative file relating to another

5   individual or organization.  As here, the FBI considered "[o]nly those portion [sic]

6   which pertained directly to plaintiff were considered to be within the scope of the

7   request." <u>Id.</u> at 82,650.  The court upheld the redactions and granted summary

8   judgment for the defendant.

9       Similarly in <u>Dunaway v. Webster</u>, 519 F. Supp. at 1083, the FBI redacted

10  portions of documents which were found in files that contained cross-references to

11  the musical groups which were the subject of the FOIA request.  The court held that

12  under the FOIA "the agency is under no obligation to release an entire document

13  simply because the name of a person or organization that is the subject of the

14  request is mentioned in the document." <u>Id.</u>  Instead, the court found that an agency

15  may withhold material found in the documents "if that material is clearly and

16  without any doubt unrelated to the subject of the request." <u>Id.</u> Thus, while the court,

17  after conducting an *in camera* review of the documents, found that some portions of

18  the redacted portions were responsive, the court upheld the other redactions made

19  by the FBI as outside the scope of the request.

20      In their opposition, plaintiffs cite to an earlier opinion by Judge Parker, who

21  was the judge in <u>Posner</u>.  Pl. Mem. at 12 (citing <u>Pratt v. Webster</u>, 508 F. Supp. 751

22  (D.D.C. 1981), <u>rev'd on other grounds</u>, 673 F.2d 408 (D.C. Cir. 1982)).  In that case,

23  Judge Parker raised questions regarding the "outside of the scope" redactions made

24  by the FBI on certain documents, but he declined to ask the FBI to "reexamine and

25  reindex the documents" because plaintiff had not objected to those redactions. <u>Id.</u> at

26  762.  Plaintiffs' reliance on this case is misplaced for at least three reasons.  First, as

27

28                                      8

1 plaintiffs acknowledge, the statement made by Judge Parker is dictum.  Second, the
2 facts in that case are not analogous to the facts here.  In that case, unlike here, some
3 of the information which had been redacted as not responsive was contained in a
4 main file regarding an investigation of the plaintiff for the theft of government
5 property.  508 F. Supp. at 755, 762.  Third, Judge Parker's legal conclusion that
6 "[p]ortions of documents can be withheld only pursuant to specific, enumerated
7 exemptions" was based on a misunderstanding of 5 U.S.C. § 552(b).  508 F. Supp.
8 at 762.  That provision addresses an agency's authority to withhold responsive
9 information if the information is protected by one or more of the enumerated
10 exemptions.  It does not address plaintiffs' claim that an agency is required to
11 provide information that is not responsive.

12     Plaintiffs' reliance on the requirement that "[a]ny reasonably segregable
13 portion of a record shall be provided to any persons requesting such record after
14 deletion of the portions which are exempt," 5 U.S.C. § 552(b), is misplaced for the
15 same reason.  That provision only requires the agency to insure that when an agency
16 redacts portions of a responsive record as exempt, the agency releases any
17 "reasonably segregable portion" that is not exempt.  It does not mandate that the
18 agency release any non-responsive portions of documents.  None of the cases cited
19 by plaintiffs suggest otherwise.

20     Plaintiffs' discussion of the government's requirement to create a <u>Vaughn</u>
21 index is likewise misguided.  <u>See</u> Pl. Mem. at 16.  As the cases cited by plaintiffs
22 illustrate, this requirement relates to information withheld on the grounds that it is
23 exempt.  Plaintiffs have cited no cases in which this requirement has been extended
24 to cases in which an agency has withheld information as non-responsive.

25     Plaintiffs also try to find support for their claim by citing to two DOJ internal
26 guidance memoranda discussing the circumstances in which an agency may redact

27

28                                          9

1  portions of a record as outside of the record.  Pl. Mem. at 13-14, citing Exhibits I-1

2  (FOIA Update, Vol. XVI, No. 3 (1995) –  OIP Guidance: Determining the Scope of

3  a FOIA Request) and I-2 (DOJ, *FOIA Post, "FOIA Counselor Q & A* (2006)) (Dkt.

4  No. 38-6) to Dohadwala Decl.

5          The DOJ memoranda cited by plaintiffs do not support their claim.  As a

6  preliminary matter, the FOIA Update does not address an agency's <u>legal</u> obligations

7  under FOIA in regard to scoping determinations.  Rather, the FOIA Update provides

8  practical advice or guidance, explaining that the "scoping" determination depends in

9  part on the nature of the non-responsive material contained in the document.  Thus,

10  for an example, agencies were advised that, before making "scoping"

11  determinations, they  "should at least preliminarily review the contents of the

12  document pages in question with an eye toward FOIA exemption applicability."

13  FOIA Update, at 4.  "In some cases, the potentially 'scoped' documents might

14  contain little or no exempt information, such that they can be easily included in the

15  FOIA request as not."  <u>Id.</u>  On the other hand, where the potentially "scoped"

16  information contains exempt information, the processing of the non-responsive

17  material increases the burden on the agency.  The Q & A provides similar advice.  It

18  notes that the "'processing' of a record's content under the FOIA can be very labor-

19  intensive and time-consuming process" when the documents contain information

20  protected by an exemption.  In such circumstances, "scoping" the page for only

21  information responsive to the request can reduce the burden on the agency and

22  allow the agency to respond to the request more expeditiously.

23          In addition to the fact that the FOIA Update does not define an agency's legal

24  obligations with respect to scoping, the FBI's determinations in this case with

25  respect to scoping are in any event entirely consistent with the current guidance

26  provided by OIP.  Contrary to plaintiffs' suggestion, this is not a case in which the

27

28                                            10

1  FBI has narrowly interpreted plaintiffs' request by placing limitations on the type of

2  information about the plaintiffs which is responsive.  The FBI has interpreted

3  plaintiffs' request to include any reference to plaintiffs in any document in any file,

4  even if plaintiffs were not the subject of the file.  In fact, the plaintiffs were not the

5  subject of any of the files in which the documents at issue were contained in files.

6  Instead, the documents are contained in investigative files relating to other

7  individuals or organizations.  They simply contain reference to one or more of the

8  plaintiffs.  Moreover, this is not a case where the material which has been

9  determined to be out of scope contains little or no exempt information.[7]  As the

10  declaration of Mr. Hardy explains, the documents from which the FBI has withheld

11  pages or portions of pages based on "scoping" determinations are contained in

12  investigative files involving national security concerns.  A review of the redactions

13  made as outside the scope of the request shows that in almost all cases the redacted

14  information is classified as "SECRET."

15  　　Therefore, contrary to plaintiffs' claim, the redactions made by the FBI for

16  information outside the scope of plaintiffs' request is consistent with FOIA and DOJ

17  guidance.

18  　　**C.**　　**If the Court Has Questions Regarding the Appropriateness of the**

19  　　　　**Redactions, the Court Should Conduct an *Ex Parte, In Camera***

20  　　　　**Review of the Documents.**

21  　　In their brief, plaintiffs request the Court to order the FBI to disclose the

_____

23  　　[7] In their opposition, plaintiffs assert that if the portions redacted as outside
24  the scope of the request was protected by exemptions, the FBI should have
25  asserted those exemptions.  Pl. Mem. at 15 n.8.  This argument misses the
26  rationale for outscoping non-responsive portions of documents.  As the OIP
27  memoranda explain, if the material is outside the scope, requiring the agency to
28  review the non-responsive portions for exemptions would be an undue burden on
the agency and unnecessarily delay the processing of the request.  See supra at 10.

28  　　　　　　　　　　　　　11

1 │ portions of the documents which have been withheld as outside the scope of the
2 │ request. Pl. Mem. at 17-18. Such a remedy is clearly not appropriate and would be
3 │ premature for at least two reasons. First, if the Court believes that it needs
4 │ additional information to satisfy itself that the redactions are appropriate, it should
5 │ allow the FBI to submit the documents at issue (with a supplemental declaration if
6 │ necessary) for an *ex parte, in camera* review.

7 │     Second, even if the Court, after reviewing such *in camera* submissions, were
8 │ to find that some of the redacted material was responsive, the FBI should have an
9 │ opportunity to review the portions at issue to determine whether they contain
10 │ information protected by one or more of the statutory exemptions, 5 U.S.C. §
11 │ 552(b). Such review is critical here because a review of the "outside of the scope"
12 │ redactions reveals that in many cases the redacted information is classified.
13 │ Moreover, all of the documents at issue are from law enforcement files. Thus, they
14 │ may contain information which is protected by one or more of the various law
15 │ enforcement exemptions. For example, in some cases, the redactions are contained
16 │ in witness statements provided by a confidential source. See Hardy Decl., p. 59-60
17 │ (Document 6, ACLU 8-9). Release of certain portions may therefore reveal the
18 │ identity of the source. Similarly, a review of the unredacted portions reveals that all
19 │ of the documents contain information which would reveal the identity of third
20 │ parties whose name are protected by exemptions 6 and 7(C).

21 │     Plaintiffs cite no cases to support their request for the Court to order the
22 │ immediate release of information which the agency had initially determined to be
23 │ non-responsive without allowing the agency an opportunity to review material to
24 │ determine whether some of information is protected by one or more of the
25 │ exemptions. State of Maine v. U.S. Department of Interior, 298 F.3d 60, 72 (1st Cir.
26 │ 2002), is not on point. That is not a case in which an agency, as here, had withheld
27 │
28 │

1  certain portions as outside the scope of the request.  Instead, in that case, the agency

2  withheld portions which it had determined to be responsive under exemption 5 and

3  had failed to submit an adequate <u>Vaughn</u> index to support the exemption.

4      Accordingly, even if the Court were to find that some of the redactions at

5  issue contained responsive information, the Court should not order those portions

6  disclosed without providing the FBI an opportunity to review those portions to

7  determine whether they contain information protected by one or more the

8  exemptions.

9  **II.   THE CLAIMS OF CAIR-CALIFORNIA AND HUSSAM AYLOUSH**

10     **SHOULD BE DISMISSED BECAUSE THEY FAILED TO EXHAUST**

11     **THEIR ADMINISTRATIVE REMEDIES.**

12     Plaintiffs' claim that the Court should order the FBI to conduct searches of its

13  cross-references and ELSUR indices for documents related to Mr. Ayloush and

14  CAIR-California should be dismissed for failure to exhaust their administrative

15  remedies.  As explained in defendants' initial brief, unlike the other plaintiffs to

16  whom the FBI had sent initial letters stating that there were no responsive

17  documents, the FBI produced documents with redactions to CAIR-California and

18  Mr. Ayloush on June 13 and 14, 2007.  Def. Mem. at 6-8.  Although the FBI's letter

19  enclosing the documents explained that they could appeal the decision to the

20  Department of Justice's Office of Information and Privacy ("OIP") within 60 days,

21  they failed to file an appeal challenging the adequacy of the search.  Because these

22  two plaintiffs failed to exhaust their administrative remedies under 5 U.S.C. §

23  552(a)(6)(A)(ii) prior to filing a suit in court, the court lacks subject matter

24  jurisdiction to adjudicate their claims.  <u>In re Steele</u>, 799 F.2d 461, 465-66 (9th Cir.

25  1986).

26     In their brief, plaintiffs try to avoid this jurisdictional flaw by citing to the

27

28                                     13

1   appeal letter sent by plaintiffs to OIP on June 5, 2007.  Pl. Mem. at 20.[8]  While that

2   appeal challenged the adequacy of the searches for documents with regard to the

3   plaintiffs who had received responses from the FBI that it has searched the CSR and

4   found no responsive documents, the only issue raised regarding the requests by

5   these two plaintiffs was that the FBI had failed to respond timely to their request.

6   Despite the clear language in the appeal letter distinguishing between the two sets of

7   requesters — those that had received responses from the FBI stating that it had "no

8   responsive documents," and Mr. Ayloush and CAIR who had not yet received a

9   response from the FBI, plaintiffs assert that "[their] intent in the letter was to

10  challenge the adequacy of the search of *all* of the requesters, and the language

11  should be so construed."  Pl. Mem. at 20.  Plaintiffs' claim that their intent was to

12  challenge the adequacy of the search for all requesters, however, makes no sense

13  because at the time that it was written, the FBI had not yet responded to the requests

14  by Mr. Ayloush and CAIR-California.  Thus, it would have been premature for them

15  to challenge the adequacy of those searches.

16        Realizing the weakness of this claim, plaintiffs argue, in the alternative, that

17  even if the Court finds that Mr. Ayloush and CAIR-California failed to exhaust their

18  administrative remedies, it should not dismiss their challenge because "exhaustion

19  of administrative remedies is *not* a jurisdictional prerequisite to a FOIA suit."  Pl.

20  Mem. at 23(citing Hidalgo v. F.B.I., 344 F.3d 1256, 1258-59 (D.C. Cir. 2003)).

21  Based on this assertion, they argue that the Court should exercise jurisdiction on

22  prudential grounds.

23        Plaintiffs' reliance on Hidalgo is misplaced.  While the United States Court of

24  Appeals for the District of Columbia  has held that exhaustion of administrative

25  _____

26        [8] A copy of plaintiffs' appeal letter is attached as Exhibit G to Hardy

27  Declaration (Dkt. No. 13-8).

28                                      14

1  remedies is not a jurisdictional requirement, the Ninth Circuit Court of Appeals has

2  held that it is a jurisdictional requirement.  See Hymen v. Merit Systems Protection

3  Board, 799 F.2d 1421, 1423 (9th Cir. 1986), overruled on other grounds by Capital

4  Tracing, Inc. v. United States, 63 F.3d 859 (9th Cir. 1995); In re Steele, 799 F.2d at

5  465-66.[9]  Courts in this Circuit have, thus, dismissed FOIA claims on jurisdictional

6  grounds, where as here, plaintiffs failed to exhaust their administrative remedies.

7  See, e.g., Said v. Gonzales, No. C06-986MJP, 2007 WL 2789344, *4-5 (W.D.

8  Wash. Sept. 24, 2007); Davis v. Astrue, 513 F. Supp.2d 1137, 1148 (N.D. Cal.

9  2007)[10]; Hardy v. Daniels, 2006 WL 176531, *1 (D. Or. Jan. 23, 2006); Johnson v.

10  Comm'r of Internal Revenue, 239 F. Supp.2d 1125, 1136 (W.D. Wash. 2002);

11  Gasparutti v. United States, 22 F. Supp.2d 1114, 1116 (C.D. Cal. 1998).

12      Moreover, plaintiffs cannot in any event demonstrate prudential grounds

13

---

14     [9] Courts in other Circuits have agreed with the Ninth Circuit that failure to

15  exhaust is a jurisdictional requirement.  Trenerry v. IRS, No. 95-5150, 1996 WL

16  88459, at *1 (10th Cir. Mar. 1, 1996) (confirming that the district court lacked

17  subject matter jurisdiction "where plaintiff has failed to exhaust her administrative
remedies"); Robert VIII v. Dep't of Justice, No. 05-CV-2543, 2005 WL 3371480,

18  at *7 (E.D.N.Y. Dec. 12, 2005) ("[A] court lacks subject matter jurisdiction over a

19  requester's claim where the requester has failed to exhaust the administrative
remedies provided under the FOIA statute."); Thomas v. IRS, No. 03-CV-2080,

20  2004 WL 3185320, *1 (M.D. Pa. Nov. 16, 2004) (concluding that the court lacked

21  jurisdiction because plaintiff failed to exhaust his administrative remedies);
Redding v. Christian, 161 F. Supp. 2d 671, 674 (W.D.N.C. 2001) (same); Jones v.

22  Shalala, 887 F. Supp. 2d 210, 214 (S.D. Iowa 1995) (same).

23

24     [10] In their opposition, plaintiffs cite to a subsequent opinion in Davis v.
Astrue, 250 F.R.D. 476 (N.D. Cal. 2008).  That decision is, however, not on point.

25  In that case, unlike here, plaintiff exhausted his administrative remedies after he

26  filed the lawsuit, and he sought to amend his complaint.  At that point, there was
no dispute that he had exhausted his administrative remedies.  Instead, the only

27  issue was whether he could amend his complaint to include that claim.

28                        15

1    excusing their failure to exhaust administrative remedies.  In their opposition,

2    plaintiffs seek to justify their failure to exhaust by arguing that their June 5, 2006

3    letter to OIP indicates that they had "clearly attempted to exhaust their

4    administrative remedies."  But, this is not a case in which there was simply a

5    technical error in filing an administrative appeal.  As explained supra at 16, in this

6    case, the appeal was premature because at that time they (unlike the other plaintiffs)

7    had not received any response to their request.  It would be inconsistent with the

8    purpose of exhaustion if the court were to allow a plaintiff to file a premature appeal

9    complaining that it had not received a response and then allow the plaintiff to ignore

10   the administrative process once it received a response.  If Mr. Ayloush and CAIR

11   had complaints about the adequacy of the search after the FBI provided its response,

12   they should have filed another administrative appeal or, at very least, amended their

13   pending appeal.  The agency should not be required to read the mind of the

14   requester as to what, if any problems, he may have with the agency's intervening

15   response.[11]  Moreover, dismissing their claim regarding the adequacy of the search

16   would not impose any undue hardship on Mr. Ayloush or CAIR-California.  They

17   are free to file another FOIA request asking the FBI to search for any cross-

18   references to them on CRS index or ELSUR index.

19        The challenges raised by Mr. Ayloush and CAIR-California to the adequacy

20   of the search should, therefore, be dismissed for failure to exhaust their

21   administrative remedies.

22

23

24   _____

25        [11] In their opposition, plaintiffs claim that they were not aware of any
     exhaustion issue until defendants filed their motion for summary judgment on
26   March 21, 2008.  The defendants, however, raised exhaustion as an affirmative
27   defense in their answer.  See Answer (Dkt. No. 8)

28                                          16

1

**CONCLUSION**

2      For the above stated reasons, this Court should grant defendants' motion for

3 summary judgment and deny plaintiffs' cross motion for summary judgment.

4                    Respectfully Submitted,

5                    MICHAEL F. HERTZ
Acting Assistant Attorney General

6

7                    JOHN TYLER
Assistant Branch Director

8
                     s/Marcia K.Sowles

9                    MARCIA K. SOWLES
DC Bar No. 369455

10                  Senior Counsel
United States Department of Justice

11                  Civil Division
Federal Programs Branch

12                  P.O Box 883
Washington, D.C. 20044

13                  Tel.: (202) 514- 4960
Fax: (202) 616- 8470

14                  E-mail: marcia.sowles@usdoj.gov

15                  Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28                        17