**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA ET AL.**<br>**Plaintiffs,**<br>**vs.**<br>**FEDERAL BUREAU OF INVESTIGATION ET AL.**<br>**Defendants.** | **Case No.: SACV07-1088-CJC(ANx)**<br><br>**AMENDED ORDER REGARDING PLAINTIFFS' REQUEST UNDER THE FREEDOM OF INFORMATION ACT** |

## I. INTRODUCTION

This action arises from a request filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), by six organizations and five individuals—Islamic Shura Council of Southern California, Council on American Islamic Relations – California ("CAIR"), Islamic Center of San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center, Human Assistance and Development International, Inc., Dr.

Muzzammil Siddiqi, Shakeel Syed, Hussam Ayloush, Mohammed Abdul Aleem, and Rafe Husain (collectively "Plaintiffs"). Plaintiffs requested information reflecting any investigation or surveillance of them by Defendant Federal Bureau of Investigation (the "FBI").

On April 20, 2009, the Court held a hearing on the parties' cross-motions for summary judgment. Although the Government[1] represented to Plaintiffs that it had fully complied with its obligations under FOIA, Mr. Ayloush and CAIR challenged the adequacy of the Government's search for records responsive to their FOIA request. The remaining nine Plaintiffs challenged the Government's "outside the scope" redactions to documents the Government identified as responsive to their FOIA request. After the hearing, the Court ordered the Government to conduct additional searches on behalf of Mr. Ayloush and CAIR. The Court also determined that an *in camera* review of the documents the Government had either redacted or withheld was necessary to determine the Government's compliance with its obligations under the FOIA. The Court has now completed an *in camera* review of the documents and the Government's responses to Plaintiffs' FOIA request. [2]

The Government's *in camera* submission raises a very disturbing issue. The Government previously provided false and misleading information to the Court. The Government represented to the Court in pleadings, declarations, and briefs that it had

[1] The FBI and the United States Department of Justice, the other defendant in this case, are collectively referred to as the "Government."

[2] This order was originally issued *ex parte* and under seal on June 23, 2009. The Government appealed the Court's sealed order and filed an emergency *ex parte* motion for a stay of the Court's decision. The Ninth Circuit Court of Appeals granted an administrative stay on July 6, 2009 to allow the Ninth Circuit to review the merits of this Court's decision. The Ninth Circuit issued its opinion on March 30, 2011 and remanded the matter to this Court with instructions to revise its June 23, 2009 order to eliminate statements the Government has designated as containing national security and sensitive law enforcement information. *Islamic Shura Council of S. Cal. v. Fed. Bureau of Investigation*, __ F.3d __, No. 09-56035, 2011 WL 1136258, at *8 (9th Cir. Mar. 30, 2011). This order has been amended consistent with the Ninth Circuit's instructions.

searched its databases and found only a limited number of documents responsive to Plaintiffs' FOIA request and that a significant amount of information within those documents was outside the scope of Plaintiffs' FOIA request. The Government's representations were then, and remain today, blatantly false. As the Government's *in camera* submission makes clear, the Government located a significant number of documents that were responsive to Plaintiffs' FOIA request. Virtually all of the information within those documents is inside the scope of Plaintiffs' FOIA request. The Government asserts that it had to mislead the Court regarding the Government's response to Plaintiffs' FOIA request to avoid compromising national security. The Government's argument is untenable. The Government cannot, under any circumstance, affirmatively mislead the Court.

The United States Constitution entrusts the Judiciary with the power to determine compliance with the law. It is impossible for the Court to determine compliance with the law and to protect the public from Government misconduct if the Government misleads the Court. The Court simply cannot perform its constitutional function if the Government does not tell the truth.

## II. FACTUAL BACKGROUND

Since September 11, 2001, the United States has increased its intelligence-gathering activities in order to guard against another domestic terrorist attack. Many government agencies, including the National Security Agency, the Department of Homeland Security, and the FBI, have engaged in efforts to identify and investigate suspected terrorists. *See, e.g.*, Eric Lichtblau, *Inquiry Targeted 2,000 Foreign Muslims in 2004*, N.Y. Times, Oct. 31, 2008; James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005; Richard B. Schmitt & Donna Horowitz, *FBI Starts to Question Muslims in U.S. About Possible Attacks*, L.A. Times,

July 18, 2004. The existence of these programs has been widely reported and the subject of considerable controversy. Although the government maintains that its programs are critical to protecting national security, others, particularly within the Muslim and Arab communities, have argued that the government is engaging in illegal religious and ethnic profiling. *See, e.g.*, Richard B. Schmitt & Donna Horowitz, *FBI Starts to Question Muslims in U.S. About Possible Attacks*, L.A. Times, July 18, 2004; Richard A. Serrano, *Muslims Angered by FBI Radiation Checks at Mosques*, Seattle Times, Dec. 24, 2005.

Amidst this background, Plaintiffs, Muslim citizens and organizations in Southern California, submitted a joint FOIA request to the FBI on May 15, 2006. Plaintiffs lodged nineteen specific requests, the first of which was for "[a]ny records relating or referring" to themselves, "including but not limited to records that document any collection of information about monitoring, surveillance, observation, questioning, interrogation, investigation and/or infiltration of any of the Requesters or their activities." (Pl.'s Mem. Supp. Summ. J. Ex. A-1 at 8–10.)

Nearly a year passed before the Government responded to Plaintiffs' FOIA request. On April 27, 2007, the Government notified nine of the Plaintiffs that "[n]o records responsive" to their FOIA request were located in its search of its main files of the Central Records System. (*Id.* Ex. A-3.) However, in May 2007, the Government notified CAIR and Mr. Ayloush that it had located a single responsive document for each of them. (*Id.* Exs. A-4, A-5.) In June 2007, the Government released portions of these documents. Mr. Ayloush received three pages of the document responsive to his request, and CAIR received one page. (*Id.* Exs. A-7, A-8.) The Government redacted portions of these four pages pursuant to Subsections (b)(2), (b)(6), and (b)(7)(C) of FOIA, which permit the Government to withhold internal agency rules and practices, agency personnel files, and law enforcement records that could constitute an unwarranted invasion of personal privacy, respectively. (*Id.*)

In 2008, after Plaintiffs initiated this action, the Government conducted additional searches on behalf of the nine Plaintiffs whom the Government previously informed that it had not located responsive documents in the Central Records System. Based on the Government's additional searches, the Government informed these nine plaintiffs that it located responsive documents containing cross-references to these Plaintiffs. The Government produced approximately 120 pages of these documents. (*Id.* Ex. C.) Some of the information was redacted pursuant to specific exemptions under the FOIA, including Subsections (b)(7)(C), (b)(7)(D) and (b)(7)(E), which permit the Government to withhold law enforcement records that could constitute an unwarranted invasion of personal privacy, could reasonably be expected to disclose the identity of a confidential source, or would disclose techniques and procedures for law enforcement investigations or prosecutions, respectively. (*Id.*) However, many of the pages of the documents were heavily redacted or withheld entirely as "outside the scope" of Plaintiffs' FOIA request. (*Id.*) Plaintiffs did not challenge the Government's specific FOIA exemptions, but asserted that the extensive "outside the scope" redactions were improper. Plaintiffs argued that it was difficult to understand how so much information could be non-responsive to their extremely broad request. The Government maintained that the information redacted or withheld as "outside the scope" was "non-responsive" to their request. (*Id.* Ex. B-1.)

Unable to resolve their dispute, the parties filed cross-motions for summary judgment. In their motion for summary judgment, Plaintiffs raised two principal issues. First, Plaintiffs challenged the propriety of the Government's use of "outside the scope" redactions. Second, Mr. Ayloush and CAIR, for whom the Government had not performed additional searches, challenged the adequacy of the Government's search for responsive information.

In its motion for summary judgment and its opposition to Plaintiffs' motion for summary judgment, the Government represented to the Court that it had complied with its obligations under the FOIA. The Government represented to the Court that it "provided plaintiffs with all responsive portions [of documents] containing references to any of the plaintiffs," and that the redacted portions of the documents did not "relate or refer to any of the plaintiffs." (Opp'n to Pl.'s Mot. Summ. J. at 3, 7.) The Government maintained that because the documents "relate to investigations of others," the material redacted as "outside the scope" was "not responsive" to Plaintiffs' FOIA request. (*Id.* at 3.) The Government insisted that it "interpreted plaintiffs' request to include any reference to plaintiffs in any document in any file, even if plaintiffs were not the subject of the file," and provided all responsive material. (*Id.* at 11.) Finally, the Government represented to the Court that, even if the redacted information were responsive to Plaintiffs' request, "one or more of the various law enforcement exemptions"[3] under the FOIA might nonetheless apply. (*Id.* at 12.)

With respect to Mr. Ayloush and CAIR, the Government represented to the Court that it had performed adequate searches on their behalf. The Government submitted a declaration from David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division at the FBI, stating under oath that the Government had identified one document for both Mr. Ayloush and CAIR in its search of the Central Records System, four pages of which were released. (Decl. of David M. Hardy, Mar. 21, 2008 ("First Hardy Decl.") ¶¶ 40–41, 44.) The Government further argued that Mr. Ayloush and CAIR could not challenge the adequacy of the Government's search because they failed to exhaust their administrative remedies. (Opp'n to Pl.'s Mot. Summ. J. at 13.)

---

[3] The exemptions identified in Subsections (b)(7)(A)–(F) of FOIA, which permit the Government to withhold various categories of information pertaining to its law enforcement duties and practices, are commonly referred to as the law enforcement exemptions.

On April 20, 2009, the Court issued an order following the hearing on the parties' cross-motions for summary judgment. Based on the Government's representations in its briefs and Mr. Hardy's declaration, the Court stated in its order that the Government initially "did not locate responsive documents" for nine of the Plaintiffs, but based on later searches identified approximately 120 pages of responsive documents for those Plaintiffs. (Ct. Order, Apr. 20, 2009 at 2–3.) The Court also stated that the Government located approximately four pages of responsive documents for Mr. Ayloush and CAIR. (*Id.* at 2.) The Court concluded that the Government had not adequately supported its use of "outside the scope" redactions to withhold allegedly non-responsive information. (*Id.* at 7.) The Court determined that an *in camera* review of the documents the Government had either redacted or withheld was necessary to determine the propriety of the Government's "outside the scope" redactions. (*Id.*) The Court also ordered the Government to conduct the same searches it performed on behalf of the other nine plaintiffs for Mr. Ayloush and CAIR. (*Id.*)

Shortly after the hearing, the Government provided the Court with both the unaltered documents and an additional declaration from Mr. Hardy to support the Government's redactions. Mr. Hardy's second declaration stated, for the first time, that the Government withheld "responsive information" from the Plaintiffs. (Decl. of David M. Hardy, May 1, 2009 ("Second Hardy Decl.") ¶¶ 1, 15.) The Government's *in camera* submission revealed that the Government initially misled the Court in two material respects. First, the Government's representations regarding its use of "outside the scope" were inaccurate. The Government initially represented to the Court that the Government provided all information that "include[d] any reference to plaintiffs in any document in any file," and any information withheld as "outside the scope" of Plaintiffs' request was "non-responsive." (Opp'n to Pl.'s Mot. Summ. J. at 3, 11.) Mr. Hardy's second declaration stated that, in truth, documents "that would otherwise be considered to be responsive to plaintiffs' request" were excluded from production or redacted as "outside

the scope." (Second Hardy Decl. ¶ 5.) Second, the Government's representations regarding the number of responsive documents were false. The Government previously represented that it had identified only a limited number of documents responsive to Plaintiffs' FOIA request. (First Hardy Decl. ¶¶ 19, 31–43, 45–46.) Mr. Hardy's second declaration acknowledged that the Government had identified a large number of additional responsive documents, but that the Government did not disclose the existence of these other documents. (Second Hardy Decl. ¶ 13.)

Realizing the Government misled the Court, the Court immediately scheduled and held an *in camera* hearing on May 14, 2009 with counsel for the Government. The Court indicated that it did not believe that the Government had any authority to mislead the Court. The Government argued otherwise and requested an opportunity to brief the issue for the Court. The Government filed its supplemental brief on June 19, 2009, and the Court held an additional *in camera* hearing on June 23, 2009. After carefully considering the evidence and arguments of the Government, the Court is convinced that what the Government did here was wrong.

## III. ANALYSIS

Under the United States Constitution, each branch of government has separate and distinct powers, and Article III vests the Judiciary with the ultimate authority to interpret the law. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch.) 137, 177 (1803). While the Constitution demands separation of powers, "it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring). As the United States Supreme Court observed, the Executive Branch's refusal to comply with judicial

processes and procedures absent a compelling justification can "upset the constitutional balance of 'a workable government' and gravely impair the role of the courts under Article III." *United States v. Nixon*, 418 U.S. 683, 707 (1974). "The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts . . . ." *Id.* at 709.

Numerous statutes, rules, and cases reflect the understanding that the Judiciary cannot carry out its essential function if lawyers, parties, or witnesses obscure the facts. *See, e.g.*, 18 U.S.C. § 401 (2006) (authorizing courts to punish as contempt behavior that "obstruct[s] the administration of justice"); 18 U.S.C. § 1001 (2006) (criminalizing false, deceptive, or fraudulent statements in government documents or to government officials); Fed. R. Civ. P. 11 (requiring that the "factual contentions" contained in any filing with the court have "evidentiary support"); Cal. R. Prof'l Conduct 5-200 ("[A] member shall not seek to mislead the judge, judicial officer, or jury by artifice or false statement of fact or law."); *Napue v. Illinois*, 360 U.S. 264, 270 (1959) ("The principle that a State may not knowingly use false evidence" is "implicit in any concept of ordered liberty."); *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993) ("Lawyers representing the government . . . serve truth and justice first."). Courts cannot determine what the law is without accurate facts. For this reason, judges must fiercely protect the integrity of the legal process.

The Government contends that the FOIA permits it to provide the Court with the same misinformation it provided to Plaintiffs regarding the existence of other responsive information or else the Government would compromise national security.[4] That

---

[4] The Government also argues that its initial representations to the Court were not technically false. Counsel attempts to distinguish between information that is "factually non-responsive" and "legally non-responsive" pursuant to the FOIA. This argument is not credible. The Government cannot negotiate the truth with the Court. Based on the Government's representations, the Court initially understood that the

argument is indefensible.  Although the FOIA allows the Government to withhold certain categories of documents from requestors such as Plaintiffs pursuant to statutory exemptions, 5 U.S.C. § 552(b), or exclusions, 5 U.S.C. § 552(c), the FOIA does not permit the Government to withhold responsive information from the Court.  *Islamic Shura Council of S. Cal. v. Fed. Bureau of Investigation*, __ F.3d __, No. 09-56035, 2011 WL 1136258, at *4–5 (9th Cir. Mar. 30, 2011) ("We thus agree with the district court that the FOIA does not permit the government to withhold information from the court.").

The FOIA requires government agencies to make records available to the public upon reasonable request, 5 U.S.C. § 552(a)(3), but exempts nine categories of information from that disclosure obligation, *see id.* § 552(b)(1)–(9).  For example, a government agency need not disclose records related to the agency's internal personnel rules and practices, *id.* § 552(b)(2), trade secrets or privileged or confidential commercial information, *id.* § 552(b)(4), personnel and medical files or similar files in which disclosure would constitute an unwarranted invasion of personal privacy, *id.* § 552(b)(6), or information compiled for law enforcement purposes to the extent that such information might interfere with specific law enforcement activities or individual privacy or fairness interests, *id.* § 557(b)(7)(A)–(F).  As a general rule, "[w]hen a [FOIA] request is made, an agency may withhold a document, or portions thereof, only if the information contained in the document falls within one of nine statutory exemptions [identified in Subsection (b) of FOIA] to the disclosure requirement."  *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980).  The presumption under the FOIA is that the Government must either provide all responsive information to the requester or identify the statutory and factual basis for not doing so.  *Id.* at 742.  "The FOIA

---

Government had located only a limited number of documents that related to Plaintiffs, and some of the information within these documents could be withheld because it related or referred to matters beyond the scope of Plaintiffs' FOIA request.  The Court's April 20, 2009 order reflects this understanding.  The Government's *in camera* submission clarified that this understanding was not accurate, and the Government fundamentally misled the Court regarding the facts of this case.

exceptions are to be narrowly construed and the burden is on the agency to justify its action." *Islamic Shura Council of S. Cal.*, 2011 WL 1136258, at *4 (citing *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009)).

An agency is entitled to interpret FOIA exemptions and withhold information pursuant to its belief that a certain FOIA exemption applies. *See generally* 5 U.S.C. § 552(a). Any agency decision regarding the applicability of an exemption, however, is subject to *de novo* review by a district court. 5 U.S.C. § 552(a)(4)(B). The agency bears the burden of establishing that an exemption applies, by oral testimony or affidavits with "reasonably detailed descriptions of the documents" that "allege facts sufficient to establish an exemption." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008). If the agency's affidavits are "too generalized," the FOIA authorizes the district court to examine the contents of agency records *in camera* to determine whether the records or part of the records were properly withheld. *Id.*; *see also* 5 U.S.C. § 552(a)(4)(B). The district court has the authority to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Implicitly authorizing the Government to lie to the Court is "antithetical" to the independent judicial review that Congress expressly provided for in the FOIA statute. *Id.* § 552(a)(B)(4); *Islamic Shura Council of S. Cal.*, 2011 WL 1136258, at *5.

In addition to the nine statutory exemptions, Congress added Subsection 552(c) to the FOIA in 1986 to allow an agency to "treat the records as not subject to the FOIA requirements" for certain limited categories of information including records involving (1) ongoing criminal investigations, (2) informant identities, and (3) classified foreign intelligence or international terrorism information. *See* 5 U.S.C. § 552(c)(1)–(c)(3). Subsection 552(c) provides:

  > (c)(1) Whenever a request is made which involves access to records described in subsection (b)(7)(A) and—
>
> > (A) the investigation or proceeding involves a possible violation of criminal law; and
> >
> > (B) there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings,
>
> the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.
>
> (c)(2) Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.
>
> (c)(3) Whenever a request is made which involves access to records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism, and the existence of the records is classified information as provided in subsection (b)(1), the Bureau may, as long as the existence of the records remains classified information, treat the records as not subject to the requirements of this section.

5 U.S.C. § 552(c). Subsection (c) thus applies in the rare circumstance in which identifying the basis for withholding information or even disclosing the existence of a

record could itself compromise an ongoing criminal investigation, the identity of a confidential informant, or classified foreign intelligence or international terrorism information. *Id.* In this limited context, the FOIA authorizes an agency to withhold information from a requester without disclosing its basis for doing so. *Id.* Nothing in Subsection (c), however, allows an agency to withhold information from the Court.

Contrary to the Government's suggestion, Subsections (a), (b), and (c) do not grant the Government a license to lie to the Court. Indeed, Subsection (d) strongly implies that Congress intended to prohibit an agency from misleading the Judiciary. Subsection (d) states that "[t]his section is not authority to withhold information from Congress." 5 U.S.C. § 552(d). Congress expressly prohibited any agency from withholding information from the Legislative Branch. The notion that Congress would implicitly authorize an agency to mislead one branch of government and, at the same time, expressly prohibit withholding information from another co-equal branch is illogical.

Interpreting the FOIA to allow the Government to mislead the Judiciary would also raise a serious constitutional question. Whenever possible, a statute must be interpreted in a way that avoids an unconstitutional result. *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30 (1937) ("We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act."). As discussed above, an agency's decision regarding the applicability of a particular FOIA exemption is subject to *de novo* review by a district court. 5 U.S.C. § 552(a)(4)(B). Judicial review of an agency's decision to withhold information is meaningless if it is based on misinformation. When the Executive Branch provides a court with misinformation it impermissibly usurps the Judiciary's authority "to say what the law is." *Marbury*, 5 U.S. (1 Cranch.) at 177; *see also The Federalist No. 51* (James Madison) (1788) ("[T]he great security against a gradual concentration of the several powers in the same [branch of

government], consists in giving to those who administer each [branch] the necessary constitutional means and personal motives to resist encroachments of the others.…Ambition must be made to counteract ambition.") The FOIA cannot be interpreted to allow the Government to insulate itself from the meaningful judicial review the FOIA expressly mandates.

The Government also relies on the Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act (the "Attorney General's Memorandum") to support its position, but its reliance on the Memorandum is entirely misplaced. *See* U.S. Dep't of Justice, *Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act* (hereinafter "*Attorney General's Memorandum*") (1987), *available at* http://www.justice.gov/oip/86agmemo.htm. The Attorney General's Memorandum, promulgated by Attorney General Edwin Meese III, contains the Executive Branch's interpretation of the amendments to the FOIA that broaden the "law enforcement exemptions," 5 U.S.C. § 552(b)(7), and add new "exclusions" to protect certain categories of especially sensitive law enforcement information, 5 U.S.C. § 552(c)(1)–(3). *Attorney General's Memorandum* at 2. The Attorney General's Memorandum describes at length how the 1986 amendments to the FOIA provide better protection for sensitive law enforcement information and strike "a more refined balance" between the general public interest in an open government and the necessity of withholding some information to protect legitimate government interests and individual privacy interests. *Id.* at 30.

The purpose of the Attorney General's Memorandum is to guide federal agencies' implementation of the 1986 amendments. *Id.* at 2. For example, the Attorney General's Memorandum states that the amendments extend the law enforcement exemptions "potentially to all 'records or information compiled for law enforcement purposes,'" not just "investigatory records" that summarize or compile that information. *Id.* at 5.

Therefore, the Attorney General's Memorandum instructs, "agencies should now focus on the content and compilation purpose of each item of information involved, regardless of the overall character of the record in which it happens to be maintained." *Id.* at 6. In addition, the Attorney General's Memorandum notes that records related to routine law enforcement activities such as law enforcement manuals, which previously could not be exempted because they did not relate to a specific investigation, "should now readily satisfy the exemption's threshold requirement." *Id.* at 7. The Attorney General's Memorandum also states that the new "exclusion provisions" in Subsection (c) "provide necessary protection in those situations in which the mere exemption protection afforded" under Subsections (b)(7)(A) or (b)(7)(D) of the FOIA "[are] inadequate to the task." *Attorney General's Memorandum* at 19, 23, 25. In instances in which reliance on a statutory exemption as the basis for withholding information could "tip off" a requester to the existence of a criminal investigation, confidential informant, or classified information, potentially compromising the very interests that the law enforcement exemptions seek to protect, the exclusions in Subsection (c) afford additional protection. *Id.* at 20, 23, 25. Where a Subsection (c) exclusion applies, the policy authorizes an agency to mislead a requester about the existence of responsive documents. The Attorney General's Memorandum states that, if Subsection (c) applies, "the records in question will be treated, as far as the FOIA requester is concerned, as if they did not exist." *Id.* at 22; *see also id.* at 24, 25. A "requester can properly be advised in such a situation that 'there exist no records responsive to your FOIA request.'" *Id.* at 27. The Government's policy is to inform a requesting party that there are no records in instances in which the agency determines that "disclosure of the very existence of the records in question 'could reasonably be expected to interfere with enforcement proceedings,'" or "the mere act of invoking Exemption 7(D) in response to a FOIA request tells the requester that somewhere within the records encompassed by the scope of his particular request there is reference to at least one confidential source," or "the very existence or nonexistence, is itself a classified fact." *Id.* at 20–21, 23, 25.

Despite its broad interpretation of the law enforcement exemptions and the new Section 552(c) exclusions, the Attorney General's Memorandum does not condone lying to the Judiciary. To the contrary, the Attorney General's Memorandum prohibits such conduct. Under the policy interpreting Subsection (c), an agency can mislead a requester, but only a requester. "[T]he records in question will be treated, *as far as the FOIA requester is concerned*, as if they did not exist." *Id.* at 22 (emphasis added); *see also id.* at 24, 25. The policy requires that the agency provide the reviewing district court with accurate facts. The Attorney General's Memorandum provides a detailed procedure to ensure that agency determinations regarding the invocation of the Subsection (c) exclusions can be reviewed, either in an administrative proceeding or before a district court, based on accurate facts without compromising the purposes of the exclusions. *Id.* at 27–30. The policy mandates that "all judicial review of suspected exclusion determinations must be conducted through *in camera* court filings submitted directly to the judge." *Id.* at 29. To prevent requesters from "deduc[ing] whether an exclusion was employed at all in a given case," "it shall be the government's standard litigation policy in the defense of FOIA lawsuits that wherever a FOIA plaintiff raises a distinct claim regarding the suspected use of an exclusion, the government routinely will submit an *in camera* declaration addressing that claim, one way or the other." *Id.* at 29–30. "Where an exclusion was not in fact employed, the *in camera* declaration will simply state that fact . . . ." *Id.* at 30. The policy does not suggest that the agency can allow a court to labor under the same misleading representations it makes to the requester in order to avoid "tipping off" the requester.

The Government has no legitimate basis for deceiving the Court. The Court is well equipped to deal with sensitive and classified information. Federal courts routinely seal warrants and supporting affidavits in order to avoid compromising ongoing investigations. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir. 1989). Under the Classified Information Procedures Act, federal courts manage the

discovery and admission of classified documents in criminal cases. 18 U.S.C. app. § 3 (2006). Federal courts also examine highly classified information in terrorism-related cases, including the cases involving the National Security Agency's wiretapping program. *See, e.g.*, *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190 (9th Cir. 2007). These are but a few examples of the highly sensitive matters that federal courts deal with on a regular basis. The Court is more than competent to evaluate and protect the information that the Government eventually provided. Filing an *in camera* declaration concurrently with its public filings would not have compromised national security, and the Government's argument to the contrary is simply not credible. At the outset of this case, the Government should have given the Court accurate information. The Court can be trusted with the truth.

The Government argues that there are times when the interests of national security require the Government to mislead the Court. The Court strongly disagrees. The Government's duty of honesty to the Court can never be excused, no matter what the circumstance. The Court is charged with the humbling task of defending the Constitution and ensuring that the Government does not falsely accuse people, needlessly invade their privacy or wrongfully deprive them of their liberty. The Court simply cannot perform this important task if the Government lies to it. Deception perverts justice. Truth always promotes it.

**IV. CONCLUSION**

The Government should not have misled the Court, and the Court now must take the steps necessary to remedy the Government's deception. The Court's April 20, 2009 order, which reflects the Court's erroneous understanding of the facts of this case, is VACATED in its entirety. With respect the parties' cross-motions for summary

judgment, the Court concludes that Plaintiffs are not entitled to any further information regarding the Government's previous searches for documents, and the Government does not need to conduct any additional searches for responsive documents. Plaintiffs are advised that the Government located more documents responsive to their FOIA request. However, disclosing the number and nature of the documents the Government possesses could reasonably be expected to compromise national security. For this same reason, the Government does not have to confirm or deny whether any of the Plaintiffs is a subject or material witness in any criminal investigation.

Contrary to the Government's assertion, disclosing that the Government lied to the Court and that the Government does have other documents that are responsive to the Plaintiffs' FOIA request does not compromise national security. Plaintiffs initiated this action because they believe that some or all of them are being unfairly investigated by the FBI. Indeed, Plaintiffs retained the ACLU to vindicate their rights and obtain information regarding any investigation of them. The Government has also told Plaintiffs that there are some documents responsive to their FOIA request. The Government also invoked several of the law enforcement exemptions in the *Vaughn* index that it provided to the Plaintiffs, disclosing that information contained in responsive documents was compiled "for law enforcement purposes" and that sharing the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), or "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source," *id.* § 552(b)(7)(D). By disclosing that there are other documents that are responsive to Plaintiffs' request, Plaintiffs will not learn anything they do not already know.

DATED: April 27, 2011

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE