# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE CORMAC J. CARNEY, JUDGE PRESIDING

ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA ET AL,

Plaintiff,

vs. ) No. SACV 07-1088-CJC

FEDERAL BUREAU OF INVESTIGATION ET AL,

Defendant.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

WEDNESDAY, APRIL 27, 2011

9:30 A.M.

Maria Beesley-Dellaneve, RPR, CSR 9132
Official Federal Reporter
Ronald Reagan Federal Building, room 1-053
411 West 4th Street
Santa Ana, California 92701
(714) 564-9259

**APPEARANCES OF COUNSEL:**

FOR THE PLAINTIFF: ACLU OF SOUTHERN CALIFORNIA
BY: AHILAN ARULANANTHAM, ESQ.
1313 W. 8TH STREET
LOS ANGELES, CALIFORNIA 90017
(213)977-5297

FOR THE DEFENDANTS: U.S. DEPARTMENT OF JUSTICE
BY: MARCIA KAY SOWLES, ESQ.
and JOHN TYLER
20 MASSACHUSETTS AVE., NW
ROOM 7108
WASHINGTON, DC 20530
(202)514-4960

SANTA ANA, CALIFORNIA; WEDNESDAY, APRIL 27, 2011

9:30

**THE CLERK:** Item one, SACR 07-01088-CJC. Islamic Shura Council of Southern California, et al versus Federal Bureau of Investigation, et al.

Counsel, please state your appearances for the record.

**MR. ARULANANTHAM:** For the plaintiffs, Ahilan Arulanantham. Good morning, Your Honor.

**THE COURT:** Hello, sir.

**MS. SOWLES:** For the defendant Marcia Sowles, and with me is John Tyler, who will also be representing the government. He is the Department of Justice also.

**THE COURT:** Good morning to both of you.

Well, hopefully you have had enough time to review the order. I realize that from the plaintiff's standpoint, I haven't said enough and you wish you had more information. And I realize from the government's position that I have said way too much. Let me just tell you, I try to do my best to determine what the law requires in this situation, and it is what it is.

I understand that the plaintiffs are considering whether to file a petition for rehearing or en banc review with the Ninth Circuit. Not to try to persuade you against doing that in any way, but I think you should know that my original order did not disclose the nature, content, or number of the documents that were withheld, for whatever that's worth.

I'm not sure I can really say anything more than what I have already said in the order. But I did want to at least be available to answer any questions that the plaintiffs or the government has, or to give both sides an opportunity to state what they want to say on the record if they have any objections, or thoughts.

Why don't I start off with plaintiffs first. If you would approach the lectern, that would be great.

**MR. ARULANANTHAM:** Thank you, Your Honor. It's a little difficult for me to react. It's the same thing I told to the Ninth Circuit, because it's still playing in the dark, and obviously a lot has gone on between the government and the Court, and I'm only now coming to grips with some of that as I read this opinion.

So I have a number of questions. It's going to be more disjointed than I would like, but I hope you would indulge me in that.

**THE COURT:** Of course I will. I don't want to frustrate you, I might not be able to answer some of the questions, but I'll tell you if I can or I can't.

**MR. ARULANANTHAM:** Great, Your Honor. I was going to ask you if the time for appeal is tolled. I think that's irrelevant now because the Court has withdrawn the prior ruling consistent with the tentative from two years ago. And this is the appealable order if there is an order to appeal. Is that correct,

Your Honor?

**THE COURT:** That would be my understanding, because I have vacated that prior order because it has inaccurate information in it.

**MR. ARULANANTHAM:** Okay, Your Honor.

Two years ago there were two issues generally. One was the documents that were withheld as outside the scope, and the other one was the new -- well, the request for expanded searches for Mr. Ayloush and CAIR. If I understand this correctly, the Court's holding is that the outside the scope redactions are actually properly covered by another FOIA exemption. So although they were not outside the scope, all of those are properly withheld under a different FOIA exemption. Is that correct, Your Honor?

**THE COURT:** It is a fair question, and the way you phrased it, it's going to be difficult for me to answer it in light of the Ninth Circuit's order. My original order would have answered that question, but given the Ninth Circuit's order I feel a little uncomfortable responding to it.

What I can say, so you know, is based on the information I received in classified hearings, closed hearings, that the government has complied with its obligations under FOIA. And the plaintiffs will not be receiving anymore information. There won't be a revised Vaughn Index. From that standpoint, I have determined we're done. And if plaintiffs disagree with that, then

you have, obviously, your right to appeal.

But I sympathize with your position. You are walking in the dark, or shooting in the dark. And I don't know what to tell you other than I wanted to provide you more information but the Ninth Circuit said I can't. And that's why I made the earlier comment to you is, I don't want you to think that my original order disclosed the nature, content, or number of those documents. It did not.

**MR. ARULANANTHAM:** So, Your Honor, it's extremely awkward in a way, but I think it might be helpful for me to ask questions. I feel like I'm crossing the judge. It's totally bizarre. Just so that I can make clear what the limitations are in Your Honor's view about what can and cannot be put in this order so that it may make a cleaner record, or help us if we do want to appeal.

And I don't actually know. I feel like I want to talk to other people within the -- or the ACLU and my clients to see what our position is about 552(c) in general. There is very little, if any, briefing. I don't recall it. So I don't know if it's there somewhere and I missed it. Prior to the Ninth Circuit's opinion, it wasn't clear to me that that was a big part of this case. It's not one of the main exemptions that's being claimed. So it's all a little bit new to me.

But if I understand it correctly then, given the Court's view and the Ninth Circuit's view as the courts interpreted it,

you cannot tell us what the exemption is that the government has claimed, which of the exemptions under 552 as a whole the government has claimed with respect to the information that was originally redacted as outside the scope.

**THE COURT:** You are correct. And my original order would have given you that information. So I don't know if that's helpful in your consideration, whether you want to file a petition on the Ninth Circuit's ruling or not. I did not believe at the time that anything in my order in any way compromised national security. And it's unclear to me -- in fact, I don't believe the Ninth Circuit said that anything in my order would have compromised national security, but I do believe the Ninth Circuit said there is confidential information that the plaintiffs do not have the right to know about it. And my original order disclosed what we'll call confidential information.

**MR. ARULANANTHAM:** Thank you, Your Honor. Just a few other things then.

In the prior documents, in many cases the government claimed other exemptions, (b)(6) and (b)(7). We didn't challenge those at the time. We only challenged outside the scope and the extent of the search for the CAIR and Mr. Ayloush. But we did that on the assumption that we were being told the truth as to the basis for those exemptions. Can Your Honor tell us if, when the government claims (b)(6) and (b)(7) and other kinds of exemptions in the original set of documents we received, were those

statements false?

**THE COURT:** I never specifically focused on those exemptions. But giving you the big picture, I think if you pursued that with me, you really would be arguing technicalities as opposed to substance. In other words, I found -- I think my order makes it pretty clear -- that there was deception. And there was deception with you, but that's not my fight. My fight and my focus was deception with me. And how the government deceived you, it is in connection with those exemptions that you litigated as well.

But at the end of the day is, what I guess I'm telling you, it's my finding that that information, you are not entitled to know. If we were in a perfect world -- which we're not, it is what it is -- I would have liked to have said. You want this information, the government has submitted in camera information, and I have concluded that the government has complied with all its obligations under FOIA. I'm sorry, plaintiffs. You can take that up to the Ninth Circuit if you disagree. I respect that. That's your right. But you don't get to know that information in this context.

That's my determination on the law.

**MR. ARULANANTHAM:** Thank you, Your Honor.

**THE COURT:** I wasn't given that opportunity, you weren't given that opportunity. And it is what it is. And hopefully that gives you a sense of -- I can't tell you. And the last thing -- I

don't want you leaving this hearing thinking I'm telling you what to do. You need to do whatever you want to do. But I'm just saying, from my standpoint, if you are going to be litigating the Vaughn Index or exemptions, I think at the end of the day you are going to be wasting your time. Because of what I know and what I have seen, you are not going to get any additional, more information. You know what I mean?

So the Vaughn Index is -- what have you been given is misleading because it's incomplete. You see what I'm saying? So why are we going to argue about well, I want to challenge your exemption that you have already articulated?

**MR. ARULANANTHAM:** That makes sense, Your Honor. I understand that. That's helpful.

Reading through the criteria of 552(c), at least some of the criteria might have been different -- the application of them in 2006 might have been different from their application were we doing the same thing today.

So, for example, 552(c)(2) on informants does not allow the government to take a -- can't confirm or deny a response if the informant's status has been officially confirmed, for example.

And in 2006, that might have been one way and it might be different today. Similarly, (C)(3) only applies to classified information. I don't know -- I have no way of knowing if some of this information -- I know some of the information is not classified because that was told to us in our Ninth Circuit

briefing.

So I say this to say -- and in addition to (C)(1) -- that's all of them, actually. There's three. (C)(1) is only if the target is not aware of the investigation. As Your Honor said at the end of the opinion, obviously my clients have some sense that they're being investigated. There is mountains of documents that are -- we can't see that are about them in some sense.

If we made the same request today, do you have any sense of whether the Court's view of the appropriateness of the redactions and all this might be different in light of these factual changes that might affect the application of 552(c)?

**THE COURT:** For doing it on the fly, you are asking excellent questions, for whatever it's worth.

**MR. ARULANANTHAM:** Thank you, Your Honor.

**THE COURT:** And the last thing I'm trying to do is be cagey with you, but your questions are so good that I have to think about what the Ninth Circuit said and I have to think about what I know and what I can tell you.

The government, in connection with -- or in response to my order that I said okay, I'm going to be issuing a redacted order, an amended order, you tell me what you believe needs to be redacted. And in connection with that submission, I did receive further classified information that you cannot see. Based on what I saw -- it wasn't thorough, and again, it wasn't subject to the adversarial process, but based on what I saw, I do not believe

that circumstances have changed that would allow me to revisit whether the information can now be disclosed to you with the passage of time.

And again, if the Ninth Circuit had said you can go ahead and release your order, then it would be easier for you to make an informed decision on whether you want to fight it or challenge it or not. But again, I'm a little bit hamstrung myself in responding to you trying to interpret exactly what the Ninth Circuit was saying.

And you should know -- maybe you assume this -- the Ninth Circuit did not issue any in camera order to me. What you know is what I know. And in that Ninth Circuit order, they did not identify, as you know, specifically what is the confidential information that's not classified that you shouldn't receive.

So I'm trying to interpret what they meant by that. I think I have a sense of what they meant by it. And I'm also trying to be somewhat practical in where we are and how long this case has. And not trying to curry your favor, but you are very competent, zealous counsel, and you have an understanding of the nature of these types of FOIA requests and what goes on.

**MR. ARULANANTHAM:** Your Honor, if we had known that we would be here now with the same number of documents that we were, then our approach to this might have been different, although it's been informative to learn about this whole process that we didn't really know much about.

So I guess the very last thing, I really do appreciate Your Honor trying to figure out what you can say and can't say, and being as helpful as you can, Your Honor, I really do appreciate that. The government presumably had its opinion about, in the prior order, what could and couldn't be excised. Would it be helpful to us if you also released that with all of their -- everything the government wants out of it taken out of it? Or is that very close to what I have here in my hands, basically?

**THE COURT:** If I understand your question, I can't do that because the government's submission does reveal some of what they believe the Ninth Circuit was directing me to redact.

**MR. ARULANANTHAM:** No, Your Honor. Sorry. I think I wasn't clear. I don't mean to see the government's briefs. The prior version -- or the prior order; right? -- the government presumably wanted you to X out these pages, but there were some portions of it that the government didn't object to the release of. Or maybe not. If there isn't any --

**THE COURT:** No, they pretty much objected to the whole order. And again, I can't give you detail, but I get a sense that if I had redacted my original order in the way that the government wanted me to, it would have been meaningless.

**MR. ARULANANTHAM:** I see.

**THE COURT:** There would have been really no purpose for me issuing an order other than just saying see -- I'd just be repeating some of the things the Ninth Circuit said. And I just

felt that this was an occasion that it was important not only to your clients but, frankly, to the whole district court that this is just not acceptable.

And I sensed from the Ninth Circuit opinion -- and I'm not trying to be critical -- that they thought I was angry and frustrated. And they're wrong, with all due respect. I have never been angry and frustrated. I have been firm, and I'm not going to negotiate the truth. And I have been adamant about that. But this case, I had too many hearings and I have heard so much, that I wasn't acting out of anger or frustration. Sadness or disappointment maybe, but not frustration.

And not to frustrate you, but I didn't make any findings in that order of bad faith. And you are going to do what you need today, and I encourage you to do what you need to do. But if you want to take it further with me, you are going to really be -- it's an uphill climb. Because of all the information I have received in the classified hearings, to try to understand what happened and what they did and why they did it, I just don't see any bad faith here.

And for sanctions to be awarded or taking high-level officials into court for you to cross-examine them or me to cross-examine them, I just don't feel, based on what I know, it would be appropriate. It's not a case where the deception was the result of someone trying to make money, trying to get power. I'm not condoning it. Please don't misunderstand me. But it's not a

record where I would say anybody on the government's part acted in bad faith. Overzealous maybe, but not in bad faith.

So if after talking to your colleagues and trying to figure out well, what do we really do, I'm not sure you are going to get much mileage if you want to get more out of me as to who, what, when, where, and why, and shouldn't they be held more accountable for what happened. I have kind of been there already, is what I'm telling you. I have been there. If you invite me to go there again -- which you have a right to do -- it's going to be classified hearings too, because -- and I can tell you, you understand this -- if you are talking about sanctions, you have to have, I think, a finding of bad faith. And the government cannot defend itself and what they did without, I think, revealing classified information. And even if it's not classified information, it's still information that I think would compromise national security.

**MR. ARULANANTHAM:** Your Honor, I very much doubt that we would seek sanctions. We have done it in one case where the government destroyed evidence, but I would be very surprised if we made any kind of move to do that here, although I do want to talk to my colleagues about it, but I extremely doubt it, even before having heard the Court's -- you obviously would not be inclined in that direction.

The main thing that I am interested in, though, and it's found, from what the Court is saying, that this is already

included in the original appeal -- although I didn't know that -- is that my -- I feel that we must be entitled to know at least at some more specific level what exemption applies with respect to particular documents. But it sounds like my avenue for trying to make that argument is better done through a rehearing petition on the existing Ninth Circuit appeal rather than appealing the order that you have issued today, because it sounds like that question -- the question whether we get to know what the exemptions are that are being invoked, is actually included in the Ninth Circuit case.

**THE COURT:** You got it. You got it. And for whatever it's worth, I agreed with you. But I interpreted the Ninth Circuit as saying I can't tell you that. So it is what it is.

**MR. ARULANANTHAM:** Thank you, Your Honor. Very much appreciate it.

**THE COURT:** Okay. Ms. Sowles, is there anything the government would like to say, or Mr. Tyler?

**MR. TYLER:** Good morning. I'm John Tyler with the United States Department.

**THE COURT:** Hello, sir.

**MR. TYLER:** We have, in our papers before the Court, apologized for the misunderstanding that has arisen. We regret very much Your Honor's conclusions, heartfelt that they are, that you had been misled. We wish that did not happen. And we have assured you are in our papers, and I can stand before you and

assure you again that that was -- the government's actions in this case were never for purposes of misleading this Court or Your Honor in any way, but rather to protect sensitive law enforcement, national security interests.

We believe that pursuant to that objective we acted appropriately. There remains a fundamental disagreement between the government and Your Honor about our conduct in this matter. We have had the opportunity to argue our position before the Court for which we thank you, but there remains this fundamental disagreement.

We must respectfully disagree with Your Honor's conclusion that you were misled, but you have obviously come to that conclusion and there is nothing more I believe I can say at this time. Your Honor feels, I believe, frustrated because you have to be circumspect as a result of the matters that were before this Court and subsequently before the Ninth Circuit. So do I, quite frankly. I feel a little frustrated because I am not able to further defend the government's actions as I think would be appropriate. I feel I have more than one hand tied behind my back as I believe so does Your Honor. So there we are.

**THE COURT:** I do. And that's why, Mr. Tyler, I told counsel that I just didn't see any bad faith. That's why I felt comfortable saying that. And your words mean a lot to me. I do appreciate it. I think I'm just parroting what you said: We just have a fundamental disagreement.

But I want to repeat to you, I'm not angry at the government. I'm not frustrated with the government. It's just I can't do my job -- and I know you can appreciate this, Mr. Tyler, every week I rely on what the government tells me to enhance sentences, to authorize wire taps, to put people in prison. The government's word has to be gospel because I rely on it, and many times on an ex parte basis. And if I'm given inaccurate information, then I do things that I shouldn't do such as issue an order in this case saying that a search was adequate and thorough with respect to nine of the plaintiffs, and this was all the documents they found.

And so then now I have the judicial branch that is kind of hand in hand with the executive branch. And I can't be in that position.

**MR. TYLER:** I appreciate that, Your Honor. And that trust between the government and the Court, I agree with you so wholeheartedly. That is absolutely sacred. Without that, the whole system breaks down. And that's drilled into us at the department by judges, by all amongst us. That's our number one principle and training, that there has to be that trust between us and the judiciary. We, when we write our briefs, when we make representations before the Court, we have to be 100 percent truthful at all times. That's the standard that appropriately we should be subject to, and that's the standard that we always strive for.

We never lost sight of that standard in this case, Your Honor. I believe that to be true today. Others within the department who have reviewed this matter believe that to be true today. And again, I think that it regrettably comes down to this fundamental disagreement and opinion. But Your Honor has been more than fair to us in giving us the opportunity to present our arguments. I believe we used that opportunity to the best of our ability and yet here we are with this difference.

So I can only conclude my remarks by again expressing how much I personally regret, how we all regret that Your Honor has come to these conclusions. I wish it had not happened. I wish I could say more. I really, really, truly wish I could say more, but I can't because I have other principles to which I'm equally devoted as well.

So I thank you, Your Honor, for this opportunity.

**THE COURT:** And I appreciate your comments. Okay. Well, I think we're done.

**MR. ARULANANTHAM:** Thank you, Your Honor. Nothing further.

(Whereupon the proceedings were adjourned at 10:00 a.m..)

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter.

Date: MAY 2, 2011

MARIA DELLANEVE, U.S. COURT REPORTER
CSR NO. 9132