UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

AUG 01 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ISLAMIC SHURA COUNCIL OF
SOUTHERN CALIFORNIA; et al.,

    Plaintiffs - Appellees,

v.

FEDERAL BUREAU OF
INVESTIGATION and UNITED
STATES DEPARTMENT OF JUSTICE,

    Defendants - Appellants.

No. 09-56035

D.C. No. 8:07-cv-01088-CJC-AN
U.S. District Court for Central
California, Santa Ana

MANDATE



RECEIVED
CLERK, U.S. DISTRICT COURT

AUG - 1 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

The judgment of this Court, entered March 30, 2011, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

                              FOR THE COURT:
                              Molly C. Dwyer
                              Clerk of Court

                              Synitha Walker
                              Deputy Clerk

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA; COUNCIL ON AMERICAN ISLAMIC RELATIONS-CALIFORNIA; ISLAMIC CENTER OF SAN GABRIEL VALLEY; ISLAMIC CENTER OF HAWTHORNE; WEST COAST ISLAMIC CENTER; HUMAN ASSISTANCE AND DEVELOPMENT INTERNATIONAL, INC.; MUZAMMIL SIDDIQI; SHAKEEL SYED; HUSSAM AYLOUSH; MOHAMMED ABDUL ALEEM; RAFE HUSAIN,<br>    *Plaintiffs-Appellees,*<br>v.<br>FEDERAL BUREAU OF INVESTIGATION; UNITED STATES DEPARTMENT OF JUSTICE,<br>    *Defendants-Appellants.* | No. 09-56035<br>D.C. No.<br>8:07-cv-01088-CJC-AN<br>OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
November 1, 2010—Pasadena, California

Filed March 30, 2011

Before: Mary M. Schroeder, Richard C. Tallman and
Milan D. Smith, Jr., Circuit Judges.

| 4270 | ISLAMIC SHURA COUNCIL v. FBI |
|---|---|

Opinion by Judge Schroeder

# COUNSEL

Ahilan T. Arulanantham, Los Angeles, California, for plaintiffs-appellees Islamic Shura Council of Southern California, et al.

Beth S. Brinkman, Washington, DC, for defendants-appellants Federal Bureau of Investigation, et al.

## OPINION

SCHROEDER, Circuit Judge:

In this Freedom of Information Act ("FOIA") case, the government brings an interlocutory appeal challenging the district court's sealed, *ex parte* order ("Sealed Order") containing the district court's decision to make all of its contents public. The government contends that the Sealed Order contains some sensitive national security and law enforcement information. The district court was justifiably annoyed with the government's withholding of documents from the plaintiffs and the court. The withholding misled the court into believing the government had complied with all its statutory obligations under the FOIA. It was not until the court convened *ex parte, in camera* proceedings that it learned of the existence of additional documents which were responsive to the plaintiffs' FOIA requests. We do not necessarily endorse the government's conduct during the litigation, but we agree with the government that the Sealed Order contains information that should not become public. We therefore vacate the Sealed Order and remand for its revision in further proceedings.

### I. Background

On May 15, 2006, plaintiffs, five citizens and six organizations in Southern California, submitted a joint request to the FBI under the FOIA, 5 U.S.C. § 552, seeking information reflecting any investigation or surveillance of them by the government. Plaintiffs are Islamic Shura Council of Southern California, Council on American Islamic Relations-California ("CAIR"), Islamic Center of San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center, Human Assistance and Development International, Inc., Dr. Muzammil Siddiqi, Shakeel Syed, Hussam Ayloush, Mohammed Abdul Aleem, and Rafe Husain.

4274        ISLAMIC SHURA COUNCIL v. FBI

On April 27, 2007, the FBI notified nine of the eleven plaintiffs that its search of its Central Records System did not locate documents responsive to their requests. On June 13, 2007, the FBI released three pages of documents to Mr. Ayloush, in response to his request. On June 14, 2007, the FBI released a one-page document to CAIR. The FBI redacted large portions of those four pages pursuant to FOIA exemptions, 5 U.S.C. § 552(b)(2),[1] (b)(6),[2] and (b)(7)(C).[3]

On September 18, 2007, plaintiffs filed their Complaint in the district court, challenging the adequacy of the FBI's search. After the lawsuit was filed, the FBI conducted additional searches for nine of the eleven plaintiffs and produced over one hundred pages of documents. The government redacted some of the information in these documents pursuant to specific exemptions under 5 U.S.C. § 552(b). The government also heavily redacted many documents as "outside the scope" of plaintiffs' FOIA request.

On March 21, 2008, the government filed a motion for summary judgment, stating that its invocation of the FOIA exemptions was necessary and proper. On November 26, 2008, plaintiffs filed a cross-motion for summary judgment, requesting the district court to order the government to disclose the documents redacted as "outside the scope," or, in the alternative, requesting the district court to review those docu-

---

[1] 5 U.S.C. § 552(b)(2) permits an agency to withhold documents when they are "related solely to the internal personnel rules and practices of an agency."

[2] 5 U.S.C. § 552(b)(6) permits an agency to withhold documents when they are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

[3] 5 U.S.C. § 552(b)(7)(C) permits an agency to withhold documents when they are "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."

ISLAMIC SHURA COUNCIL v. FBI 4275

ments *in camera* to determine if the documents were properly characterized as "outside the scope" of the FOIA request.

On April 20, 2009, the district court held a hearing on the parties' cross-motions for summary judgment and issued an order stating that "an *in camera* review . . . is necessary to determine the propriety of the FBI's 'outside the scope' redactions. The FBI is ordered to provide any documents redacted or withheld as 'outside the scope' to the Court for an *in camera* review."

Following the April 20 hearing, the government provided the district court with unaltered versions of the documents it had previously disclosed and an additional declaration from David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division of the FBI, to support the government's redactions. The Hardy declaration acknowledged, for the first time, that the government had identified other responsive documents, but had not disclosed their existence to the court or plaintiffs. This was the first time the district court was aware that the government had located additional documents.

After two *ex parte, in camera* proceedings, the district court issued its decision on June 23, 2009 in a sealed, *ex parte* order. In that decision, the district court noted that the government previously misled the court by representing that it had disclosed all responsive documents, when the *in camera* proceedings revealed additional documents that had not earlier been made known to the court. The district court emphasized that the FOIA does not permit the government to mislead the court, as judicial review of an agency's decision to withhold information would be meaningless if based on misinformation.

The court determined, on the basis of its *in camera* review, that the government properly withheld most of the documents from plaintiffs. The court, however, determined that in repre-

senting to both plaintiffs and the court that many of the documents plaintiffs sought did not exist, the government had misled the court. Believing it needed to correct the public record, the district court announced in the Sealed Order that it would unseal it on July 7, 2009 unless otherwise directed by this Court.

The government immediately appealed the district court's Sealed Order and filed an emergency *ex parte* motion for a stay of the district court's decision to unseal its order pending appeal. A motions panel of this Court granted an administrative stay on July 6, 2009 to allow a merits panel sufficient time to review the government's appeal. The FOIA case remains pending in the district court, and we review only the district court's decision to unseal its Sealed Order. The government has filed both a sealed *ex parte* brief and a heavily redacted public version. This court has had access to all relevant documents.

## II. Jurisdiction

The parties in their public briefs have addressed jurisdictional issues. The government appeals under the collateral order doctrine, or in the alternative, seeks mandamus relief. Plaintiffs respond that they lack sufficient information to take a position with respect to this court's jurisdiction over the government's appeal. We hold that this Court has jurisdiction to review the government's appeal under a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651.

### A. Collateral Order Doctrine

The collateral order doctrine grants federal appellate jurisdiction to review a " 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.' " *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009) (citing *Cohen v. Beneficial Indus. Loan Corp*, 337 U.S. 541, 545-46 (1949)). "We must be cautious in

ISLAMIC SHURA COUNCIL v. FBI 4277

applying this doctrine, because once one order is identified as collateral, all orders of that type must be considered collaterally." *See C.I.R. v. JT USA, LP*, 630 F.3d 1167, 1172 (9th Cir. 2011). A collateral decision may be treated as final if it: (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. *In Re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008).

The first and third prongs are easily satisfied here. The district court's decision to unseal an order conclusively determines the disputed question of whether to make the order a matter of public record. *See Copley Press*, 518 F.3d at 1025 ("Secrecy is a one-way street . . . [and] . . . [a]n order to unseal . . . 'conclusively determine[s]' that the information will be public." (citation omitted) (alterations in original)). In tandem with the first prong, the issue would not be reviewable on appeal because once the order is unsealed, any government appeal of the issue after judgment would be moot. When an order is unsealed, the unsealing cannot be reversed. *See id.* at 1025 ("Once information is published, it cannot be made secret again.").

It is the second prong that gives us pause. The merits of the underlying action concern whether the government has complied with its disclosure obligations under the FOIA. The issue on this appeal is whether the district court's Sealed Order should be unsealed and hence disclosed. Resolving this issue would require us to determine whether the information in the Sealed Order should be withheld under the FOIA. Therefore, it is at least arguable that a collateral decision on this issue may not be "completely separate" from the merits of the underlying FOIA action. We need not decide the issue, however, because this case is otherwise appropriate for mandamus relief. We therefore assume, without deciding, that the unsealing issue is not completely separate and thus not appealable as a collateral order.

### B. Writ of Mandamus

A writ of mandamus is a remedy to be invoked in extraordinary circumstances. *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976). To determine if mandamus relief is warranted, we apply the familiar five-factor *Bauman* guidelines, asking whether: (1) the petitioner has no other adequate means to attain the relief it desires; (2) the petitioner will be damaged in a way that is not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the error is oft-repeated, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression. *Plata v. Schwarzenegger*, 560 F.3d 976, 983 (9th Cir. 2009) (citing *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977)). A petitioner need not establish all five factors. *United States v. Fei Ye*, 436 F.3d 1117, 1122 (9th Cir. 2006), but must establish the third, that the district court's order is clearly erroneous. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1156 (9th Cir. 2010) ("[T]he absence of the third factor, clear error, is dispositive." (quoting *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1146 (9th Cir. 2005))).

The first *Bauman* factor is satisfied here because there is no other remedy available. The Sealed Order is interlocutory and non-appealable under 28 U.S.C. §§ 1291, 1292(a)(1), and 1292(b). The second and fifth *Bauman* factors also support mandamus. Unsealing the district court's Sealed Order will make the information permanently public in a way that is not correctable on later appeal. The government's appeal also raises new and important problems relating to a sanction in a FOIA case. Because this is an issue of first impression for our court and the district court's error is not often raised or repeated, the fourth *Bauman* factor is absent. *See Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989) ("The fourth and fifth *Bauman* factors are rarely, if ever, present at the same time.").

The dispositive issue is therefore whether the district court's decision to unseal its Sealed Order is clearly erroneous as a matter of law, thereby satisfying the critical third *Bauman* factor. For the reasons discussed in the next section, we conclude that it is.

### III. Discussion

[1] The government seeks mandamus relief because it contends that the Sealed Order itself contains sensitive law enforcement and national security information that the government may properly withhold under the FOIA. The FOIA recognizes certain categories of documents that the government may withhold from plaintiffs in a FOIA action, but the FOIA does not permit the government to withhold responsive information from the court. The FOIA exceptions are to be narrowly construed and the burden is on the agency to justify its action. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (citing *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). To ensure the breadth of disclosure, the FOIA expressly authorizes district courts to examine documents *in camera* to review the propriety of an agency's withholdings. *See Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1469 (D.C. Cir. 1983). District courts have jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

[2] In a seminal case concerning FOIA procedure, the D.C. Circuit in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), recognized that in FOIA cases, plaintiffs seeking disclosure of records are at a disadvantage, because they are in the dark about the nature of the documents they are seeking. They are unable to "argue with desirable legal precision for the revelation of the concealed information." *Id.* at 823. Only the party opposing disclosure, i.e. the government, is in a position to make statements categorizing the information. *Id.* To compensate for this imbalance of knowledge as between the plaintiffs

and the government, the trial court may examine the documents *in camera* to determine whether the government has properly withheld responsive documents. *See id.* at 825. When the government does not provide the court with accurate or complete information, the court's function in overseeing FOIA actions and monitoring litigation is compromised. The government may withhold relevant information from plaintiffs to protect "the secret nature of the information," *id.* at 826, but it must disclose to the court all relevant and responsive information in order for the court to evaluate whether the withholding was appropriate.

[3] An agency is required, "by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency." *Envtl. Protection Agency v. Mink*, 410 U.S. 73, 93 (1973), *superseded on other grounds by statute as recognized in Phillippi v. CIA*, 546 F.2d 1009, 1012 n.4 (D.C. Cir. 1976); *see also Vaughn*, 484 F.2d at 827 n.20 (citing *Mink* to support its conclusion that the government is required to provide detailed statements to justify their exemptions). We have also noted that the government's affidavits should "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption," so that the district court can make an "independent assessment of the government's claim." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008). If the affidavits are too vague, the court "may examine the disputed documents in camera to make a 'first hand determination of their exempt status.' " *Id.* at 36. Therefore, if the government believes that submitting a detailed affidavit would compromise the information it is seeking to protect, then it must seek an *in camera* review. It cannot, however, represent to the district court that it has produced all responsive documents when in fact it has not.

[4] We thus agree with the district court that the FOIA does not permit the government to withhold information from

the court. Indeed, engaging in such omissions is antithetical to FOIA's structure which presumes district court oversight. *See* 5 U.S.C. § 552(a)(4)(B). That said, poor litigation strategy by the government is not an independent basis to make public information which, based upon our review of the record, should be kept within the privacy of the agencies that oversee it. Because the Sealed Order makes reference to such information, it also should not be publicly disclosed.

### A. Due Process

Neither plaintiffs nor their counsel have had access either to the *in camera*, *ex parte* proceedings or to the district court's Sealed Order that remains under seal and is the subject of this mandamus proceeding. Plaintiffs argue that due process does not authorize keeping the contents of the Sealed Order under seal because the information in the Sealed Order is not classified. Plaintiffs contend that the government therefore can have no strong national security concerns. They alternatively contend that due process requires disclosure to plaintiffs' counsel, under a protective order, of the Sealed Order.

Plaintiffs cite several cases to support their position that due process requires the disclosure of all unclassified materials, despite the government's contention that they contain national security information. *See United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004); *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008); *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238 (D.C. Cir. 2003). Plaintiffs' reliance on these cases is misplaced, however, because none stand for the sweeping proposition that nonclassified material must be disclosed. Moreover, none were FOIA cases. *Abuhamra* was a criminal case holding that bail cannot be denied on the basis of information kept secret from the defendant. *Parhat*, a habeas case, held that the government could not rely on the same generic explanation for withholding information in hundreds of detainee cases, and *People's Mojahedin Org. of Iran* involved a disputed designation as a foreign terrorist organi-

| 4282 | Islamic Shura Council v. FBI |
|---|---|

zation under the Anti-Terrorism and Effective Death Penalty Act, 8 U.S.C. § 1189.

[5] Indeed, the FOIA itself permits the government to withhold from plaintiffs many types of documents that are not classified. The FOIA provides that every federal agency shall make available upon request records reasonably described, 5 U.S.C. § 552(a)(3)(A), unless the documents fall within enumerated exemptions, *id.* § 552(b), or exclusions, *id.* § 552(c). Section 552(b) contains nine enumerated exemptions allowing the government to withhold documents or portions of documents. *See* 5 U.S.C. § 552(b)(1)-(b)(9). Subsection (b)(2) permits the government to withhold documents that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Subsection (b)(4) permits the government to withhold from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Subsection (b)(6) protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[6] Subsection (b)(7) deals with law enforcement. It renders exempt from disclosure "records or information compiled for law enforcement purposes" where the production of such law enforcement records would impede a valid government purpose or harm an individual's interest. Specifically, subsection (b)(7) allows the government to withhold:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity

Islamic Shura Council v. FBI 4283

of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7).

[7] In addition, Congress added section 552(c) to the FOIA in 1986 to allow an agency to "treat the records as not subject to the [FOIA] requirements" in three specific categories involving: (1) ongoing criminal investigations; (2) informant identities; and (3) classified foreign intelligence or international terrorism information. 5 U.S.C. § 552(c)(1)-(c)(3)[4]; *see*

---

[4]Subsection 552(c) provides:

(c)(1) Whenever a request is made which involves access to records described in subsection (b)(7)(A) and—

(A) the investigation or proceeding involves a possible violation of criminal law; and

(B) there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings,

the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.

4284           Islamic Shura Council v. FBI

*Benavides v. Drug Enforcement Admin.*, 968 F.2d 1243, 1246-47 (D.C. Cir. 1992) (discussing the legislative history of the "three exclusions of § 552(c)"). Only subsection (c)(3) deals with classified information, while subsections (c)(1) and (c)(2) apply to law enforcement records. Therefore, plaintiffs' contention that only classified information can be withheld under the FOIA is belied by the statute.

As an alternative to their argument that the Sealed Order must be disclosed to plaintiffs because the content is not classified, plaintiffs contend that the Order should be disclosed to plaintiffs' counsel, through a stringent protective order, so that counsel may better represent plaintiffs as part of the adversarial process. There is no authority to support this proposition in civil FOIA litigation.

[8] In *Arieff*, the D.C. Circuit rejected a similar argument that plaintiffs' counsel and expert should examine the government's affidavit under a protective order. 712 F.2d at 1469-71. It reasoned that if the appellant's suggestion was adopted, it would adversely affect national security interests. It would "color public perception of the security of confidential information in government files" because "[c]itizens whose per-

---

(2) Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

(3) Whenever a request is made which involves access to records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism, and the existence of the records is classified information as provided in subsection (b)(1), the Bureau may, as long as the existence of the records remains classified information, treat the records as not subject to the requirements of this section.

5 U.S.C. § 552(c).

| ISLAMIC SHURA COUNCIL v. FBI | 4285 |
|---|---|

sonal privacy or commercial data is at issue, foreign governments that may have provided secret information to our Executive Branch, and, for that matter, the officials of our Executive Branch itself, will hardly have the assurance which it is the purpose of the FOIA exemptions to provide if hostile counsel and experts can ordinarily obtain access to assertedly exempt information." *Id.* at 1470. We agree.

Additionally, we agree with *Arieff* that the procedure of only allowing counsel access to the protective information would strain the attorney-client relation because it would put "the attorney in the position of knowing, and being unable to disclose to his principal, the very data he has been retained to acquire." *Id.* Even assuming that counsel is reliable and that violations of protective orders would be detectable, it would still not be appropriate in FOIA cases to allow appellant's counsel to see the very information that is the subject of the litigation. *Id.*

[9] To ensure government compliance in FOIA litigation, the FOIA permits lower courts to conduct *ex parte, in camera* examination to determine whether the government's withholding of documents from plaintiffs is appropriate. Though the *in camera* proceeding is "without [the] benefit of criticism and illumination by a party with the actual interest in forcing disclosure," *Vaughn*, 484 F.2d at 825, it is a necessary consequence of a procedure designed to protect secret information from being improperly disclosed.

[10] If the contents of this order must be withheld from plaintiffs under the FOIA, it must also be withheld from plaintiffs' counsel in order to avoid an intolerable conflict of interest. *In camera* proceedings are thus sufficient to comply with both due process and the purposes of the FOIA.

## IV. Conclusion

[11] In this case we have carefully reviewed the record and the district court's clear frustration with the government's

withholding from the court of responsive documents. The district court has, however, at the same time, concluded that such documents were, for the most part, properly withheld from plaintiffs under the FOIA. The Sealed Order that is the subject of this appeal, while not disclosing any documents, does itself contain information that the FOIA authorizes the government to withhold from plaintiffs and that was disclosed only *in camera*. We therefore hold that plaintiffs and plaintiffs' counsel are not permitted to see the Sealed Order because full disclosure of the Sealed Order would compromise the authorized secrecy from plaintiffs of some of the information it contains.

Accordingly, we **VACATE** the district court's June 23, 2009 Sealed Order and **REMAND** to the district court to revise the Sealed Order to eliminate statements the government has designated as national security and sensitive law enforcement information before it may be unsealed.

**VACATED** and **REMANDED** for further proceedings consistent with this opinion.