AHILAN T. ARULANANTHAM, SBN 237841
ACLU Foundation of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Email: aarulanantham@aclu-sc.org
Telephone: (213) 977-9511
Facsimile: (213) 977-5297

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA; et al.,

Plaintiffs,

vs.

FEDERAL BUREAU OF INVESTIGATION; and UNITED STATES DEPARTMENT OF JUSTICE,

Defendants.

Case No. SACV 07-1088 CJC (ANx)

**REPLY IN SUPPORT OF PLAINTIFFS' SANCTIONS MOTION**

Hearing Date: November 14, 2011
Time: 1:30 p.m.

Honorable Cormac J. Carney

## TABLE OF CONTENTS

Introduction . . . . . . . . . . 1

I. The Court Need Not Find an "Intent to Mislead" in Order to Issue Sanctions . . . . . . . . . . 2

II. The Government's Conduct Should be Analyzed as the Provision of a False Statement Under Rule 11(b)(3), Not the Provision of a Frivolous Legal Argument Under Rule 11(b)(2) . . . . . . . . . . 6

III. Even if the Court Analyzes the Government's Conduct as Legal Misrepresentation under Rule 11(b)(2) Rather than Factual Misrepresentation, Sanctions are Still Appropriate . . . . . . . . . . 9

IV. The Court Should Impose Sanctions to Deter the Government's Conduct . . . . . . . . . . 11

Conclusion . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045 (9th Cir. 1995) . . . . . . . . . . 3

*Business Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533 (1991) . . . . . . . . . . 5, 13

*Center for Biological Diversity v. Office of U.S. Trade*, 2011 WL 4342653 (9th Cir. 2011) (unpublished) . . . . . . . . . . 8

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) . . . . . . . . . . 2

*Charles v. Office of Armed Forces Medical Examiner*, 730 F. Supp. 2d 205 (D.C. Cir. 2010) . . . . . . . . . . 9

*Chilcutt v. United States*, 4 F.3d 1313 (5th Circ. 1993) . . . . . . . . . . 7

*Cooter & Bell v. Hartmax Corp.*, 496 U.S. 384 (1990) . . . . . . . . . . 6

*Golden Eagle Distributing Corp. v. Burroughs Corp.*, 809 F.2d 584 (9th Cir. 1987) . . . . . . . . . . 9

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) . . . . . . . . . . 5

*In Re Matter of Yagman*, 796 F.2d 1165 (9th Cir. 1986) . . . . . . . . . . 13

*Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990) . . . . . . . . . . 11

*Navarro-Ayala v. Nunez*, 968 F.2d 1421 (1st Cir. 1992) . . . . . . . . . . 10

*Oregon Natural Desert Association v. Gutierrez*, 419 F. Supp. 2d 1284 (D. Or. 2006) . . . . . . . . . . 9

*Public Citizen v. Department of State*, 276 F.3d 634 (D.D.C. 2006) . . . . . . . . . . 9

*Terran v. Kaplan*, 109 F.3d 1428,1435 (9th Cir. 1997) . . . . . . . . . . 10

*Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986) . . . . . . . . . . 2

## OTHER AUTHORITIES

Proposed Rule §16.6(f)(2) 76 Fed. Reg. 15236 (March 21, 2011) . . . . . . . . . . 13

## REPLY IN SUPPORT OF PLAINTIFFS' SANCTIONS MOTION

**Introduction**

The government's brief illustrates precisely why this Court should order sanctions under Rule 11. Remarkably, the government continues to insist that it did not lie to this Court because it still "believes it can accurately be stated that [the records it concealed] are not 'responsive,'" Dkt. # 126 at 6, notwithstanding the Court's prior determination that this is a "lie" and "blatantly false." Based on this factually false and legally frivolous premise, the government argues against the need for sanctions for four essential reasons, all of which are meritless.

First, the government claims that it filed its various false statements without any "intent to mislead" the Court, and therefore should not be sanctioned. This claim is hard to believe, given the number of statements and the fact that they would never have come to light if not for the Court's having discovered them. Nonetheless, the Court need not ascertain the state of mind of those who made the false statements. As the Supreme Court recognized (and the government did not dispute), Rule 11 was amended to eliminate any subjective bad faith component precisely to avoid the need for such state-of-mind inquiry. Similarly, the government tries to minimize the egregious nature of its conduct by saying that the "disagreement" with the Court concerns the *timing* of its ex parte submissions, but the federal rules have already made clear that the government - like other parties - may *never* lie to the Court. The issue here concerns honesty, not timing.

Second, the government claims that its "disagreement" with the Court concerns the legal meaning of the word "responsive," rather than any factually false statements. But this excuse ignores not only that no precedent remotely supports the government's secret re-interpretation of the word "responsive," but also that the government's lies were not limited to whether there were "responsive" documents, but also encompassed whether large portions of documents were "outside the scope" of Plaintiffs' request.

Third, even if one analyzes the violation here as a legal rather than factual violation of Rule 11, sanctions would still be warranted because the government's argument is frivolous. Indeed, the government makes no attempt even to answer the Plaintiffs' arguments for why its argument is utterly meritless - most of which come from the Court's amended order.

Finally, the government points to its internal review process to escape sanctions. But this claim is misleading. After the Court's original (sealed) order, the government proposed a regulation that would have *codified* its practice of lying in response to requests that call for documents purportedly subject to Section 552(c). While it has now withdrawn that proposal in the face of strong opposition, it has not disclaimed its practice of providing false responses; on the contrary, it continues to defend it both in briefing here and in public statements. The fact that the government still maintains that its conduct was proper only heightens the need for sanctions from this Court.

## I. The Court Need Not Find an "Intent to Mislead" in Order to Issue Sanctions

The government makes no attempt to refute the authority definitively establishing that Rule 11 contains no bad faith requirement for sanctions. *See* Dkt. # 123 at 6-7 (citing, *inter alia*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)). *Chambers* is fatal to the government's first argument against sanctions, *see* Dkt. # 126 at 4, because it establishes that the Court need not find any bad faith "intent to deceive" in order to impose sanctions. Rather, the test is simply one of "objective" reasonableness. *Id.* *See also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986) ("we affirm that Rule 11 sanctions shall be assessed if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith."); *id*. at 829 ("Our conclusion that subjective bad faith is not an element to be proved under present Rule 11 is consistent with the

advisory committee's purpose to revitalize the Rule by encouraging the use of sanctions where appropriate. This conclusion is also supported by recent opinions in other circuits addressing the same question.")

While the government would be hard-pressed to defend the claim that its repeated, "blatantly" false statements to the Court were somehow made in good faith, particularly given that it would never have revealed the truth if not for the Court having discovered the violations after Plaintiffs happened to seek *in camera* review, the Court need not resolve that issue to impose sanctions.[1]

The government makes the related argument that its "misunderstanding" with the Court arose merely from the "timing" of its *ex parte* submission, Dkt. # 126 at 7-10, rather than the provision of false information to the Court. Because virtually all of this portion of the government's brief is redacted, Plaintiffs cannot fully respond to it.[2]

However, Plaintiffs can offer two general observations concerning this argument. First, the government's assertion that the error here was one of timing ignores the most basic teaching of Rule 11: that no litigant, including the government, can *ever* lie to the Court. Thus, the central issue is not about *when* the

---

[1] The government disputes "*plaintiffs'* characterization of the Government as having 'lied' to the Court," Dkt. # 126 at 2. But it was the Court itself, not Plaintiffs, who described the government as having "lie[d]." *See* Dkt. # 98 at 11, 13, 17, 18.

[2] Plaintiffs reiterate their opposition to the government's application to file their full brief ex parte. The government makes almost all of one argument and all of another entirely ex parte, without affording plaintiffs even a summary of these arguments. This deprives Plaintiffs of a fair opportunity to litigate their motion. The fact that the government discusses information that purportedly must remain secret in those portions of its brief does not by itself justify the secrecy. The critical (and logically prior) question is whether due process permits the government to submit such information in defending against this Rule 11 motion, particularly where the motion is based entirely on factual conclusions that the Court has already drawn in some detail. *See generally American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995) (holding that Due Process Clause prohibited use of ex parte material in legalization proceedings, and finding that "undisclosed information in adjudications should be presumptively unconstitutional. Only the most extraordinary circumstances could support one-sided process.").

government should have corrected its false statements to the Court, but rather *whether* it should have made those false statements in the first place. If Rule 11 stands for anything, it is surely establishes that a party may *never* lie to the court.

Second, the government's excuse concerning "timing" also ignores that it would have never corrected the error at all if Plaintiffs had not sought judicial review and the Court had not then discovered the government's deception. Surely the government does not contend that it would have corrected its lies without their having been caught. Thus, the government's claim that the Rule 11 violation is really just a "timing" dispute is meritless.

Finally with respect to its intent, the government references the safe harbor provision of Rule 11 in its defense, Dkt. # 126 at 10, claiming that the Court now has all relevant information and therefore it should not sanction the government. There are two serious flaws in this argument.

First, and most importantly, the government has not withdrawn, submitted revised versions of, or issued errata with respect to any of the publicly-filed declarations, briefs, or pleadings that contain false statements, and indeed continues to insist in opposition to this motion that it did not lie to the Court in those filings. *Compare* Dkt. # 98 at 3 ("the Government's representations were then, *and remain today*, blatantly false.") (emphasis added) *with* Dkt. # 126 at 6 (government still "believes it can accurately be stated that [the records it concealed] are not 'responsive'"). Moreover, the government's continued public defense of its conduct in this case undermines the claim that it has corrected its egregious conduct. As discussed more fully below, the government has continued to argue that its statements to this Court were "wholly accurate." *See* Exh. 1 at 2 (Letter from Ronald Welch, Assistant Attorney General, The Department of Justice, to Senator Charles Grassley, Ranking Minority Member, Senate Committee on the Judiciary, (Nov. 3, 2011), available at http://leahy.senate.gov/imo/media/doc/110311WelchToGrassley-Leahy-FOIA.pdf) (attached as Exhibit 1); *see also* Dkt. # 123 at 8 (citing

similar government statement after Court's Amended Order).

Second, the government cannot benefit from the safe harbor provision because any alleged corrections were not made in accordance with the timing requirements of the rule. Rule 11(c)(2) requires the party seeking sanctions to serve the motion on the offending party without filing or otherwise presenting it to the Court, and provides that party a chance to correct its violation "within 21 days *after* service or within another time the court sets." Rule 11(c)(2) (emphasis added). Plaintiffs complied with this rule, but in response the government declined to make any changes to its filings. Indeed, when the parties met and conferred, the government stated unambiguously that it believed no correction to be necessary.

While the government did presumably submit truthful information to the Court in secret, at an earlier stage, when ordered to do so by the Court, the safe harbor contemplates that the offending party will correct the error either on its own or at the behest of the opposing party, *prior to* the Court's intervention. "[A] party will not be subject to sanctions on the basis of another party's motion unless, *after receiving the motion*, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." *Holgate v. Baldwin*, 425 F. 3d 671, 678 (9th Cir. 2005) (citing Advisory Committee Notes to 1993 Amendments) (emphasis added). This timing requirement is consistent with the purpose of the Rule more generally, which is to deter such outrageous conduct *before* it infects the judicial process. *See generally Business Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533, 552 (1991) ("The main objective of the Rule is . . . to deter baseless filings and curb abuses."). If a party could avoid sanction by correcting its lies after being ordered to do so by the Court, then Rule 11 would have no deterrent effect at all.

Here, the government failed to correct the violation on its own, and because the government lied to Plaintiffs, they were unable to point out the Rule 11 violation until after the Court discovered it. Therefore, even if the government's subsequent

conduct could somehow be read as including an "appropriate[] correct[ion]," notwithstanding the fact that it has not corrected any of its public filings and continues to defend its conduct, the "correction" came too late for it to trigger the safe harbor provision. Because "the 'violation of Rule 11 is complete when the paper is filed,'" *Cooter & Bell v. Hartmax Corp.*, 496 U.S. 384, 395 (1990), and because the government did not comply with the requirements of the safe harbor provision, it could not escape sanctions even if it had corrected its Rule 11 violations.[3]

**II. The Government's Conduct Should be Analyzed as the Provision of a False Statement Under Rule 11(b)(3), Not the Provision of a Frivolous Legal Argument Under Rule 11(b)(2)**

The bulk of the government's response centers on a defense of its conduct on the ground that the government merely has a "disagreement" with the Court over the legal meaning of the word "responsive," and therefore its conduct should be analyzed under the rubric of frivolous filings under Rule 11(b)(2) rather than as a false factual contention under Rule 11(b)(3). There are three serious problems with this claim.

First, the government's false statements were not limited to its claims about the existence of "responsive" documents. As Plaintiffs explained in their brief (and as the Court described in its amended order), the government also lied about whether various portions of documents were "outside the scope" of Plaintiffs' FOIA request. Indeed, the original documents provided by the government to Plaintiffs and the Court are littered with blatantly false claims about whether portions of documents were outside the scope of Plaintiffs' FOIA request – of the 124

---

[3] The government also suggests in its introduction that its conduct was justified by the need to protect "national security and law enforcement." Dkt. # 126 at 2. However, there can be no serious dispute that the government could have protected whatever interest it has in secrecy without lying to the Court. It could have provided a Glomar response, filed its initial response entirely under seal, or stated that it was not producing any records to the extent that they would be covered by Section 552(c), all without acknowledging what has in any event come to light - that some of the responsive documents were allegedly covered by Section 552(c).

documents covered in David Hardy's declaration, Hardy claimed that all or portions of 44 of the documents were "outside the scope" of the Plaintiff's request. *See* Dkt. # 13-2 at 47-122. As a result, even if the Court were inclined to allow the government to "negotiate the truth", *see* Dkt. # 98 at 9 n.4, concerning its deceptive use of the word "responsive," this would not eliminate the basis for Rule 11 sanctions. The Court would also have to allow the government to creatively re-imagine the meanings of "outside" and "scope" to find that the government had not violated Rule 11. Such attempts to stretch the truth to the breaking point are precisely what Rule 11 was enacted to deter.

Second, if the Court were to allow the government to escape sanction by permitting it to rely on an entirely novel and implausible meaning of the word "responsive" that it created in secret, such a ruling would open a gaping hole in Rule 11(b)(2)'s proscription on false statements by permitting parties to re-characterize inaccurate factual statements as "legal" interpretations. For example the attorney who failed to investigate damages prior to filing the complaint in *Terran v. Kaplan*, *see* Dkt. # 123 at 3, could argue that he did not fail to reasonably investigate damages, but instead merely "disagreed" about what constituted "damages," such that his error was legal rather than factual. 109 F.3d 1428,1435 (9th Cir. 1997). Similarly, the high level government official who stated under oath that the patients of the hospital in *Navarro-Ayala v. Nunez* were "not confined" might have claimed to have a different legal definition of what it means to be "confined," 968 F.2d 1421, 1424 (1st Cir. 1992), and the attorney who failed to produce discoverable documents in *Chilcutt v. United States* might have had his own (perhaps secret) understanding of what constitutes a "document." 4 F.3d 1313, 1322-23 (5th Circ. 1993). Such claims would be no less plausible than the government's claim here that a perfectly straightforward term such as "responsive" actually contains hidden ambiguity that the government has secretly "interpreted" so as to allow it to hide relevant documents.

Third, even were the Court inclined to allow the government to re-characterize words to escape Rule 11(b)(3)'s requirements generally, the word “responsive” admits of no ambiguity along the lines the government suggests. “Responsive” means “answering; constituting or comprising a complete answer,” *see* Black's Law Dictionary 1180 (5th ed. 1979). In the FOIA context, “responsive” is closely analogous to the concept of relevance in discovery. *See Center for Biological Diversity v. Office of U.S. Trade*, 2011 WL 4342653 (9th Cir. 2011) (unpublished disposition) (an agency’s “duty under the FOIA is to conduct a search reasonably calculated to uncover all relevant documents” and “relevance is measured with respect to which records were requested.”). While of course parties may often dispute whether a given document is relevant, there is simply no evidence of any kind that English language users – either in the legal context or any other – use the word "responsive" to exclude information that “answers” or is “relevant” to a query.

Longstanding FOIA doctrine and practice also proves that the word “responsive” does not contain the ambiguity the government seeks to find in it. Drawing from venerable civil discovery practice, FOIA law has long drawn a straightforward distinction between a statement that responsive documents do not exist and a statement that responsive documents exist, or may exist, but need not be disclosed – whether through production of a *Vaughn* index, provision of a Glomar response, or some other method. Indeed, a comprehensive search of hundreds of published FOIA cases throughout every federal circuit failed to uncover a single case where a party even argued, let alone won, the claim that the word "responsive" could somehow be read to exclude admittedly relevant information. While parties occasionally dispute other issues concerning the meaning of “responsive,” such as its temporal scope and whether it can be limited by reference to the requester’s intent, there is simply no dispute *ever* over whether concededly relevant documents are “responsive.” *Cf. Public Citizen v. Department of State*, 276 F.3d 634, 634

(D.D.C. 2006) (holding that the State Department policy limiting the search for responsive documents to the time period prior to the date of the request "is unreasonable both generally and as applied"); *Oregon Natural Desert Ass'n v. Gutierrez*, 419 F.Supp.2d 1284, 1287 (D. Or. 2006) (Department of Commerce cut-off regulation for searches of responsive records "is not reasonable on its face and violates FOIA"); *Charles v. Office of Armed Forces Medical Examiner*, 730 F.Supp.2d 205 (D.C. Cir. 2010) (holding that it was "unreasonable" for the "defendants [to] interpret the plaintiff's purpose and use it as a filter during their search" because "the defendants here are reducing the number of documents that they deem responsive to the plaintiff's search, based on a criterion that the plaintiff did not articulate."). Thus, to state that responsive documents do not exist when in fact they do exist (but allegedly may be withheld) is simply to make a false statement.

Rather than countenancing the government's verbal gymnastics, the Court should hold, again, what any attorney or other person familiar with the English language should recognize: that the government's repeated statements that it found no "responsive" documents, like its repeated statements that portions of relevant documents were "outside the scope" of the request, were factually false statements in violation of Rule 11(b)(3). *Cf. Golden Eagle Distributing Corp. v. Burroughs Corp.*, 809 F.2d 584, 585 (9th Cir. 1987) (Noonan, J., dissenting from denial of rehearing en banc) ("A false statement presented as a true statement is simply a misstatement. It is not warranted. It should be sanctionable.").

## II. Even if the Court Analyzes the Government's Conduct as Legal Misrepresentation under Rule 11(b)(2) Rather than Factual Misrepresentation, Sanctions are Still Appropriate

Even if the Court is inclined to analyze the government's conduct under Rule 11(b)(2) rather than Rule 11(b)(3), it should still impose sanctions on the government for having made a frivolous legal argument. Remarkably, the government fails even to mention, let alone refute, Plaintiffs' arguments against its

legal theory. *Compare* Dkt. # 123 at 4-6 *with* Dkt. # 126 at 6.

The government cites the text of Section 552(c) in defense of its view, Dkt. 126 at 6, but nothing in that text supports it. FOIA contains two lists of exempt information, one in subsection (b) and another in subsection (c). The information described in subsection (b) is exempt through language stating that "*This section does not apply* to matters that are . . . [described in several provisions]." (emphasis added). Section 552(c) authorizes the government to withhold three further categories of information, stating that the information described in those three categories may be treated as "*not subject to the requirements of this section*." Section 552(c) (emphasis added). By its terms, this language is not materially distinguishable from the language in subsection (b). Yet no court has ever suggested that the government can give false responses pursuant to Section 552(b).[4]

In addition, the government makes no attempt to answer Plaintiffs' argument (which this Court had previously adopted in its amended order) that its interpretation cannot be reconciled with FOIA's judicial review provisions. Dkt. # 123 at 5 (citing Dkt. # 98 at 11). Because the government's false response would generally serve to shield its conduct from judicial review, it cannot be what Congress intended.

The government also cites Attorney General Meese's memo on Section 552(c), but that memo provides no support for its view, as this Court already found. The memo merely states that the agency should "refuse to confirm or deny that an exclusion was employed in any particular case," Dkt. # 126 at 6, but of course the government could have done that by providing Glomar responses in its publicly-filed

---

[4] Remarkably, the government's defense of its practice in its letter withdrawing the proposed regulation completely ignores this textual flaw in its argument. Its "logic" is applies equally to both subsection (b)'s exemptions and to subsection (c)'s provisions. *See* Exh. 1 ("The logic is simple: When a citizen makes a request pursuant to the FOIA, either implicit or explicit in the request is that it seeks records that are subject to the FOIA; where the only records that exist are not subject to the FOIA, the statement that 'there exists no records responsive to your FOIA request' is wholly accurate.").

briefs and declarations, rather than stating, falsely, that "no responsive documents" exist or that plainly relevant information was "outside the scope" of the request when in fact it was not.

Finally, the government argues that no existing legal precedent forbade its practice, and that Plaintiffs' attempt to establish precedent on the issue in this case proves that sanctions are inappropriate. Dkt. # 126 at 6. However, the fact that no Court has stated the obvious hardly resolves the issue in the government's favor. As Judge Posner has explained in the qualified immunity context:

> The easiest cases don't even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability because no previous case had found liability in those circumstances.

*Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990). Similarly, here, the fact that no court has held that the government may not lie to the federal judiciary in this particular context is hardly grounds for concluding that the legality of the government's conduct is unclear, particularly when the government's conduct has all but prevented any court from deciding the question through the very deception which is at issue.

## IV. The Court Should Impose Sanctions to Deter the Government's Conduct

With respect to the need for deterrence, it is striking that the government never states that it intends to cease engaging in the misleading conduct that the Court discovered here. On the contrary, "the Government believes" that its statements were "accurate[]," Dkt. # 126 at 6, notwithstanding this Court's forceful conclusion to the contrary, and has continued to make public statements to that effect since the Court's decision. *See* Dkt. # 123 at 8; Exh. 1 (Letter from Ronald Welch, Assistant Attorney General, withdrawing the proposed regulation but defending the practice). One can only assume that the government will continue to deceive the judiciary pursuant to its formerly-secret policy until it is ordered to cease such behavior.

The government also argues that the Court should not sanction it for misconduct because "the Government is currently reviewing its regulations," Dkt. # 126 at 3, purportedly to minimize such "misunderstandings" in the future. In fact, however, the only concrete action it has taken thus far is to propose a regulation that would ratify the practice it engaged in here. *See* "Proposed Rule" § 16.6(f)(2) 76 Fed. Reg. 15236 (March 21, 2011) (attached as Exhibit 2). The government proposed that regulation after argument at the Ninth Circuit concerning this Court's original sealed order. Although the government withdrew the proposal two days ago, in the face heavy criticism by the ACLU and various others – including sitting Senators and Representatives, it has continued to defend its conduct even as it has withdrawn the proposed regulation. *Compare* Exh. 3 (ACLU Letter critical of proposed regulation) *and* Exh. 4 (Letters from Senator Grassley, Senator Udall, and Representative Lamar Smith *with* Exh. 1 at 2 (Letter from Ronald Welch, Assistant Attorney General, defending the practice). If anything, the fact that the government has refused to abandon its practice despite sustained criticism in the wake of this Court's order is yet more reason to *hold* that the government's conduct violated Rule 11, and therefore to issue sanctions.[5]

Similarly, if in fact the government is correct that its conduct here was consistent with "long-standing" (but apparently secret) Justice Department policy pursuant to which it has deceived the federal judiciary for over two decades, this is all the more reason for the Court to sanction the government. As Rule 11 makes clear, each and every individual attorney and litigant has an obligation to follow the

---

[5] The proposed regulation is also available at http:// www.regulations.gov/contentStreamer?objectId=0900006480c0c7f4&disposition=attachment&contentType=html. The ACLU's letter is also available at http://www.openthegovernment.org/sites/default/files/FOIA%20552c%20Comment%20-%2010-19-11%20-%20FINAL.pdf. Senator Grassley's letter is also available at http://www.grassley.senate.gov/judiciary/upload/FOIA-10-28-11-letter-to-Holder-proposed-DOJ-regs.pdf. Senator Udall's letter is available at http://www.scribd.com/doc/71304788/Letter-to-Attorney-General-Holder-on-the-Freedom-of-Information-Act. Representative Smith's letter is available at http://homeland.cq.com/hs/flatfiles/temporaryItems/20111102-smith.pdf.

ethical constraints the Rule creates, so it is no defense that a higher-level official ordered the conduct. Indeed, the official in *Navarro* had also argued essentially that he was "following orders," and the First Circuit rightly rejected that claim: "The duty of reasonable inquiry perforce requires that the signer of a pleading act upon the knowledge he acquires. After all, courts cannot function if lawyers and litigants are not forthright. Given the appellant's admission that he knew the truth, but nevertheless signed and swore to an answer that he had reason to believe was both incorrect and misleading, no more was required to warrant the imposition of sanctions." *Navarro*, 968 F.2d at 1426.

Finally, the government makes the meritless claim that it is a "misuse" of Rule 11, Dkt. # 126 at 10 n.4, to argue that the Court should issue sanctions in order to ensure that its views on this issue are transformed into a holding, rather than merely dicta that the government can continue to disregard. In fact, the Court "may impose an appropriate sanction" whenever it "determines that Rule 11(b) has been violated." Rule 11(c)(1). The Ninth Circuit and other courts have regularly referred to the need to deter misconduct as an appropriate consideration in deciding to issue sanctions, as the text of the Rule expressly contemplates. *See* Rule 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated"); *Business Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533, 552 (1991) ("The main objective of the Rule is . . . to deter baseless filings and curb abuses."); *In Re Matter of Yagman*, 796 F.2d 1165, 1184 (9th Cir. 1986) (recognizing that circumstances under which sanctions should be imposed "will, quite naturally, be unique and may vary widely" and that "[i]t is critical . . . that the sanctioning court embrace the overriding purpose of deterrence and mold its sanctions in each case so as to best implement that policy.") Here, where the Court's ability to impose sanctions may present the only avenue available for stopping the government from deceiving the judiciary in FOIA cases throughout the nation, it should exercise its

authority to do so.

**Conclusion**

For the foregoing reasons, the Court should grant Plaintiffs' motion, impose sanctions pursuant to Rule 11, and order the government to pay the modest fees that Plaintiffs have incurred in prosecution of this motion.

Respectfully submitted,

ACLU OF SOUTHERN CALIFORNIA

Dated: November 14, 2011

s/ Ahilan T. Arulanantham
AHILAN T. ARULANANTHAM
Attorney for Plaintiffs