# Exhibit 1



U.S. Department of Justice

Office of Legislative Affairs

Office of the Assistant Attorney General

Washington, D.C. 20530

November 3, 2011

The Honorable Charles E. Grassley
Ranking Minority Member
Committee on the Judiciary
United States Senate
Washington, D.C. 20510

Dear Senator Grassley:

This responds to your letter dated October 28, 2011, in which you expressed concerns with one of the provisions concerning statutory exclusions that is contained in the Department's proposed revisions to its Freedom of Information Act (FOIA) regulations. Since issuance of Attorney General Holder's March 2009 FOIA Guidelines, the Department has taken a number of steps to become more transparent in its handling of records that are, by statute, excluded from the FOIA. Having now received a number of comments on the Department's proposed regulations in this area, the Department is actively considering those comments and is reexamining whether there are other approaches to applying exclusions that protect the vital law enforcement and national security concerns that motivated Congress to exclude certain records from the FOIA and do so in the most transparent manner possible. If the proposed regulations can be improved in these respects, we will work to improve them. We believe that Section 16.6(f)(2) of the proposed regulations falls short by those measures, and we will not include that provision when the Department issues final regulations.

Exclusions, which by statute can be applied only in very specific contexts, are different from exemptions, which are more common. Congress excluded certain records from the FOIA in 1986 to protect three narrow categories of law enforcement and national security information that, if disclosed, could compromise vital interests. To take the simplest example, Section 552(c)(1) of the FOIA recognizes that if a requester seeks information relating to an ongoing criminal investigation, of which the target is unaware, and when even acknowledging the existence of responsive documents would tip off the criminal to the ongoing investigation, those records are not subject to the FOIA.

Since 1987, the Department has handled records excluded under these provisions according to guidance issued by Attorney General Meese. The Meese Guidance provided, among other things, that where the only records responsive to a request were excluded from FOIA by statute, "a requester can properly be advised in such a situation that 'there exist no records responsive to your FOIA request,'" and that agencies must ensure that its FOIA responses to requests that involve exclusions and those that do not involve exclusions "are consistent throughout, so that no telling inferences can be drawn by requesters." The logic is simple: When a citizen makes a request pursuant to the FOIA, either implicit or explicit in the

The Honorable Charles E. Grassley
Page Two

request is that it seeks records that are subject to the FOIA; where the only records that exist are not subject to the FOIA, the statement that "there exist no records responsive to your FOIA request" is wholly accurate. These practices laid out in Attorney General Meese's memo have governed Department practice for more than 20 years.

While the approach has never involved "lying," as some have suggested, the Department believes that past practice could be made more transparent. Accordingly, as part of an effort to update its FOIA regulations and other aspects of its Open Government initiative, the Department took a number of steps designed to bring its handling of exclusions in line with Attorney General Holder's commitment to open government.

- First, to ensure that exclusions are invoked only when absolutely necessary, Section 16(f)(1) of the proposed regulation requires that the head of the FOIA office of any Department of Justice component contemplating use of an exclusion obtain approval for such use from the Office of Information Policy.

- Second, to promote greater public accountability, Section 16.6(f)(3) requires components to maintain records of any uses of an exclusion and its approval, and the Department has, for the first time, required agencies to publicly report in their Chief FOIA Officer Reports on the number of times that they invoke exclusions.

- Third, to promote greater public awareness of exclusions than existed under the 1987 Attorney General Meese policy, Sections 16.4 and 16.6(f)(2) of the proposed regulations sought to advise requesters of how exclusions may be used. Section 16.4 reminded requesters that, under the FOIA, records that are excluded from FOIA are not subject to FOIA's requirements and are not considered responsive to a FOIA request. Section 16.6(f)(2), in turn, sought to remind claimants that the exclusion of records from a particular FOIA response is not noted in the response. As the 1987 Guidance recognized, consistent responses are necessary to avoid disclosing the ongoing criminal investigation or other sensitive law enforcement or national security information that the FOIA excludes.

Taken together, these steps were aimed at shining further light on a practice that, while expressly contemplated by statute and necessary to protect vital law enforcement and national security interests, operated for years with much less transparency. As you know, the initial comment period on these regulations closed earlier this year, with no public comment on the provisions in question. As a result, however, of this Administration's commitment to openness, the Department reopened the comment period on these regulations precisely so that it could receive additional input. That reopened comment period has recently concluded, and the Department is now in the process of reviewing those submissions. We are also taking a fresh look internally to see if there are other options available to implement Section 552(c)'s requirements in a manner that preserves the integrity of the sensitive law enforcement records at stake while preserving our continued commitment to being as transparent about that process as possible.

The Honorable Charles E. Grassley
Page Three

We hope this information is helpful. Please do not hesitate to contact this office if we may provide additional assistance regarding this or any other matter.

Sincerely,

Ronald Weich
Assistant Attorney General

cc:     The Honorable Patrick J. Leahy
        Chairman

# Exhibit 2

a request cannot be met because of "unusual circumstances," as defined in the FOIA, and the component extends the time limits on that basis, the component shall, before expiration of the twenty-day period to respond, notify the requester in writing of the unusual circumstances involved and of the date by which processing of the request can be expected to be completed. Where the extension exceeds ten working days, the component shall, as described by the FOIA, provide the requester with an opportunity to modify the request or agree to an alternative time period for processing. The component shall make available its designated FOIA contact and its FOIA Public Liaison for this purpose.

(d) *Aggregating requests.* For the purposes of satisfying unusual circumstances under the FOIA, components may aggregate requests in cases where it reasonably appears that multiple requests, submitted either by a requester or by a group of requesters acting in concert, constitute a single request that would otherwise involve unusual circumstances. Components will not aggregate multiple requests that involve unrelated matters.

(e) *Expedited processing.* (1) Requests and appeals will be processed on an expedited basis whenever it is determined that they involve:

(i) Circumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

(ii) An urgency to inform the public about an actual or alleged Federal government activity, if made by a person who is primarily engaged in disseminating information;

(iii) The loss of substantial due process rights; or

(iv) A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

(2) A request for expedited processing may be made at any time. Requests based on paragraphs (e)(1)(i), (ii), and (iii) of this section must be submitted to the component that maintains the records requested. When making a request for expedited processing of an administrative appeal, the request should be submitted to the Office of Information Policy. Requests for expedited processing that are based on paragraph (e)(1)(iv) of this section must be submitted to the Director of Public Affairs at the Office of Public Affairs, Department of Justice, 950 Pennsylvania Avenue, NW., Washington, DC 20530–0001. A component that receives a

misdirected request for expedited processing under the standard set forth in paragraph (e)(1)(iv) of this section shall forward it immediately to the Office of Public Affairs for its determination. The time period for making the determination on the request for expedited processing under paragraph (e)(1)(iv) of this section shall commence on the date that the Office of Public Affairs receives the request, provided that it is routed within ten working days.

(3) A requester who seeks expedited processing must submit a statement, certified to be true and correct, explaining in detail the basis for making the request for expedited processing. For example, under paragraph (d)(1)(ii) of this section, a requester who is not a full-time member of the news media must establish that he or she is a person whose primary professional activity or occupation is information dissemination. Such a requester also must establish a particular urgency to inform the public about the government activity involved in the request—one that extends beyond the public's right to know about government activity generally. A requester cannot satisfy the "urgency to inform" requirement solely by demonstrating that numerous articles have been published on a given subject. As a matter of administrative discretion, a component may waive the formal certification requirement.

(4) A component shall notify the requester within ten calendar days of the receipt of a request for expedited processing of its decision whether to grant or deny expedited processing. If expedited processing is granted, the request shall be given priority, placed in the processing track for expedited requests, and shall be processed as soon as practicable. If a component denies expedited processing, any appeal of that decision which complies with the procedures set forth in § 16.8 of this subpart shall be acted on expeditiously.

## § 16.6   Responses to requests.

(a) *Acknowledgments of requests.* Upon receipt of a request that will take longer than ten days to process, a component shall send the requester an acknowledgment letter that assigns the request an individualized tracking number.

(b) *Grants of requests.* Once a component makes a determination to grant a request in full or in part, it shall notify the requester in writing. The component also shall inform the requester of any fees charged under § 16.10 of this subpart and shall disclose the requested records to the requester

promptly upon payment of any applicable fees.

(c) *Adverse determinations of requests.* A component making an adverse determination denying a request in any respect shall notify the requester of that determination in writing. Adverse determinations, or denials of requests, include decisions that: the requested record is exempt, in whole or in part; the request does not reasonably describe the records sought; the information requested is not a record subject to the FOIA; the requested record does not exist, cannot be located, or has been destroyed; or the requested record is not readily reproducible in the form or format sought by the requester. Adverse determinations also include denials involving fees or fee waiver matters or denials of requests for expedited processing.

(d) *Content of denial letter.* The denial letter shall be signed by the head of the component, or designee, and shall include:

(1) The name and title or position of the person responsible for the denial;

(2) A brief statement of the reasons for the denial, including any FOIA exemption applied by the component in denying the request; and

(3) An estimate of the volume of any records or information withheld, for example, by providing the number of pages or some other reasonable form of estimation. This estimation is not required, if the volume is otherwise indicated by deletions marked on records that are disclosed in part, or if providing an estimate would harm an interest protected by an applicable exemption.

(4) A statement that the denial may be appealed under § 16.8(a) of this subpart, and a description of the requirements set forth therein.

(e) *Markings on released documents.* Markings on released documents must be clearly visible to the requester.

(f) *Use of record exclusions.* (1) In the event that a component identifies records that may be subject to exclusion from the requirements of the FOIA pursuant to 5 U.S.C. 552(c), the head of the FOIA office of that component must confer with the Office of Information Policy (OIP) to obtain approval to apply the exclusion.

(2) When a component applies an exclusion to exclude records from the requirements of the FOIA pursuant to 5 U.S.C. 552(c), the component utilizing the exclusion will respond to the request as if the excluded records did not exist. This response should not differ in wording from any other response given by the component.

# Exhibit 3

To:     Caroline A. Smith
        Office of Information Policy
        U.S. Department of Justice
        1425 New York Avenue, Suite 11050
        Washington, DC 20530-0001

From:   American Civil Liberties Union
        Citizens for Responsibility and Ethics in Washington (CREW)
        OpenTheGovernment.org

October 19, 2011

**Re: Docket No. OAG 140; AG Order No. 3259-2011; RIN 1105-AB27**

Dear Ms. Smith:

The American Civil Liberties Union (ACLU), Citizens for Responsibility and Ethics in
Washington (CREW), and OpenTheGovernment.org submit these comments in opposition to a
provision of the proposed rule which would amend the Department of Justice's (DoJ) Freedom
of Information Act (FOIA) Regulations by creating a new section 16.6(f)(2). (See Docket No.
OAG 140; AG Order No. 3259-2011, published in the Federal Register on March 21, 2011).[1]
This provision of the proposed rule would amend the FOIA regulations to allow agencies
responding to a FOIA request to falsely state that no records exist whenever agencies determine
that the requested documents they hold fit within exclusions under 5 U.S.C. section 552(c).[2]
Authorizing government agencies to lie to FOIA requesters by affirmatively denying the
existence of agency records when they actually exist undermines the purpose of FOIA, obstructs
judicial review of agency FOIA decisions, and destroys integrity in government.

The ACLU is a national non-partisan organization with over half a million members and 53
affiliates nationwide dedicated to defending and preserving the individual rights and freedoms
guaranteed in the Constitution and the laws of the United States.  CREW is a nonprofit
organization dedicated to promoting ethics and accountability in government and public life.
OpenTheGovernment.org is a coalition of organizations and groups united to make the federal
government a more open place in order to make us safer, strengthen public trust through
government accountability, and support our democratic principles.  Together we urge DoJ to
amend the proposed section 16.6(f)(2) so that it does not authorize a government agency to
actively mislead a requester in response to their FOIA request, or to abandon its effort to adopt it
by permanently withdrawing that portion of the proposed rule.

1

**The ACLU, CREW and OpenTheGovernment.org Oppose the Proposed Rule to Amend
the DoJ FOIA Regulation by Creating a New Section 16.6(f)(2)**

5 U.S.C. section 552(c), enacted as an amendment to FOIA in 1986, authorizes the government
to "treat records as not subject to the requirements of" FOIA in three limited circumstances: first,
where the request concerns an ongoing criminal investigation against the requester when there is
reason to believe the requester is not aware of its pendency and premature disclosure would
impair the investigation; second, where a FOIA request seeks records regarding a specific
informant and the individual's status as an informant has not been previously disclosed by the
government; and third, where the FOIA request seeks "Federal Bureau of Investigation [records]
pertaining to foreign intelligence or counterintelligence, or international terrorism, and the
existence of the records is classified information."[3] The provision was adopted to thwart
attempts by criminals, terrorists, and hostile foreign nations to exploit FOIA to expose
investigations against them, identify informants, or reveal classified information. The provision
is intended to permit the government to avoid confirming the existence of responsive documents
under FOIA requests when the mere confirmation that such records exist would damage ongoing
investigations or reveal sensitive information the government is lawfully entitled to keep secret
under FOIA. The current regulation, section 16.6(c), requires agencies to notify FOIA requesters
of a denial of the request and the reasons for the denial, and to provide notice that the denial may
be appealed. It does not authorize issuance of a misleading response stating that no records exist
when, if fact, such records do exist but can lawfully be excluded from a response. However,
recent litigation has made clear that, despite the regulation, the FBI is currently providing FOIA
requesters with false statements denying that records exist.[4] The proposed rule would authorize
responding agencies to wholly mislead FOIA requesters by falsely denying that records exist.

The ACLU, CREW and OpenTheGovernment.org oppose this provision of the proposed rule
because it is inconsistent with FOIA's purpose of compelling government accountability through
public access to information, it will impede the judicial review that ensures government agencies
are properly interpreting exemptions in the FOIA statute, and it will dramatically undermine
government integrity by allowing a law designed to provide public access to government
information to be twisted to  permit federal law enforcement agencies to actively lie to the
American people. Moreover, the proposed rule is unnecessary, because the government can craft
a response to FOIA requests for records that fall within section 552(c) exclusions that is truthful
and informative, yet does not confirm whether excludable records exist. We suggest that when
DoJ determines that a requester is trying to obtain information excluded from FOIA under
section 552(c), the agency should simply respond that "we interpret all or part of your request as
a request for records which, if they exist, would not be subject to the disclosure requirements of
FOIA pursuant to section 552(c), and we therefore will not process that portion of your request."
This response requires no change to the current FOIA regulation.

FOIA was enacted to ensure government accountability by establishing a mechanism to compel
public access to information held by the government, in recognition of James Madison's famous
admonition that "[a] popular government without popular information or the means of acquiring
it, is but a prologue to a farce or a tragedy or perhaps both."[5] The 1965 Senate Report on FOIA
described the prevailing reason for enacting the legislation:

> Although the theory of an informed electorate is vital to the proper operation of a
> democracy, there is nowhere in our present law a statute which affirmatively
> provides for [an information policy of full disclosure]... It is the purpose of the
> present bill...to establish a general philosophy of full agency disclosure unless
> information is exempted under clearly delineated statutory language and to
> provide a court procedure by which citizens and the press may obtain information
> wrongfully withheld.[6]

The House of Representatives' report on the legislation makes clear that the statute is intended to
provide a remedy for requesters who believe the government improperly withheld information
under FOIA's exemptions through judicial review of agency decisions.[7] The proposed rule
would dramatically undermine FOIA's judicial review provisions.

If the proposed section 16.6(f)(2) works as intended and government agencies successfully
mislead FOIA requesters by falsely responding that no documents exist, the proposed rule will
thwart the judicial review of agency withholding decisions contemplated in the statute. Few
reasonable requesters would litigate FOIA denials where their requests were denied on the
grounds that no documents exist, because as far as they would know there would be nothing for a
court to compel the government to disclose.

But implementation of the proposed rule may also likely have the perverse effect of significantly
increasing FOIA litigation by parties who regularly file FOIA requests. Once it becomes well-
known that agency "no records" responses to FOIA requests do not necessarily mean that there
are no records, requesters will be compelled to litigate to determine whether the government's
response is truthful, or instead is merely a false response issued pursuant to this proposed rule.
For experienced institutional requesters like the ACLU or news organizations, litigation of many
"no records" responses will become necessary to determine if records do in fact exist, and to
ensure that any claimed exemptions or exclusions are properly applied.

Because the new rule is antithetical to the transparency goals of FOIA, because it authorizes
actual false public statements by the government, and because is will distort the judicial review
process, we oppose section 16.6(f)(2) of the proposed rule, and urge the DoJ not to adopt this
provision.

**The Proposed Rule's New Section 16.6(f)(2) is not supported by the Judicial Decisions
Regarding FOIA Litigation**

Court decisions leading up to and following the 1986 FOIA amendments that created the section
552(c) exclusions make clear that courts never intended to allow intelligence agencies to lie to
requesters or the courts about the existence of records. Courts expected that judicial review
would always be available as a remedy for any requester who believed that the government had
improperly withheld records pursuant to FOIA. The courts further made clear that, while it is
sometimes necessary to keep the existence or non-existence of certain government records
secret, it is unacceptable to mislead a requester or the court, as the proposed rule would allow.

In *Phillippi v. CIA*, the D.C. Circuit Court of Appeals upheld the Central Intelligence Agency's use of what thereafter became known as a "Glomar response," in which a federal agency responding to a FOIA request "neither confirms nor denies" that responsive records exist.[8] But while the Court of Appeals upheld the legality of a Glomar response, it required that the CIA provide a public affidavit explaining in as much detail as possible the basis for its claim that it could not confirm or deny the existence of the records. The court imposed that requirement because it was necessary to allow the requester to meaningfully assess and, if necessary, litigate the sufficiency of the government's claims that it could not confirm or deny even the existence of responsive records.[9]

Since the passage of the 1986 FOIA amendments, federal courts have on several occasions made clear that, even in national security cases where a Glomar response may be appropriate, the federal agency must provide enough information to permit effective judicial review of agency decisions to take place.[10] In *Weiner v. FBI*, the Ninth Circuit Court of Appeals held that an FBI affidavit provided insufficient information "to enable the FOIA requester to challenge the FBI's conclusion that the documents withheld fell within [the claimed exemption]," and later that a CIA affidavit was inadequate to support the exemption claimed because it "fail[ed] to discuss the facts or reasoning upon which [the declarant] based his conclusion, and thus afford[ed] [the plaintiff] no opportunity to contest that conclusion."[11] This rule applies even to the most sensitive national security subjects. In *Berman v. CIA*, the Ninth Circuit re-affirmed that government agencies bear the burden of proving that FOIA exemptions are properly applied and that government affidavits justifying the exemptions must provide enough information to allow "plaintiff the opportunity to contest the CIA's conclusions," even for extremely sensitive classified "Presidential Daily Briefings."[12] A system that permits agencies to actively mislead requesters as to the existence of responsive documents is inconsistent with this principle.

In a rare case in which a false "no record" response to section 552(c) was specifically addressed, the D.C. Circuit Court of appeals in Benavides v. Drug Enforcement Agency originally held that, "we conclude from the text and legislative history that Congress intended subsection (c)(2) to provide express legislative authorization for a Glomar response, in which the agency neither confirms nor denies the existence of records, unless an informant's status has been officially confirmed."[13] But this opinion was replaced with a supplemental opinion that withdrew this conclusion as unnecessary to the determination of the case.[14]

Most recently, in a case brought by the ACLU of Southern California, a District Court Judge expressed grave concerns over the FBI misleading the court as to the existence of documents through use of a response that would be authorized under the proposed rule. In *Islamic Shura Council of Southern California, et al. v. FBI*, the FBI lied to the plaintiffs by falsely denying the existence of documents requested under FOIA, but when the plaintiffs sued the FBI on other grounds, the court discovered that responsive documents did indeed exist.[15] In the process of litigation, the FBI had also failed to disclose the existence of these responsive records to the court, and only revealed their existence when the court convened *ex parte, in camera* proceedings. The court issued a stern warning as to how detrimental such a "blatantly false" response could be, stating:

4

22

"The Government's *in camera* submission raised a very disturbing issue... The Government asserts that it had to mislead the Court regarding the Government's response to Plaintiff's FOIA request to avoid compromising national security. The Government's argument is untenable. The Government cannot, under any circumstance, affirmatively mislead the Court. The United States Constitution entrusts the Judiciary with the power to determine compliance with the law. It is impossible for the court to determine compliance with the law and to protect the public from Government misconduct if the Government misleads the Court. The Court simply cannot perform its constitutional function if the Government does not tell the truth."[16]

The court went on to cite *United States v. Nixon* in cautioning that "the Executive Branch's refusal to comply with judicial processes and procedures" would undermine the balance of powers between our branches of government and wholly undermine the courts in all matters of law.[17]

### The Text and Legislative History of Section 552(c) Do Not Support the Position that Congress Intended to Allow Agencies to Falsely Deny Records Exist

The plain text of section 552(c) provides very little reason to suggest agencies may falsely deny the existence of responsive records. The FOIA statute contains two lists of exempt information, one in section 552(b) and another in section 552(c). The information described in section 552(b) is exempt through language that states "This section does not apply to matters that are..." and then lists the categories of exempted information in several provisions that follow. Section 552(c) authorizes the government to withhold three further categories of information, which it says agencies may treat as "not subject to the requirements of this section." By its terms, the language creating the exemptions in 552(c) is not materially distinguishable from the language of section 552(b), yet no agency has claimed the government can give false responses pursuant to section 552(b).

Nonetheless, section 552(c)'s context strongly suggests that it does at least something more than merely reiterate the authority in section 552(b). Of the three groups of information exempt in section 552(c), at least two are themselves subsets of information already exempt in section 552(b).[18] However, this is entirely consistent with the view that section 552(c) authorizes federal agencies to issue a Glomar response when a requester seeks documents that fall within its narrow categories.

Likewise, the legislative history of the 1986 amendments to FOIA that established the exclusions under 5 U.S.C. section 552(c) does not support the conclusion that Congress intended to provide the federal agencies the authority to respond to a FOIA request by falsely stating that no responsive records exist. The legislative history shows that such a tactic was proposed and rejected in favor of a Glomar-type response through which the government neither confirms nor denies that records exist. It also reveals that several members of Congress provided suggestions of possible responses that would neither actively mislead a requester nor definitively admit the existence of an exempted document. Furthermore, it is clear from the legislative history that Congress intended to provide requesters receiving an unfavorable response with an opportunity

5

23

for judicial review of the government's decision to withhold information under section 552(c).
Thus, to adopt this proposed rule would not only undermine the intent of government openness
and accountability that FOIA was originally passed to promote and protect, it would also
contradict the intent of the very amendments the new rule would purportedly implement.
Allowing federal law enforcement agencies to lie about the existence of documents to a FOIA
requester is simply untenable as a solution to the government's need to protect the information
described in section 552(c) from disclosure.

<u>S. 774: The Freedom of Information Reform Act – Predecessor to 1986 Amendments</u>

In 1986, Congress updated FOIA and added the exclusions in subsection 552(c), which were
developed from language contained in a predecessor bill, S. 774, the Freedom of Information
Reform Act. Section 10 of S. 774 provided the language for the version of the bill that
ultimately passed in 1986 as part of the Anti-Drug Abuse Act of 1986.[19]

A House sponsor of the bill, Representative Glenn English affirmed that a Glomar response
would be the appropriate response when an agency withheld information pursuant to section
552(c) exclusions: "I can't think of a single case where a good deal of the difficulty couldn't be
eliminated by the use of a so-called Glomar response."[20] At one point he suggested that an
agency "can say 'Either we are covered by an exemption under the FOIA or we don't have any
information available,' that takes care of the problems... I can't think of a single thing that
wouldn't be covered with that type of a response."[21] Rep. English opposed allowing a false "no
records" response and said a proposal by FBI Director William Webster that the agency say,
"[we] don't have any records, and if we did they would be exempt," might be "lying." Rep.
English suggested the more truthful and appropriate response would be "we don't have records
or they are exempt."[22]

Director Webster made comments during the hearing that alluded to earlier suggestions the FBI
"should be allowed to lie about these things," but he ultimately said in a letter to Congress
clarifying his testimony that the FBI was asking Congress to enact section 552(c) to allow
Glomar responses. He stated unambiguously, "the FBI seeks statutory authority to use the
'Glomarization type' response to avoid any confusion and to be in full compliance with the letter
and the spirit of the FOIA."[23]

<u>1986 FOIA Amendments – Senate Floor Debate</u>

S. 774 stalled in the House during the 98th Congress, but the language pertaining to law
enforcement responses to FOIA requests was included in an omnibus drug control bill enacted
during the 99th Congress. In both the 98th and 99th Congresses, the amendments were
consistently referred to by members of Congress and the officials from the Department of Justice
as narrow and modest.

In floor statements in the Senate, the amendment's co-sponsors, Senators Patrick Leahy and
Orrin Hatch referenced Glomar and re-affirmed the importance of judicial review, implying that
the requestors would receive some notice records have been withheld, though not necessarily
under what exclusion. Senator Hatch said that:

6

"while the effect of these provisions will be somewhat analogous to the situation in which an agency neither confirms nor denies the existence of responsive records – colloquially known as glomarization – their operation, both administratively and in court, will of necessity be different. An agency invoking one of these special exclusions will necessarily do so without the specific knowledge of the requester – because anything else would defeat the very intention of the exclusion – and any requester who wishes to challenge an agency's possible application of an exclusion can expect the agency to defend against such a challenge with the automatic filing of an in camera affidavit, regardless of whether the exclusion was in fact employed in that case."[24]

Sen. Leahy described the provision as "a narrow and specific statutory authority for criminal law enforcement agencies to act on the principle that 'an agency may refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under a FOIA exemption."[25]

1986 FOIA Amendments – House Floor Debate

House co-sponsor Rep. Thomas Kindness' floor statement made clear that he expected a Glomar response by an agency as a result of the 1986 amendments to be contestable by requesters, explaining that:

"...when the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal. Therefore, to fulfill its congressionally imposed obligation to make a de novo determination of the propriety of a refusal to provide information in response to an FOIA request, the district court may have to examine classified affidavits in camera and without participation by plaintiff's counsel. Before adopting such a procedure, however, the district court should attempt to create as complete a public record as is possible."[26]

Finally, Rep. English also made a floor statement where he referred to the three exclusions provided for in the amendments as the "so-called Glomar exclusions" that create an expansion that is "slight, precisely defined, and fully justified."[27]

Congressional Report: A Citizen's Guide on Using the Freedom of Information Act and the Privacy Act of 1974 to Request Government Records

In the decades since the amendments have been implemented, the intent of Congress to allow agencies to use a Glomar-like response to protect ongoing investigations and classified information has not changed. Congress has published several editions of the report "A Citizen's Guide on Using the Freedom of Information Act and the Privacy Act of 1974 to Request Government Records." In each of these editions, the most recent having been published in 2005, the report states:

7

> The exclusions allow an agency to treat certain exempt records as if the records were not subject to the FOIA. An agency is not required to confirm the existence of three specific categories of records. If these records are requested, the agency may respond that there are no disclosable records responsive to the request. However, these exclusions do not broaden the authority of any agency to withhold documents from the public. The exclusions are only applicable to information that is otherwise exempt from disclosure.[28]

This response leaves open the possibility that responsive records exist, but that if they do they are not disclosable under FOIA. Additionally, the report concludes the section by stating that: "In enacting these exclusions, congressional sponsors stated that it was their intent that agencies must inform FOIA requesters that these [section 552(c)] exclusions are available for agency use. Requesters who believe that records were improperly withheld because of the exclusions can seek judicial review."[29]

So, from the passage of the 1986 amendments to present, Congress has continually reaffirmed its intent to allow for an agency to refuse to confirm or deny the existence of a document by using a Glomar-like response to a FOIA request. This was articulated in the hearings and floor statements that preceded the passage of the 1986 amendments, and has been confirmed in every Congressional report on the use of FOIA that has followed. Congress continues to assert its expectation that requesters be notified of an agency's right to Glomarize its response, and of the requesters' right to contest the agency's refusal to confirm the existence of a document.

If the DoJ adopts section 16.6(f)(2) of the proposed rule, it will be authorizing the FBI and other agencies to act in direct contravention of Congress' intent when it passed the 1986 FOIA amendments on which this rule is based. It will authorize the FBI to lie to the public about the existence of records – an idea that was proposed and rejected as unworkable during the debates that preceded the passage of the amendments. It will also undermine the ability of requesters to know when they are entitled to seek judicial review of an adverse determination, thus allowing the government to circumvent that level of accountability almost entirely. It is untenable to adopt a rule that so unambiguously flouts the intent of Congress and threatens to undermine the integrity of our government.

Proponents of the rule may argue that section 16.6(f)(1) of the proposed rule creates safeguards that would prevent abuse. That provision requires that an agency denying the existence of documents pursuant to section 16.6(f)(2) "confer with the Office of Information Policy (OIP) to obtain approval to apply the exclusion."[30] While such direct oversight of the use of section 552(c) exclusions is critical and should be retained, ultimately any such internal oversight is insufficient to prevent abuse. As Congress foresaw, the opportunity for independent judicial review serves as a critical check to ensure the legality of any agency decision to withhold documents from a requester pursuant to a FOIA exemption. Internal oversight is not and cannot be as truly independent and impartial as judicial review and, as such, it cannot be substituted with any confidence that it will prevent abuse. Because the proposed section 16.6(f)(2) would undermine such judicial review by misleading requesters as to the existence of documents requested, it is unsustainable.

8

**Alternative Responses Must Not Subvert FOIA or Interfere with Judicial Review**

As shown above, congressional sponsors of the 1986 amendments suggested a number of possible Glomar-like responses to FOIA requests for records excluded under section 552(c) that do not require agencies to lie to the public, including the suggestion in the Citizen's Guide of a response stating that "there are no disclosable records responsive to this request." The ACLU, CREW and OpenTheGovernment.org would find a Glomar declaration in response to FOIA requests for records excludable under section 552(c) preferable to a false "no records" response. But a concern with allowing agencies to issue a Glomar response to a request for records that are excludable from FOIA under section 552(c) is that the agencies may be inclined to issue Glomar responses in other situations, such as when no responsive records actually exist or where other exemptions apply, so as to mask when section 552(c) exclusions are being applied. Such a result would deny those FOIA requesters who are not seeking exempt information under section 552(c) from the definitive and clear response they are entitled to under the statute, and would further undermine the FOIA statute's goal of creating greater government transparency.

Moreover, the use of Glomar responses outside of section 552(c) would increase litigation where records did not in fact exist because requesters would tend to challenge such a needlessly ambiguous response. Section 552(c) was enacted to thwart a narrow problem of defeating malicious efforts to confirm that a criminal investigation it taking place, identify an informant or verify the existence of classified programs. Providing such requesters with a refusal to confirm or deny that information exists could never be reasonably interpreted as a confirmation it exists. Obscuring FOIA responses for the vast majority of honest and appropriate requesters would be an inappropriate way of handling a tiny minority of requests from malicious actors, and the ACLU, CREW and OpenTheGovernment.org oppose the expanded use of Glomar responses to requests not excludable under section 552(c).

**A Suggested Response Which is Both Truthful and Informative and Requires No Amendment to the Current Regulation**

The ACLU, CREW and OpenTheGovernment.org suggest another response to FOIA requests for records excludable under section 552(c) that is both truthful and informative, yet does not confirm the existence of exempted documents or require changes to the existing DoJ FOIA regulation. Where DoJ determines that the requester is trying to obtain information excluded from FOIA under section 552(c), the agency could simply respond that "we interpret all or part of your request as a request for records which, if they exist, would not be subject to the disclosure requirements of FOIA pursuant to section 552(c), and we therefore will not process that portion of your request." Any request for information excludable under 552(c) could receive this response, regardless of whether the documents sought actually exist. The advantage of this response is that it is a clear expression of the government's reasoning for not processing the request, and therefore would allow the requester to challenge the government's interpretation of the request, yet it provides the requester with no confirmation of the existence of any documents.

9

**Conclusion**

Section 16.6(f)(2) of the DoJ's proposed rule is untenable because it would authorize the FBI to actively mislead a FOIA requester about the existence of documents. Such a rule would contradict the open government goals of FOIA, and cannot be reconciled either with judicial decisions concerning FOIA or the intentions of Congress when it passed the 1986 FOIA amendments that created section 552(c).

As explained above, alternative responses are available that would protect information that ought to remain secret under section 552(c) while not undermining the integrity of our government by explicitly sanctioning false responses to members of the public seeking information through FOIA. The ACLU, CREW and OpenTheGovernment.org suggest agencies respond to requests for information excludable under section 552(c) by saying, "we interpret all or part of your request as a request for records which, if they exist, would not be subject to the disclosure requirements of FOIA pursuant to section 552(c), and we therefore will not process that portion of your request."

The Court in *Islamic Shura Council v. FBI* rightly closed its analysis of the Government's actions in misleading the Court by stating "Deception perverts justice. Truth always promotes it."[31] If adopted, section 16.6(f)(2) of the proposed rule would surely undermine the goals of FOIA and lead to a perversion of justice.

In light of the foregoing concerns, the ACLU, CREW and OpenTheGovernment.org oppose the provision of the proposed rule that would allow agencies to falsely deny the existence of responsive records, and urges DoJ to amend section 16.6(f)(2) so that it does not authorize a government agency to actively mislead a requester in response to their FOIA request, or to abandon its effort to adopt it by permanently withdrawing that portion of the notice.

Thank you for your consideration of this important matter. If you have questions or comments, please contact Michael German at 202-544-1681.

Sincerely,

American Civil Liberties Union

Citizens for Responsibility and Ethics in Washington

OpenTheGovernment.org

---

[1] Freedom of Information Act Regulations, 76 Fed. Reg. 15,236 (Mar. 21, 2011) (to be codified at 28 C.F.R. pt. 16).
[2] *Id.* at 15,239.
[3] 5 U.S.C. § 552(c) (1986).
[4] Islamic Shura Council v. FBI, No. SACV07-1088-CJC(ANx) (C.D.Cal.-S.D. filed Apr. 27, 2011).
[5] Letter from James Madison to W.T. Barry (Aug. 4, 1822), available at
http://www.constitution.org/jm/18220804_barry.htm.

[6] S. Rep. No. 89-813, at 38 (1965).

[7] H. Rep. No. 89-1497, at 30 (1966).

[8] Phillippe v. Central Intelligence Agency, 546 F.2d 1009, 1012 (D.C. Cir., 1976). Note: the Glomar Response is named for the ship, the Glomar Explorer, that was at the center of the FOIA request. *See also* Gardels v. Central Intelligence Agency, 689 F.2d 1100, 1103 (DC Cir., 1982) (In Gardels v. CIA, the Court also held that a Glomar Response was appropriate "where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception. See Phillipi v. Central Intelligence Agency, 546 F.2d 1009, 1012 (D.C.Cir.1976); Phillippi v. Central Intelligence Agency, 655 F.2d 1325, 1330 (D.C.Cir.1981). The proper standard to determine whether section 403(d)(3) applies to such a situation is whether the CIA demonstrates that an answer to the query "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." Halperin v. Central Intelligence Agency, supra, 629 F.2d at 147.").

[9] Phillippe v. Central Intelligence Agency supra note 8, at 1013.

[10] *See* Wiener v. FBI, 943 F.2d 972, 982, 983 (9th Cir. 1991).

[11] Id.

[12] Berman v. CIA, 501 F.3d 1136, 1141 (9th Cir. 2007).

[13] Benavides v. Drug Enforcement Admin., 968 F.2d 1243, 1246 (D.C. Cir.)(1992).

[14] Benavides v. Drug Enforcement Admin., 976 F.2d 751 (D.C. Cir.)(1992).

[15] Islamic Shura Council v. FBI supra note 4.

[16] Id. at 3.

[17] Id. at 9. *See also* United States v. Nixon, 418 U.S. 683, 707 (1974).

[18] *See* 5 U.S.C. 552(c)(1), exempting a subset of information already described in subsection 552(b)(7)(A); and 5 U.S.C. 552(c)(3), exempting information already described in subsection 552(b)(1).

[19] Pub. L. No. 99-570, §§ 1801-04, 100 Stat. 3207-48 to 50 (1986).

[20] S. 774: Hearing before the House Committee on Government Operations Subcommittee on Government Information, Justice, and Agriculture, 98th Cong. 823, at 887 (1983).

[21] Id. at 888.

[22] Id. at 896.

[23] Id. at 909.

[24] Cong. Rec. S16505 (daily ed. Oct. 15, 1986) (statement of Sen. Hatch).

[25] Cong. Rec. S14297 (daily ed. Sept. 30, 1986) (statement of Sen. Leahy).

[26] Cong. Rec. H9467 (daily ed. Oct. 8, 1986) (statement of Rep. Kindness).

[27] Cong. Rec. H9463 (daily ed. Oct. 8, 1986) (statement of Rep. English).

[28] H. Rep. 226, 109th Cong., 1st Sess. 19 (2005).

[29] Id.

[30] 76 F.Reg. 15,236 supra note 1, at 15,239.

[31] Islamic Shura Council v. FBI supra note 4, at 17.

11

# Exhibit 4

PATRICK J. LEAHY, VERMONT, CHAIRMAN

HERB KOHL, WISCONSIN
DIANNE FEINSTEIN, CALIFORNIA
CHARLES E. SCHUMER, NEW YORK
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
AL FRANKEN, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT

CHARLES E. GRASSLEY, IOWA
ORRIN G. HATCH, UTAH
JON KYL, ARIZONA
JEFF SESSIONS, ALABAMA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TOM COBURN, OKLAHOMA

# United States Senate

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510-6275

BRUCE A. COHEN, Chief Counsel and Staff Director
KOLAN L. DAVIS, Republican Chief Counsel and Staff Director

October 28, 2011

Via Electronic Transmission

The Honorable Eric H. Holder, Jr.
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Dear Attorney General Holder:

I write you today regarding the Department of Justice's proposal to amend the Freedom of Information Act Regulations.[1] Under the proposal, a new section 16.6(f)(2) would change existing FOIA regulations to allow agencies responding to a FOIA request to state that no records exist whenever they determine that the requested documents they possess fit within the exclusions under 5 U.S.C. § 552(c).

Institutional FOIA requesters with varying perspectives have expressed their opposition to section 16.6(f)(2). In sum, they oppose it because it is contrary to FOIA's purpose of ensuring government accountability by providing for public access to information and records. Requesters argue that section 16.6(f)(2) will interfere with the judicial review that guarantees that agencies are correctly interpreting and applying exemptions under FOIA. They further maintain that the provision will severely damage government integrity by allowing a law intended to facilitate access to information to be distorted to allow law enforcement agencies to "lie" to our citizens. In the opinion of requesters, section 16.6(f)(2) is not needed because answers to FOIA requests for documents that fall within § 552(c) exclusions can easily be framed in a manner that is truthful while still not acknowledging whether any such documents exist.

Under normal circumstances, few requesters would litigate a denial where the FOIA request was denied on the basis that no records exist, because in that situation there should not be anything for a court to order the government to produce. However, requesters contend that the enactment of section 16.6(f)(2) could very likely result in an increase in FOIA litigation because as soon as requesters understand that a DOJ "no records" response does not necessarily mean that there are no records, they will be forced

---

[1] See Docket No. OAG-140; AG Order No. 3259-2011, published in the Federal Register on March 21, 2011; Freedom of Information Act Regulations, 76 Fed. Reg. 15,236 (Mar. 21, 2011) (to be codified at 28 C.F.R. 16).

to sue to discover whether there are any records or whether the response was made under
section 16.6(f)(2).

On his first full day in office, President Obama declared openness and transparency to be
touchstones of his administration, and ordered agencies to make it easier for the public to
get information about the government. Specifically, he issued two memoranda written in
grand language and purportedly designed to usher in a "new era of open government."[2]
The President's memorandum on FOIA called on all government agencies to adopt a
"presumption of disclosure" when administering the law. He directed agencies to be
more proactive in their disclosure and to act cooperatively with the public. To further his
goals, the President directed the Attorney General to issue new FOIA guidelines for
agency heads.

Pursuant to the President's instructions, you issued FOIA guidelines in a memorandum
dated March 19, 2009.[3] Your memorandum rescinded former Attorney General
Ashcroft's 2001 pledge to defend agency FOIA withholdings unless they lacked a sound
legal basis. Instead, you stated that the DOJ would now defend withholdings only if the
law prohibited release of the information or if the release would result in foreseeable
harm to a government interest protected by one of the exemptions in FOIA. Your
memorandum used the same grand language as the President's memoranda. In relevant
part, it reads:

> As President Obama instructed in his January 21 FOIA Memorandum, 'The
> Freedom of Information Act should be administered with a clear presumption: In
> the face of doubt, openness prevails.' This presumption has two important
> implications.
>
> First, an agency should not withhold information simply because it may do so
> legally. I strongly encourage agencies to make discretionary disclosures of
> information. An agency should not withhold records merely because it can
> demonstrate, as a technical matter that the records fall within the scope of a FOIA
> exemption.
>
> Second, ... [a]gencies should always be mindful that the FOIA requires them to
> take reasonable steps to segregate and release nonexempt information....
>
> At the same time, the disclosure obligation under the FOIA is not absolute. The
> Act provides exemptions to protect, for example, national security, personal

---

[2] Memorandum from President Barak Obama Re: Freedom of Information Act (Jan. 21, 2009)
(available at www.whitehouse.gov/the-press-office/freedom-information-act); Memorandum
from President Barak Obama Re: Transparency and Open Government (Jan. 21, 2009) (available
at www.whitehouse.gov/the-press-office/transparency-and-open-government).

[3] Memorandum from Attorney General Eric Holder Re: Freedom of Information Act (Mar. 21,
2009) (available at www.justice.gov/ag/foia-memo-march2009.pdf).

2

31

privacy, privileged records, and law enforcement interests. But as the President stated in his memorandum, "The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears."

... Open government requires not just a presumption of disclosure but also an effective system for responding to FOIA requests. Each agency must be fully accountable for its administration of the FOIA.

I would like to emphasize that responsibility for effective FOIA administration belongs to all of us—it is not merely a task assigned to an agency's FOIA staff. We all must do our part to ensure open government.

Proposed section 16.6(f)(2) stands in stark contrast to both the President's and your prior statements about FOIA, transparency, and open government. In fact, this policy directly contradicts your many statements, to me and other members of the Judiciary Committee, as part of your nomination hearing, that you support transparency of the Executive Branch. Further, this proposal is alarming given my questions to you at the April 14, 2010 oversight hearing about the significant increase in the use of FOIA exemptions by federal agencies between FY2008 and FY2009. Although you responded that the significant increase in the use of exemptions was "troubling," your later written response indicated that the "increases demonstrate greater transparency."

I am concerned about your decision to propose section 16.6(f)(2) and share many of the concerns expressed by institutional FOIA requesters. Accordingly, please respond to the following requests for information:

- Has the DOJ instructed, or otherwise approved, an agency providing a knowingly false statement about the existence of documents in responding to a FOIA request or to a FOIA requester? If so, how often has this been done? Describe the circumstances surrounding each use of a knowingly false statement DOJ has approved as an appropriate response to a FOIA request.

- Identify the authority by which the DOJ can adopt proposed section 16.6(f)(2), in light of (a) the case law applying FOIA and (b) the legislative history behind FOIA, both as originally enacted and as subsequently amended.

- Is the DOJ currently using the procedure set forth in proposed section 16.6(f)(2)? If so, identify how long it has been used and the authority by which the DOJ is able to utilize the procedure absent a new regulation or statute.

- Given the many existing specific FOIA exemptions, such as the national security exemption in (b)(1) and the law enforcement exemption in (b)(7), along with the longstanding use of the "Glomar response," to protect national security and ongoing investigations, why does the DOJ maintain proposed section 16.6(f)(2) is needed?

3

- Did the DOJ consider less expansive options for reforming FOIA, such as merely codifying the "Glomar response" in regulations?

- What additional, less expansive alternatives were considered? For example, did the DOJ consider a more limited "national security only" option for cases with national security concerns instead of across the board recommendations for agencies to lie to FOIA requesters when a request includes something as innocuous as the existence of a privileged interagency memorandum? If so, provide a list of all other less expansive options considered.

- What is your response to the concern expressed by institutional requesters that section 16.6(f)(2) is contrary to FOIA's purpose of ensuring government accountability by providing for public access to information and records?

- What is your response to the concern expressed by institutional requesters that section 16.6(f)(2) will interfere with the judicial review that guarantees that agencies are correctly interpreting and applying exemptions under FOIA?

- What is your response to the concern expressed by institutional requesters that section 16.6(f)(2) will severely damage government integrity by allowing a law intended to facilitate access to information to be distorted to allow law enforcement agencies to "lie" to our citizens?

- What is your response to the argument by institutional requesters that section 16.6(f)(2) is not needed because answers to FOIA requests for documents that fall within § 552(c) exclusions can easily be framed in a manner that is truthful, while still not acknowledging whether any such documents exist?

- What is your response to the argument by institutional requesters that the enactment of section 16.6(f)(2) could result in an increase in FOIA litigation because as soon as requesters understand that a DOJ "no records" response does not necessarily mean that there are no records, they will be forced to sue to discover whether there are any records or whether the response was made under section 16.6(f)(2)?

- One set of comments[4] to section 16.6(f)(2) suggests that when DOJ "determines that a requester is trying to obtain information excluded from FOIA under [5 U.S.C.] section 552(c), the agency should simply respond that 'we interpret all or part of your request as a request for records which, if they exist, would not be subject to the disclosure requirements of FOIA pursuant to section 552(c), and we therefore will not process that portion of your request.'" What is your response to this suggestion?

---

[4] October 19, 2011 Letter from the American Civil Liberties Union, Citizens for Responsibility and Ethics in Washington and OpenTheGovernment.org to the Department of Justice (available at www.openthegovernment.org/sites/default/files/FOIA%20552c%20Comment%20-%2010-19-11%20-%20FINAL.pdf).

4.

- Do you agree that proposed section 16.6(f)(2) is inconsistent with the statements in the President's January 21, 2009 memorandum on FOIA? If you disagree, explain how you are able to reconcile the two.

- Do you agree that proposed section 16.6(f)(2) is inconsistent with the statements in your March 21, 2009 memorandum on FOIA? If you disagree, explain how you are able to reconcile the two.

- Does the DOJ intend to submit section 16.6(f)(2) to Congress and to proceed with its implementation?

These are basic questions, most of which should have been answered before you decided to seek comments on proposed section 16.6(f)(2). Therefore, I ask that you respond in writing no later than November 7, 2011.

Finally, if you intend to proceed with section 16.6(f)(2) as currently drafted, I ask you to confirm this intention in writing when you submit the new regulation to Congress. Based on the information that I have at this time, I will take all necessary action, including introducing legislation, to block section 16.6(f)(2) from ever taking effect.

Thank you for your attention to this matter.

Sincerely,

Charles E. Grassley
Ranking Member

CC: Honorable Patrick J. Leahy, Chairman, Senate Judiciary Committee

5

34

MARK UDALL
COLORADO

SUITE SH-328
SENATE HART OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224-5941

# United States Senate
WASHINGTON, DC 20510
November 1, 2011

The Honorable Eric H. Holder, Jr.
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Dear Attorney General Holder:

I write to express my deep concern over proposed amendments[1] to the Freedom of Information Act Regulations issued earlier this year by the Department of Justice. These regulations threaten to undermine the openness, transparency and government accountability that were the motivating factors behind the enactment of the Freedom of Information Act (FOIA). Specifically, I am concerned with the new section 16.6(f)(2) which, if adopted, would permit federal departments and agencies to respond to certain FOIA requests from citizens "as if the excluded records did not exist," even when such records do, in fact, exist. To be clear, the proposed regulation expressly authorizes the government to deceive American citizens under a framework initially designed to promote and foster freer access to information.

I join a growing chorus of groups, news organizations, and citizens in objecting to section 16.6(f)(2). In addition to undermining the public's confidence and trust in an open government, this new regulation could seriously impact the administration of FOIA by actually increasing the instance of FOIA litigation. Typically, when a FOIA request results in a conclusive "no record" response, there is no reason for any further inquiry. However, with the recent revelation that the FBI falsely denied the existence of documents requested under FOIA[2] and the proposed new regime under 16.6(f)(2), institutional FOIA requesters, such as the American Civil Liberties Union (ACLU), Citizens for Responsibility and Ethics in Washington (CREW), and OpenTheGovernment.org , have reason to increase their FOIA litigation. It is important to note that FOIA litigation is likely to increase because of new found doubts in "no record" responses, even if section 16.6(f)(2) is not adopted as proposed.

As a member of the Senate Select Committee on Intelligence, I certainly support the need to prevent certain sensitive, personal, classified, or law enforcement information from being disclosed under FOIA, as authorized by 5 U.S.C. 552(c). But, I also believe it is extremely important that we do not attempt to protect our citizens by lying to them. In recently filed

---

[1] Freedom of Information Act Regulations, 76 Fed. Reg. 15,236 (Mar. 21, 2011) (to be codified at 28 C.F.R. 16).
[2] Islamic Shura Council v. FBI, No. SACV07-1088-CJC(ANx) (C.D.Cal.-S.D. filed Apr. 27, 2011).

comments on this proposed regulation, the ACLU, CREW, and OpenTheGovernment.org proposed an alternative response that is both truthful and informative:

> [If a] "requester is trying to obtain information excluded from FOIA under section 552(c), the agency could simply respond that "we interpret all or part of your request as a request for records which, if they exist, would not be subject to the disclosure requirements of FOIA pursuant to section 552(c), and we therefore will not process that portion of your request."[3]

I believe that this type of response would serve to protect sensitive information while preserving the integrity of the FOIA process and that of the government officials who are charged with administering the Act. To that end, I strongly encourage you to abandon the adoption of section 16.6(f)(2), and I recommend that you provide guidance to federal departments and agencies for requests that are excludable under section 552(c) with a suggested response similar to the proposed response above.

I am confident that it is your sincere intention to ensure that your Department, as well as the broader federal government, live up to the ideals and aspirations of an open and transparent government, and I am sure that you will continue to work towards that goal. Thank you for your prompt attention to this matter.

Sincerely,

Senator Mark E. Udall

---

[3] October 19, 2011 Letter from the American Civil Liberties Union, Citizens for Responsibility and Ethics in Washington and OpenTheGovernment.org to the Department of Justice. (available at http://crew.3cdn.net/b38d94b94c6972aa25_nvm6iig08.pdf).

LAMAR S. SMITH, Texas
CHAIRMAN

F. JAMES SENSENBRENNER, JR., Wisconsin
HOWARD COBLE, North Carolina
ELTON GALLEGLY, California
BOB GOODLATTE, Virginia
DANIEL E. LUNGREN, California
STEVE CHABOT, Ohio
DARRELL E. ISSA, California
MIKE PENCE, Indiana
J. RANDY FORBES, Virginia
STEVE KING, Iowa
TRENT FRANKS, Arizona
LOUIE GOHMERT, Texas
JIM JORDAN, Ohio
TED POE, Texas
JASON CHAFFETZ, Utah
TIM GRIFFIN, Arkansas
TOM MARINO, Pennsylvania
TREY GOWDY, South Carolina
DENNIS ROSS, Florida
SANDY ADAMS, Florida
BEN QUAYLE, Arizona
MARK AMODEI, Nevada

ONE HUNDRED TWELFTH CONGRESS

# Congress of the United States
## House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-3951
http://www.house.gov/judiciary

JOHN CONYERS, JR., Michigan
RANKING MEMBER

HOWARD L. BERMAN, California
JERROLD NADLER, New York
ROBERT C. "BOBBY" SCOTT, Virginia
MELVIN L. WATT, North Carolina
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
MAXINE WATERS, California
STEVE COHEN, Tennessee
HENRY C. "HANK" JOHNSON, JR., Georgia
PEDRO R. PIERLUISI, Puerto Rico
MIKE QUIGLEY, Illinois
JUDY CHU, California
TED DEUTCH, Florida
LINDA T. SÁNCHEZ, California
(Vacancy)

November 2, 2011

The Honorable Eric H. Holder, Jr.
Attorney General
U.S. Department of Justice
Washington, D.C. 20530

Dear Attorney General Holder,

I request the Justice Department provide a detailed justification for a recently proposed rule that appears to permit the government to lie in response to certain Freedom of Information Act (FOIA) requests. The proposal authorizes the Justice Department, in some limited instances, to deny the existence of records when in fact those records do exist, even if the records may be exempt from disclosure for national security or other reasons.

The rule appears to contradict both transparency principles fundamental to a functioning democracy and the President's commitment to make "his administration the most open and transparent in history."[1] The Department should explain why it believes answering truthfully along the lines of "we can neither confirm nor deny records exist" has proven to be inadequate to protect sensitive information.

On March 21, 2011, the Department proposed a new rule for 28 C.F.R. The proposed section 16.6(f) would govern the manner in which the Department responds to requests for certain law-enforcement-sensitive information that FOIA excludes from disclosure. Specifically, it would authorize the Department to answer requests for such information "as if the excluded records did not exist."[2]

This directive seems inconsistent with the purposes for which FOIA was enacted.

---

[1] Macon Phillips, *Change has come to WhiteHouse.gov*, THE WHITE HOUSE BLOG, Jan. 20, 2009, http://www.whitehouse.gov/blog/change_has_come_to_whitehouse-gov/.
[2] Freedom of Information Act Regulations, 76 Fed. Reg. 15236, 15239 (proposed Mar. 21, 2011) (to be codified at 28 C.F.R. pt. 16).

The Honorable Eric H. Holder, Jr.
November 2, 2011
Page 2

Congress passed FOIA in 1966 to establish a "philosophy of full agency disclosure" because an "informed electorate" is "vital to the proper operation of a democracy."[3] FOIA gives individuals presumptive access to identifiable, non-public agency records outside of nine categories of sensitive materials exempt from disclosure.

FOIA contains provisions that authorize an agency to withhold certain sensitive materials, but generally requires the agency to cite the applicable statutory exception in its reply.

Recognizing that there are cases in which merely admitting the existence of the material could expose confidential informants, tip-off the targets of investigations, or otherwise compromise classified information, Congress added section 552(c) to FOIA in 1986. This section permits agencies to treat covered records as "not subject to the requirements" of FOIA.

Some legislative history suggests Congress merely intended to permit agencies to issue so-called "Glomar" responses to "refuse to confirm or deny the existence of records" when disclosing their mere existence would harm law enforcement interests. However, citing other evidence, Attorney General Meese, issued a 1987 memo taking the position that section 552(c) could be used by agencies to deny falsely the existence of covered records.[4]

It is unclear to me which interpretation the Department and other executive branch agencies have been relying on in the intervening time.

To help me better understand the Department's interpretation of 552(c) and any circumstances that led it to propose the new rule, please answer the following questions in advance of publishing the final rule.

1. Under this Administration, has the Department interpreted 552(c) to require a "neither confirm nor deny"-type response or a "no records exist"-type response?
2. Since the 1987 Meese memo, how many times in 552(c) cases has the Department claimed no records exist when in fact they did?
3. If the Department has been using a "neither confirm nor deny"-type response since 1987 what specific events prompted it to decide that was inadequate and to propose 16.6(f) authorizing it to lie instead?
4. How many specific examples of cases can the Department provide in which a "neither confirm nor deny"-type response would not adequately protect law enforcement interests?

In a January 21, 2011, memorandum, the President directed that FOIA "should be administered with a clear presumption: In the face of doubt, openness prevails." You cited this as the guiding principle for your much touted 2009 revision to FOIA guidelines "restoring the

---

[3] S. REP. NO. 89-813, at 3 (1965).
[4] Memorandum from Edwin Meese III, U.S. Attorney General, on the 1986 Amendments to The Freedom of Information Act to the Executive Departments and Agencies (Dec. 1987).

The Honorable Eric H. Holder, Jr.
November 2, 2011
Page 3

presumption of disclosure.[45]  That you now propose to authorize lying suggests you believe a truthful "we neither confirm nor deny" response would undoubtedly compromise sensitive records.

As Chairman of the House Judiciary Committee responsible for Justice Department oversight, I would like to examine and understand the Department's rationale for the new rule. Without adequate justification, I would worry that proposed section 16.6(f) could hinder the ability of private citizens to act in an informed manner in exercising their political rights.

Sincerely,

Lamar Smith
Chairman

cc:   The Hon. John Conyers, Jr.

[45] Memorandum from Eric H. Holder, Jr., U.S. Attorney General, on The Freedom of Information Act to the Heads of Executive Departments and Agencies 1 (Mar. 19, 2009) (available at http://www.justice.gov/ag/foia-memo-march2009.pdf); Press Release, Department of Justice, Attorney General Issues New FOIA Guidelines to Favor Disclosure and Transparency (Mar. 19, 2009) (available at http://www.justice.gov/opa/pr/2009/March/09-ag-253.html).

39