1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **ISLAMIC SHURA COUNCIL OF SOUTHERN CALIFORNIA ET AL.** <br><br>   **Plaintiffs,** <br><br>   **vs.** <br><br> **FEDERAL BUREAU OF INVESTIGATION ET AL.** <br><br>   **Defendants.** | **Case No.: SACV 07-1088-CJC(ANx)** <br><br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR SANCTIONS** |

## I.  INTRODUCTION AND BACKGROUND

Currently before the Court is Plaintiffs' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure against Defendants the Federal Bureau of Investigation (the "FBI") and the United States Department of Justice ("DOJ") (collectively, the "Government"), arising out of the Government's May 2009 *in camera* submissions revealing that it provided false and misleading information to the Court in pleadings,

declarations, and briefs regarding the documents responsive to Plaintiffs' request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  The Government represented to the Court that only a limited number of documents responsive to Plaintiffs' FOIA request existed when, in reality, a significant number of responsive documents existed.  The Government claims that its intention was not to mislead the Court but that it was following a well-established policy of the Attorney General to deny the existence of responsive documents if, in the sole opinion of the Government, the disclosure of the information in the responsive documents would compromise national security.  The Government's deception of the Court was inexcusable.  The Court cannot perform its important oversight role mandated by FOIA unless the Government provides it with complete and accurate information.  It is the Court, not the Government, who determines what the law requires.  The Court must impose monetary sanctions to deter the Government from deceiving the Court again.

## A.  Procedural Background

Plaintiffs consist of six Muslim American community organizations and five community leaders — Islamic Shura Council of Southern California, Council on American Islamic Relations of Southern California ("CAIR"), Islamic Center of San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center, Human Assistance and Development International, Inc., Dr. Muzammil Siddiqi, Shakeel Syed, Hussam Ayloush, Mohammed Abdul Aleem, and Rafe Husain (collectively, "Plaintiffs"). On May 15, 2006, Plaintiffs jointly submitted a request under FOIA and the Privacy Act, 5 U.S.C. § 552a, to the FBI's headquarters and its Los Angeles Field Office for information that included all records created since January 2001 concerning the agency's surveillance, monitoring, and other investigations of Plaintiffs.  On April 27, 2007, the

FBI notified nine of the Plaintiffs (collectively, "Nine Plaintiffs")[1] that no responsive documents were found.  On June 7, 2007, Plaintiffs filed a joint administrative appeal to the Department of Justice, Office of Information and Privacy ("OIP"), questioning the Government's "no records" response.  That same month, the FBI released three pages of documents to Mr. Ayloush and a one-page document to CAIR.  These four pages of documents were redacted pursuant to the FOIA exemptions under Subsections (b)(2), (b)(6), and (b)(7)(C).

On September 18, 2007, Plaintiffs initiated the present action against the Government for declaratory and injunctive relief, asserting that the FBI's search of responsive records to their FOIA request was inadequate and untimely, in violation of FOIA.  (Dkt. No. 1.)  After Plaintiffs filed suit, the FBI conducted additional searches for the Nine Plaintiffs, but not for Mr. Ayloush or CAIR.  From September 5 to September 27, 2007, OIP affirmed the FBI's "no records" response to the Nine Plaintiffs.  (Decl. of David M. Hardy, Mar. 21, 2008 ("First Hardy Decl.") ¶ 16.)  Nevertheless, on March 14, 2008, the FBI released an additional 120 pages of responsive documents to seven of the Nine Plaintiffs — a large amount of which was either redacted or withheld as "outside the scope" of Plaintiffs' FOIA request while some of the information was redacted pursuant to specific exemptions under FOIA.  (*Id.* ¶ 19 & Exh. N; Pls.' Mem. in Supp. Sum. J., at 5 & Exh. C-1.)

On March 21, 2008, the Government moved for summary judgment against Plaintiffs, asserting that its search for documents in response to Plaintiffs' FOIA request was adequate and that it properly withheld documents under the FOIA exemptions.  (Dkt. No. 13.)  On November 26, 2008, Plaintiffs filed a cross motion for summary judgment and opposition to the Government's motion for summary judgment,

---

[1] These nine Plaintiffs included Islamic Shura Council of Southern California, Islamic Center of San Gabriel Valley, Islamic Center of Hawthorne, West Coast Islamic Center, Human Assistance and Development International, Inc., Dr. Siddiqi, Mr. Syed, Mr. Aleem, and Mr. Husain.

challenging the propriety of the FBI's "outside of scope" redactions to the documents produced in response to their FOIA request. (Dkt. No. 38.) Plaintiffs did not challenge the propriety of the redactions under the FOIA exemptions, but requested disclosure of the information withheld as "outside the scope" or, alternatively, an *in camera* review by the Court of the unredacted documents. Plaintiffs also requested that the Court order further searches for responsive documents on behalf of Mr. Ayloush and CAIR. The Government filed its opposition and reply papers on January 23, 2009. (Dkt. No. 41.)

In its opposition, the Government represented to the Court that it "provided plaintiffs with all responsive portions [of documents] containing references to any of the plaintiffs," and that the redacted portions of the documents did not "relate or refer to any of the plaintiffs." (Defs.' Opp. to Sum. J., at 3, 7.) The Government maintained that because the documents "relate to investigations of others," the material redacted as "outside the scope" was "not responsive" to Plaintiffs' FOIA request. (*Id.* at 3.) With respect to Mr. Ayloush and CAIR, the Government represented to the Court that it had performed adequate searches on their behalf. The Government submitted a declaration from David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division at the FBI, stating under oath that the Government had identified one document for both Mr. Ayloush and CAIR in its search of the Central Records System, four pages of which were released. (First Hardy Decl. ¶¶ 40–41, 44.) The Government further argued that Mr. Ayloush and CAIR could not challenge the adequacy of the Government's search because they failed to exhaust their administrative remedies. (Defs.' Opp. to Mot. Sum. J., at 13; *see also* Amended Order, at 6.)

The Court heard oral arguments on the parties' summary judgment motions on April 20, 2009. In light of the FBI's lack of evidence to support its redactions, the Court ordered an *in camera* review of the documents produced to determine the propriety of the FBI's "outside the scope" redactions. (Ct. Order, Dkt. No. 49, Apr. 20, 2009.) The Court

1    further concluded that the searches for responsive documents on behalf of Mr. Ayloush

2    and CAIR were insufficient and ordered the FBI to conduct additional searches on their

3    behalf.  (*Id.*)

4

5    **B.  The Government's Misrepresentations to the Court**

6

7    Pursuant to the Court's Order, on May 4, 2009, the Government filed an *ex parte*

8    submission, consisting of a second declaration by David M. Hardy and copies of the

9    pages the FBI redacted or withheld as "outside of the scope" of Plaintiffs' FOIA request.

10   (Dkt. No. 50.)  The Government's *in camera* submission revealed a very disturbing issue:

11   the Government had provided blatantly false and misleading information to the Court.

12   The Government represented in pleadings, declarations, and briefs — most notably, in its

13   summary judgment papers — that it found only a limited number of responsive

14   documents to Plaintiffs' FOIA request.  However, Mr. Hardy's second declaration stated,

15   for the first time, that the Government withheld "responsive information" from the

16   Plaintiffs.  (Decl. of David M. Hardy, May 1, 2009 ("Second Hardy Decl.") ¶¶ 1, 15.)

17   Contrary to its previous representations, the Government revealed that it located a

18   significant number of responsive documents, which the Government asserted it withheld

19   to avoid compromising national security.

20

21   In light of this revelation, the Court held two *in camera* hearings on May 14, 2009

22   and June 23, 2009, and the Government submitted supplemental briefing.  (Dkt. Nos. 53,

23   55, 56, 60.)  The Court subsequently issued a sealed order regarding Plaintiffs' request

24   under FOIA and the Government's misinformation to the Court.  (Ct. Order, Dkt. No. 58,

25   June 23, 2009 ["Sealed Order"].)  The Court stated that the Government cannot, under

26   any circumstances, affirmatively mislead the Court, as doing so contradicts bedrock

27   principles of the separation of powers as well as numerous statutes, rules, and cases

28   reflecting the understanding that the judiciary cannot carry out its essential function if

lawyers, parties, or witnesses obscure the facts. (*Id.*) The Court also pointed out that federal courts are well-equipped to handle sensitive and classified information, and that filing an *in camera* declaration, along with its public filings, would have rendered the Government's misrepresentation to the Court wholly unnecessary without endangering disclosure of security-sensitive information. (*Id.*) Although the Court did not condone the Government's misinformation to the Court, the Court nevertheless determined that the additional responsive documents that the Government professed to have located were properly withheld from Plaintiffs. (*Id.*) The Court stated that the Sealed Order would be unsealed and made public on July 7, 2009, unless the Court of Appeals for the Ninth Circuit directed otherwise. (*Id.*)

## C.  Appeal and the Court's Amended Order

The Government subsequently filed a notice of appeal and moved for an emergency stay of the Sealed Order pending appeal, which the Ninth Circuit granted on July 6, 2009. (Dkt. Nos. 63, 65.) On March 30, 2011, the Ninth Circuit issued its decision. *See Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160 (9th Cir. 2011). The Ninth Circuit emphatically stated that "FOIA does not permit the government to withhold responsive information from the court." *Id.* at 1165. The Ninth Circuit acknowledged that, as certain categories of documents are exempted and excluded from disclosure under FOIA and there is an imbalance of knowledge between the plaintiffs and the government, FOIA expressly authorizes district courts to examine the documents *in camera* to review the propriety of the government's withholdings. *Id.* (citing *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973)). "When the government does not provide the court with accurate or complete information, the court's function in overseeing FOIA actions and monitoring litigation is compromised. The government may withhold relevant information from plaintiffs 'to protect the secret nature of the information,' *but it must disclose to the court all relevant and responsive information* in order for the court to

evaluate whether the withholding was appropriate." *Id.* at 1165–66 (citing *Vaughn*, 484 F.2d at 826) (emphasis added).  The agency must submit to the district court a detailed affidavit or oral testimony to establish that the documents requested by the plaintiffs clearly fall outside the bounds of materials that may be disclosed under FOIA.  *Id.* at 1116.  "[I]f the government believes that submitting a detailed affidavit would compromise the information it is seeking to protect, then it must seek an *in camera* review.  *It cannot, however, represent to the district court that it has produced all responsive documents when in fact it has not*." *Id.* (emphasis added).  The Ninth Circuit concluded:  "We thus agree with the district court that the FOIA does not permit the government to withhold information from the court.  Indeed, engaging in such omissions is antithetical to FOIA's structure which presumes district court oversight." *Id.* (citing 5 U.S.C. § 552(a)(4)(B)).

Nevertheless, as this Court concluded that the Government properly withheld documents from *Plaintiffs* under FOIA, the Ninth Circuit held that Plaintiffs and their counsel were not permitted to see the Sealed Order in full, as it contained information that FOIA authorizes to withhold from Plaintiffs and that the Government only revealed *in camera*.  *Id.* at 1169.  The Ninth Circuit therefore vacated the Sealed Order and remanded to this Court to revise the Sealed Order to eliminate the statements the Government designated as national security and sensitive law enforcement information. *Id.*

Pursuant to the Ninth Circuit's decision, on April 27, 2011, this Court issued an amended order largely consistent with the Sealed Order but without references to statements implicating security-sensitive information.  (Ct. Order, Dkt. No. 98, Apr. 27, 2011, published in *Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114 (C.D. Cal. 2011) ["Amended Order"].)  The Court emphasized that the Government has no legitimate basis —including the interests of national security — for deceiving the Court,

as providing a court with misinformation is inconsonant with the axiomatic principle that
"[i]t is emphatically the province and the duty of the judiciary department to say what the
law is," *Marbury v. Madison*, 5 U.S. (1 Cranch.) 137, 177 (1803), and in light of the fact
that the Government may avail itself of *in camera* review to comport with its duty of
honesty to the Court without compromising national security concerns.  (*Id.*)  Because the
Court previously relied on misinformation in issuing its April 20, 2009 Order, the Court
vacated the Order in its entirety.  (*Id.*)  With respect to the parties' summary judgment
motions, the Court advised Plaintiffs that the Government located more documents
responsive to their FOIA request, but concluded that they were not entitled to any further
information regarding the Government's previous searches for documents, and that the
Government need not conduct any additional searches for responsive documents.  (*Id.*)

### D.  Plaintiffs' Motion for Sanctions

     Following the Court's Amended Order, on September 26, 2011, Plaintiffs moved
for sanctions against the Government under Rule 11 of the Federal Rules of Civil
Procedure for having submitted false information to the Court.  (Dkt. No. 123.)  Pursuant
to the parties' stipulated briefing scheduling and Court Orders, the Government filed a
public redacted opposition on October 24, 2011 and a sealed unredacted version on
October 25, 2011.  (Dkt. Nos. 126, 130.)  Plaintiffs filed their reply on November 4,
2011.  (Dkt. No. 131.)  The Court heard oral arguments from the parties' counsel on
November 14, 2011.

     Plaintiffs contend that the Government's initial disclosure to the Court regarding
the documents responsive to Plaintiffs' FOIA request lacks factual support, in violation
of Subsections (b)(3) and (b)(4) of Rule 11 of the Federal Rules of Civil Procedure.
(Pls.' Mem. in Supp. of Sanct., at 3.)  Plaintiffs further contend that the Court should
impose sanctions to deter future submission of misinformation to the judiciary by the

Government.  (*Id.* at 7.)  Plaintiffs finally argue that the Court should impose sanctions pursuant to the Court's inherent powers to sanction litigants.  (*Id.* at 8 n.3.)  The Government opposes Plaintiffs' motion for sanctions largely on the grounds that it did not intentionally mislead the Court, but that its misinformation to the Court arose from a "misunderstanding" between the Court and the Government, premised on a "legal disagreement" regarding the term "responsive" under the FOIA, and that the Government's legal position was neither frivolous nor contrary to legal precedent. (Defs.' Opp. to Mot. for Sanct., at 2–3, 4.)  The Government therefore argues that the proper standard for evaluating Plaintiffs' motion for sanctions is whether the Government's representations to the Court lacked any legal basis under Subsections 11(b)(2) under Rule 11, not whether it lacked factual support under Subsections (b)(3) and (b)(4).  (*Id.* at 4–5.)  The Government further argues that it did not seek to hide facts from the Court, but that the disclosure of facts was one of timing, as it disclosed the correct information to the Court in its *in camera* submission.  (*Id.* at 3, 7.)  Finally, the Government argues that sanctions are inappropriate here, given the Government's current review of its regulations and consideration of steps to minimize future "misunderstandings" with the judiciary.  (*Id.* at 3.)[2]

---

[2] Additionally, the Government claims that it already corrected the record through its 2009 *in camera* submissions to the Court, after which the Court issued its Amended Order.  (*Id.* at 10.)  The Government therefore contends that sanctions are inapplicable under the safe harbor provision of Rule 11(c)(2), which states that a motion for sanctions must "not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  FED. R. CIV. P. 11(c)(2).  The Court disagrees.  The safe harbor provision does not apply here because the Government did not withdraw or amend its erroneous filings within twenty-one days after Plaintiffs served their motion for sanctions.  Furthermore, the Government did not correct the record on its own initiative, but filed *in camera* submissions disclosing the falsity of its previous pleadings with the Court only after and pursuant to the Court's April 2009 Order.  (*See* Ct. Order, Dkt. No. 49, Apr. 20, 2009.)  Plaintiffs could not determine the veracity of the Government's "out of scope" response to their FOIA request given the fact that they were not privy to the reason behind the withholding of documents and did not have access to the Government's *in camera* submissions or to the Court's Sealed Order.  It was only after the Ninth Circuit issued its decision in March 2011, and after the Court issued its subsequent Amended Order — four years after Plaintiffs filed this instant FOIA action — that Plaintiffs had any information for filing the instant motion for sanctions.

## II.  LEGAL STANDARD

### A.  Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure permits the Court to impose sanctions on the parties or their attorneys who violate its directive that all papers presented to the court are (1) factually and legally tenable from an objective perspective, (2) not submitted for "any improper purpose," and (3) presented after "an inquiry reasonable under the circumstances."  FED. R. CIV. P. 11(b); *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996).  First, sanctions are proper if "a pleading, written motion, or other paper" presented and certified to the Court — "whether by signing, filing, submitting, or later advocating it" — contains one of the following:  (i) factual contentions or denials of factual contentions lacking evidentiary support or (ii) claims, defenses, and other legal contentions unwarranted by "existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  FED. R. CIV. P. 11(b)(2)–(4); *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987) (stating sanctions are proper under Rule 11 "where a litigant makes a 'frivolous filing,' that is, where he files a pleading or other paper which no competent attorney would believe was well grounded in fact and warranted by law" (internal citation omitted)).  A pleader's lack of candor by submitting misstatements or nondisclosure of material facts to the court is sanctionable under Rule 11.  *Pipe Trades Council of N. Cal., U.A. Local 159 v. Underground Contractors Ass'n of N. Cal.*, 835 F.2d 1275, 1280–81 (9th Cir. 1987); *Mercury Serv. v. Allied Bank*, 117 F.R.D. 147, 159 (C.D. Cal. 1987), *aff'd* 907 F.2d 154 (9th Cir. 1990) (imposing Rule 11 sanctions on a party for submitting a declaration with false and misleading information that lacked factual foundation, leading to unnecessary inquiries by plaintiffs and "that demonstrate[d] disrespect for the dignity and authority of the courts").  Second, the court may also award sanctions if a paper is presented for "any

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." FED. R. CIV. P. 11(b)(1).  Third, sanctions may be imposed under Rule 11 if the pleader fails to make "an inquiry reasonable under the circumstances" before submitting the paper, and such failure results in the filing of a frivolous motion. FED. R. CIV. P. 11(b).  Reasonable inquiry means that the pleader must seek "sufficient credible information," rather than proceeding on mere suspicions, opinions, or conclusions. *Kendrick v. Zanides*, 609 F. Supp. 1162, 1172 (N.D. Cal. 1985).

Whether a pleading is frivolous or improper is determined using an objective "reasonableness" standard, rather than from the perspective of the pleader's subjective intent. *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003); *Zalidivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 399 (1990).  The reasonableness standard is viewed from the perspective of a competent attorney admitted to practice before the district court. *Wilson*, 326 F.3d at 1109.  Sanctions are proper "if the paper filed in district court and signed by an attorney or an unrepresented party is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Zalidivar*, 780 F.2d at 831.  The legal basis of a pleader's contentions must be based on a "good faith argument for his or her view of what the law is, or should be," and "[a] good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after reasonable inquiry." *Id.* at 831 (internal quotes omitted).  The district court determines whether sanctions are warranted by evaluating the reasonableness of the attorney's belief at the time the paper is filed, presented to the court, or later advocated. *See Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) ("Courts must . . . avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted." (internal

citation and quotes omitted)); Committee Notes on Amendments to Federal Rules of
Civil Procedure, 146 F.R.D. 401, 585 (1993).

The imposition of sanctions is a matter within the court's discretion. FED. R. CIV.
P. 11(c) (providing that if an attorney or party violates Rule 11(b), the court "may"
impose appropriate sanctions). "If warranted, the court may award to the prevailing party
the reasonable expenses, including attorney's fees, incurred for the motion." FED. R.
CIV. P. 11(c)(2). But the sanction imposed under Rule 11 "must be limited to what
suffices to deter repetition of the conduct or comparable conduct by others similarly
situated." FED. R. CIV. P. 11(c)(4); *see also* Committee Notes on Amendments to
Federal Rules of Civil Procedure, 146 F.R.D. at 587 ("The court has significant discretion
in determining what sanctions, if any, should be imposed for a violation, subject to the
principle that the sanctions should not be more severe than reasonably necessary to deter
repetition of the conduct by the offending person or comparable conduct by similarly
situated persons.") The Ninth Circuit, however, has recognized that "Rule 11 is an
extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers
Pension Trust*, 859 F.2d at 1345. Nevertheless, attorneys and parties cannot "avoid the
sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head."
*Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987).

## B.  The Court's Inherent Power

Pursuant to its inherent powers, the court may further impose sanctions on counsel
or parties for conduct that willfully abuses the judicial process. *Chambers v. NASCO,
Inc.*, 501 U.S. 32, 44–45 (1991); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). The
court's inherent powers "are governed not by rule or statute but by the control necessarily
vested in courts to manage their own affairs so as to achieve the orderly and expeditious
disposition of cases." *Chambers*, 501 U.S. at 43 (internal citation and quotes omitted).

The imposition of sanctions under the court's inherent power is warranted where a party
has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46.
(internal citations and quotes omitted).

## III. DISCUSSION

The parties do not dispute that the Government did not act out of some improper
purpose or in bad faith when submitting misinformation to the Court.  Thus, sanctions
under Rule 11(b)(1) and the Court's inherent powers to impose sanctions do not apply.
The parties, however, disagree as to (i) whether the Government's misinformation should
be evaluated for lack of evidentiary support under Rule 11(b)(3) and (4) or for lack of
legal support under Rule (b)(2) and (ii) whether sanctions are warranted under the
applicable subsection of Rule 11.  The Court finds that determining whether the
Government's misinformation to the Court is sanctionable is a mixed question of fact and
law.  The Government's submission of information to the Court contradicted the fact that
it located more responsive documents to Plaintiffs' FOIA request than it originally
represented to the Court prior to its *in camera* submission, but was also premised on its
legal interpretation of the exclusion provisions under FOIA.  However, under either a
factual or legal analysis, the Court finds that the Government's presentation of false
information to the Court is untenable.

### A.  The Government's Misrepresentations Were Factually Untenable

The Government argues that it was never its intention to mislead the Court
regarding what documents were being withheld in response to Plaintiffs' FOIA request.
(Defs.' Opp. to Mot. Sanct., at 4.)  Instead, the Government maintains that the
"misunderstanding stems from a disagreement between the Court and the Government

1    regarding the interpretation of the term 'responsive' under the FOIA." (*Id.* (citing

2    Amended Order, at 9–10 n.4).)  The Government's argument is not credible.

3

4        As explained in the Amended Order, the Government's May 2009 *in camera*

5    submission revealed that the Government misled the Court in two material respects.

6    First, the Government's representations regarding its use of "outside the scope" were

7    inaccurate.  The Government initially represented to the Court that the Government

8    provided all information that "include[d] any reference to plaintiffs in any document in

9    any file," and any information withheld as "outside the scope" of Plaintiffs' request was

10   "non-responsive." (Defs.' Opp. to Mot. Sum. J., at 3, 11.)  Mr. Hardy's second

11   declaration stated that, in truth, documents "that would otherwise be considered to be

12   responsive to plaintiffs' request" were excluded from production or redacted as "outside

13   the scope." (Second Hardy Decl. ¶ 5.)  Second, the Government's representations

14   regarding the number of responsive documents were false.  The Government previously

15   represented that it had identified only a limited number of documents responsive to

16   Plaintiffs' FOIA request.  (First Hardy Decl. ¶¶ 19, 31–43, 45–46.)  Mr. Hardy's second

17   declaration acknowledged that the Government had identified a large number of

18   additional responsive documents, but that the Government did not disclose the existence

19   of these other documents.  (Second Hardy Decl. ¶ 13.)

20

21       The Court does recognize that the Government did not act in bad faith — that is, to

22   harass or oppress the Court.  Nor did the Government act out of some venal or misguided

23   purpose.  Nevertheless, irrespective of the Government's motivation, the objective facts

24   cannot be obscured.  The Government presented false information to the Court — not

25   negligently or without reasonable inquiry — but with the Government's full knowledge,

26   over the course of two years in litigating this action, and after diligent factual inquiry.

27   The fact that the Government knowingly and deliberately provided misinformation to the

28   Court cannot be recast simply as a "misunderstanding" or a legal disagreement.  Simply

put, the Government lied to the Court.  To argue otherwise defies the facts of the record, the previous findings of this Court, and the Ninth Circuit's independent review of the Government's conduct.

The Government further argues that it did not seek to hide facts from the Court, but that the disclosure of facts was one of "timing," as it disclosed the correct information to the Court in its *in camera* submissions.  (Defs.' Opp. to Mot. for Sanct., at 3, 7.)  The Government contends that this tactic of delayed disclosure of the truthful facts to the Court is based on its policy and practice under FOIA to disclose information at the earliest time possible in litigation without alerting the requester to national security-sensitive information.  (*Id.* at 7.)  This argument misses the point.

Parties cannot choose *when* to tell the Court the truth.  They must be truthful with the Court at all stages of the proceedings if judicial review is to have any real meaning.  And the Court rejects the Government's suggestion that it initially had to deceive the Court to protect national security.  The Government could have availed itself of routine court procedures without compromising national security, such as by filing an *in camera* declaration concurrently with its public filings.  As the Ninth Circuit recognized, "if the government believes that submitting a detailed affidavit would compromise the information it is seeking to protect, then it must seek an *in camera* review."  *Islamic Shura Council*, 635 F.3d at 1116.  Alternatively, the Government could have employed a Glomar response or submitted sealed briefings concurrently with its public filings.  "It cannot, however, represent to the district court that it has produced all responsive documents when in fact it has not."  *Id.*  National security is no defense for deceiving the Court at any stage of the proceedings.  *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993) ("[L]awyers representing the government . . . serve truth and justice first."); *United States vs. Associated Convalescent Enters., Inc.*, 766 F.2d 1342, 1436 (9th Cir. 1985) (an attorney is an officer of the court, and as such, has a "duty of good faith and

candor in dealing with the judiciary"); CAL. R. PROF'L CONDUCT 5-200(B) (in
representing a matter to a tribunal, a member "[s]hall not seek to mislead the judge,
judicial officer, or jury by an artifice or false statement of fact or law"); *Williams v.
Superior Court*, 46 Cal. App. 4th 320, 330 (1996) ("Honesty in dealing with the courts is
of paramount importance, and misleading a judge is, regardless of motives, a serious
offense." (internal citations and quotes omitted)).

**B. The Government's Misrepresentations Were Legally Untenable**

The Government further argues that its submission of misinformation was not
legally frivolous or contrary to legal precedent.  (Defs.' Opp. to Mot. for Sanct., at 2–3,
4.)  The Court strongly disagrees.  The Government's deception to the Court is not
warranted by any existing law.  A reasonable attorney is expected to be familiar with the
basic principles of our democratic governance, such as the separation of powers, and the
duty of candor to the Court.  There is no legal precedent that the Court is aware of — and
the Government has furnished none — that permits submission of false information to the
Court in any circumstance, including in the context of a FOIA request.  Indeed,
presenting false information to the Court is antithetical to the very structure of FOIA,
which mandates judicial oversight by the district court.  *Islamic Shura Council*, 635 F.3d
at 1166.  As the Ninth Circuit clearly recognized: "FOIA does not permit the government
to withhold information from the court."  *Id.*  "When the government does not provide
the court with accurate or complete information, the court's function in overseeing FOIA
actions and monitoring litigation is compromised.  The government may withhold
relevant information from plaintiffs to protect 'the secret nature of the information,' but it
must disclose to the court all relevant and responsive information in order for the court to
evaluate whether the withholding was appropriate."  *Id.* at 1165–66 (citing *Vaughn*, 484
F.2d at 826).

Nevertheless, the Government claims that it was acting pursuant to its FOIA practice and policy under which it notifies the Court of the basis for its withholding of documents from a requester at the earliest practical time so as not to "tip off" the disclosure of national security-sensitive information.  (Defs.' Opp. to Mot. for Sanct., at 7.)  Previously, as support for its practice and policy, the Government pointed to the Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act (the "Attorney General's Memorandum"), promulgated by Attorney General Edwin Meese III.[3]  The Attorney General's Memorandum provided guidance to agencies with respect to the application of the new "exclusion provisions" under 5 U.S.C. 552(c)(1)–(3).  It stated that when Subsection (c) applies, "the records in question will be treated, as far as the FOIA requester is concerned, as if they did not exist."  *Id.* at 22; *see also id.* at 24, 25.  A "requester can properly be advised in such a situation that 'there exist no records responsive to your FOIA request.'"  *Id.* at 27.  As the Court explained, however, the Attorney's General Memorandum does not condone lying to the Court; to the contrary, it prohibits such conduct.  (Amended Order, at 16.)  An agency may mislead the *requester*, but only the requester.  (*Id.*)  The Ninth Circuit, too, recognized that "[t]he government may withhold relevant information from plaintiffs to protect the secret nature of the information, but it must disclose to the court all relevant and responsive information in order for the court to evaluate whether the withholding was appropriate."  *Islamic Shura Council*, 635 F.3d at 1165–66 (internal citation and quotes omitted).

Additionally, the Government argues that sanctions are inappropriate in light of the Department of Justice's current review of its policies and procedures in which it handles FOIA requests to attempt to avoid future misunderstandings with the judiciary, including procedures governing the invocation of the exclusion provisions.  (Defs.' Opp. to Mot. for Sanct., at 10.)  The Government states that the DOJ has issued draft regulations that

---

[3] *See* U.S. Dep't of Justice, *Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act* (hereinafter "Attorney General's Memorandum") (1987), *available at* http://www.justice.gov/oip/86agmemo.htm.

explain how the DOJ will respond to requesters whose requests implicate exclusions, that it has also proposed additional layers of review before an exclusion has been invoked, and has proposed additional record-keeping and reporting requirements in connection with the invocations of exclusions.  (*Id.* at 10–11.)  The Government also expressed hopes of working with the judiciary regarding the use of exclusion provisions under FOIA and to discuss approaches that would address the Court's concerns.  (*Id.* at 11.) While the Court finds this encouraging, the Government has only spoken in generalities and has not referenced any specific proposals or provided any suggestions that it will not submit misinformation to the judiciary in the future when litigating FOIA cases.  Indeed, the Court is aware of the Department of Justice's recent proposed amendment to FOIA, which would have made its long-standing policy and practice regarding exclusions under the statute an explicit rule of law.  On March 21, 2011, during appeal of the Court's Sealed Order, the DOJ proposed amendments to FOIA that included Section 16.6(f)(2), which states:

> When a component applies an exclusion to exclude records from the requirements of the FOIA pursuant to 5 U.S.C. 552(c), the component utilizing the exclusion will respond to the request as if the excluded records did not exist.  This response should not differ in wording from any other response given by the component.

(Dkt. No. OAG 140; AG Order No. 3259-2011; 76 Fed. Reg. 15236, 15239 (Mar. 21, 2011).)  The proposed legislation was met with a barrage of protests and criticism from various citizens' groups, prominent politicians, and commentators.[4]  The proposed

---

[4] *See, e.g.*, Letter from the American Civil Liberties Union, Citizens for Responsibility and Ethics in Washington (CREW), OpenTheGovernment.org to Caroline A. Smith (OIP, Dep't. of Justice) (Oct. 19, 2011), *available at* http://www.openthegovernment.org; Letter from Charles E. Grassley to Attorney General Eric H. Holder (Dep't of Justice) (Oct. 28, 2011), *available at* http://www.grassley.senate.gov; Editorial, *Obama's Secret*, L.A. TIMES, Oct. 31, 2011, at A12; Jacob Sullum, *Open Government Law Twisted to Permit Lies*, CHICAGO SUN-TIMES, Nov. 2, 2011, at 35.

amendment was criticized in several meaningful respects: (1) that it undercuts FOIA's goals of promoting the government's openness and accountability to the public by authorizing agencies to mislead requesters, (2) that it is counterproductive because it thwarts the ability for meaningful judicial review, and (3) it undermines the government's legitimacy by making deception an explicit rule of law.[5]  Amidst a firestorm of opposition against the proposed amendment, the DOJ recently withdrew Section 16.6(f)(2).  *See* Letter from Ronald Weich (Assistant Attorney General, Dep't. of Justice) to Senator Charles E. Grassley (Nov. 3, 2011) ("We believe that Section 16.6(f)(2) of the proposed regulation falls short by . . . measures [in applying exclusions that protect vital law enforcement and national security concerns in the most transparent manner as possible], and we will not include that provision when the Department issues final regulations").  But the DOJ explained that the proposed amendment to FOIA was simply enacting what has been practiced for over twenty years and therefore "shining further light on a practice that . . . operated for years with much less transparency."  *Id.*  Thus, while Section 16.6(f)(2) has been withdrawn, the deceptive policy and practice of the DOJ with respect to asserting and applying exclusions under FOIA apparently remains intact.

Despite its arguments to the contrary, the Government's deception of the Court was without any factual or legal basis and simply wrong.  When the Executive Branch provides a court with misinformation it impermissibly undermines the judiciary's authority "to say what the law is."  *Marbury*, 5 U.S. (1 Cranch.) at 177; *see also The Federalist No. 78* (Alexander Hamilton) (1788) ("'[T]here is no liberty, if the power of judging be not separate from the legislative and executive powers.'"); *United States v. Nixon*, 418 U.S. 683, 709 (1974) ("The very integrity of the judicial system and public

---

[5] *See id.*

confidence in the system depend on full disclosure of all the facts . . . .")  What the Court previously stated in its Amended Order bears repeating:

> The Government's duty of honesty to the Court can never be excused,
> no matter what the circumstance.  The Court is charged with the
> humbling task of defending the Constitution and ensuring that the
> Government does not falsely accuse people, needlessly invade their
> privacy or wrongfully deprive them of their liberty.  The Court simply
> cannot perform this important task if the Government lies to it.
> Deception perverts justice.  Truth always promotes it.

## IV.  CONCLUSION

Plaintiffs' motion for sanctions against the Government is GRANTED.  The Government's submission of false information to the Court is factually and legally untenable under Rule 11 of the Federal Rules of Civil Procedure.  The Court therefore imposes monetary sanctions in the amount of reasonable attorneys' fees to Plaintiffs for bringing the instant motion.  Plaintiffs are hereby ordered to submit a detailed affidavit with an accounting of fees for bringing this motion within fourteen (14) days of this Order.

DATED:    November 17, 2011

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE