SACV 07-01088-CJC - 11/14/2011 - MONDAY

1              **UNITED STATES DISTRICT COURT**

2             **CENTRAL DISTRICT OF CALIFORNIA**

3        **HONORABLE CORMAC J. CARNEY, JUDGE PRESIDING**

4                  **CERTIFIED TRANSCRIPT**

5                   - - - - - - -

6   ISLAMIC SHURA COUNCIL OF        )
    SOUTHERN CALIFORNIA, ET AL,     )
7                                   )
             Plaintiff(s),          )
8                                   )
         vs.                        ) No. SACV 07-01088-CJC
9                                   )     MONDAY
    FEDERAL BUREAU OF INVESTIGATION, )
10  ET AL,                          )
                                    )
11          Defendant(s).           )
    _____)

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16         MOTION FOR IMPOSITION OF SANCTIONS

17              SANTA ANA, CALIFORNIA

18           MONDAY, NOVEMBER 14, 2011

19

20
    *Maria Beesley-Dellaneve, RPR, CSR 9132*
21  **Official Federal Reporter**
    **Ronald Reagan Federal Building, room 1-053**
22  **411 West 4th Street**
    **Santa Ana, California 92701**
23  **(714) 564-9259**

24

25  2011-11-14

```
                    SACV 07-01088-CJC - 11/14/2011 - MONDAY
```

1    **APPEARANCES OF COUNSEL:**

2    FOR THE PLAINTIFF(S):    ACLU OF SOUTHERN CALIFORNIA
                             BY: AHILAN ARULANANTHAM, ESQ.
3                            1313 W. 8TH STREET
                             LOS ANGELES, CALIFORNIA 90017
4                            (213)977-5297

5

6    FOR THE DEFENDANT(S): U.S. DEPARTMENT OF JUSTICE
                          BY:  MARCIA KAY SOWLES, AAL
7                         and  JOHN TYLER, ESQ.
                          20 MASSACHUSETTS AVE., NW
8                         ROOM 7108
                          WASHINGTON, DC 20530
9                         (202)514-4960

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SACV 07-01088-CJC - 11/14/2011 - MONDAY

1       **SANTA ANA, CALIFORNIA, MONDAY, NOVEMBER 14, 2011**

2              **MOTION FOR SANCTIONS**

3                    (1:33)

13:33   4       THE CLERK:  Calling matter number one, SACV 07-1088-CJC.

13:33   5  Islamic Shura Council of Southern California, et al versus Federal

13:33   6  Bureau of Investigation, et al.

13:33   7       Counsel, your appearances please.

13:34   8       MR. ARULANANTHAM:  Good morning, Your Honor.  Ahilan

13:34   9  Arulanantham for the plaintiffs.

13:34  10       THE COURT:  Good afternoon, sir.

13:34  11       MR. TYLER:  John Tyler with Marcia Sowles, United States

13:34  12  Department of Justice for the government, judge.

13:34  13       THE COURT:  Good afternoon both of you.

13:34  14       Nancy, do you have a check-in sheet, please?

13:34  15       I obviously don't have a tentative to distribute.  I was

13:34  16  looking forward to argument and I will make a decision certainly

13:34  17  by the end of this week.

13:34  18       I thought I would hear from the ACLU first and I'll give

13:34  19  you a very pointed question that has compound elements to it, but

13:34  20  it's a question nevertheless.

13:34  21       MR. ARULANANTHAM:  Sure, thank you, Your Honor.

13:34  22       THE COURT:  In light of this long-standing

13:34  23  well-established policy that the government has of what I call

13:35  24  deceiving FOIA requesters -- and as I understand it, this policy

13:35  25  has been approved by the highest levels at the Department of

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:35  1    Justice, and I think the policy was also defended by the solicitor

13:35  2    general or at least a pass on it -- in light of the fact that the

13:35  3    FOIA law itself is unclear on what exactly are you supposed to say

13:35  4    to the FOIA requester, and the fact that I have corrected the

13:35  5    record and expressed my displeasure with the government's strategy

13:35  6    or actions in this case, why should I impose sanctions?

13:35  7        MR. ARULANANTHAM:  Your Honor, if you'll permit me, I'll

13:36  8    give you a short answer and then a longer answer to that question.

13:36  9        So the short answer, Your Honor, is that the

13:36  10   long-standing policy first concerns requesters and not the courts,

13:36  11   as I understand it.  There may be a secret policy and perhaps Your

13:36  12   Honor has seen it, but there is no publicly existing policy that

13:36  13   permits the government to give a false no responsive records

13:36  14   response to a Court.  And in fact, I think it's, as was suggested

13:36  15   in the Court's prior order, I think it's strongly undermined by

13:36  16   the Meese memo before we even get to the other very serious legal

13:36  17   problems with giving deceptive or misleading answers to a Court.

13:36  18       So what happened here is fundamentally different from

13:36  19   the government giving a no responsive records request to a

13:36  20   requester.  We opposed that as well.  But as you said in the last

13:36  21   hearing, Your Honor, that's our fight.  This is your fight.  And

13:37  22   what the government here, by putting it in a declaration and

13:37  23   filing that declaration with their summary judgment motion takes

13:37  24   this really into a very different box than the question of whether

13:37  25   you can give that response to a requester.

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:37  1         With respect to the doctrine, Your Honor, your second

13:37  2    part of the question, there are only -- there is really only one

13:37  3    other case that discusses this in any detail, and I'll get to that

13:37  4    case sort of farther on down the line, but that's the Benavides

13:37  5    case from the D.C. Circuit from 1992.  To me that's not an

13:37  6    accident.  That's a product of the deception.  If you repeatedly

13:37  7    deceive not only requesters, but also the courts, and have been

13:37  8    doing it for years, then you'll never get a legal ruling about the

13:37  9    validity of the practice.

13:37 10         So even though it's true that there is not a case on

13:38 11    point which condemns this -- although I want you to asterisk that

13:38 12    because I want to talk about Benavides at length in a minute, Your

13:38 13    Honor -- I don't think that you, in this case, should treat that

13:38 14    the same way you would in other contexts like in a typically

13:38 15    qualified immunity case or in a typical sanctions case, because

13:38 16    it's the very fact of the practice of deceiving not just the

13:38 17    requesters, but also the Court which has shielded the practice

13:38 18    from judicial review and prevented judges from being able to opine

13:38 19    on it, in that context to me the fact that the solicitor general

13:38 20    presumably and other high-up government officials, the fact that

13:38 21    they have authorized -- as I said, I don't know if they have

13:38 22    authorized what happened here, but at least presuming that they

13:38 23    have, presuming that they have authorized deceiving the Court in

13:38 24    addition to deceiving requesters, that does not make it okay.

13:38 25         Those people work for the government.  They are not

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:38   1   working for the judiciary.  And the only Court case about this

13:39   2   before, which is Benavides, strongly suggested that it was not

13:39   3   authorized by the statute, and then it's 20 years; 20 years in

13:39   4   which the practice is happening.  And it doesn't bubble up to the

13:39   5   surface until it happens really by kind of accident and then

13:39   6   processes that I obviously don't know about in this case.

13:39   7        So I don't think that you should treat that as somehow

13:39   8   ratifying it for purposes of sanctions.

13:39   9        And then the last of the short answers, Your Honor, with

13:39   10  respect to correcting the record, I have a technical answer and a

13:39   11  practical answer.  My technical answer is Mr. Hardy's declaration

13:39   12  is on file in the summary judgment motion in this case.  If

13:39   13  someone from the public goes and pulls the docket and looks, they

13:39   14  will find that document.  It says 44 times in it that there were

13:39   15  no responsive records in this case.

13:39   16       The Court's amended order ruling is that is blatantly

13:40   17  false and it is not corrected.  Now, there may be something

13:40   18  corrected in secret.  If you read the Court's order it's hard to

13:40   19  make sense of those statements, but there has been no correction

13:40   20  by the government.

13:40   21       And, Your Honor, you have corrected the record in the

13:40   22  sense that obviously there is more going on here, but there is no

13:40   23  correction for purposes of rule 11.  For rule 11, a correction

13:40   24  would mean withdrawing that declaration and filing another one

13:40   25  which had language in it like Glomar responses, or something that

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:40  1    said what the government suggested in Benavides was no records

13:40  2    subject to the requirements of FOIA have been found.  Something

13:40  3    that was truthful even if it didn't provide much more information.

13:40  4         So those are my kind of short answers.  Then if the

13:40  5    Court will indulge me, I want to maybe do a little more by way of

13:40  6    persuading you on the importance of sanctions here.

13:40  7         THE COURT:  I definitely want to hear everything you

13:40  8    have to say and cleared my afternoon.  I have 3:00 o'clock

13:41  9    matters, but this is your time, so to speak.

13:41  10        Before you get to the case and your thoughts on it, I do

13:41  11   have a few questions.  At the time of the summary judgment, did

13:41  12   you know that there were more documents out there?  I have gone on

13:41  13   record as saying I didn't think there were any documents.  I took

13:41  14   the government literally.

13:41  15        Did you have that same view, or when you got the

13:41  16   response that was made, did you think that was all that was out

13:41  17   there?

13:41  18        MR. ARULANANTHAM:  No, Your Honor.  We did not know --

13:41  19   well, this is what we -- I'll tell you what we knew and what we

13:41  20   suspected.  What we knew was only that the documents that were

13:41  21   produced were the documents that were responsive to the request.

13:41  22        We sought judicial review first on the issue that the

13:42  23   redactions seems implausible to us.  They said, outside the scope.

13:42  24   That's actually the issue that we sought in camera review of

13:42  25   documents on.  So we had no idea that there were documents other

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:42  1    than the documents that had been redacted.  Challenging a

13:42  2    redaction is a standard practice in FOIA.  That's the reason why

13:42  3    we sought review.

13:42  4         So while I think it's both very troubling and a

13:42  5    violation of rule 11 that the government wrote outside the scope

13:42  6    all those times when they were not outside the scope, there is a

13:42  7    separate issue that there were no responsive documents, and we had

13:42  8    no idea that that statement was false.

13:42  9         Now, the other thing we did, Your Honor, to challenge

13:42 10    the adequacy of the search, that was a challenge to the nature of

13:42 11    the databases that were searched.  I can't remember actually what

13:42 12    that challenge exactly was, Your Honor, but it was I believe they

13:42 13    didn't search an ELSUR, or some challenges to the way the database

13:43 14    searches were done, were those also only I believe for CAIR and

13:43 15    Mr. Ayloush, if I recall correctly.

13:43 16         But in any event, we did not know that there were other

13:43 17    documents out there.  And I gather that many of the documents that

13:43 18    were later discovered by the Court were different from the

13:43 19    documents that we had -- that were connected to the adequacy of

13:43 20    the search challenge, if that makes any sense.

13:43 21         So if the underlying question is were we deceived by the

13:43 22    no responsive records request, the answer is definitely, yes.  We

13:43 23    thought it odd, but we did not challenge that originally.  We

13:43 24    challenged outside the scope and we challenged adequacy of the

13:43 25    search with respect to these two plaintiffs who are related to

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:43  1   each other obviously, Mr. Ayloush being the executive director of

13:43  2   CAIR.

13:43  3          THE COURT:  One of the issues that I have had a

13:44  4   disagreement with the government on and I'd like to hear your

13:44  5   thoughts on it, is whether telling you at the outset, we're not

13:44  6   going to comply, or we're not going to tell you the number and

13:44  7   nature of the documents, whether that would have compromised

13:44  8   national security in any way.

13:44  9          I can't discuss with you what went on in the classified

13:44  10  sealed hearings and I'm not going to.  But I think it is a matter

13:44  11  of public record that I have said I don't understand why you

13:44  12  couldn't come to me right away, and the response has always been

13:44  13  from the government well, that would tip them off that maybe an

13:44  14  exemption or exclusion applies, or that we have more documents.

13:45  15         And candidly, I just don't see that.  I could see you

13:45  16  getting frustrated by the government and the Court telling you to

13:45  17  essentially pound sand saying we're not going to tell you the

13:45  18  nature, the number.  We're not going to tell you whether your

13:45  19  clients are a witness, a subject, or they just know somebody who

13:45  20  is a witness or a subject.  We just don't have to respond.

13:45  21         I could see you being frustrated with that.  But my

13:45  22  question, where I would appreciate your views, is are you -- do

13:45  23  you feel that by knowing there are more documents you somehow have

13:45  24  great revelation that's very helpful to your clients?  I can't ask

13:46  25  you to opine and speculate as to well, does the government feel

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:46  1   that now their investigation or national security has been

13:46  2   compromised, but I can ask you well, do you find this really

13:46  3   valuable, helpful information, or is it basically something that

13:46  4   we know there are documents out there?

13:46  5       MR. ARULANANTHAM:  Let me answer that a few ways, Your

13:46  6   Honor.  First, we have very strongly suspected since the time of

13:46  7   the amended order and putting the amended order and the Ninth

13:46  8   Circuit opinion together that there must be more documents out

13:46  9   there.  And the sky has not fallen to my knowledge.  There are

13:46  10  three subsections under 552(c).  Even if there were documents

13:47  11  under 552(c), we have no way of knowing which subsection it is.

13:47  12  And other than I think feeling sad that the government actually

13:47  13  lied to us in a court proceeding and in papers with the court,

13:47  14  certainly with my clients and having discussed this with them,

13:47  15  they don't have anymore information than they had before all of

13:47  16  this happened.

13:47  17       And that's why I think it's very important to understand

13:47  18  from our point of view the narrowness of the basis for the

13:47  19  sanctions motion here, because it's really fundamentally about

13:47  20  Your Honor having the court operate as a meaningful check in FOIA

13:47  21  cases.  We're going to be in the dark either way unless there is a

13:47  22  fundamental change to the way the government operates this

13:47  23  provision or this statute.  But the question is when the

13:47  24  government is doing that, is the Court going to be involved in

13:47  25  giving the public the best that can be given under the law or is

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:48  1    it going to be unilateral?

13:48  2            And I think that goes also to the question of what

13:48  3    procedures should have been adopted here in order to escape

13:48  4    sanctions.

13:48  5            First, as you said, pounding sand, they could have just

13:48  6    filed an in camera declaration entirely and filed for us nothing

13:48  7    but the notification that says there is a filing under seal.

13:48  8            THE COURT:  That was why I asked you the question

13:48  9    because of the responses that would have tipped you off.

13:48 10            MR. ARULANANTHAM:  But, Your Honor, all the time in FOIA

13:48 11    cases, whether 552(c) is at issue or not, the government files

13:48 12    documents under seal.  It's a standard practice.  If we're only

13:48 13    challenging redactions, then the government will often provide ex

13:48 14    parte justifications for the redaction.  If the government

13:48 15    provides a Glomar response -- I have a case now involving a person

13:48 16    who is detained in the United Arab Emirates and we think he was

13:49 17    detained at the behest of the U.S. government.  That's actually in

13:49 18    this courthouse I believe in front of Judge Nguyen.  The

13:49 19    government filed lots of ex parte information because of various

13:49 20    Glomar responses that different defendants are taking.

13:49 21            So that's not anything unusual.  And the idea that we

13:49 22    would therefore know that there is something different happening

13:49 23    here is, frankly, absurd in a world under a statute like FOIA

13:49 24    where you have to have various sorts of ex parte filings by

13:49 25    definition.

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:49  1        It's just like in discovery, there is really no

13:49  2    fundamental difference between what is happening here and what

13:49  3    happens in discovery.  You file the documents that are at issue

13:49  4    for withholding purposes under seal.  And we don't always know

13:49  5    what is going on other than that there has been an ex parte

13:49  6    filing.  That's one option.

13:49  7        Another option, Your Honor, is to file a response to us

13:49  8    that says something like what the government said they were going

13:49  9    to do in Benavides.  No documents subject to the requirements of

13:50  10   FOIA are available, or something like that.  That kind of

13:50  11   statement is not false.  It's not a lie because it doesn't rest on

13:50  12   a secret interpretation of the word "responsive" that no one ever

13:50  13   uses, but it still provides us no information other than that

13:50  14   there may or may not be documents and the government is dealing

13:50  15   with them separately.

13:50  16       In addition, what I think the statute was originally

13:50  17   most likely meant to do was to authorize the Glomar response,

13:50  18   which is what the CIA, the NSA, the Defense Intelligence Agency,

13:50  19   many agencies that hold very secret national security sensitive

13:50  20   information provide in FOIA cases all the time.  And certainly to

13:50  21   the ACLU on the case I mentioned to you just a moment ago in our

13:50  22   drones FOIA challenging targeted or asking for information about

13:50  23   the targeted assassination program, I mean I could go on and on,

13:50  24   Your Honor.  Very sensitive, extremely important national security

13:51  25   information.  This is the standard way that the government deals

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:51  1    with a lot of those.  We litigate them, the sky doesn't fall.

13:51  2            So I don't find it persuasive to say that they had to

13:51  3    lie to the Court in order to engage in the policy that had been

13:51  4    approved of.  They could have fixed it both by never doing it and

13:51  5    just filing ex parte right away, or by adopting any of these other

13:51  6    responsive strategies which don't require them to lie, and they

13:51  7    certainly could have done both which would have been both legal

13:51  8    and not run afoul of rule 11.

13:51  9            THE COURT:  I don't want you to reveal any

13:51 10    attorney-client information, not that you would, but I'm not

13:51 11    asking that, but can you give me a sense of why your clients

13:51 12    retained the ACLU?  You are probably wondering why is he asking me

13:52 13    that question.  I'm asking that question is because I'm trying to

13:52 14    get a sense of what your clients knew and whether, in fact, my

13:52 15    order, amended order told them something, or the Ninth Circuit

13:52 16    told them something they didn't already know or strongly suspect.

13:52 17            MR. ARULANANTHAM:  Yes, Your Honor.  I think I

13:52 18    understand.  My clients have strongly suspected since -- I got to

13:52 19    the ACLU in Southern California in 2004.  And since that time and

13:52 20    perhaps sometime before -- I wish I could consult and I could give

13:52 21    you a better date with some of my clients who are here -- but they

13:52 22    have strongly suspected that they are under surveillance by the

13:52 23    FBI for engaging in lawful religious activity which you might call

13:52 24    political activity, activity protected by the First Amendment.

13:53 25            There have been what they believe to be fairly strong

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:53  1    confirmations of that fact through different information that has

13:53  2    already come to light publicly.  The most prominent one is the

13:53  3    disclosures by a man named Craig Monteilh, which is the subject of

13:53  4    another lawsuit that we have in this court, Fazaga.  But that's

13:53  5    not the only one.  If you look at the public documents that are

13:53  6    attached I believe to the original complaint, I don't know exactly

13:53  7    where they are, but I can find them, Your Honor, if you would

13:53  8    like, newspaper accounts of FBI surveillance activity, what

13:53  9    appears to be FBI surveillance activity of the Muslim communities

13:53  10   in Southern California.

13:53  11           So they strongly suspected it in many cases and they had

13:53  12   proof of it prior to the Court's amended order.  And I think they

13:53  13   hired the ACLU.  I don't know exactly why, but I would suspect

13:53  14   it's because we have been working with them with respect to trying

13:54  15   to protect their rights to freedom of religion and to be free from

13:54  16   unlawful surveillance from the federal government for almost all

13:54  17   of that eight-year time span.  So they sought our help because

13:54  18   they already believed that they were under this type of

13:54  19   surveillance.  And they had a lot of objective evidence to support

13:54  20   that claim, but not to give it context.  And the purpose of the

13:54  21   FOIA suit was to provide information to give it context.

13:54  22           THE COURT:  Have your clients, to your knowledge, done

13:54  23   anything different since the Ninth Circuit indicated in their

13:54  24   order that there were more documents?

13:54  25           MR. ARULANANTHAM:  Tied to the Ninth Circuit order, no,

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:54  1   Your Honor.  If you go back separately after Craig Monteilh and

13:54  2   some of the other information that came out around that time, some

13:55  3   of the clients' behavior -- or people in this community and I

13:55  4   think some of the clients in both cases, their behavior may have

13:55  5   changed.  But that was unconnected and before, as I said, the

13:55  6   Ninth Circuit order.  And same with this order, Your Honor.

13:55  7   Excuse me, the Court's amended order in April I mean.

13:55  8          Your Honor, six months ago is when I first read that

13:55  9   order, and at that time the Court said in our quasi argument that

13:55 10   we had that day that you were unlikely to issue sanctions because

13:55 11   you didn't believe there was a showing of bad faith.  Instead,

13:55 12   there was a fundamental disagreement.  And I said at that time

13:55 13   that I would like to talk to my clients, talk to others in the

13:55 14   ACLU, but I thought it wasn't that likely that we would seek them.

13:55 15   This was just reading the order like the tentative and then coming

13:55 16   and speaking.

13:55 17          Since that time I have learned so much; so much about

13:56 18   the FOIA and about 552(c) and what's happened with our clients and

13:56 19   the government's behavior in this context.  What I have learned

13:56 20   has persuaded me of the singular importance of this case and this

13:56 21   moment to this case and to the litigation here, but also to a

13:56 22   strand of FOIA law which has gone on since sometime after 1986.

13:56 23   It has completely escaped the attention of the judiciary with one

13:56 24   other exception.

13:56 25          THE COURT:  Well, I'm sympathetic because I can tell you

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:56  1  that this FOIA request has been the most significant case in my

13:56  2  career, and maybe will be.  I just found it startling and

13:56  3  surprising that there was a memorandum from the attorney general

13:56  4  saying that you can deceive the American public.  And I had never

13:57  5  heard about that.  I didn't even know about that.  And it

13:57  6  transcends political party.

13:57  7          It happened in the Reagan administration, Bush

13:57  8  administration, Clinton administration, Bush administration and

13:57  9  now the Obama administration.  And you have, as I understand it,

13:57  10 Ms. Sowles or Mr. Tyler can confirm, my understanding is that to

13:57  11 take it up to the Ninth Circuit you had to get pretty high

13:57  12 approval to continue with the appeal.  And that's when I made my

13:57  13 earlier comment, I believe the solicitor general might have even

13:57  14 had to sign off on the appeal defending the policy.

13:57  15         I'm still baffled, and that was frightening to me.  And

13:57  16 it gets back to the questions that I was posing to you, which I'm

13:58  17 struggling with is, I really do not understand why the government

13:58  18 has to deceive anybody.  I can understand the government

13:58  19 stonewalling and saying go pound sand.  For purposes of national

13:58  20 security you might have to do that.  And I could see FOIA

13:58  21 requesters and your clients being very frustrated and upset, maybe

13:58  22 just as angry.  But at least the government doesn't have to

13:58  23 compromise their integrity and their legitimacy.

13:58  24         Isn't that when democracies perish, when the government

13:58  25 starts lying?

SACV 07-01088-CJC - 11/14/2011 - MONDAY

13:58  1          MR. ARULANANTHAM:  Yes, Your Honor.  That's my view.

13:58  2    And it's one thing to have policies that don't permit it, but

13:58  3    people make mistakes or maybe they think that they have to do what

13:58  4    they're doing and they deviate from it.  And then that may or may

13:59  5    not get corrected in individual instances.  I think it's something

13:59  6    fundamentally different to ensconce it in policy and then

13:59  7    something further to have that policy be secret.  If ensconce it

13:59  8    in policy, it means the judges who are the independent branch can

13:59  9    check it.  And if it's in secret, no one can.

13:59 10          And, Your Honor, in 1992 when this came to the Court in

13:59 11    Benavides, the D.C. Circuit first wrote an opinion which in my

13:59 12    view sort of tore to shreds the Meese memo with respect to lying

13:59 13    to requesters.  It wasn't even talking about lying to the

13:59 14    judiciary.  It was talking about lying to requesters and said

13:59 15    552(c) authorizes Glomar responses.  And the text and the

13:59 16    legislative history supports that view.  That was the D.C.

13:59 17    Circuit's first cut at it.

14:00 18          In addition -- well, I'll get to that in a minute.  Then

14:00 19    the government filed a rehearing petition, and in the rehearing

14:00 20    petition they said they thought the section could be read to

14:00 21    authorize the response which said no records subject to the

14:00 22    requirements of FOIA have been found.  That's the wording that the

14:00 23    government proposed to the D.C. Circuit and the rehearing process

14:00 24    in Benavides.

14:00 25          That is not a false statement in the way that the

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:00  1   response that we have here is.  On that basis the D.C. Circuit

14:00  2   changed its decision and said well, the outcome is the same either

14:00  3   way because we have to reverse the district court no matter what.

14:00  4   We send it back.  We're not definitively construing the statute.

14:00  5   So it was a promise as I read the opinions.  And all I have is the

14:00  6   opinions in the underlying briefing which were sent to me by the

14:00  7   plaintiffs' attorney.  Sort of a promise by the government.  And

14:00  8   the Court said okay, we understand this is more complex than it

14:01  9   appears.  That might be as good an option as a Glomar response.

14:01  10  We send it back.

14:01  11      So there is no legal ruling on the question.  No

14:01  12  definitive ruling.  And what happens, I don't know for sure, but

14:01  13  it's a fairly good bet that other judges in other cases from 1992

14:01  14  to now were deceived.  And requesters see deceived and judges were

14:01  15  deceived.  And that language that I quoted to you earlier, Your

14:01  16  Honor, from Benavides that the government had proposed, I don't

14:01  17  know if that was used in other FOIA responses, but it wasn't used

14:01  18  in this one.  And it's not in Mr. Hardy's declaration.

14:01  19      And so when the government now says we're reviewing

14:01  20  this, we're thinking about it, we withdraw our proposed

14:01  21  regulation, but we still defend the policy and presumably -- and

14:01  22  the Court has corrected the record in this case, although as I

14:01  23  said earlier this is not exactly a correction because the false

14:02  24  statements are sitting there on a public document, is that enough?

14:02  25  Is that enough to leave it and to get the job done to fix what, in

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:02  1    my view, and it sounds like in your view, Your Honor, perhaps is a

14:02  2    very implausible reading of FOIA, to me the record, the history

14:02  3    speaks for itself.

14:02  4            This will go away.  It's an abuse of discretion.  If you

14:02  5    deny sanctions, it's very difficult to appeal it because it's

14:02  6    abuse of discretion and it doesn't tell you anything about what

14:02  7    your view of the underlying law was.  And it could be 20 years or

14:02  8    longer before we get a chance to have a ruling on whether or not

14:02  9    this government practice is actually lawful and whether in FOIA

14:02  10   Congress actually intended to authorize the government to lie not

14:02  11   just to the public, but to the federal courts who are supposed to

14:02  12   be reviewing the FOIA denial.

14:02  13           So I think that was the core issue I wanted to raise

14:02  14   with respect to the justification for sanctions once you have

14:03  15   gotten to the point of believing that the government has lied to

14:03  16   the Court, or has made a frivolous argument or both, which I think

14:03  17   it's lying -- I think it's clearly lying; it's not a frivolous

14:03  18   argument.  Or it's also a frivolous argument, but it's a factually

14:03  19   false statement.

14:03  20           I'm happy to answer the Court's questions on whether it

14:03  21   should be understood as a legal rather than a factual violation of

14:03  22   rule 11.  But my main point, Your Honor, if you think it's either

14:03  23   one, then the question is do you exercise your discretion to issue

14:03  24   the sanctions order.  There is both the harm to us, to my clients

14:03  25   and to the public in this case about having been lied to and

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:03  1   misled by the government for years, and there is also the effect

14:03  2   of this as a rule of law in allowing the government to do this

14:03  3   same kind of conduct in other cases and escaping the Court's

14:03  4   review.  Because courts aren't going to know, and it was really to

14:04  5   some extent accident and the Court's care, I don't really know,

14:04  6   but I would imagine in your review of the documents that led to

14:04  7   this.  But it's a fair assumption if it took 20 years for it to

14:04  8   happen this time, it will be a very long time before the issue

14:04  9   arises again.

14:04 10          THE COURT:  Well, let me make a few comments, see if you

14:04 11   have a reaction to them.  I still don't believe there was any bad

14:04 12   faith on the government's part.  I recognize that the FBI agents

14:04 13   in this case, they have a very, very difficult job.  And let's put

14:04 14   aside your clients.  From my experience on other cases and the

14:04 15   information I have seen in my capacity as a judge there are

14:04 16   radical Islamic terrorists out there, and they're in this country.

14:05 17   I think the religion of Islam is a beautiful religion.  I think

14:05 18   Catholicism at its core is a beautiful religion.  Unfortunately,

14:05 19   there are segments of our society who I think manipulate those

14:05 20   religions and apply it in a demonic way.  And we ask our FBI and

14:05 21   our government to protect us so we don't have another tragedy like

14:05 22   9/11 where you have American citizens jumping out of buildings.

14:05 23          So it's very tough the job that we ask them to do.  And

14:05 24   what compounds it I think in this case, and that's why I'm harping

14:05 25   on this policy, because I believe the root of the problem I had

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:05 1    with the government here, it was this policy.  And this policy the

14:05 2    FBI have to follow.  I imagine when you have a written policy by

14:06 3    the attorney general of the United States saying you shall tell

14:06 4    the FOIA requesters a false statement, if they don't do that,

14:06 5    especially when the stakes are so high, I imagine they are subject

14:06 6    to immediate termination.

14:06 7         So I'm trying to get my hands on is this the typical

14:06 8    case where we should be sanctioning somebody.  I understand rule

14:06 9    11 doesn't require bad faith.  But whether it requires it or not

14:06 10   it certainly is a relevant consideration.  And what was done in

14:06 11   this case to the Court was not done for power or prestige, or to

14:06 12   make money, or to make the Court look like a fool.  I don't think

14:06 13   it was intentionally designed to usurp my authority, but that was

14:07 14   the effect of it.  They cut me out of the game.  And like you

14:07 15   said, they in effect made me perpetuate the lie because I issued

14:07 16   an order saying there was no responsive documents.  I understood

14:07 17   it that way.

14:07 18        MR. ARULANANTHAM:  So a few thoughts about that, Your

14:07 19   Honor.  First, I just want to be very clear in this case my

14:07 20   clients are not terrorists.  My clients are law-abiding.  None of

14:07 21   the plaintiffs in this case have ever been arrested for a crime.

14:07 22   U.S. citizens.  I think one might be a lawful permanent resident.

14:07 23   And they have every bit as much right as every other American

14:07 24   member of the community, whether citizen or not, to the

14:07 25   transparency which FOIA permits.  And I think it's important to

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:07  1    understand, of course, the government has the duty and obligation

14:07  2    to protect us, but they also have a duty to comply with FOIA, and

14:08  3    that requirement is the same as in this case as it would be if the

14:08  4    requester here were the New York Times or anybody else.

14:08  5          Now, I don't have enough information to speak to the

14:08  6    Court with respect to bad faith, but I'll say two things about it

14:08  7    that I think bear on it in this way.  First, if you read the Meese

14:08  8    memo, clearly in the Meese memo what is contemplated is that the

14:08  9    requester, which in that case is the hypothetical criminal

14:08  10   conspirator who is trying to find out information covered under

14:08  11   552(c), the intent of the memo is to mislead that person.  At some

14:08  12   points they call it a disarming response.  So there is no question

14:08  13   that what the Meese memo has in mind is that that person will be

14:08  14   misled into thinking there are not records when in fact there are.

14:09  15         So when you take that response and put that same

14:09  16   language in a filing to the Court, it seems to me very clear that

14:09  17   you are intending to do the same thing to the Court that you

14:09  18   intend to do to the requester, the hypothetical requester who is

14:09  19   receiving the response contemplated in the Meese memo.

14:09  20         As I said, I don't have the knowledge because I wasn't

14:09  21   privy to understand how you can analyze the particular events in

14:09  22   this case and the policy that led to them to figure out whether or

14:09  23   not there is an intent to deceive.  That's different from bad

14:09  24   faith.  I have no doubt that the relevant declarants and brief

14:09  25   writers were following a policy.  I'm sure that's true.  But

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:09  1   whether there is an intent to deceive, I cannot speak to it.  But

14:09  2   it seems to me if you read the Meese memo and what it's trying to

14:09  3   do to the requester, and then imagine that someone decided to take

14:09  4   that same language and put it in a Court filing, that there was an

14:10  5   intent to deceive the Court.  That just seems obviously true, to

14:10  6   disarm the Court to make the Court believe that there are not

14:10  7   records when in fact there are.  That is A plus B to me.

14:10  8           THE COURT:  I agree with you.  I'm not going to fight

14:10  9   you on that.  And we're probably singing to the choir.  I still

14:10  10  don't understand why Ed Meese and the attorney generals that have

14:10  11  followed him feel they have to do that.  I'm still struggling with

14:10  12  it because let's just take -- it's well-known -- Mexican Mafia; a

14:10  13  very dangerous, destructive street gang; right?  And we know, we

14:10  14  have a lot of documents on them.  DEA and the FBI have a lot of

14:10  15  documents on the Mexican Mafia.  There's wiretap documents.  A lot

14:10  16  of prosecutions of the Mexican Mafia have been based on wire taps.

14:11  17          A Mexican Mafia member says, I need to know what the

14:11  18  government knows about me.  Do they have another indictment that's

14:11  19  soon to happen?  It's a FOIA request.  The government says we're

14:11  20  not going to comply.  Okay.  The FOIA requester, this hypothetical

14:11  21  Mexican Mafia member, is going to be very frustrated and

14:11  22  disappointed, but I don't see in that situation how the government

14:11  23  is compromised a criminal investigation.  And what I'm struggling

14:11  24  with is in this case I do believe the problem results from this

14:11  25  policy.

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:11  1          And the lawyers that were involved in this case, they

14:11  2  have to deal with that policy.  And I think that policy is

14:12  3  misguided.  I'm struggling to say why can't you tell them no

14:12  4  documents.

14:12  5          MR. ARULANANTHAM:  So, Your Honor, let me speak to that

14:12  6  then, the fact that the attorneys here are at some fundamental

14:12  7  level following orders, whether that undermines the rationale for

14:12  8  sanctions.  I think what rule 11 says, each and every attorney is

14:12  9  obligated to comply with its requirements.  You cite some of the

14:12  10  relevant cases.  I think Nevado is the most relevant one where you

14:12  11  have a high-ranking official in Puerto Rico who says the lawyers

14:12  12  told me that they reviewed my declaration.  They said this was

14:12  13  okay.  And the Court said we don't understand why that's relevant

14:12  14  at some fundamental level.  You are a declarant.  You have an

14:12  15  obligation, and the same attorneys have an obligation.

14:12  16          Now, in this context, Your Honor -- so I think that's

14:12  17  the technical legal answer.  It does not matter if it's authorized

14:12  18  from above.  I think in this context, Your Honor, in this case,

14:13  19  and certainly this could be true in the writing of an opinion, and

14:13  20  I think even if there is no writing of an opinion, it doesn't

14:13  21  necessarily matter how it's written, the combination of that

14:13  22  requirement, each and every attorney has an obligation, coupled

14:13  23  with the fact that this is a policy that must have been approved

14:13  24  very, very high up means that it's not going to be perceived as

14:13  25  some sort of attack on the particular way that these attorneys

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:13 1  themselves exercise judgment in this case.  And I think anyone

14:13 2  putting those two things together would read a sanction order in

14:13 3  this case as an attack on the policy which obviously is what it is

14:13 4  at some level.

14:13 5      And to me that resolves the question of the relevance of

14:13 6  the fact that they were perhaps following orders.  It does not

14:13 7  matter, because if you sanction for the attorneys' conduct in this

14:13 8  case, and they were following a policy, then what you are really

14:13 9  doing is condemning that policy.

14:14 10     And that is precisely what the courts should do.  It's

14:14 11 not within your power to divine the mental state of Attorney

14:14 12 General Holder or Gonzalez and the people who came before them

14:14 13 going back to Attorney General Meese.  It is, of course, within

14:14 14 your authority to look at rule 11 and all the other doctrine that

14:14 15 Your Honor already cited and look at this policy and look at the

14:14 16 judicial provision of FOIA and see if this makes any sense.  And

14:14 17 if the Court determines that this cannot be reconciled with rule

14:14 18 11, then you issue the sanctions.

14:14 19     And if the government -- then it goes up to the chain

14:14 20 and Attorney General Holder or going back to Meese is the person

14:14 21 who is effectively condemned by this, that makes it better.  It

14:14 22 doesn't make it worse.  And it makes it more effective because it

14:14 23 will change the government's behavior in lots of cases.  And if

14:14 24 they have to appeal because it's a very high-up authorization,

14:15 25 that's good also because then the Ninth Circuit or other higher

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:15  1    courts will have the opportunity to consider whether there is any

14:15  2    plausible defense of this policy in light of rule 11.

14:15  3              THE COURT:  What is the ACLU's current efforts on this

14:15  4    policy?  I read in the briefs that there was this proposed

14:15  5    legislation, the attorney general has decided to withdraw the

14:15  6    legislation.  And as I understand it, the legislation was

14:15  7    basically to sanction what was done in this case, which was

14:15  8    pursuant to that policy, make it the law of the land.  They

14:15  9    withdrew that.  But the policy still stands.

14:15 10              I know Senator Grassley and Senator Leahy are still --

14:15 11    they having hearings on this?  Is the ACLU involved in any of

14:15 12    those hearings?  What is the status?

14:15 13              MR. ARULANANTHAM:  Sure, Your Honor.  It's a regulation

14:16 14    that got withdrawn, not a statute.  So it was a proposed

14:16 15    regulation.  And the proposed regulation was proposed, as I

14:16 16    understand it, after the Ninth Circuit argument and before the

14:16 17    decision.  And then as Your Honor said, Senator Grassley, Udall,

14:16 18    representative Lamar Smith from Texas all were critical of it.  We

14:16 19    wrote a letter as well which, among other things, explains some of

14:16 20    the legislative history of 552(c) if the Court is inclined -- if

14:16 21    that becomes relevant to anything Your Honor is looking at.

14:16 22              So we're continuing to do our best to try and reverse

14:16 23    the policy.

14:16 24              I think the critical points for now, and this is

14:16 25    happening through our Washington legislative office which I've

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:16  1  also been in touch with and we're working on it, our avenues are

14:16  2  only to ask the government to reconsider and then to try and get

14:17  3  help from other political actors.  What we got from that process

14:17  4  was the regulation, proposed regulation is withdrawn and in that

14:17  5  same letter withdrawing it there is a spirited defense of the

14:17  6  underlying premise of the Meese memo.  And then statements that --

14:17  7  I think the statement is that the government will continue to work

14:17  8  with the -- I can't remember.  It's a statement at the end of that

14:17  9  letter written by the government in response to the letter from

14:17 10  Senator Grassley.  It's not as though we have some magic key.

14:17 11  That's all of the ability that we have to push the process.

14:17 12          THE COURT:  I appreciate that.  I'm asking because

14:17 13  whenever you talk about sanctions, you have to think about well,

14:17 14  what is the importance of deterrence here.  So what I'm trying to

14:18 15  understand is where are we with this policy.  And my understanding

14:18 16  of where we are, listening to you, is they withdrew the proposed

14:18 17  regulation, but there hasn't been a commitment to get rid of this

14:18 18  policy.

14:18 19          And you don't -- do you know, are the senators going to

14:18 20  continue to push this and investigate it and discuss it?  Or are

14:18 21  they just saying okay, moving on?

14:18 22          MR. ARULANANTHAM:  I don't know, Your Honor, with

14:18 23  respect to the senators.  I was involved in the conversations with

14:18 24  our legislative office, but not involved in the conversations with

14:18 25  the underlying staffers because the person in our Washington

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:18 1    office had done that part of the work, and I provided assistance

14:18 2    on a technical level with respect to the arguments and some other

14:18 3    substantive assistance, but I wasn't in the meetings with those

14:19 4    individuals.

14:19 5         The only other thing I would say with respect to the

14:19 6    policy changes, a policy can be reversed and we're a long way.  We

14:19 7    have no reason to believe there is going to be a policy change

14:19 8    which is going to result in one of these more acceptable

14:19 9    alternatives that I have discussed.  But even if it came, it's

14:19 10   obviously not the same as a definitive judicial interpretation of

14:19 11   the relevant statutory provision.

14:19 12        And to kind of draw an abstract analogy, it's like

14:19 13   mootness doctrine, Your Honor.  And there is a reason why, when

14:19 14   the government promises to change their mind, the Court says

14:19 15   that's voluntary cessation.  It's only when it's written into a

14:19 16   regulation or a municipal ordinance or statute that the foot comes

14:19 17   off the pedal because that's when you have a sense there is some

14:19 18   real genuine commitment to changing the underlying illegal

14:19 19   behavior.

14:19 20        And the other thing I would say about that, Your Honor,

14:19 21   is I can only imagine -- I wish I could have gotten the

14:20 22   transcript -- the conversation, or in chambers been a fly on the

14:20 23   wall to the conversation that would have happened in Benavides in

14:20 24   1992 and the government is making the statement about how they

14:20 25   think the response should be given, and that response looks pretty

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:20  1  good, doesn't involve lying to anyone.  It's similar to a Glomar

14:20  2  response, but somewhat different.  And the Court says okay, well,

14:20  3  we don't need to definitively interpret it because here is the

14:20  4  government's statement in the en banc brief about how they read

14:20  5  the provision.  And that was 1992.

14:20  6        So I think there is a fundamental difference between

14:20  7  getting even a policy change we do not have, we do not have it,

14:20  8  but even if we had a policy change, a fundamental difference

14:20  9  between that and a regulation or a statute or a definitive

14:20 10  judicial interpretation which says you cannot lie, at least to the

14:20 11  judiciary, and in our view even to requesters, but even if that's

14:20 12  not on the table, at least a ruling that you can't lie to the

14:20 13  judiciary in these kinds of cases and we do not have that.

14:21 14        THE COURT:  I appreciate your comments.

14:21 15        MR. ARULANANTHAM:  Thank you, Your Honor.

14:21 16        THE COURT:  Thank you.

14:21 17        Mr. Tyler.

14:21 18        MR. TYLER:  Good afternoon, Your Honor.

14:21 19        THE COURT:  Good afternoon, sir.

14:21 20        MR. TYLER:  The last time I was before Your Honor, I

14:21 21  expressed the government's great regret that there is some

14:21 22  difference in opinion in going to a matter of law in this case.

14:21 23  And we continue to have this difference of opinion.  We took of

14:21 24  course, enormously serious this Court's conclusion and belief that

14:21 25  you were lied to and that hurts us greatly.

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:21  1          We continue to believe that that is not the case, but

14:21  2      rather than reargue that, because of course this is a matter that

14:21  3      was decided by Your Honor, these issues were fully put before the

14:22  4      Ninth Circuit Court of Appeals which address these difficult

14:22  5      issues and issued its opinion.  It came back down before this

14:22  6      Court.  And the Court issued its very strong opinion condemning

14:22  7      the government's conduct in this case, and that's where we are

14:22  8      right now.

14:22  9          It is difficult for me, because the national security

14:22  10     information that was at issue in this case the Ninth Circuit Court

14:22  11     of Appeals held was properly withheld from the plaintiffs in this

14:22  12     case.  It is difficult, in order to protect that information to

14:22  13     continue to protect it, to speak to opposing counsel's questions

14:22  14     as such.  And it is difficult for me.  It will be difficult for me

14:22  15     to address Your Honor's questions.  I will attempt to do so, but

14:22  16     let me make some initial statements.

14:22  17         I believe that the difference the government has with

14:23  18     Your Honor in regard to the matters at issue in this case were

14:23  19     matters or issues of law; issues of policy.  And from Your Honor's

14:23  20     questions of opposing counsel I believe that Your Honor basically

14:23  21     agrees with them.

14:23  22         THE COURT:  I do.  It's a mixed question of law and

14:23  23     fact, but it's really more law, at least to me, the way I look at

14:23  24     it.

14:23  25         MR. TYLER:  And Your Honor fundamentally disagrees with

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:23  1    the Department of Justice's interpretation of the law and its

14:23  2    policy going to the matters at issue in this case.  But I note

14:23  3    that for sanctions to apply, which is an extraordinary remedy, for

14:23  4    sanctions to apply it has to be demonstrated that the alleged

14:23  5    offending party's legal position was truly frivolous and without

14:23  6    any basis at all.  And I would ask Your Honor to at least come to

14:24  7    the conclusion that that's not true here.

14:24  8          As Your Honor surmises, this matter, these issues that

14:24  9    concern Your Honor and then went up to the Ninth Circuit Court of

14:24  10   Appeals, they were reviewed by the highest authorities in the

14:24  11   Department of Justice.

14:24  12         THE COURT:  That's what I sensed.  I just want to be

14:24  13   clear, I am not faulting the people that were in this court

14:24  14   because I think they were just doing their job and what they were

14:24  15   told.  And whatever I decide to do, and I think you are confirming

14:24  16   it, this was the highest levels of government that not only

14:24  17   authorized what was done, they believed that it was correct.

14:24  18         And am I correct, too, that litigating it even with the

14:24  19   Ninth Circuit you had to have the highest levels approval to do

14:24  20   that?

14:24  21         MR. TYLER:  The solicitor general of the United States

14:24  22   has to authorize any appeal from a lower court decision.

14:25  23         THE COURT:  Who was the solicitor general at the time?

14:25  24         MR. TYLER:  At that time I believe, Your Honor, that it

14:25  25   was acting solicitor general Neal Katyal.  I believe that was the

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:25  1  case.

14:25  2          But it is this difference of legal opinion, if you will,

14:25  3  between the government and Your Honor on this issue that Your

14:25  4  Honor has noted I think oftentimes in the past is extremely

14:25  5  difficult, and the Department of Justice, the government finds

14:25  6  this issue to be extremely difficult.

14:25  7          And I will also note that what plaintiff wants from Your

14:25  8  Honor by way of a sanctions order is another attack on this

14:25  9  policy.  I believe Your Honor has already attacked this policy in

14:25 10  its previous decision.  Quite frankly, I don't quite understand

14:25 11  what a sanctions order, how that would provide a greater attack on

14:25 12  this policy.  I'm using opposing counsel's word, asking for this

14:26 13  Court to attack that policy.  Your Honor already has and made

14:26 14  known its opinion.

14:26 15          THE COURT:  I'd still feel better, Mr. Tyler, if I could

14:26 16  get a comfort level with the policy.  And I'm really trying my

14:26 17  best to keep an open mind, but I'm still not understanding why

14:26 18  they couldn't have told me what was going on from the onset.  Why

14:26 19  they have to keep me in the dark for any period of time.

14:26 20          MR. TYLER:  This is a little awkward for me, Your Honor,

14:26 21  because obviously opposing counsel and Your Honor have been

14:26 22  talking about exclusions under (C)(1) of the Freedom of

14:26 23  Information Act.  I cannot say whether or not an exclusion was at

14:26 24  play in this litigation.

14:26 25          THE COURT:  I don't want to put you in that position.

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:26  1         MR. TYLER:  A hypothetical, Your Honor.  And let's just

14:26  2    construct a hypothetical.  And let's go back to the 1980s, what

14:27  3    concerned Department of Justice back at that time.  And my

14:27  4    hypothetical will concern organized crime individuals, gangsters.

14:27  5    Say New York.  I originally come from New York.  Gangsters in New

14:27  6    York who were pretty sure that the FBI has another investigation

14:27  7    of them going.  They're pretty sure, but they're not entirely

14:27  8    certain and they would love to know that.  Because if they knew

14:27  9    that, if they knew for sure that the FBI was investigating them,

14:27 10    might have undercover agents that's infiltrated their very

14:27 11    organized crime conduct, if they knew that for sure, then they

14:27 12    could start taking counteractions to thwart that investigation, or

14:27 13    maybe abandon that criminal enterprise they were engaged in now

14:27 14    even though it's very profitable and go to something else.

14:27 15         So it came to the FBI's attention that they could hire

14:28 16    smart lawyers to take advantage of FOIA to find that out.  Because

14:28 17    if you, on behalf of a gangster, submit a FOIA request to the FBI

14:28 18    and say, we want any and all documents that mention my client's

14:28 19    name, then the FBI has to respond.

14:28 20         THE COURT:  But if the FBI responds saying we can

14:28 21    neither confirm or deny, or we're not going to -- or if there are

14:28 22    documents, we don't have to produce them or tell you the nature

14:28 23    and number, is that compromising the criminal --

14:28 24         MR. TYLER:  It's not allowed under FOIA.  That's the

14:28 25    problem.  If you have an ongoing investigation of somebody, those

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:28  1   documents are generally exempt.  And Your Honor is aware FOIA has

14:28  2   nine exemptions.  Criminal investigative files can be exempt under

14:29  3   7(a).  It's exemption 7(a).  And if the FBI were to come before

14:29  4   the Court and say look, there are these files, there is an ongoing

14:29  5   investigation of this organized crime figure, and because of that,

14:29  6   it is an ongoing criminal investigation, the release of those

14:29  7   documents to this gangster would defeat or compromise this

14:29  8   investigation, those documents wouldn't have to be produced.

14:29  9        But by saying that, that there is this investigation, it

14:29 10   gave the gangster the very information he wanted.  All he wanted

14:29 11   to know is are you guys investigating me.  He knew he wasn't going

14:29 12   to get documents.  He knew that.  His lawyers, they're clever.

14:29 13   They told him that.  You'll never get these documents.  But if we

14:29 14   demand the FBI to notify us or to tell us whether they have any

14:30 15   files on you, they'll have to say that much, and they'll have to

14:30 16   say it's exempt under 7(a), and by doing that they will tell you

14:30 17   that there is this investigation and that you guys can change your

14:30 18   conduct or start implementing countermeasures.

14:30 19        So the FBI, the Department of Justice went to Congress

14:30 20   and said this doesn't work.  Organized crime guys, they're very

14:30 21   sophisticated.  Their attorneys are smart.  They know FOIA.  So we

14:30 22   need a means by which we don't even have to tell them whether we

14:30 23   have records.  We don't want to have to say, yes, we have records,

14:30 24   but we otherwise can't produce them to you because that gives them

14:30 25   the very information they want.

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:30  1          So Congress enacted exclusions.  And Congress said if

14:30  2   you, the FBI, believe that the organized crime guys who are making

14:31  3   this FOIA request, they might think, they might be really pretty

14:31  4   sure, but if you, the FBI, thinks that they're not entirely

14:31  5   certain, and in fact they're using the Freedom of Information Act

14:31  6   for the very purpose of making themselves certain so they can take

14:31  7   these countermeasures, if you, the FBI, believe that to be the

14:31  8   case, and that goes to the requisite reviews internally within the

14:31  9   Department of Justice, and other officials agree with that, then

14:31 10   those records are, quote, excludable.  They're not subject to FOIA

14:31 11   at all.

14:31 12          I mean they might as well be judicial records which are

14:31 13   not subject to FOIA.  Or they might as well be congressional

14:31 14   records not subject to FOIA.

14:31 15          As far as FOIA is concerned those records don't like

14:31 16   exist.  And that was the language that was used.  And that's what

14:31 17   Congress said the FBI, that's what you can do.  You can treat

14:31 18   those records as if they didn't exist.

14:32 19          So when the organized crime guy comes and says FBI, do

14:32 20   you have any records on me?  The FBI can say no, we don't.

14:32 21          Now, here is the rub.  It's one thing not to tell or

14:32 22   confirm to the organized crime guy that, in fact, the FBI has an

14:32 23   ongoing investigation of him.  That's one thing.  But this is a

14:32 24   case in litigation.  So it's we have to tell the Court.  All

14:32 25   right.  How to do that.  How do you do that?  Because you can't

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:32  1   come before the Court ex parte in camera, because you try that in

14:32  2   any district court in this country -- and I have been before most

14:32  3   of them, judge -- they will immediately tell you that's

14:32  4   inappropriate.  That's in violation of local rules.  That's in

14:32  5   violation of the Code of Professional Conduct.  And they will

14:32  6   immediately notify the other side.  In this Freedom of Information

14:33  7   case, the government just tried to have ex parte conversations

14:33  8   with me.  All right.

14:33  9        Now, the very smart lawyers of this organized crime guy

14:33 10   said, we got 'em.  The government is trying to get before this

14:33 11   judge, trying to get ex parte.  It must be an exclusion.  That

14:33 12   must be what's going on.  There is an investigation of you going.

14:33 13        This is sophisticated stuff.  This is not for the usual

14:33 14   FOIA requester or the usual lawyer who is unversed in FOIA.  This

14:33 15   is for the really sophisticated.  This is the really bad guy who

14:33 16   is using this law intended for transparency against the government

14:33 17   itself in order perpetuate its criminal activity.

14:33 18        Okay.  So how do we get before the judge?  We can't go

14:33 19   ex parte in camera.  We can't do it.  The local rules, Code of

14:33 20   Professional Conduct prohibit that.  When can we do it?

14:33 21        We look for the first opportunity.  And by that I mean

14:34 22   we have to have an excuse in an exclusion case to come before the

14:34 23   Court ex parte in camera.  Sometimes that opportunity comes to us

14:34 24   sooner, sometimes it comes only later.  What we hope for is that

14:34 25   we have an opportunity in support of another exemption such as a

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:34  1    (b)(1) exemption.  That goes to classified information, Your

14:34  2    Honor.

14:34  3           There might be a part of a case in which the FBI or

14:34  4    maybe even another defendant, because that's often what happens is

14:34  5    the FBI is sued together with somebody else, and there might be

14:34  6    other records, not the law enforcement records, not the kind of

14:34  7    records that if you say they existed would tip off the organized

14:34  8    crime guy that there is an ongoing criminal investigation, but

14:34  9    there might be other records that are being withheld because

14:34  10   they're classified.  That's not an infrequent case.

14:34  11          The government can come in, in support of a (b)(1)

14:35  12   exclusion and say or submit ex parte in camera declarations.  At

14:35  13   that time we can take advantage of that and inform the Court as

14:35  14   part of that ex parte communication there is an exclusion at play.

14:35  15   Without that opportunity the government in an exclusion case, it's

14:35  16   a difficult situation.  It's not as easy as it appears.  It really

14:35  17   is not.  And what the government is concerned about is the

14:35  18   sophisticated lawyers representing the really bad guy.  Because

14:35  19   they're out there and they use FOIA.  We know it, they know it.

14:35  20   That's what the exclusion is all about.

14:35  21          So Your Honor's question in an exclusion case -- and I

14:35  22   cannot comment whether this case is an exclusion case -- Your

14:35  23   Honor's question in an exclusion case why, if there is an

14:35  24   exclusion at play, why if there is a bad guy asking whether

14:36  25   there's any records pertaining to him, why if in fact there are,

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:36  1    we can't just tell the bad guy to pound sand, FOIA doesn't let us.

14:36  2    FOIA says in the normal case if you want to tell somebody to pound

14:36  3    sand, if you want to tell that person that the records he wants,

14:36  4    if they exist, are not going to be produced to them, you the

14:36  5    government have to point to an exemption.

14:36  6        If you point to exemption 7 which would otherwise apply,

14:36  7    you just told them an investigation is ongoing.  That's all he

14:36  8    wants to know.  He won.  He just won.

14:36  9        Now, these are hard issues.  They're very difficult

14:36 10    issues.  They're issues that are being discussed in the upper

14:36 11    echelons of the Department of Justice.  They are issues being

14:36 12    discussed in Congress, and Congress and the department are talking

14:36 13    with other about these issues.  Because we are certainly aware of

14:37 14    the consternation courts would have about the operation of

14:37 15    exclusion, about the first moment the government can come before a

14:37 16    Court to inform it, these are very hard issues.

14:37 17        So those branches of government are talking with each

14:37 18    other now and that talk will continue.  And I don't know what the

14:37 19    resolution of that will be, judge.  I quite frankly do not know.

14:37 20    I think that because these are hard issues that there will be

14:37 21    those who will be frustrated by the answer the government will

14:37 22    come up with.  And now I'm referring to Congress in conjunction

14:37 23    with the Department of Justice.  I'm sure they'll still remain

14:37 24    frustrated by it.  But the purpose of an exclusion is fundamental.

14:37 25    It is an appropriate purpose.

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:37  1          Coming back to this case, Your Honor, again, I so

14:38  2  regret, I truly regret Your Honor came to the conclusions that it

14:38  3  did.  Because as I said last time we were before Your Honor that

14:38  4  trust that exists between the Department of Justice and a Court,

14:38  5  this Court, any Court, is so important because we're not paid

14:38  6  gunslingers.  We represent the interest of the public and the

14:38  7  interest of the public demand honesty and demand that we never

14:38  8  pull the wool over a Court's eyes.  Certainly at no time did we

14:38  9  ever contemplate we were doing that with Your Honor.  It never

14:38 10  occurred to us that we were doing that.

14:38 11          In this case the government was doing the best it could

14:38 12  to inform the Court of national security information at the

14:38 13  earliest possible time.  That was what we were attempting to do.

14:38 14  Now, there could be disagreement whether we could have come in

14:39 15  earlier.  I am still at a loss how we could.  I don't know that we

14:39 16  could.  I don't think we could.  But Your Honor might disagree.

14:39 17          But in any event, I believe Your Honor will at least

14:39 18  agree with us that these do raise difficult issues.  That the

14:39 19  government was not intending at any time to deceive this Court.

14:39 20  That we were doing the best we could with a very difficult

14:39 21  situation.

14:39 22          This is a matter Your Honor has already addressed in its

14:39 23  decision.  This is a matter the Ninth Circuit has already

14:39 24  reviewed.  And I come back to opposing counsel's word.  He wants

14:39 25  Your Honor to issue rule 11 sanctions in order to, quote, attack

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:39  1    the policy.  You have attacked the policy.  Your Honor's opinion

14:39  2    is respected.  It's been received.  We continue to have that

14:40  3    fundamental disagreement and I regret that.  But it is what it is.

14:40  4          I think for all these reasons, Your Honor, that this

14:40  5    case most certainly is not appropriate for sanctions.  And I ask,

14:40  6    Your Honor, for these reasons to deny plaintiff's motion.

14:40  7          If Your Honor has any other questions...

14:40  8          THE COURT:  Very well said.

14:40  9          MR. ARULANANTHAM:  Just a few things, Your Honor.

14:40  10   First, the story that my friend Mr. Tyler said about how the FBI

14:40  11   went to Congress and Congress wrote 552(c) is not borne out by the

14:40  12   legislative history as section 552(c).  There's a few sparse

14:40  13   comments where the government witnesses suggest that the purpose

14:40  14   of the statute is to permit the government to lie to requesters.

14:41  15   Those are heavily criticized during the hearing.  They're

14:41  16   criticized by the relevant report writers.  And ultimately

14:41  17   Attorney General Meese backs off from that statement in the course

14:41  18   of the proceedings.  And he writes a letter to the relevant

14:41  19   committees saying that the purpose of the statute is to authorize

14:41  20   Glomarization, Glomar responses.  This is collected in Exhibit 3

14:41  21   pages 5 through 8 of our letter to Attorney General Holder

14:41  22   concerning the regulations.

14:41  23          And I think ultimately the proof of that is in the

14:41  24   pudding.  If that were really what was being meant, what was being

14:41  25   contemplated by the statute, why didn't they write it in the

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:41   1   statute?  The words "you can treat the records as though they're

14:41   2   not subject to the requirements of FOIA" are not any different

14:41   3   from the words in subsection B which is where the exemptions are.

14:41   4           Certainly if they were trying to revolutionize the law

14:41   5   and create in FOIA authority to lie to people and to lie to the

14:42   6   courts they would have written it in some way that you could

14:42   7   suggest that.  But there is nothing in the text to back up, and as

14:42   8   I said there is nothing in the history either.

14:42   9           Your Honor, Mr. Tyler also says that in his

14:42  10   hypothetical -- right? -- that there is no other way to do this

14:42  11   other than lying to requesters because of this hypothetical

14:42  12   sophisticated requester.  I'll touch on it briefly because we

14:42  13   discussed it earlier.  If you provide a Glomar response, or if you

14:42  14   provide a response which says there are no records that are

14:42  15   disclosable under FOIA, that is permitted under FOIA.  It happens

14:42  16   all the time.  You don't have to cite even to section 552(c).  You

14:42  17   can cite to b7A or whatever provision is connected to the

14:42  18   subsection C subsection at issue.

14:42  19           And even if you believe everything he says about that,

14:42  20   and the purpose of this is to permit that sophisticated requester

14:43  21   to not be tipped off so you have to lie to that person, that is

14:43  22   not what the sanctions motion is about.  The sanctions motion is

14:43  23   not about the initial response to us.  It is about what they wrote

14:43  24   to the Court and what they put in their declaration.

14:43  25           And the idea that you can't file an ex parte motion or

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:43  1    an ex parte submission in a FOIA case is just absurd.  It's just

14:43  2    absolutely ridiculous.  There are ex parte submissions filed in

14:43  3    national security cases that are not about FOIA and in FOIA cases

14:43  4    of all stripes all the time.  And how many of my most recent

14:43  5    natural security cases, the case in front of Your Honor, Fazaga,

14:43  6    the no-fly list challenge, it's a routine matter in FOIA cases.

14:43  7    The government files ex parte requests.

14:43  8          And the problem with their view, Your Honor, is -- and

14:43  9    he says sometimes the opportunity to correct it comes sooner and

14:43  10   sometimes it comes later, well, most of the time it comes never.

14:43  11   It comes never because when you say there are no responsive

14:44  12   records, people think there is nothing to challenge.  That's the

14:44  13   way even the administrative appeal process is set up in FOIA.  And

14:44  14   that means the judge is left being deceived and the record is

14:44  15   never, ever corrected.  And we have no idea how many times that

14:44  16   happened between 1987 and now.  And that's the logic of the policy

14:44  17   that the government has adopted.

14:44  18          Two last things I wanted to say about this, Your Honor.

14:44  19   First, I really strongly disagree with the claim that this is a

14:44  20   matter of law and not a matter of fact.  If you'll just indulge me

14:44  21   for one minute, Your Honor.  I recognize it's a matter of policy.

14:44  22   No question about that.  But the policy instructs the government

14:44  23   to lie as a matter of fact.  And the critical question for those

14:44  24   purposes is the word "responsive," that word, can it be

14:44  25   interpreted or is there a legal interpretation of that word that

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:45  1   permits the government to say the documents are responsive -- or

14:45  2   that there are no responsive documents when there are, when I'd

14:45  3   submit to Your Honor, we cite all sorts of authority in the reply

14:45  4   brief about this.  But it's just common sense, nobody using the

14:45  5   English language whether in court amongst lawyers or in the public

14:45  6   uses the word "responsive" to refer to documents or subject matter

14:45  7   that is responsive -- sorry, that is not responsive.

14:45  8        In other words, when you say we do not have responsive

14:45  9   documents, nobody thinks that means that you have documents that

14:45 10   are in fact relevant, or that are answering or these other words,

14:45 11   but for some abstract legal reason have to be excluded.  No one

14:45 12   ever uses the word that way.

14:45 13        And that's the reason, Your Honor, as you said earlier

14:45 14   you were confused -- not confused, you were misled and deceived,

14:45 15   and why in your order what you wrote was factually false.  It's

14:45 16   why we were.  And it's the whole point of the Meese memo, is to

14:45 17   mislead people.  And if that's the point, how can you say that

14:46 18   it's a question of law rather than a question of fact?  It's a

14:46 19   policy that authorizes factually false statements being submitted

14:46 20   apparently to courts.  And that's exactly what rule 11 is about.

14:46 21   That's exactly what rule 11 factual statements prohibition is

14:46 22   about; is there a factual warrant for the paper being submitted to

14:46 23   the Court.

14:46 24        So I really do strongly disagree with the claim that

14:46 25   this should be analyzed as a legal frivolousness point rather than

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:46  1   as a factual misstatement.  But even if the Court is inclined to

14:46  2   analyze it as legal rather than factual error, Murphy versus

14:46  3   Morgan, this case that we cite in the reply brief, it's a Judge

14:46  4   Posner from the Seven Circuit opinion saying the fact that there

14:46  5   is no law saying that it's illegal to sell foster children into

14:46  6   slavery doesn't mean that it's unclear.  It doesn't mean it

14:46  7   wouldn't be frivolous to adopt a legal position that justified

14:46  8   that.

14:47  9         I don't think there has ever before been a government

14:47  10  attorney who has come and stood and said we can lie or we can at

14:47  11  least say deeply misleading things to the Court, which is

14:47  12  undoubtedly going to mislead the vast majority if not all of the

14:47  13  judges who are going to read it because it's a matter of our

14:47  14  interpretation of some words in the FOIA statute which don't even

14:47  15  remotely suggest that's what their purpose is.

14:47  16        So the fact that there is no case and that high-up

14:47  17  people reviewed it, it doesn't change the fact that it is a

14:47  18  frivolous argument.  It's a frivolous argument because it's

14:47  19  outrageous to suggest that the government could mislead the

14:47  20  judiciary, and that's apparently what the policy authorizes.

14:47  21        And he's not -- Mr. Tyler hasn't explained where it is

14:47  22  in the text of the statute.  How is judicial review supposed to

14:47  23  happen in most cases?  How is it supposed to happen that the Court

14:47  24  is going to figure this out?  What other context anywhere in law

14:47  25  is it permissible to mislead the judiciary?  When does that ever

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:48  1    happen?

14:48  2          These basic questions I think go to whether this is a

14:48  3    legally frivolous or legally even colorably warranted argument and

14:48  4    we have never heard an answer to that.  It's from the amended

14:48  5    order through all the briefing.  There's never any coherent

14:48  6    response.

14:48  7          And the last thing I would say, Your Honor, it is true

14:48  8    we're very happy about the fact that the amended order does

14:48  9    strongly criticize this policy, but it is dicta.  There is no

14:48 10    question about it.  It's dicta.  It's just like the dicta in

14:48 11    Benavides.  That was from the D.C. Circuit 20 years ago.  And Mr.

14:48 12    Tyler has said he cannot say what the outcome of these discussions

14:48 13    are going to be in Washington.  And if part of the justification

14:48 14    for sanctioning is to deter misconduct by the government and if

14:48 15    the Court's view is that what happened in this case was misconduct

14:48 16    by the government, then the Court must impose sanctions in order

14:48 17    to deter that conduct because if you don't, there is no

14:49 18    deterrence.  There is no legal constraint.  And if the policy

14:49 19    happens or doesn't happen, if it changes or stays the same, if it

14:49 20    changes but then reverses and goes back to the old policy, you

14:49 21    will never know, Your Honor.  You will never know, we'll never

14:49 22    know.  No one will ever know.

14:49 23          The only way to get a ruling is to create an order that

14:49 24    establishes what the law is in this area and sanctions the

14:49 25    government for violating that law and then either it becomes a

SACV 07-01088-CJC - 11/14/2011 - MONDAY

14:49  1  definitive interpretation or it's appealed and gets litigated

14:49  2  above.

14:49  3          Thank you, Your Honor.

14:49  4          THE COURT:  I greatly appreciated the argument on both

14:49  5  sides.  I'm going to think about it and I'll get a decision out

14:49  6  within the week.

14:49  7          MR. TYLER:  Thank you, Your Honor.

14:49  8          MR. ARULANANTHAM:  Thank you, Your Honor.

       9          *(Whereupon the proceedings were adjourned at 2:49.)*

      10

      11                         *-oOo-*

      12

      13                      *CERTIFICATE*

      14

      15          *I hereby certify that pursuant to Section 753, Title 28,*

      16  *United States Code, the foregoing is a true and correct transcript*

      17  *of the stenographically reported proceedings held in the*

      18  *above-entitled matter.*

      19

      20  *Date:  NOVEMBER 22, 2011*

      21

      22  */S/*

      23  *_____*
          *OFFICIAL COURT REPORTER*

      24

      25