UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE CORMAC J. CARNEY, JUDGE PRESIDING

```
ISLAMIC SHURA COUNCIL OF        )
SOUTHERN CALIFORNIA ET AL,      )
                                )
                Plaintiff,      )
                                )
           vs.                  ) No. SACV 07-1088-CJC
                                )
FEDERAL BUREAU OF INVESTIGATION )
ET AL,                          )
                                )
                Defendant.      )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SANTA ANA, CALIFORNIA

WEDNESDAY, APRIL 27, 2011

9:30 A.M.

Maria Beesley-Dellaneve, RPR, CSR 9132
Official Federal Reporter
Ronald Reagan Federal Building, room 1-053
411 West 4th Street
Santa Ana, California 92701
(714) 564-9259

```
 1   APPEARANCES OF COUNSEL:

 2
     FOR THE PLAINTIFF:    ACLU OF SOUTHERN CALIFORNIA
 3                         BY:  AHILAN ARULANANTHAM, ESQ.
                           1313 W. 8TH STREET
 4                         LOS ANGELES, CALIFORNIA 90017
                           (213)977-5297
 5

 6
     FOR THE DEFENDANTS:   U.S. DEPARTMENT OF JUSTICE
 7                         BY:  MARCIA KAY SOWLES, ESQ.
                           and  JOHN TYLER
 8                         20 MASSACHUSETTS AVE., NW
                           ROOM 7108
 9                         WASHINGTON, DC 20530
                           (202)514-4960
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4e194528-297b-492f-b752-db0694b6057d

1  SANTA ANA, CALIFORNIA; WEDNESDAY, APRIL 27, 2011

2  9:30

3  **THE CLERK:** Item one, SACR 07-01088-CJC. Islamic Shura
4  Council of Southern California, et al versus Federal Bureau of
5  Investigation, et al.

6  Counsel, please state your appearances for the record.

7  **MR. ARULANANTHAM:** For the plaintiffs, Ahilan
8  Arulanantham. Good morning, Your Honor.

9  **THE COURT:** Hello, sir.

10  **MS. SOWLES:** For the defendant Marcia Sowles, and with
11  me is John Tyler, who will also be representing the government.
12  He is the Department of Justice also.

13  **THE COURT:** Good morning to both of you.

14  Well, hopefully you have had enough time to review the
15  order. I realize that from the plaintiff's standpoint, I haven't
16  said enough and you wish you had more information. And I realize
17  from the government's position that I have said way too much. Let
18  me just tell you, I try to do my best to determine what the law
19  requires in this situation, and it is what it is.

20  I understand that the plaintiffs are considering whether
21  to file a petition for rehearing or en banc review with the Ninth
22  Circuit. Not to try to persuade you against doing that in any
23  way, but I think you should know that my original order did not
24  disclose the nature, content, or number of the documents that were
25  withheld, for whatever that's worth.

1      I'm not sure I can really say anything more than what I
2  have already said in the order.  But I did want to at least be
3  available to answer any questions that the plaintiffs or the
4  government has, or to give both sides an opportunity to state what
5  they want to say on the record if they have any objections, or
6  thoughts.
7      Why don't I start off with plaintiffs first.  If you
8  would approach the lectern, that would be great.
9      **MR. ARULANANTHAM:**  Thank you, Your Honor.  It's a little
10 difficult for me to react.  It's the same thing I told to the
11 Ninth Circuit, because it's still playing in the dark, and
12 obviously a lot has gone on between the government and the Court,
13 and I'm only now coming to grips with some of that as I read this
14 opinion.
15     So I have a number of questions.  It's going to be more
16 disjointed than I would like, but I hope you would indulge me in
17 that.
18     **THE COURT:**  Of course I will.  I don't want to frustrate
19 you, I might not be able to answer some of the questions, but I'll
20 tell you if I can or I can't.
21     **MR. ARULANANTHAM:**  Great, Your Honor.  I was going to
22 ask you if the time for appeal is tolled.  I think that's
23 irrelevant now because the Court has withdrawn the prior ruling
24 consistent with the tentative from two years ago.  And this is the
25 appealable order if there is an order to appeal.  Is that correct,

1  Your Honor?

2  **THE COURT:** That would be my understanding, because I
3  have vacated that prior order because it has inaccurate
4  information in it.

5  **MR. ARULANANTHAM:** Okay, Your Honor.

6  Two years ago there were two issues generally. One was
7  the documents that were withheld as outside the scope, and the
8  other one was the new -- well, the request for expanded searches
9  for Mr. Ayloush and CAIR. If I understand this correctly, the
10 Court's holding is that the outside the scope redactions are
11 actually properly covered by another FOIA exemption. So although
12 they were not outside the scope, all of those are properly
13 withheld under a different FOIA exemption. Is that correct, Your
14 Honor?

15 **THE COURT:** It is a fair question, and the way you
16 phrased it, it's going to be difficult for me to answer it in
17 light of the Ninth Circuit's order. My original order would have
18 answered that question, but given the Ninth Circuit's order I feel
19 a little uncomfortable responding to it.

20 What I can say, so you know, is based on the information
21 I received in classified hearings, closed hearings, that the
22 government has complied with its obligations under FOIA. And the
23 plaintiffs will not be receiving anymore information. There won't
24 be a revised Vaughn Index. From that standpoint, I have
25 determined we're done. And if plaintiffs disagree with that, then

you have, obviously, your right to appeal.

But I sympathize with your position. You are walking in the dark, or shooting in the dark. And I don't know what to tell you other than I wanted to provide you more information but the Ninth Circuit said I can't. And that's why I made the earlier comment to you is, I don't want you to think that my original order disclosed the nature, content, or number of those documents. It did not.

**MR. ARULANANTHAM:** So, Your Honor, it's extremely awkward in a way, but I think it might be helpful for me to ask questions. I feel like I'm crossing the judge. It's totally bizarre. Just so that I can make clear what the limitations are in Your Honor's view about what can and cannot be put in this order so that it may make a cleaner record, or help us if we do want to appeal.

And I don't actually know. I feel like I want to talk to other people within the -- or the ACLU and my clients to see what our position is about 552(c) in general. There is very little, if any, briefing. I don't recall it. So I don't know if it's there somewhere and I missed it. Prior to the Ninth Circuit's opinion, it wasn't clear to me that that was a big part of this case. It's not one of the main exemptions that's being claimed. So it's all a little bit new to me.

But if I understand it correctly then, given the Court's view and the Ninth Circuit's view as the courts interpreted it,

Page 7

1  you cannot tell us what the exemption is that the government has
2  claimed, which of the exemptions under 552 as a whole the
3  government has claimed with respect to the information that was
4  originally redacted as outside the scope.
5         **THE COURT:**  You are correct.  And my original order
6  would have given you that information.  So I don't know if that's
7  helpful in your consideration, whether you want to file a petition
8  on the Ninth Circuit's ruling or not.  I did not believe at the
9  time that anything in my order in any way compromised national
10 security.  And it's unclear to me -- in fact, I don't believe the
11 Ninth Circuit said that anything in my order would have
12 compromised national security, but I do believe the Ninth Circuit
13 said there is confidential information that the plaintiffs do not
14 have the right to know about it.  And my original order disclosed
15 what we'll call confidential information.
16         **MR. ARULANANTHAM:**  Thank you, Your Honor.  Just a few
17 other things then.
18         In the prior documents, in many cases the government
19 claimed other exemptions, (b)(6) and (b)(7).  We didn't challenge
20 those at the time.  We only challenged outside the scope and the
21 extent of the search for the CAIR and Mr. Ayloush.  But we did
22 that on the assumption that we were being told the truth as to the
23 basis for those exemptions.  Can Your Honor tell us if, when the
24 government claims (b)(6) and (b)(7) and other kinds of exemptions
25 in the original set of documents we received, were those

1  statements false?

2          **THE COURT:**  I never specifically focused on those
3  exemptions.  But giving you the big picture, I think if you
4  pursued that with me, you really would be arguing technicalities
5  as opposed to substance.  In other words, I found -- I think my
6  order makes it pretty clear -- that there was deception.  And
7  there was deception with you, but that's not my fight.  My fight
8  and my focus was deception with me.  And how the government
9  deceived you, it is in connection with those exemptions that you
10 litigated as well.

11         But at the end of the day is, what I guess I'm telling
12 you, it's my finding that that information, you are not entitled
13 to know.  If we were in a perfect world -- which we're not, it is
14 what it is -- I would have liked to have said.  You want this
15 information, the government has submitted in camera information,
16 and I have concluded that the government has complied with all its
17 obligations under FOIA.  I'm sorry, plaintiffs.  You can take that
18 up to the Ninth Circuit if you disagree.  I respect that.  That's
19 your right.  But you don't get to know that information in this
20 context.

21         That's my determination on the law.

22         **MR. ARULANANTHAM:**  Thank you, Your Honor.

23         **THE COURT:**  I wasn't given that opportunity, you weren't
24 given that opportunity.  And it is what it is.  And hopefully that
25 gives you a sense of -- I can't tell you.  And the last thing -- I

1  don't want you leaving this hearing thinking I'm telling you what
2  to do.  You need to do whatever you want to do.  But I'm just
3  saying, from my standpoint, if you are going to be litigating the
4  Vaughn Index or exemptions, I think at the end of the day you are
5  going to be wasting your time.  Because of what I know and what I
6  have seen, you are not going to get any additional, more
7  information.  You know what I mean?
8          So the Vaughn Index is -- what have you been given is
9  misleading because it's incomplete.  You see what I'm saying?  So
10 why are we going to argue about well, I want to challenge your
11 exemption that you have already articulated?
12         **MR. ARULANANTHAM:**  That makes sense, Your Honor.  I
13 understand that.  That's helpful.
14         Reading through the criteria of 552(c), at least some of
15 the criteria might have been different -- the application of them
16 in 2006 might have been different from their application were we
17 doing the same thing today.
18         So, for example, 552(c)(2) on informants does not allow
19 the government to take a -- can't confirm or deny a response if
20 the informant's status has been officially confirmed, for example.
21         And in 2006, that might have been one way and it might
22 be different today.  Similarly, (C)(3) only applies to classified
23 information.  I don't know -- I have no way of knowing if some of
24 this information -- I know some of the information is not
25 classified because that was told to us in our Ninth Circuit

1   briefing.

2          So I say this to say -- and in addition to (C)(1) --
3   that's all of them, actually.  There's three.  (C)(1) is only if
4   the target is not aware of the investigation.  As Your Honor said
5   at the end of the opinion, obviously my clients have some sense
6   that they're being investigated.  There is mountains of documents
7   that are -- we can't see that are about them in some sense.

8          If we made the same request today, do you have any sense
9   of whether the Court's view of the appropriateness of the
10  redactions and all this might be different in light of these
11  factual changes that might affect the application of 552(c)?

12         **THE COURT:**  For doing it on the fly, you are asking
13  excellent questions, for whatever it's worth.

14         **MR. ARULANANTHAM:**  Thank you, Your Honor.

15         **THE COURT:**  And the last thing I'm trying to do is be
16  cagey with you, but your questions are so good that I have to
17  think about what the Ninth Circuit said and I have to think about
18  what I know and what I can tell you.

19         The government, in connection with -- or in response to
20  my order that I said okay, I'm going to be issuing a redacted
21  order, an amended order, you tell me what you believe needs to be
22  redacted.  And in connection with that submission, I did receive
23  further classified information that you cannot see.  Based on what
24  I saw -- it wasn't thorough, and again, it wasn't subject to the
25  adversarial process, but based on what I saw, I do not believe

1  that circumstances have changed that would allow me to revisit
2  whether the information can now be disclosed to you with the
3  passage of time.
4         And again, if the Ninth Circuit had said you can go
5  ahead and release your order, then it would be easier for you to
6  make an informed decision on whether you want to fight it or
7  challenge it or not.  But again, I'm a little bit hamstrung myself
8  in responding to you trying to interpret exactly what the Ninth
9  Circuit was saying.
10        And you should know -- maybe you assume this -- the
11 Ninth Circuit did not issue any in camera order to me.  What you
12 know is what I know.  And in that Ninth Circuit order, they did
13 not identify, as you know, specifically what is the confidential
14 information that's not classified that you shouldn't receive.
15        So I'm trying to interpret what they meant by that.  I
16 think I have a sense of what they meant by it.  And I'm also
17 trying to be somewhat practical in where we are and how long this
18 case has.  And not trying to curry your favor, but you are very
19 competent, zealous counsel, and you have an understanding of the
20 nature of these types of FOIA requests and what goes on.
21        **MR. ARULANANTHAM:**  Your Honor, if we had known that we
22 would be here now with the same number of documents that we were,
23 then our approach to this might have been different, although it's
24 been informative to learn about this whole process that we didn't
25 really know much about.

1        So I guess the very last thing, I really do appreciate
2   Your Honor trying to figure out what you can say and can't say,
3   and being as helpful as you can, Your Honor, I really do
4   appreciate that.  The government presumably had its opinion about,
5   in the prior order, what could and couldn't be excised.  Would it
6   be helpful to us if you also released that with all of their --
7   everything the government wants out of it taken out of it?  Or is
8   that very close to what I have here in my hands, basically?
9        **THE COURT:**  If I understand your question, I can't do
10  that because the government's submission does reveal some of what
11  they believe the Ninth Circuit was directing me to redact.
12       **MR. ARULANANTHAM:**  No, Your Honor.  Sorry.  I think I
13  wasn't clear.  I don't mean to see the government's briefs.  The
14  prior version -- or the prior order; right? -- the government
15  presumably wanted you to X out these pages, but there were some
16  portions of it that the government didn't object to the release
17  of.  Or maybe not.  If there isn't any --
18       **THE COURT:**  No, they pretty much objected to the whole
19  order.  And again, I can't give you detail, but I get a sense that
20  if I had redacted my original order in the way that the government
21  wanted me to, it would have been meaningless.
22       **MR. ARULANANTHAM:**  I see.
23       **THE COURT:**  There would have been really no purpose for
24  me issuing an order other than just saying see -- I'd just be
25  repeating some of the things the Ninth Circuit said.  And I just

1  felt that this was an occasion that it was important not only to
2  your clients but, frankly, to the whole district court that this
3  is just not acceptable.
4  　　　　　And I sensed from the Ninth Circuit opinion -- and I'm
5  not trying to be critical -- that they thought I was angry and
6  frustrated.  And they're wrong, with all due respect.  I have
7  never been angry and frustrated.  I have been firm, and I'm not
8  going to negotiate the truth.  And I have been adamant about that.
9  But this case, I had too many hearings and I have heard so much,
10  that I wasn't acting out of anger or frustration.  Sadness or
11  disappointment maybe, but not frustration.
12  　　　　　And not to frustrate you, but I didn't make any findings
13  in that order of bad faith.  And you are going to do what you need
14  today, and I encourage you to do what you need to do.  But if you
15  want to take it further with me, you are going to really be --
16  it's an uphill climb.  Because of all the information I have
17  received in the classified hearings, to try to understand what
18  happened and what they did and why they did it, I just don't see
19  any bad faith here.
20  　　　　　And for sanctions to be awarded or taking high-level
21  officials into court for you to cross-examine them or me to
22  cross-examine them, I just don't feel, based on what I know, it
23  would be appropriate.  It's not a case where the deception was the
24  result of someone trying to make money, trying to get power.  I'm
25  not condoning it.  Please don't misunderstand me.  But it's not a

1  record where I would say anybody on the government's part acted in
2  bad faith.  Overzealous maybe, but not in bad faith.
3           So if after talking to your colleagues and trying to
4  figure out well, what do we really do, I'm not sure you are going
5  to get much mileage if you want to get more out of me as to who,
6  what, when, where, and why, and shouldn't they be held more
7  accountable for what happened.  I have kind of been there already,
8  is what I'm telling you.  I have been there.  If you invite me to
9  go there again -- which you have a right to do -- it's going to be
10 classified hearings too, because -- and I can tell you, you
11 understand this -- if you are talking about sanctions, you have to
12 have, I think, a finding of bad faith.  And the government cannot
13 defend itself and what they did without, I think, revealing
14 classified information.  And even if it's not classified
15 information, it's still information that I think would compromise
16 national security.
17           **MR. ARULANANTHAM:**  Your Honor, I very much doubt that we
18 would seek sanctions.  We have done it in one case where the
19 government destroyed evidence, but I would be very surprised if we
20 made any kind of move to do that here, although I do want to talk
21 to my colleagues about it, but I extremely doubt it, even before
22 having heard the Court's -- you obviously would not be inclined in
23 that direction.
24           The main thing that I am interested in, though, and it's
25 found, from what the Court is saying, that this is already

Page 15

1  included in the original appeal -- although I didn't know that --
2  is that my -- I feel that we must be entitled to know at least at
3  some more specific level what exemption applies with respect to
4  particular documents.  But it sounds like my avenue for trying to
5  make that argument is better done through a rehearing petition on
6  the existing Ninth Circuit appeal rather than appealing the order
7  that you have issued today, because it sounds like that
8  question -- the question whether we get to know what the
9  exemptions are that are being invoked, is actually included in the
10 Ninth Circuit case.
11         **THE COURT:**  You got it.  You got it.  And for whatever
12 it's worth, I agreed with you.  But I interpreted the Ninth
13 Circuit as saying I can't tell you that.  So it is what it is.
14         **MR. ARULANANTHAM:**  Thank you, Your Honor.  Very much
15 appreciate it.
16         **THE COURT:**  Okay.  Ms. Sowles, is there anything the
17 government would like to say, or Mr. Tyler?
18         **MR. TYLER:**  Good morning.  I'm John Tyler with the
19 United States Department.
20         **THE COURT:**  Hello, sir.
21         **MR. TYLER:**  We have, in our papers before the Court,
22 apologized for the misunderstanding that has arisen.  We regret
23 very much Your Honor's conclusions, heartfelt that they are, that
24 you had been misled.  We wish that did not happen.  And we have
25 assured you are in our papers, and I can stand before you and

1  assure you again that that was -- the government's actions in this
2  case were never for purposes of misleading this Court or Your
3  Honor in any way, but rather to protect sensitive law enforcement,
4  national security interests.
5         We believe that pursuant to that objective we acted
6  appropriately.  There remains a fundamental disagreement between
7  the government and Your Honor about our conduct in this matter.
8  We have had the opportunity to argue our position before the Court
9  for which we thank you, but there remains this fundamental
10 disagreement.
11        We must respectfully disagree with Your Honor's
12 conclusion that you were misled, but you have obviously come to
13 that conclusion and there is nothing more I believe I can say at
14 this time.  Your Honor feels, I believe, frustrated because you
15 have to be circumspect as a result of the matters that were before
16 this Court and subsequently before the Ninth Circuit.  So do I,
17 quite frankly.  I feel a little frustrated because I am not able
18 to further defend the government's actions as I think would be
19 appropriate.  I feel I have more than one hand tied behind my back
20 as I believe so does Your Honor.  So there we are.
21        **THE COURT:**  I do.  And that's why, Mr. Tyler, I told
22 counsel that I just didn't see any bad faith.  That's why I felt
23 comfortable saying that.  And your words mean a lot to me.  I do
24 appreciate it.  I think I'm just parroting what you said:  We just
25 have a fundamental disagreement.

Page 17

1  But I want to repeat to you, I'm not angry at the
2  government. I'm not frustrated with the government. It's just I
3  can't do my job -- and I know you can appreciate this, Mr. Tyler,
4  every week I rely on what the government tells me to enhance
5  sentences, to authorize wire taps, to put people in prison. The
6  government's word has to be gospel because I rely on it, and many
7  times on an ex parte basis. And if I'm given inaccurate
8  information, then I do things that I shouldn't do such as issue an
9  order in this case saying that a search was adequate and thorough
10 with respect to nine of the plaintiffs, and this was all the
11 documents they found.
12      And so then now I have the judicial branch that is kind
13 of hand in hand with the executive branch. And I can't be in that
14 position.
15      **MR. TYLER:** I appreciate that, Your Honor. And that
16 trust between the government and the Court, I agree with you so
17 wholeheartedly. That is absolutely sacred. Without that, the
18 whole system breaks down. And that's drilled into us at the
19 department by judges, by all amongst us. That's our number one
20 principle and training, that there has to be that trust between us
21 and the judiciary. We, when we write our briefs, when we make
22 representations before the Court, we have to be 100 percent
23 truthful at all times. That's the standard that appropriately we
24 should be subject to, and that's the standard that we always
25 strive for.

4e194528-297b-492f-b752-db0694b6057d

1     We never lost sight of that standard in this case, Your
2 Honor.  I believe that to be true today.  Others within the
3 department who have reviewed this matter believe that to be true
4 today.  And again, I think that it regrettably comes down to this
5 fundamental disagreement and opinion.  But Your Honor has been
6 more than fair to us in giving us the opportunity to present our
7 arguments.  I believe we used that opportunity to the best of our
8 ability and yet here we are with this difference.
9     So I can only conclude my remarks by again expressing
10 how much I personally regret, how we all regret that Your Honor
11 has come to these conclusions.  I wish it had not happened.  I
12 wish I could say more.  I really, really, truly wish I could say
13 more, but I can't because I have other principles to which I'm
14 equally devoted as well.
15     So I thank you, Your Honor, for this opportunity.
16     **THE COURT:** And I appreciate your comments.  Okay.
17 Well, I think we're done.
18     **MR. ARULANANTHAM:** Thank you, Your Honor.  Nothing
19 further.
20     (Whereupon the proceedings were adjourned at 10:00
21 a.m..)
22
23                           -oOo-
24
25                         CERTIFICATE

4e194528-297b-492f-b752-db0694b6057d

```
 1
 2          I hereby certify that pursuant to Section 753, Title 28,
 3   United States Code, the foregoing is a true and correct transcript
 4   of the stenographically reported proceedings held in the
 5   above-entitled matter.
 6
 7   Date:  MAY 2, 2011
 8
 9   _____
10   MARIA DELLANEVE, U.S. COURT REPORTER
     CSR NO. 9132
11
12
...
25
```